UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------x
                                                      :
YVES SAINT LAURENT PARFUMS S.A. and YSL               :
BEAUTÉ INC.,                                           :
                                                      :
                              Plaintiffs,              :
                                                      :           Civil Action No.
              - against -                              :           07 Civ. 3214 (LBS)
                                                      :
COSTCO WHOLESALE CORPORATION,                          :
                                                      :
                              Defendant.               :
                                                      :
------------------------------------------------------x
```

## OBJECTIONS AND MEMORANDUM OF LAW
## IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

JAMES W. DABNEY
DARCY M. GODDARD
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004 - 1980
(212) 859-8000

Attorneys for Defendant
Costco Wholesale Corporation

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES ............................................................................ ii

FACTUAL BACKGROUND ............................................................................5

ARGUMENT ....................................................................................................11

I.     THE MAGISTRATE JUDGE ERRED IN *SUA SPONTE*
CONVERTING A REQUEST FOR PRE-MOTION CONFERENCE
INTO A RULE 37 MOTION.......................................................................11

II.    THE MAGISTRATE JUDGE APPLIED INCORRECT LEGAL
STANDARDS.............................................................................................13

    A.    Costco Supplier Identities Are Extremely Sensitive,
Proprietary, and Perishable Trade Secrets. ....................................13

    B.    Disclosure of Costco Supplier Identities Is Not "Relevant and
Necessary" to the Determination of the Plaintiffs' Claims
Challenging Costco Display Packaging.........................................15

        1.    The Amended Complaint Does Not State, Much Less
State Adequately, Any Claim That Costco Has Offered
Goods Whose "Initial Sale" Was Not "Authorized" by
Plaintiffs.............................................................................16

        2.    Disclosure of Costco Supplier Identities Is Not
"Necessary" to the Determination of Plaintiffs' Claims..................20

    C.    Disclosure of Costco Supplier Identities to Plaintiffs' Regular
Trademark Counsel Is Contrary to Law.........................................21

CONCLUSION.................................................................................................24

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*American Financial Intern. Group-Asia, L.L.C. v. Bennett*,
  2007 WL 1732427 (S.D.N.Y. Jun. 14, 2007) ........................................................19, 20

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...................................2, 9, 18, 19

*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992)..................4

*Chembio Diagnostic System, Inc. v. Saliva Diagnostic System, Inc.*,
  236 F.R.D. 129 (E.D.N.Y. 2006) .......................................................................13

*Coach Leatherware Co. v. AnnTaylor, Inc.*,
  933 F.2d 162 (2d Cir. 1991).................................................................................15

*Collens v. City of New York*, 222 F.R.D. 249 (S.D.N.Y. 2004).........................................22

*First Financial Insurance Co. v. Allstate Interior Demolition Corp.*,
  193 F.3d 109 (2d Cir. 1999).................................................................................15

*Hilton v. Braunskill*, 481 U.S. 770 (1987) .........................................................................1

*Hispanics For Fair & Equitable Reapportionment v. Griffin*,
  958 F.2d 24 (2d Cir. 1992).................................................................................12

*Infosint S.A. v. H. Lundbeck A.S.*, No. 06 Civ. 2869,
  2007 U.S. Dist. LEXIS 36678 (S.D.N.Y. May 16, 2007)......................................21

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*,
  979 F. Supp. 224 (S.D.N.Y. 1997) ........................................................................16, 17

*Ryan v. Volpone Stamp Company*, 107 F. Supp. 2d 369 (S.D.N.Y. 2000)........................18

*Surles v. Air France*, No. 00-Civ.-5004,
  2001 U.S. Dist. LEXIS 10048 (S.D.N.Y. July 19, 2001) ......................................19

*Synopsis, Inc. v. Nassda Corp.*,
  2002 U.S. Dist. LEXIS 27668 (N.D. Cal. Sept. 16, 2002) .........................................13

### FEDERAL RULES

Fed. R. Civ. P. 8 ...................................................................................................4, 15

Pursuant to Rule 72(a) of the Federal Rules of the Civil Procedure, defendant, Costco Wholesale Corporation ("Costco"), respectfully objects to the order of United States Magistrate Judge Henry Pitman dated September 25, 2007 (the "September 25 Order"), insofar as it provisionally directed Costco to disclose extremely sensitive, proprietary, and perishable trade secret information to outside trademark counsel for the plaintiffs. The Magistrate Judge granted a stay of the September 25 Order "pending a decision on its [Costco's] objections from Judge Sand." (Sept. 25 Order at 1.) *Cf. Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (stay of injunctive relief may be granted if "applicant will be irreparably injured absent of stay" and "applicant has made a strong showing that he is likely to succeed on the merits").

As is reflected in the Magistrate Judge's grant of a stay, Costco will be irreparably injured if the September 25 Order is permitted to take effect. The September 25 Order would call for the disclosure of Costco supplier identities to legal agents of these plaintiffs whose very job it is to disrupt, interdict, and terminate Costco's supply of genuine YSL-branded goods, and to do so regardless of whether Costco's sale of YSL-branded goods constitutes trademark infringement or any other actionable wrong. Plaintiffs derisively refer to Costco as an "off-price retail chain." (Amended Complaint ¶ 14.)

It helps not at all that the September 25 Order limits disclosure to outside counsel for the plaintiffs. Armed with knowledge of Costco supplier identities, the plaintiffs would be in a position to serve third-party subpoenas on Costco's suppliers, and Costco's suppliers' suppliers, and to expose and thereby inevitably cause fear of reprisals and irreparable harm to Costco's ability to purchase not just genuine YSL-branded goods, but other branded products that Costco purchases in secondary markets and then offers at reasonable prices to consumers. Declaration of Robert L. Pugmire, sworn to September [28], 2007 (hereinafter, "Pugmire Decl.") ¶¶ 3-15.

The plaintiffs avowedly seek to terminate Costco's supply of YSL-branded goods and to bring about a situation in which YSL-branded goods are available only in "company-owned stores," "select duty-free boutiques," and "certain high-end department and specialty stores, including Bloomingdales, Neiman Marcus and Saks Fifth Avenue." (Amended Complaint ¶ 14.)

The problem, for the plaintiffs, is that trademark law does not vest in them any right to prevent Costco from purchasing and reselling genuine YSL-branded goods in secondary markets. To state a claim for alleged trademark infringement, a trademark owner must set forth a "statement of circumstances, occurrences, and events in support of the claim presented," and the statement must constitute "plausible grounds" for believing that challenged unlawful activity has occurred. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 & n.3 (2007) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202 at 94, 95 (3d ed. 2004)). Here, the Amended Complaint is very clear and specific in challenging only Costco's use of the theft-resistant <u>display</u> <u>packaging</u> depicted in Exhibits C-E to the Amended Complaint.

But no claim is made, or could be made, that disclosure of the identitities of persons who have supplied Costco with YSL-branded <u>goods</u> is relevant or necessary to the determination of whether Costco's in-store use of theft-resistant <u>display</u> <u>packaging</u> is likely to cause confusion of Costco shoppers. Rather, the plaintiffs have sought compelled disclosure of Costco supplier identities on the basis an unpleaded, <u>theoretical</u> <u>possibility</u> that, unbeknownst to Costco, some <u>initial</u> sale of YSL-branded goods, by some unnamed person, somewhere in the world, <u>might</u> not have been "authorized" by these plaintiffs, with the purported result that Costco's subsequent purchase and resale of YSL-branded goods in secondary markets <u>might</u> have constituted trademark infringement <u>regardless</u> of what display packaging Costco used.

Before the Magistrate Judge, plaintiffs' counsel stated that YSL-branded goods sold by Costco <u>might</u> have been "stolen," or that some "rogue" licensee of the plaintiffs <u>might</u> have sold YSL-branded goods without the plaintiffs' authorization.   Declaration of James W. Dabney, sworn to October 2, 2007 (hereinafter, "Dabney Decl.") ¶¶ 5-6.  But the Amended Complaint is utterly bereft of any "statement of circumstances, occurrences, and events" as would permit discovery in support of such a claim.  *Cf. Twombly*, 127 S. Ct. at 1965-74 (complaint failed to allege adequate factual grounds for permitting discovery into whether defendants' parallel conduct was the result of concerted, as distinct from individual, action).   Both during the September 21 conference and subsequently, counsel for the plaintiffs have expressly refused to identify what, if any, factual basis the plaintiffs might have for the discovery theories that were orally presented to the Magistrate Judge on September 21.  Dabney Decl. ¶ 16 & Ex. 11.

It should not escape the Court's attention what the plaintiffs are trying to do with this lawsuit. The plaintiffs have never followed up on their own counsel's suggestion, made only after the Court prompted them to identify the nature of the plaintiffs' complaint at the July 9 conference, that merely relocating notice of repackaging would resolve the plaintiffs' claims seeking injunctive relief.  Dabney Decl. ¶ 13 & Ex. 8 at 3.  The plaintiffs have also done virtually nothing to pursue their existing pleaded claims that certain theft-resistant <u>display</u> <u>packaging</u> utilized by Costco, exemplified by Exhibits C-E to the Amended Complaint, is supposedly likely to cause confusion as to the origin of the genuine YSL-branded products displayed therein.  The plaintiffs' deadline for making expert disclosures in this case was September 14; they served none.  Dabney Decl. ¶ 18.

Instead, the plaintiffs have attempted to misuse this litigation as a vehicle for seeking compelled disclosure of information that has nothing to do with Costco's display packaging, but

could be used to bring about a world in which YSL-branded goods are sold "only in company-owned stores, in select duty-free boutiques, and in certain high-end department and specialty stores, including Bloomingdales, Neiman Marcus and Saks Fifth Avenue" (Amended Complaint ¶ 14) and at much higher prices than Costco charges. The Court should not allow its coercive discovery mechanisms to be misused in this fashion.

The objected-to portion of the September 25 Order is clearly erroneous and contrary to law, because: (i) the Magistrate Judge *sua sponte* converted a Local Civil Rule 37.2 pre-motion conference into a substantive hearing on an unfiled motion to compel under Federal Rule of Civil Procedure 37 without providing Costco with adequate notice or an opportunity to brief fully or to submit evidence in opposition to such a Rule 37 motion; (ii) the Magistrate Judge applied incorrect legal standards in determining whether the plaintiffs' Amended Complaint was sufficient to justify compelled disclosure of Costco supplier identities; and (iii) the Magistrate Judge improperly directed disclosure of trade secret information to legal agents of these plaintiffs whose ongoing work for the plaintiffs will necessarily be influenced and affected by the trade secret disclosures. On October 2, 2007, plaintiffs' counsel in this action made a wholly new claim of alleged trademark infringement against Costco. *See* Dabney Decl. ¶ 16 & Ex. 11.

Discovery in this action is scheduled to close in less than thirty days. Costco has limited its pretrial activities in this case to investigation of the plaintiffs' purported claims challenging Costco's use of the theft-resistant display packaging depicted in Exhibits C-E to the Amended Complaint. Disposition of those claims ought not be delayed on account of abusive attempts to obtain trade secret information that is totally irrelevant to the plaintiffs' existing pleaded claims. To the extent that the plaintiffs have some factual basis for alleging that Costco has infringed trademarks owned by these plaintiffs <u>regardless</u> of what theft-resistant display packaging Costco

4

has used, the plaintiffs can and should plead any such claim properly, and forthrightly, in a separate complaint that complies with Federal Rule Civil Procedure 8(a) and *Twombly*.

## FACTUAL BACKGROUND

This is an action for alleged trademark infringement and related torts. The plaintiffs (collectively, "YSL") claim to own the trademarks YSL (stylized) and YVES SAINT LAURENT (the "YSL Marks") as applied to cosmetic and beauty products. (Amended Complaint ¶¶ 7-12.) The plaintiffs further allege that (*id.* ¶ 14):

> YSL sells its line of cosmetic and beauty products, including products bearing the YSL Marks, only in company-owned stores, in select duty-free boutiques, and in certain high-end department and specialty stores, including Bloomingdales, Neiman Marcus and Saks Fifth Avenue. YSL does not sell such products to off-price retail chains such as Defendant.

The Amended Complaint goes on to allege that "defendant is importing, distributing, advertising, offering for sale and/or selling in its store locations throughout the United States, repackaged YVES SAINT LAURENT cosmetic and beauty products bearing the YSL marks . . . . Defendant is not an authorized purchaser or reseller of YSL cosmetic and beauty products and has purchased such products through unauthorized channels of distribution." (Amended Complaint ¶ 18; emphasis added.) This allegation simply says that YSL has in the past refused to sell directly to Costco. Exhibits C, D, and E to the Amended Complaint are photographs of the objected-to "repackaged" YSL-branded products sold by Costco in some of its retail stores.

The Amended Complaint sets forth eight separate claims for relief, each and every one of which is directed specifically, and only, to the design and labeling of theft-resistant display packaging in which Costco has displayed genuine YSL-branded goods. Reproduced below are the allegations of the plaintiffs' Amended Complaint that set out the conduct of Costco that has

allegedly caused a likelihood of confusion or dilution and so has allegedly "infringed" trademark rights of these plaintiffs:

> "Defendant has failed to adequately inform consumers at the point of sale that the Unauthorized Products are <u>repackaged</u>, and, accordingly, consumers are likely to be confused and believe that such products are being sold in their original packaging." (Amended Complaint ¶ 26 (emphasis added).)

> "Defendant has used <u>inferior packaging</u> for the Unauthorized Products not in keeping with YSL's quality control standards and has otherwise altered an element of the Mascara Product that is material to the purchasing decision of the consumer at the point of sale, namely, the ingredient declaration." (*Id.* ¶ 27 (emphasis added).)

> "Defendant has distributed, advertised, promoted, and sold and offered for sale, in commerce, <u>packaging</u> that is confusingly similar to the YSL Trade Dress." (*Id.* ¶ 37 (emphasis added).)

> "Defendant has failed to adequately inform consumers at the point of sale that the Unauthorized Products are <u>repackaged</u>, and is presenting the Unauthorized Products to consumers as if they were materially the same as the corresponding products sold by YSL in the United States." (*Id.* ¶ 44 (emphasis added).)

> "Defendant's conduct constitutes false advertising, in that the manner in which Defendant has <u>packaged</u> and is selling the Unauthorized Products is misleading, as Defendant has <u>packaged</u> the Unauthorized Products in such a way that consumers believe they are purchasing two units of the YSL product rather than just one." (*Id.* ¶ 45 (emphasis added).)

> "Defendant's unlawful use of the YSL Marks in connection with <u>inferior packaging</u> materials is also likely to tarnish the YSL Marks, thereby lessening the value of the YSL Marks." (*Id.* ¶ 55 (emphasis added).)

## The Discovery Dispute

On July 23, 2007, Costco served its Answers and Objections to Plaintiffs' First Set of Interrogatories. (Dabney Decl. ¶ 9 & Ex. 4.) Costco responded fully to the plaintiffs' interrogatories seeking identification of persons who supplied Costco "with the Repackaging" (Dabney Decl. Ex. 4 (Interrogatory No. 2)), the persons "involved in the design of the Repackaging" (*id.* (Interrogatory No. 6)), the persons "involved in the approval of the

Repackaging" (*id.* (Interrogatory No. 7)), and the persons who were "involved in the preparation and/or approval of any repackaging notices on the Repackaging" (*id.* (Interrogatory No. 8)). All of this information was relevant to the plaintiffs' claims challenging Costco's repackaging of the products that were depicted in Exhibits C-E to the Amended Complaint.

In sharp contrast, the plaintiffs' Interrogatory No. 9 sought identification of each person that supplied Costco with the YSL-branded <u>goods</u> that were encased within the objected-to packaging. In response to this interrogatory, Costco objected on the following grounds (Dabney Decl. Ex. 4 at 6-7):

> Costco objects to Interrogatory No. 9 as improperly seeking highly confidential trade secret information. The identity of the particular vendor or vendors who have supplied genuine YSL-branded products to Costco has no bearing on the merits of the claims that plaintiffs have asserted in this action, all of which are directed to the design and labeling of theft-resistant packaging used by Costco, not the origin or genuiness of the original products themselves. The identity of Costco vendors is a tightly guarded trade secret of Costco. Disclosure of this information would expose Costco to immediate and irreparable harm. Plaintiffs allege that "YSL does not sell such products to off-price retail chains such as Defendant" (Complaint ¶ 14) and Costco allegedly "has purchased such products through <u>unauthorized</u> <u>channels</u> of distribution" (*id.* ¶ 19). Plaintiffs also repeatedly, and misleadingly, refer to genuine YSL-branded products sold by Costco as so called "Unauthorized Products" (e.g., Complaint ¶ 19). Plaintiffs' complaint makes very clear that plaintiffs would cut off sales to any vendor known to be supplying Costco. Outside counsel for plaintiff in this action is directly involved in plaintiffs' activities relevant to the distribution of YSL-branded products. In the circumstances, there is no type of confidentiality undertaking that would adequately protect Costco against irreparable harm that would inevitably flow from disclosure of trade secret vendor identities to trademark enforcement counsel for YSL.

**<u>The August 30 Letter</u>**

By letter dated August 30, 2007 (Dabney Decl. Ex. 5), counsel for the plaintiffs wrote to the Court, pursuant to Local Civil Rule 37.2, seeking an informal conference to address Costco's

objections to disclosing supplier identities to the plaintiffs and their counsel.  The matter was referred to Magistrate Judge Henry Pitman.

By letter dated September 10, 2007, the undersigned requested the opportunity to submit evidence and full briefing with regard to the plaintiffs' discovery application.  Our September 10 letter stated in part:

> The plaintiffs request permission file a discovery motion seeking an Order compelling Costco to disclose a tightly guarded trade secret—the identity of vendor(s) who have sold genuine YSL-branded products to Costco—to legal agents of these plaintiffs whose very job it is to file lawsuits, serve third-party subpoenas, and attempt to stop such so-called "unauthorized" sales from occurring.
> . . . .
>
> Given the commercial importance and extreme sensitivity of Costco vendor(s) identities, Costco respectfully suggests that, if the Court even permits the plaintiffs to file their requested discovery motion, the Court should receive full briefing and oral argument on the merits of any application by plaintiffs for compelled disclosure.
> . . . . .
>
> Costco is prepared to demonstrate that the identity of Costco vendors is a tightly guarded trade secret.    Preserving the confidentiality of Costco's vendors' identifies is critical to Costco's ability to offer consumers low prices on genuine branded goods—as the plaintiffs' complaint in this case makes clear.
> . . . .
>
> For the foregoing reasons, Costco respectfully suggests that plaintiffs' request to bring a discovery motion to compel disclosure of Costco's vendor(s) identities should be denied.  To the extent Your Honor believes plaintiffs should be allowed to bring such a motion, Costco respectfully suggests that full briefing and oral argument should be required.

**The September 21 Hearing**

On September 21, 2007, the Magistrate Judge convened a conference pursuant to Local Civil Rule 37.2.  The Magistrate Judge did not, however, limit the proceedings to an informal discussion whether the plaintiffs should be given leave to file a discovery motion, but instead treated the plaintiffs' August 30 Letter as constituting a discovery motion and *sua sponte*

8

converted the September 21 conference into an "oral argument" of a Rule 37 motion. (Dabney

Decl. ¶ 13 & Ex. 8.) The Magistrate Judge effectively denied Costco's request for a opportunity

to submit evidence and legal briefing on the merits of the plaintiffs' discovery motion.

> Ruling from the bench, the Magistrate Judge stated:
>
> It's not a model of clarity, but I think that the para—particularly paragraph 18 of the Amended Complaint can fairly be read to include a claim that the sale of the cosmetics that wound up on Costco's shelves was not authorized and that the sale may constitute trademark infringement under the theor—under the tests described by Judge Haight in the *Ryan* case.
>
> As I understand trademark law, *if the initial sale was not authorized* by the trademark owner did not have the ability to control, the quality of the product that the sale by Costco may well constitute trademark infringement.
>
> Its seems to me that supplier information is relevant for—to a determination of whether or not the product is introduced into commerce, whether or not the sales was with—the trademark owner's authorization. So it seems to me the supplier information is relevant. And I say—as I said before, the Amended Complaint may not be a model of clarity but I think fairly read the reference to an unauthorized products, the reference to unauthorized channels of distribution, it is fairly—it can be fairly be read to incorporate *the theory that the initial sale was not authorized*

(Dabney Decl. Ex. 8 at 31-32; emphasis added)

Having declined to receive evidence or briefing on the point, the Magistrate Judge did not

consider whether the Amended Complaint adequately stated a claim that "the initial sale was not

authorized" under the legal standard articulated in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

1955 (2007). The Magistrate Judge also did not apply the "relevant and necessary" standard for

compelled disclosure of trade secret information, and did not make any findings that plaintiffs'

trademark counsel were uninvolved in the type of competitive decisionmaking as to which

Costco supplier identities would be directly relevant. It is clear, in fact, that no such findings

could possibly have been made; as reflected in a letter to the undersigned dated October 2, 2007,

the plaintiffs' counsel in this case have ongoing responsibility for enforcing what the plaintiffs

9

see as their rights to prevent Costco's so-called "unauthorized" distribution of YSL-branded goods. Dabney Decl. ¶ 16 & Ex. 11. Typically in a case such as this, a legal or other recipient of party trade secret information would have no ongoing responsibilities, apart from the litigation, that could be influenced or affected by knowledge of the disclosed information. *See* Dabney Decl. ¶ 13 & Ex. 8 at 18.

## The Stay Pending Objections

At Costco's request, the Magistrate Judge stayed his ruling directing the disclosure of Costco supplier identities pending a determination by the Court on objections that Costco might file under Rule 72(a). Costco has timely filed such objections, and thus discovery in this action remains limited to the plaintiffs' claims as actually alleged in the plaintiffs' Amended Complaint, i.e., whether the design and labeling of the theft-resistant display packaging in which Costco has displayed genuine YSL-branded goods has caused a likelihood of confusion or dilution and so has allegedly "infringed" trademark rights of these plaintiffs. Notably, the plaintiffs make no claim—nor could they—that disclosure of Costco supplier identities is necessary for the plaintiffs to litigate those claims.

## ARGUMENT

**I.    THE MAGISTRATE JUDGE ERRED IN *SUA SPONTE*
CONVERTING A REQUEST FOR PRE-MOTION CONFERENCE
INTO A RULE 37 MOTION.**

Local Civil Rule 37.2, entitled "Mode of Raising Discovery Disputes with the Court,"

provides:

> No motion under Rules 26-37 inclusive under Federal Rules of Civil Procedure
> shall be heard unless counsel for the moving party has first requested an informal
> conference with the court and such request has either been denied or the discovery
> dispute is not been resolved as the consequence of such a conference.

In reliance on the above-quoted rule, Costco treated the plaintiffs' August 30 Letter

application as a request for "an informal conference" that would be followed, if necessary, by a

motion to compel under Federal Rule of Civil Procedure 37.   Accordingly, the undersigned

responded to the plaintiffs' August 30 letter informally, also by letter, and expressly requested

the opportunity to submit full briefing on the factual and legal issues raised by the plaintiffs'

counsel's August 30 letter.  (Dabney Decl. Ex. 6.)    Prior to the start of the conference on

September 21, Costco was given no notice that the Magistrate Judge intended to hear and

determine the merits of an as-yet unfiled and unbriefed motion to compel under Rule 37.  To the

contrary, the undersigned stated on the record at the September 21 hearing, "we thought we were

just going to discuss the pre-motion conference here this morning." (Dabney Decl. Ex. 8 at 37.)

Under the circumstances, Costco respectfully submits that the Magistrate Judge acted

contrary to law—particularly Local Civil Rule 37.2—in *sua sponte* converting the plaintiffs'

August 30 Letter into a full-blown Rule 37 motion that Costco had no adequate opportunity to

oppose with the submission of evidence and full legal briefing.  In analogous circumstances, the

Second Circuit has repeatedly held that a party in Costco's position is entitled to reasonable

notice of the Court's intention to convert an application seeking one form of relief into an

application seeking a different and much more final form of relief. *See, e.g., First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 119 (2d Cir. 1999) ("[W]hile there is no dispute that district courts have the inherent power to grant summary judgment *sua sponte*, an essential limitation on that power is that it may not be exercised unless the losing party had notice that it had to come forward with all of its evidence and arguments."); *Hispanics For Fair & Equitable Reapportionment v. Griffin*, 958 F.2d 24, 25-26 (2d Cir. 1992) (per curiam) (holding that the lower court erred when it converted the plaintiffs' motion for a preliminary injunction into a motion to dismiss, which it then granted; holding, "[l]oss of a motion for preliminary injunction means only temporary lethality. . . . When such a limited adjudication is the order of the day, we cannot say with assurance that the parties will present everything they have. The very intimation of mortality when summary judgment is at issue assures us that the motion will be rebutted with every factual and legal argument available."); *Coach Leatherware Co., v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) (noting that a district court may, in the absence of a cross motion, grant summary judgment *sua sponte* against the moving party only where it is clear that the moving party "would have been on notice to incorporate all rebutting evidence available to them").

Here, Local Civil Rule 37.2 explicitly provides that "[n]o motion under Rule 26-37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the Court and such request has either been denied or the discovery dispute has not be resolved as a consequence of such a conference." By its express terms, then, Local Civil Rule 37.2 called for "an informal conference" and prohibited the "hearing" of any Rule 37 motion until <u>after</u> such a conference had been held. The Rule

contemplates that, if an informal conference does not resolve the dispute, a Rule 37 motion may then be filed.

Particularly where, as here, a party has expressly requested the opportunity to demonstrate, with full briefing and evidentiary submissions, that discovery of trade secret information should not be had, such a party is entitled to reasonable notice if the merits of the opposing party's yet-unfiled discovery application will be determined at the hearing. It was, thus, contrary to law for the Magistrate Judge to treat the plaintiffs' August 30 letter as a Rule 37 motion without first providing Costco with notice and an opportunity to brief and submit evidence in opposition to such a motion. One consequence of this error was that the Magistrate Judge acted without the benefit of important evidence and applied incorrect legal standards as set forth below.

## II.   THE MAGISTRATE JUDGE APPLIED INCORRECT LEGAL STANDARDS.

It is well-settled that where, as here, a party seeks compelled disclosure of trade secret information, the <u>requesting</u> party bears the burden of demonstrating the requested discovery is both "relevant" and "necessary" to the determination of its claims. *See, e.g., Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006) (Boyle, M.J.); *Synopsis, Inc. v. Nassda Corp.*, 2002 U.S. Dist. LEXIS 27668, at *3 (N.D. Cal. Sept. 16, 2002) (denying motion to compel where plaintiff did not demonstrate that the requested trade secret information was "both relevant and necessary to the action").

### A.   Costco Supplier Identities Are Extremely Sensitive, Proprietary, and Perishable Trade Secrets.

As set forth in the accompanying Declaration of Robert L. Pugmire, Vice President-General Merchandise Manager, Non-Foods, for Costco, preserving the confidentiality of Costco

13

supplier identities is critical to Costco's ability to offer consumers low prices on certain genuine

branded goods. As affirmed by Mr. Pugmire, the facts are that:

- Costco's selection of and relationship with its vendors are of vital importance to Costco's business. Costco's ability to offer quality merchandise to its customers at reasonable prices is directly dependent on its sources of merchandise, on its ability relative to that of its competitors to source merchandise and to purchase at favorable prices, and on its ability to maintain relationships with suppliers and access to the merchandise they offer. (*Id.* ¶ 4)

- Costco's subsidiary, National Clothing Company d/b/a National Distributors ("National") is responsible for secondary market purchases of certain types of merchandise including, for example, heath and beauty products. National buyers are responsible for locating opportunities to purchase and offer to Costco's members high-end merchandise that Costco is unable to buy directly from manufacturers. (*Id.* ¶ 6)

- It is the strict policy and consistent practice of Costco and National to treat as extremely sensitive trade secret information the identities of its vendors for secondary market purchases. Costco and National go to great lengths to keep confidential the identities of these vendors. (*Id.* ¶ 7)

- Confidentiality is especially critical when purchasing merchandise in the secondary market. Many vendors fear reprisals and other measures from manufacturers for selling merchandise to Costco or National. Such reprisals and measures could include, for example, publicizing the vendor's name, threatening "designated" distributors if they sell goods to an identified vendor, or alerting manufacturers of other products that the identified vendor may be a likely source of merchandise that Costco sells. If Costco or National discloses a vendor's identity, the manufacturer might also attempt to eliminate the vendor's source of supply by terminating the "designated" distributor who sells to that vendor, or by forcing the "designated" distributor to raise its prices. (*Id.* ¶ 8)

- Vendors are more willing to sell to Costco and National because they know that Costco and National will protect their identities. (*Id.* ¶ 9)

- Vendors who supply merchandise to Costco and National often supply goods produced by many different manufacturers. If Costco or National were forced to disclose the identity of these vendors, it would risk interruption of their access to a source, not only of the merchandise of the manufacturer of the particular merchandise, but perhaps of other merchandise as well. (*Id.* ¶ 10)

- Employees who have knowledge of or interaction with Costco's and National's secondary market vendors are continuously aware of the critical importance of keeping the identity of vendors confidential, as are companies with whom Costco

14

contracts.  Costco and National take great effort to assure that the dissemination of information regarding its vendors is restricted.  (*Id.* ¶ 11)

- Costco's and National's general policies and procedures relating to confidentiality with respect to the identity of vendors of secondary-market merchandise were and are followed in connection with the genuine YSL-branded goods at issue in this case.  (*Id.* ¶ 13)

- Costco and National have not advised anyone outside of Costco or National (other than Costco's attorneys in this matter) of the identity of the vendor(s) from whom Costco or National have purchased or currently purchase genuine YSL-branded goods.  (*Id.* ¶ 14)

- For each of the reasons set forth in this declaration—including but not limited to the desire to prevent manufacturers from retaliating against "designated" distributors and vendors, and the desire to avoid the loss of access to the products not only of YSL but also of other manufacturers who merchandise is or might in the future be supplied by that vendor—the identity <u>every</u> vendor of secondary-market merchandise to National and Costco, in general, and the identity of National and Costco's supplier of genuine YSL-branded goods, in particular, is extremely sensitive and valuable trade secret information.  (*Id.* ¶ 15)

The Magistrate Judge here recognized, appropriately, that Costco supplier identities are trade secrets entitled to at least some protection against disclosure.  But the Magistrate Judge applied incorrect legal standards in determining whether (i) the plaintiffs' Amended Complaint was sufficient to justify compelled disclosure of Costco supplier identities, and whether (ii) plaintiffs' regular outside trademark counsel were appropriate recipients of such trade secret information (even assuming, for purposes of argument, that the Amended Complaint had adequately stated a claim sufficient to justify compelled disclosure of Costco supplier identities, which it clearly did not and does not).

**B.    Disclosure of Costco Supplier Identities Is Not "Relevant and Necessary" to the Determination of the Plaintiffs' Claims <u>Challenging Costco's Display Packaging.</u>**

The Magistrate Judge did not here analyze the Amended Complaint by reference to the standard of Federal Rule of Civil Procedure 8 as clarified in *Bell Atlantic Corp. v. Twombly*, 127

S. Ct. 1955 (2007). Instead, the Magistrate Judge ordered disclosure of Costco supplier identities on the basis of nothing more than an unpleaded, <u>theoretical</u> <u>possibility</u> that an investigation of <u>everyone</u> in a chain of suppliers to Costco <u>might</u>—or might not—lead to information that someone, somewhere, <u>might</u> have made an "initial sale" of YSL-branded goods that these plaintiffs did not "authorize," with the purported result that these plaintiffs <u>might</u>—or might not—have grounds for complaining of Costco's sale of YSL-branded goods <u>regardless</u> of how Costco repackaged and displayed the goods. (*See* Dabney Decl. Ex. 8 at 31-32.)

A comparison of the Amended Complaint with the grounds plaintiffs urged for discovery before the Magistrate Judge reveals that the latter have no basis whatsoever in the former. Further, the Magistrate Judge made no findings that disclosure of Costco supplier identities is "necessary" for plaintiffs to determine whether one of their own factories or licensees has purportedly made a so-called "unauthorized" "first" sale to some supplier to a supplier of Costco.

>    **1.    The Amended Complaint Does Not State, Much Less State Adequately, Any Claim That Costco Has Offered Goods Whose "Initial Sale" Was Not "Authorized" by Plaintiffs.**

During the September 21 conference, counsel for plaintiffs argued that the Amended Complaint purportedly states a claim that Costco's mere sale of YSL-branded goods constitutes trademark infringement because the goods might have been "stolen" or "put into the stream of commerce . . . by one of our licensees who is a rogue." (Dabney Decl. Ex. 8 at 3.) This was simply the self-serving speculation of counsel; no proof was submitted. On this purported theory, the theft-resistant display packaging used by Costco—which was the centerpiece of the Amended Complaint—is quite irrelevant. Rather, the plaintiffs would liken this case to *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 979 F. Supp. 224 (S.D.N.Y. 1997), in which a

16

trademark owner sued its contract manufacturer for making "unauthorized" sales of branded goods without the manufacturer's consent.

The Amended Complaint simply does not state a claim of this type, adequately or otherwise. Costco has never tendered the defense of this action to any supplier or sought indemnification, because Costco understood from the outset that the plaintiffs' Amended Complaint was concerned soley with Costco's theft-resistant display packaging. The Amended Complaint is bereft of so much as a hint of any allegation that some theft of goods occurred at some particular time or place, or that some licensee of the plaintiffs is suspected of being a "rogue" or of having made some so-called "unauthorized" "first" sale of YSL-branded goods. The plaintiffs have, moreover, expressly refused a written request that they identify any factual basis they might have for the discovery theories that were orally presented to the Magistrate Judge on September 21. Dabney Decl. ¶¶ 15-16 & Exs. 10-11.

The Magistrate Judge grounded his Order in paragraph 18 of the plaintiffs' Amended Complaint, which alleges that Costco purchased YSL-branded products through "unauthorized channels of distribution." To say, however, that Costco purchased goods "through unauthorized channels, is very different from saying that an "initial sale" of YSL-branded goods sold by Costco was purportedly "unauthorized." If the latter were so, then the "channels" through which Costco purchased the goods would be irrelevant. It is totally undisputed, in this case, that "the transactions through which Costco purchased these goods obviously were not authorized by the plaintiffs." Dabney Decl. ¶ 13 & Ex. 8 at 11. There is no need for any discovery on that point.

The present case is totally unlike *Liz Claiborne*, in which a trademark owner filed suit against its own contract manufacturer for selling branded goods without the manufacturer's authorization. In that kind of a case, liability for trademark infringement can of course be

established on the ground that a trademark owner did not authorize the public release of goods bearing the owner's mark. But no such transaction or event is remotely alleged or even hinted at in the Amended Complaint in this action. To the contrary, read as a whole, the Amended Complaint clearly pleads only that the "channels" through which Costco purchased the goods were "unauthorized," and not that the "goods" themselves were "unauthorized."

The sole authority cited by the Magistrate Judge in support of the September 25 Order was Judge Haight's decision in *Ryan v. Volpone Stamp Company*, 107 F. Supp. 2d 369, 382 (S.D.N.Y. 2000). But that is yet another case in which a trademark licensee sold branded goods and the initial sale was not authorized by the trademark owner. Such a case is completely different from the present one, in which the goods undisputedly were purchased in secondary— or, to use the plaintiffs' terminology, "unauthorized"—"channels" of distribution. To say that a "channel" of distribution is "unauthorized" is a very different matter from saying that an initial sale of goods was "unauthorized."

Passing over that the Amended Complaint nowhere alleges, or even hints at, a trademark infringement claim that does not involve Costco's display packaging, it is clear that the Amended Complaint equally fails to allege facts as could justify compelled discovery on the theory identified by the Magistrate Judge. In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court reiterated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In finding it appropriate to dismiss the plaintiffs' antitrust claim in advance of discovery, the *Twombly* Court further concluded, "It is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to

18

avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence to support" a poorly pleaded claim. 127 S. Ct. 1955 at 1967 (internal quotation marks omitted).

At least in *Twombly*, there were <u>some</u> allegations, however ineffectual, to support the plaintiffs' claim for discovery to support their claims for relief. Here, by contrast, there are none whatsoever. The plaintiffs have not even made a conclusory allegation that some "initial sale" of YSL-branded goods was "unauthorized," or that some purported "theft" of genuine YSL-branded goods occurred. Nor does the Amended Complaint allege that the YSL-branded goods being sold by Costco are anything but identical to what the plaintiffs themselves sell in the United States.

Even under the most liberal of interpretations of Rule 26(b), a plaintiff cannot properly utilize coercive discovery mechanisms for the purpose of determining whether it <u>might</u> have a claim against a defendant, where the plaintiff's pleading identifies no factual basis for forming a well-grounded belief that all of the elements of such a claim are present. *See, e.g., Twombly*, 127 S. Ct. at 1967; *Am. Fin. Intern. Group-Asia, L.L.C. v. Bennett*, 2007 WL 1732427, at *4 (S.D.N.Y. Jun. 14, 2007) (Lynch, J.); *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses."); *Surles v. Air France*, No. 00-Civ.-5004, 2001, U.S. Dist. LEXIS 10048, at *14 (S.D.N.Y. July 19, 2001) (Maas, U.S.M.J.) ("To open the door to the discovery that Air France seeks based on such a speculative showing would fly in the face of the recent amendments to Rule 26(b)(1), which were intended to focus the attention of both the

parties and the Court on the actual claims and defenses involved in a suit."), *aff'd*, 2001 U.S. Dist. LEXIS 15315 (S.D.N.Y. Sept. 27, 2001)

When read as a whole, the Amended Complaint simply does not allege or fairly give notice of a purported claim that the YSL-branded goods being sold by Costco were not sold by the plaintiffs, or with their authorization, in the first instance. The plaintiffs clearly knew how to plead such a theory, and they did not. The plaintiffs' request for compelled discovery of Costco supplier identities to prove up that unpleaded claim should be denied. *Cf. Am. Fin. Intern. Group-Asia*, 2007 WL 1732427, at *4 (dismissing unjust enrichment claim as improperly pleaded; noting, "Plaintiffs' confidence in the prospects of their proposed fishing expedition does not remedy their failure to allege the elements of their claim.").

### 2.  Disclosure of Costco Supplier Identities Is Not "Necessary" to the Determination of Plaintiffs' Claims.

Besides having no relevance whatsoever to the merits of the plaintiffs' pleaded claims challenging Costco's theft-resistant display packaging, the plaintiffs have totally failed to present any evidence that disclosure of Costco supplier identities is "necessary" for plaintiffs to determine whether goods being sold by Costco are purportedly likely to cause confusion or dilution.

Costco has been selling YSL-branded goods since 2005, yet the plaintiffs have not alleged that any YSL-branded goods being sold by Costco, including the two at issue in this lawsuit, are anything other than authentic, genuine, and identical to what the plaintiffs themselves sell. Nor have the plaintiffs identified any theft incident or any transaction or event that they suspect was a so-called "unauthorized" "first" sale.

Clearly, to the extent the plaintiffs have some particularized suspicion of misconduct on the part of one of their own factories or licensees, they can investigate any such suspicion by means that are far more direct and less intrusive to Costco than by seeking compelled disclosure of Costco supplier identities. This is especially so given that the plaintiffs do not even allege— nor can they—that Costco has dealt directly with any of the plaintiffs' manufacturing licensees or has had access to whatever agreements if any that those licensees may have with plaintiffs. There is simply no justification for jeopardizing, and effectively destroying, Costco's trade secret information simply so that the plaintiffs may conduct a purported investigation of a purported incident that the plaintiffs have not alleged, even on information or belief, has actually occurred, let alone where or when it might have occurred. Should they choose to do so, the plaintiffs have ready means of investigating any such purported incident without exposing Costco's business to irreparable harm.

**C.    Disclosure of Costco Supplier Identities to Plaintiffs' Regular Trademark Counsel Is Contrary to Law.**

The September 25 Order is contrary to law for the further reason that it calls for disclosure of Costco trade secrets to legal agents of these plaintiffs whose role extends far beyond the present litigation, and is of a nature that their work for the plaintiffs will necessarily be influenced and affected by knowledge of Costco supplier identities. In these circumstances, it is clear that disclosure of Costco supplier identities to the plaintiffs' regular trademark counsel is contrary to law, because it "would create 'an unacceptable opportunity for inadvertent disclosure.'" *Infosint S.A. v. H. Lundbeck A.S.*, No. 06 Civ. 2869, 2007 U.S. Dist. LEXIS 36678, at *9-*10 (S.D.N.Y. May 16, 2007) (Ellis, U.S.M.J.) (quoting *Mikohn Gaming Corp. v.*

*Acres Gaming Inc.*, 50 U.S.P.Q.2d 1783, 1784 (D. Nev. 1998) (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984))).

In numerous cases, courts have recognized the inappropriateness of disclosing trade secret information to counsel for a party whose role extends beyond the handling of a specific piece of litigation, and who cannot possibly "forget" what he or she knows when taking other actions on behalf of the client to which the trade secret information is directly relevant. *E.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (precluding party's counsel from access to trade secrets, where counsel advised the party "in areas relating to [the other party's] trade secrets"); *Infosint*, 2007 U.S. Dist. LEXIS 36678, at *16 (precluding party's patent counsel from access to technical information that was relevant to his work on behalf of the receiving party, and noting that "the opportunity for accidental disclosure or subconscious influencing of actions or advice is too great").

Just as in *Infosint*, where patent counsel for a party was not permitted to receive a litigant's technical information that was relevant to the patent counsel's other, not case-related advisory and prosecution work for his client, in this case, the identity of Costco suppliers is relevant to ongoing responsibilities that plaintiffs' counsel have with respect to interdicting so-called "unauthorized" distribution of YSL-branded goods to or by "off-price retail chains such as Defendant." (Amended Complaint ¶ 14.)  On the very day these Rule 72(a) objections were filed, plaintiffs' counsel in this case made demand on Costco with regard to another alleged infringement of YSL-owned trademarks. *See* Dabney Decl. ¶ 16 & Ex. 11.  In these circumstances, disclosure of Costco supplier identities to plaintiffs' regular trademark counsel is the legal equivalent of disclosure to the plaintiff corporations themselves.  The plaintiffs can act only through agents, and the plaintiffs' selected agents for purposes of interdicting Costco's

22

supplies of YSL-branded goods are plaintiffs' counsel in this case.  Even if Costco prevailed in this action, plaintiffs' counsel's continued representation of these plaintiffs would inevitably be influenced and affected by plaintiffs' counsel's knowledge of Costco's supply sources, and there would be an endless source of disputes over whether plaintiffs' counsel "independently" learned of Costco supplier identities.

The plaintiffs assert that a Protective Order limiting what plaintiffs' trademark counsel can consciously do with discovery information is sufficient to protect Costco's interests. (Dabney Decl. Ex. 5 at 1, 3.)  As numerous cases recognize, however, disclosure of trade secret information to counsel for a competitor is inappropriate where, as here, the nature of the counsel's role is such that "the opportunity for accidental disclosure or subconscious influencing of actions or advice is too great."  *Infosint*, 2007 U.S. Dist. LEXIS 36678, at *16 (precluding party's patent counsel from access to technical information that was relevant to his work on behalf of the receiving party).

## CONCLUSION

For the reasons set forth above, the Court should set aside the September 25 Order as clearly erroneous and contrary to law, insofar as it directs Costco to disclose trade secret supplier identities to trademark counsel for the plaintiffs. The existing Case Management Schedule should be maintained.

Dated:    New York, New York
          October 2, 2007

                                        Respectfully submitted,

                                        FRIED, FRANK, HARRIS, SHRIVER
                                        & JACOBSON LLP

                                        By:
                                            James W. Dabney
                                            Darcy M. Goddard

                                        One New York Plaza
                                        New York, New York 10004-1980
                                        (212) 859-8000

                                        Attorneys for Defendant
                                        Costco Wholesale Corporation

556852

24

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of October 2007, I caused true and correct copies of the attached Objections and Memorandum of Law in Support of Objections to Magistrate Judge's Order, Declaration of Robert M. Pugmire and Declaration of James W. Dabney to be electronically filed with the Clerk of the United States District Court for the Southern District of New York using the CM/ECF system and that true and correct copies of the attached documents were also served on the following by first-class mail:

Louis S. Ederer, Esq.
Alan C. Veronick
Arnold & Porter LLP
399 Park Avenue
New York, New York 10022
*Attorneys for Plaintiff*

Dated: New York, New York
      October 2, 2007

                                                Ed Nadler