# EXHIBIT 5

# ARNOLD & PORTER LLP

**Louis S. Ederer**
Louis.Ederer@aporter.com

212.715.1102
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

August 30, 2007

**BY HAND**
Hon. Leonard B. Sand
United States District Judge
Southern District of New York
500 Pearl Street, Room 1650
New York, New York 10007

      Re:     Yves Saint Laurent v. Costco Wholesale Corp., 07 cv 3214 (LBS)

Dear Judge Sand:

      We represent the Yves Saint Laurent ("YSL") plaintiffs in the above entitled action for trademark infringement and related claims. As lead counsel for YSL, I write with respect to certain discovery disputes that the parties have been unable to resolve, despite several good faith efforts to do so.

      The parties' disputes center around defendant Costco's refusal to provide certain information in discovery, including information as to its sources of supply for the allegedly infringing goods, despite the fact that this information is directly relevant to plaintiffs' claims (and to Costco's original affirmative defense) in this action, is likely to lead to the discovery of admissible evidence, and is completely protected from improper use and disclosure by the protective order plaintiffs have proposed to enter into (which protective order Costco also has not agreed to). In addition, while the parties have been attempting to resolve their disputes, Costco has designated over 90% of the documents it has produced in this case as "Confidential–Outside Attorneys' Eyes Only", even after redacting all supplier information, effectively preventing plaintiffs' outside counsel from discussing the evidence in this case with its clients.

      On this letter application, YSL asks that (i) Costco be directed to produce all the documents and information it has withheld from disclosure, including documents and information concerning its suppliers and the origin of the goods at issue, and (ii) the Court enter the protective order proposed by plaintiffs. In addition, YSL asks that Costco be directed to re-designate its confidential documents as either "Confidential" or "Confidential–Attorneys' Eyes Only" in accordance with the protective order, and that it utilize the "Confidential–Attorneys' Eyes Only" designation sparingly and only in connection with the most highly sensitive information it has been called upon to disclose.

### Background and Prior Efforts to Resolve Disputes

      As the Court will recall, this is an action for trademark infringement and other claims, arising out of Costco's purchase of YVES ST. LAURENT brand cosmetics and

# ARNOLD & PORTER LLP

Hon. Leonard B. Sand
August 30, 2007
Page 2

beauty products from unauthorized channels of distribution, diversion of such goods to the United States and other markets where it maintains retail locations, and repackaging of the goods in a manner that violates YSL's trademark and trade dress rights. The complaint in this action was filed on April 20, 2007, and Costco answered on May 24, 2007. Notably, in its answer, Costco asserted an affirmative defense based on the "first sale doctrine", claiming that its sale of plaintiffs' goods was not infringing because the first sale of those goods was an authorized sale, *i.e.*, a sale by YSL or a party authorized by YSL. Obviously, to support this defense, Costco would have to disclose where and how it acquired the YSL goods, so that it could be determined where the goods came from, and, ultimately whether in fact the first sale of those goods was authorized.

On June 8, 2007, plaintiffs served their first requests for production of documents pursuant to Rule 34, and their first set of interrogatories. As is typical in a case like this, these requests sought, among other things, the production of documents and disclosure of information as to Costco's sources of supply. For example, plaintiffs propounded the following document requests and interrogatories:

Document Request No. 1: All Documents and Communications concerning the purchase by You of each of the Unauthorized Products.

Document Request No. 4: Each contract, agreement, purchase order and invoice concerning the purchase of each of the Unauthorized Products.

Document Request No. 5: All Documents and Communications concerning Your payment for each of the Unauthorized Products.

Document Request No. 31: All Documents and Communications supporting Your First Affirmative Defense found in Your Answer to the Complaint that Plaintiffs' claims are barred by the first sale doctrine.

Interrogatory No. 9: Identify by name and address each Person that supplied You with each of the Unauthorized Products.

Shortly after plaintiffs served their discovery requests, plaintiffs' counsel, on June 15, 2007, proposed to Costco's counsel a protective order that would prohibit the improper disclosure of the parties' respective proprietary business information. Recognizing that both parties might have particularly sensitive information in this case (such as Costco's supplier information), plaintiffs proposed a more highly restrictive protective order than usual. The proposed order had two levels of protection — first, a "Confidential" category that would limit the disclosure of such documents to a designated business person, with that person to "sign on" to the protective order, thereby subjecting himself to the Court's contempt power, and, second, a "Confidential–Attorneys' Eyes

# ARNOLD & PORTER LLP

Hon. Leonard B. Sand
August 30, 2007
Page 3

Only" category that would limit the disclosure of highly sensitive information to in-house and outside counsel. In both instances, of course, persons designated to receive disclosure could not use the information for any purpose other than for purposes of this lawsuit, and could not disclose the information to anyone else not so designated.

On July 9, 2007, the parties appeared for an initial case management conference. During the conference, in the course of explaining the issues in this case, plaintiffs' undersigned counsel indicated to the Court that the goods in question did not appear to be traditional "counterfeits", *i.e.*, goods bearing a spurious mark manufactured and sold by a party with no relation to YSL. Rather, the goods appeared to have been manufactured by YSL or parties having a relationship with YSL, and then diverted to Costco somewhere in the channel of distribution. At no time, however, did I represent to the Court that any sale of the goods, much less the first sale, was authorized; rather, I simply indicated that the goods did not appear to be traditional counterfeits.

Thereafter, counsel for both parties discussed the proposed protective order and reached an agreement on the levels of confidentiality proposed by plaintiffs. However, before signing the protective order, Costco's counsel approached plaintiffs' counsel and indicated that while Costco was prepared to produce documents in response to plaintiffs' requests, some of the documents contained such highly sensitive information (such as the supplier information) that Costco wanted to create yet a third category of confidentiality, "Confidential–Outside Attorneys' Eyes Only." In other words, Costco was saying that there were certain types of disclosures that not even YSL's in-house counsel could be trusted with. Plaintiffs, of course, did not agree with this approach, but, believing that this would at least be a short term solution to Costco's reluctance to produce supplier information, are agreed to allow Costco to use the "Confidential–Outside Attorneys' Eyes Only" designation on an interim basis while the parties continued to negotiate.

Thereafter, on July 27, 2007, Costco made its document production. However, incredibly, Costco (i) still refused to provide any supplier information, redacting all references to its suppliers on invoices and correspondence, and (ii) designated over 90% of the nearly 500 documents it produced as "Confidential–Outside Attorneys' Eyes Only." In other words, what Costco did was withhold all of its alleged highly sensitive information from plaintiffs, and then designate nearly all remaining information as so highly sensitive that only outside counsel could see it.

As for Costco's basis for withholding supplier information, essentially it has taken the position that because plaintiffs' counsel "admitted" during the July 9 status conference that the goods at issue were not true counterfeits, it does not matter who supplied Costco with the goods, since plaintiffs have conceded that introduction of the goods into the stream of commerce was authorized. Plaintiffs' counsel, however, did no

# ARNOLD & PORTER LLP

Hon. Leonard B. Sand
August 30, 2007
Page 4

such thing. Further, in its responses to YSL's document requests, Costco made the
following statement as to why it was not producing supplier information:

> Plaintiffs' complaint makes very clear that plaintiffs would cut off sales to any
> vendor known to be supplying Costco. Outside counsel for plaintiffs in this
> action is directly involved in plaintiffs' activities relevant to the distribution of
> YSL-branded products. In the circumstances, there is no type of confidentiality
> undertaking that would adequately protect Costco against irreparable harm that
> would inevitably flow from the disclosure of trade secret vendor identities to
> trademark enforcement counsel for YSL.

In other words, Costco is arguing that even if supplier information was disclosed only to
plaintiffs' in-house counsel, all of whom would be subject to the Court's contempt
power, and not to any business person, nevertheless it would clearly be the intention of
plaintiffs' in-house counsel (and, indeed, its outside counsel, namely this firm) to violate
the Court order, because all YSL cares about is retaliating against the parties who
supplied the goods in question to Costco.

Plaintiffs have made several attempts to resolve the issues in dispute with
Costco's counsel. As for the protective order, plaintiffs have indicated that while they are
not prepared to limit the disclosure of highly sensitive information to outside counsel
only, as noted above, they are willing to require in-house counsel to "sign on" to the
protective order, making them subject to a contempt citation. In response, Costco has
proposed that disclosure to counsel be limited to attorneys "of record." Plaintiffs have
informed Costco's counsel that their in-house lawyers, being French, can not be "of
record" in this litigation, and have asked Costco's counsel to explain what "of record"
means. Costco's counsel has not responded to this request. Thus, to date, the parties
have still not come to any agreement as to the terms of a stipulated protective order.

To summarize the parties' respective positions on the issue of whether Costco
should be required to provide supplier information, YSL's position is that, under Rule 26,
the information is relevant and reasonably calculated to lead to the discovery of
admissible evidence, and further that Costco is more than adequately protected by the
highly restrictive provisions of the proposed protective order. In response, Costco has
taken the position that its supplier information is not relevant because of plaintiffs'
counsel's "admission" at the status conference that the goods are not traditional
counterfeits, and, essentially, that YSL's in-house counsel can not be trusted with the
information. Also, in an effort to bolster its position, Costco, in response to an amended
complaint filed by plaintiffs, has removed its first sale doctrine defense from its amended
answer.

# ARNOLD & PORTER LLP

Hon. Leonard B. Sand
August 30, 2007
Page 5

### Argument

Costco's position as to the disclosure of its supplier information is untenable. YSL's amended complaint, while directed towards Costco's repackaging activities, is clearly broad enough to encompass the claim that the goods are also infringing because they were introduced into commerce without authorization. Certainly Costco understood this when it answered the original complaint, because there would have been no other reason for asserting the first sale doctrine defense. Indeed, in the original and amended complaint, YSL alleges that Costco "purchased such products through unauthorized channels of distribution" (Am. Comp. ¶ 19). To support these allegations, plaintiffs are clearly entitled, under the liberal discovery rules, to elicit evidence as to where the goods came from, including whether or not the goods were introduced into commerce under YSL's authority. *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir.2003) (noting that discovery rules are to be accorded broad and liberal treatment).

Further, the issue of where and from whom Costco obtained the goods at issue bears directly on the question of damages. One of the plaintiffs in this case is YSL Beaute, Inc., the wholly-owned U.S. subsidiary of the French parent, plaintiff Yves Saint Laurent Parfums, S.A. If the goods in question were first sold outside of the U.S., and then resold into the U.S. without YSL's approval, the U.S. entity, YSL Beaute, will have suffered a lost sale. The evidence elicited to date indicates that Costco has purchased and sold a substantial quantity of units of the YSL products at issue in the last eighteen months. There is simply no way to know whether YSL Beaute has suffered lost sales unless it can determine where the infringing goods came from. Accordingly, it is imperative that YSL be able to discover who supplied these goods to Costco.

In addition, the disclosure of Costco's source information may well lead to additional claims against Costco. For example, plaintiff Yves Saint Laurent Parfums, S.A., the French parent, has a number of exclusive territorial distribution agreements with independently owned distributors, all of which restrict them from selling products outside of their respective territories. The evidence may well demonstrate that Costco, knowing or having reason to know of the existence of those distribution agreements, nevertheless induced one or more of these parties to breach their agreements with YSL, or otherwise interfered with YSL's relation with such parties. *Cf Andrews v. Cruz*, No. 04 Civ. 0566, 2006 WL 1984650, at *2 (S.D.N.Y. Jul. 14, 2006) (noting that "[r]elevancy is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case'") (citation omitted).

As for Costco's argument that, essentially, YSL's in-house counsel can not be trusted with supplier information, this is patently absurd. Although in anticipation of this letter application, Costco has reduced its rhetoric (now claiming, in a recent letter, that it

# ARNOLD & PORTER LLP

Hon. Leonard B. Sand
August 30, 2007
Page 6

only needs to make sure that YSL's in-house counsel does not inadvertently disclose the information), the point is that YSL has proposed a highly restrictive protective order which makes not only YSL's business people, but also its in-house counsel subject to the order. It is also important to note that the disclosure of supplier information will be limited to plaintiffs' in-house counsel (as opposed to any business person), who certainly understand what it means to maintain information in confidence. Any concern about the misuse or inadvertent disclosure of supplier information is not an issue in this case.

Finally, as noted above, by designating over 90% of its document production "Confidential–Outside Attorneys' Eyes Only", even after redacting the highly sensitive information contained in the documents, Costco has made it nearly impossible for YSL's outside counsel to discuss this case with its clients. Therefore, as part of this letter application, YSL also asks the Court to direct Costco to remove the "Outside Attorneys' Eyes Only" designation on all documents, and to limit the kinds of information that can be designated "Confidential–Attorneys' Eyes Only", as opposed to "Confidential".

### Conclusion

In conclusion, YSL respectfully requests that the Court adopt its proposed protective order (Ex. A); order that Costco produce its supplier information under a "Confidential–Attorneys' Eyes Only" designation; and require Costco to re-designate all documents designated "Confidential–Outside Attorneys' Eyes Only" as "Confidential", with the "Confidential–Attorneys' Eyes Only" designation being used only for documents that contain supplier information and/or similar highly sensitive information. In addition, as a result of these disputes, it appears that the parties will be unable to complete discovery in accordance with the current discovery schedule. To date, the parties are still in the process of producing documents (as to which there are also disputes on both sides, which the parties are still attempting to work out), and have yet to take any depositions. Accordingly, plaintiffs respectfully request that the Court extend the deadlines in the current Case Management Schedule by 60 days.

We are at the Court's disposal if Your Honor wishes to conference this matter.

Very truly yours,

ARNOLD & PORTER LLP

By: *Louis S. Ederer*

Louis S. Ederer

cc: James W. Dabney, Esq. (By Hand)