EXHIBIT 6

Fried, Frank, Harris, Shriver & Jacobson LLP

One New York Plaza
New York, New York 10004-1980
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com



Direct Line:  212.859.8966
Facsimile:  212.859.4000
E-mail:  james_dabney@friedfrank.com

September 10, 2007

**BY OVERNIGHT DELIVERY**

The Honorable Henry Pitman
United States Magistrate Judge
United States District Court for
   the Southern District of New York
500 Pearl Street, Room 750
New York, NY  10007

   Re:   **Yves Saint Laurent Parfums, S.A. v. Costco Wholesale Corp.**
         **Civil Action No. 07 Civ. 3214**

Dear Judge Pitman:

   We write as counsel for defendant Costco Wholesale Corp. ("Costco") in response to Mr. Ederer's letter to Judge Sand dated August 30, 2007 (the "Ederer Ltr.").

   The plaintiffs request permission to file a discovery motion seeking an Order compelling Costco to disclose a tightly guarded trade secret—the identity of vendor(s) who have sold genuine YSL-branded products to Costco—to legal agents of these plaintiffs whose very job it is to file lawsuits, serve third-party subpoenas, and attempt to stop such so-called "unauthorized" sales from occurring.

   Costco respectfully submits that the plaintiffs' discovery application, when or if it is permitted to be made, should be denied for two basic reasons:

   First, Costco vendor identities are totally irrelevant to the merits of the claims pleaded in the plaintiffs' Amended Complaint (copy attached as Exhibit 1), each and every one of which claims is specifically and narrowly focused on the design and labeling of theft-resistant display packaging in which Costco has displayed genuine YSL-branded products for sale. The extremely abbreviated pretrial discovery and trial schedule that Judge Sand set in this case (plaintiffs' survey and other expert reports are due to be served on September 14) was based on the complaint's narrow focus on Costco's display packaging.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Henry Pitman                    September 10, 2007
                                              Page 2

    Second, disclosure to plaintiffs' trademark counsel of Costco's vendor identities would expose Costco to substantial irreparable harm and, inevitably, "would create 'an unacceptable opportunity for inadvertent disclosure.'" *Infosint S.A. v. H. Lundbeck A.S.*, No. 06 Civ. 2869, 2007 U.S. Dist. LEXIS 36678, at \*9-\*10 (S.D.N.Y. May 16, 2007) (Ellis, U.S.M.J.) (quoting *Mikohn Gaming Corp. v. Acres Gaming Inc.*, 50 U.S.P.Q.2d 1783, 1784 (D. Nev. 1998) (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984))).   In numerous cases, courts have recognized the inappropriateness of disclosing trade secret information to counsel for a party whose role extends beyond the handling of a specific piece of litigation, and who cannot possibly "forget" what he or she knows when taking other actions on behalf of the client to which the trade secret information is directly relevant. *E.g.*, *Infosint*, 2007 U.S. Dist. LEXIS 36678, at \*16 (precluding party's patent counsel from access to technical information that was relevant to his work on behalf of the receiving party, and noting that "the opportunity for accidental disclosure or subconscious influencing of actions or advice is too great").

    Given the commercial importance and extreme sensitivity of Costco vendor(s) identities, Costco respectfully suggests that, if the Court even permits the plaintiffs to file their requested discovery motion, the Court should receive full briefing and oral argument on the merits of any application by plaintiffs for compelled disclosure.

**Costco Vendor Identities Are Irrelevant to the**
**Claims Pleaded in the Plaintiffs' Existing Amended Complaint**

    Plaintiffs assert that their Amended Complaint, "while directed towards Costco's repackaging activities, is clearly broad enough to encompass the claim that the goods are also infringing because they were introduced into commerce without authorization." Ederer Ltr. at 5 (emphasis added).  In fact, despite pleading no fewer than eight (8) separate claims for relief and making particularized allegations of illegally "infringing" acts by Costco, the plaintiffs' Amended Complaint nowhere alleges, or even hints at, any purported "claim" that YSL-branded "goods" sold by Costco are purportedly "infringing" "because" they were "introduced into commerce without authorization."

    To the contrary, each and every claim made in the plaintiffs' Amended Complaint is directed specifically, and only, to the theft resistant display packaging in which Costco has displayed YSL-branded goods.  Reproduced below are the allegations of the plaintiffs' complaint that set out the conduct of Costco that, according to the plaintiffs, has allegedly caused a likelihood of confusion or dilution and has thus allegedly "infringed" the plaintiffs' trademark rights (*see* Exhibit 1 hereto):

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Henry Pitman                    September 10, 2007
                                              Page 3

- "Defendant has failed to adequately inform consumers at the point of sale that the Unauthorized Products are <u>repackaged</u>, and, accordingly, consumers are likely to be confused and believe that such products are being sold in their original packaging." Am. Compl. ¶ 26 (emphasis added);

- "Defendant has used inferior <u>packaging</u> for the Unauthorized Products not in keeping with YSL's quality control standards and has otherwise altered an element of the Mascara Product that is material to the purchasing decision of the consumer at the point of sale, namely, the ingredient declaration." Am. Compl. ¶ 27 (emphasis added);

- "Defendant has distributed, advertised, promoted, and sold and offered for sale, in commerce, <u>packaging</u> that is confusingly similar to the YSL Trade Dress." Am. Compl. ¶ 37 (emphasis added);

- "Defendant has failed to adequately inform consumers at the point of sale that the Unauthorized Products are <u>repackaged</u>, and is presenting the Unauthorized Products to consumers as if they were materially the same as the corresponding products sold by YSL in the United States." Am. Compl. ¶ 44 (emphasis added);

- "Defendant's conduct constitutes false advertising, in that the manner in which Defendant has <u>packaged</u> and is selling the Unauthorized Products is misleading, as Defendant has <u>packaged</u> the Unauthorized Products in such a way that consumers believe they are purchasing two units of the YSL product rather than just one." Am. Compl. ¶ 45 (emphasis added); and

- "Defendant's unlawful use of the YSL Marks in connection with inferior <u>packaging</u> materials is also likely to tarnish the YSL Marks, thereby lessening the value of the YSL Marks." Am. Compl. ¶ 55 (emphasis added).

Surely if it had been plaintiffs' intention, in their original or amended complaints, to plead a claim that the YSL-branded "goods" sold by Costco were somehow "infringing" because, <u>irrespective</u> of how Costco repackaged them, the goods were "introduced into commerce without authorization" (Ederer Ltr. at 5), the plaintiffs could have readily done so. Had such a claim been pleaded, Costco likely would have moved to dismiss it for failure to state a claim on which relief could be granted. Nowhere does the complaint allege that the YSL-branded <u>goods</u> sold by Costco are anything but genuine and identical to what plaintiffs themselves sell in the United States. Even assuming, for purposes of argument, that some or even all of the YSL-branded goods sold by Costco were first sold by plaintiffs outside the United States and that plaintiffs did not "authorize" the goods' importation into the United States, those facts would not give rise to any basis of a claim in the plaintiffs—and none is pleaded.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Henry Pitman

September 10, 2007
Page 4

     Plaintiffs seek to avoid their failure to plead this claim by pointing to their allegation that "Defendant is not an authorized purchaser or reseller of YSL cosmetic and beauty products, and has purchased such products through unauthorized channels of distribution." Am. Compl. ¶ 18. But this allegation falls far short of stating a claim that "goods" purchased and resold by Costco are "infringing" "<u>because</u>" their <u>purchase</u> by Costco was "unauthorized" by these plaintiffs. The mere fact that these plaintiffs did not "authorize" the transactions in which Costco purchased genuine YSL-branded goods is simply not a basis on which relief for alleged trademark infringement could be granted. Costco has been selling YSL-branded goods since 2005, and yet plaintiffs make no claim that the marks appearing on those goods are anything but 100% truthful designations of the products' origin.

     Simply stated, compelled disclosure of Costco vendor(s) identities cannot be justified as relevant to a "claim that the goods are also infringing because they were introduced into the stream of commerce without authorization" (Ederer Ltr. at 5), because the amended complaint does not state or give notice of any such claim and the time for adding new claims in this action is long passed.[1]  Notably, the plaintiffs do not even now contend that they have any Rule 11 basis for pleading a claim that the genuine YSL-branded "goods" sold by Costco are "infringing."

     Plaintiffs' alternative arguments for seeking compelled disclosure of Costco vendor(s) identities are even less tenable. For the first time, plaintiffs argue that disclosure of Costco vendor(s) identities is needed to establish whether plaintiff YSL Beaute, Inc. ("Beaute")—admittedly a wholly owned subsidiary of co-plaintiff Yves Saint Laurent Parfums S.A. ("Parfums")—"may have suffered a lost sale." Ederer Ltr. at 5. Passing over that plaintiffs have persistently failed to answer interrogatories calling for disclosure of their purported damages theories (see YSL's Responses to Costco's First Interrogatories dated July 23, 2007, attached as

---

[1] Despite the clear absence, from either their original or amended complaints, of any allegation stating any "claim that the goods are also infringing because they were introduced into the stream of commerce without authorization" (Ederer Ltr. at 5), plaintiffs now assert that Costco must have "understood" (id.) that such a non-existent claim was nonetheless encompassed in plaintiffs' original complaint because, in its Answer to plaintiffs' original complaint, Costco had pleaded as an affirmative defense as follows: "<u>To the extent that the first sale doctrine is an affirmative defense</u>, plaintiff's claims are barred by the first sale doctrine." (Costco's Answer filed May 24, 2007, at 4 (emphasis added).) In fact, at the time this Answer was served, Costco was simply uncertain whether its sale of genuine goods was properly described as rightful in "first sale" terms. Costco has since satisfied itself that the "first sale doctrine" is not properly considered an affirmative defense in a case such as this one, see, e.g., Tailor-Made Golf Co., Inc. v. MJT Consulting Group, LLC, 265 F. Supp. 2d 732, 740 (N.D. Tex. 2003), and has so omitted any such defense in its Answer to plaintiffs' Amended Complaint.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Henry Pitman

September 10, 2007
Page 5

Exhibit 2 hereto), the theory presented in plaintiffs' August 30 letter assumes that the sale of genuine YSL-branded goods in the United States could be a basis for plaintiffs claiming that Beaute had "suffered a lost sale." Ederer Ltr. at 5. In reality, however, no such claim is stated in this case or even legally possible. Further, under plaintiffs' apparent theory, the goods in question would have been sold by Parfums, the parent, and bought and paid for at that time, rendering extraneous any notion of a "lost" sale.

Finally, and abandoning all pretense of seeking discovery in support of their existing Amended Complaint, plaintiffs assert that "disclosure of Costco's source information may well lead to additional claims against Costco." Ederer Ltr. at 5. Thus, plaintiffs evidently would have Your Honor convert this straightforward trademark case involving theft-resistant display packaging into an international antitrust case involving the legality of "exclusive territorial distribution agreements" and the extent to which third parties may have communicated to Costco the terms of any such alleged agreements. Here again, plaintiffs do not even allege that Costco has had any direct dealings with plaintiffs' immediate vendees, a fact that plaintiffs could easily verify from their own vendees.

But even under the most liberal of interpretations of Rule 26(b), a plaintiff cannot properly utilize coercive discovery mechanisms for the purpose of finding out whether it <u>might</u> have a claim against a defendant, where the plaintiff's pleading identifies no factual basis for forming a well-grounded belief that all of the elements of such a claim are present. *See, e.g.,* *Collens v. City of New York,* 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses."); *Surles v. Air France,* No. 00-Civ.-5004, 2001 U.S. Dist. LEXIS 10048, at *14 (S.D.N.Y. July 19, 2001) (Maas, U.S.M.J.), *aff'd,* 2001 U.S. Dist. LEXIS 15315 (S.D.N.Y. Sept. 27, 2001) ("To open the door to the discovery that Air France seeks based on such a speculative showing would fly in the face of the recent amendments to Rule 26(b)(1), which were intended to focus the attention of both the parties and the Court on the actual claims and defenses involved in a suit.")

At the initial pretrial conference held on July 9, 2007, we advised Judge Sand that Costco had repeatedly asked the plaintiffs to tell us what they would have Costco do in order to resolve their complaint, and the plaintiffs had repeatedly declined to do so. Judge Sand then turned to plaintiffs' counsel and asked them the same question. Plaintiffs' counsel responded by pointing to a notice of repackaging that Costco had placed on the back side of one of the product samples that Costco had furnished the Court. Mr. Ederer stated that, if Costco relocated the repackaging notice to the front side of the packaging, then the plaintiffs "would not have much to say about" Costco's activity. Following the July 9 conference, I told Mr. Ederer that Costco would certainly consider a resolution along the lines he had outlined to the Court. Mr. Ederer stated that he had to consult with his clients and would come back to me. He never did.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Henry Pitman                          September 10, 2007
                                                    Page 6


It would appear that plaintiffs have no genuine objection to the theft-resistant display packaging used by Costco, but seek instead to use this litigation, improperly, as a means of attacking so-called "unauthorized" sales of YSL-branded products to Costco irrespective of how the products are displayed and packaged by Costco. The Court should deny this improper use of coercive discovery mechanisms. The identity of vendor(s) who supplied genuine YSL-branded goods to Costco has nothing to do with whether theft-resistant display packaging used by Costco is truthful and non-misleading (as Costco contends), or not (as plaintiffs' Amended Complaint alleges).

**The Court Should Protect Costco Vendor Identities**
**Against Needless Disclosure to Plaintiffs' Trademark Counsel**

Even assuming, for purposes of argument, that Costco's vendor(s) identities were relevant to any claim or defense pleaded in this action—which they are not—it would still be inappropriate to order disclosure of such identities to plaintiffs' trademark counsel, either external or internal. Costco is prepared to demonstrate that the identity of Costco vendors is a tightly guarded trade secret. Preserving the confidentiality of Costco's vendors' identities is critical to Costco's ability to offer consumers low prices on genuine branded goods—as the plaintiffs' complaint in this case makes clear.

The Amended Complaint alleges that "YSL does not sell such products to off-price retail chains such as Defendant" (Am. Compl. ¶ 14), and that Costco has purchased YSL-branded products "through unauthorized channels of distribution" (*id.* ¶ 18). The plaintiffs' August 30 letter to Judge Sand does not deny, nor could it, that cutting off Costco's supply of genuine YSL-branded products is an avowed commercial objective of the plaintiffs. Further, the plaintiffs want Costco's vendor(s) identities disclosed to the very legal agents that plaintiffs have engaged to disrupt, interfere with, and stop Costco's sales of YSL-branded goods. It is inconceivable that plaintiffs' counsel in this case, if they knew the identity of Costco's source(s) of YSL-branded goods, would not then seek to serve subpoenas on such source(s) (and then the source(s) of Costco's direct source(s)) and seek to disrupt what plaintiffs openly characterize as "unauthorized" sales to Costco.

Plaintiffs assert that a Protective Order limiting what plaintiffs' trademark counsel can consciously do with discovery information is sufficient to protect Costco's interests. Ederer Ltr. at 1, 3. As numerous cases recognize, however, disclosure of trade secret information to counsel for a competitor is inappropriate where, as here, the nature of the counsel's role is such that "the opportunity for accidental disclosure or subconscious influencing of actions or advice is too great." *Infosint*, 2007 U.S. Dist. LEXIS 36678, at *16 (precluding party's patent counsel from access to technical information that was relevant to his work on behalf of the receiving party). This is especially so where, as here, the information in question has no apparent relevance to any issue in the litigation and, at all events, could be discovered by other means (e.g., by inspection

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Henry Pitman                    September 10, 2007
                                               Page 7

of any number of publicly available samples in Costco stores) that would not needlessly reveal the trade secret information in question.

Importantly, plaintiffs do not argue—nor could they—that disclosure of Costco's vendor(s) identities is needed in order to prove up their existing claims that Costco's theft-resistant display packaging is likely to cause confusion or dilution, or has caused damage to either plaintiff. Costco has produced business records showing the purchase dates, purchase quantities, purchase prices, and sales prices for all YSL-branded products that Costco has offered in stores since January 1, 2005. Costco has also produced all requested samples of YSL-branded products sold in Costco stores and a store-by-store listing showing where the products are available and the level of inventory at each Costco store.

Plaintiffs have been free at all times to visit any number of Costco stores and to inspect and purchase as many samples of YSL-branded products as the plaintiffs desire. Plaintiffs are fully capable of investigating whether Costco is selling imported or other YSL-branded goods whose trademarks are anything other than truthful designations of the products' actual source. Indeed, consistent with their obligation to investigate whether their claims against Costco could be asserted in good faith, Plaintiffs presumably have done this, and apparently have failed to find any YSL-branded goods that are anything but authentic and genuine, truthfully marked and labeled. Whether they have or not, however, it is clear that plaintiffs have means readily available to them to investigate their unpleaded—and legally baseless—putative claim that "goods" sold by Costco are "infringing" "because" their sale to Costco was not "authorized" by the plaintiffs. Plaintiffs have no legitimate need for disclosure of Costco vendor identities in order to pursue such an investigation.

For the foregoing reasons, Costco respectfully suggests that plaintiffs' request to bring a discovery motion to compel disclosure of Costco's vendor(s) identities should be denied. To the extent Your Honor believes plaintiffs should be allowed to bring such a motion, Costco respectfully suggests that full briefing and oral argument should be required.

Respectfully yours,

James W. Dabney

Enclosures

cc:     Louis S. Ederer, Esq. (by overnight delivery)

555766

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

YVES SAINT LAURENT PARFUMS S.A. and YSL
BEAUTÉ INC.,

               Plaintiffs,

               - against -

COSTCO WHOLESALE CORPORATION,

               Defendant.

-------------------------------------------------------------- x

          :
          :   Civil Action No.
          :   07 Civ. 3214 (LBS)
          :
          :   **AMENDED**
          :   **COMPLAINT**

Plaintiffs Yves Saint Laurent Parfums S.A. ("YSL Parfums") and YSL Beauté Inc. ("YSL Beauté") (sometimes collectively referred to as "YSL"), by their attorneys Arnold & Porter LLP, complain and allege against defendant Costco Wholesale Corporation as follows:

## NATURE OF ACTION

1.     In this complaint, YSL seeks injunctive relief and damages pursuant to Sections 32, 43(a) and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and (c); Sections 349 and 360-1 of the New York General Business Law; and the common law of the State of New York.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3.     Upon information and belief, Defendant is registered to do business, and is doing business in the State of New York and in this judicial district. Venue in this Court is therefore proper under 28 U.S.C. § 1391(b).

**THE PARTIES**

4.      Plaintiff Yves Saint Laurent Parfums S.A. is a French corporation with a principal place of business located at 28-34, Boulevard Du Parc 92200 Neuilly-Sur-Seine, France.  YSL Parfums is the producer and brand owner of the world famous YVES SAINT LAURENT line of cosmetic and beauty products.

5.      Plaintiff YSL Beauté Inc. is a New York corporation with a principal place of business located at 685 5th Avenue, New York, New York 10022.  YSL Beauté is the exclusive U.S. importer and distributor of the world famous YVES SAINT LAURENT line of cosmetic and beauty products.

6.      Upon information and belief, Defendant Costco Wholesale Corporation is a California corporation with its principal place of business located at 999 Lake Drive, Issaquah, Washington 98027.  Defendant maintains several locations for the conduct of business in this judicial district.

**YSL PARFUMS' VALUABLE TRADEMARKS**

7.      YSL Parfums is the owner of all rights in and to numerous trademarks in the United States, which trademarks have come to be well known and to symbolize the company's high quality, luxury product lines.

8.      Among the trademarks owned by YSL Parfums are the world famous YSL Design mark and the YVES SAINT LAURENT word mark (collectively referred to as the "YSL Marks").  The YSL Marks are the subject of the following registrations, among others, on the Principal Register in the United States Patent and Trademark Office:

| Mark | Reg. # | Reg. Date | First Use | Wares/Services |
|---|---|---|---|---|
| YSL | 1,746,720 | 1/19/1993 | 1982 | Cosmetics; namely, lipstick, lip liner, nail lacquer, eye make-up, foundation, face powder, concealer, blush, skin cleansers, creams and lotions. |
| YVES SAINT LAURENT | 2,172,541 | 7/14/1998 | 1982 | Cosmetic products, namely, eye-shadow, eyebrow pencils, mascara, face powder, face-powder fluid, emulsion, skin lotion, toilet cream, vanishing cream, cold cream, cleansing cream, foundation, blush, nail lacquer, make-up primer, whitening cream, concealer, and lipstick. |

Copies of the trademark registrations for the YSL Marks are attached hereto as Exhibit A.

9.      The registrations for the YSL Marks are in full force and effect and have become incontestable pursuant to 15 U.S.C. § 1065.

10.      YSL has used the YSL Marks for many years on and in connection with the sale of high quality products, including cosmetic and beauty products.

11.      YSL has expended substantial time, money and other resources in developing, advertising and promoting cosmetic and beauty products bearing the YSL Marks, and in the presentation of such products to consumers at the point of sale. As a result of these efforts, consumers readily identify merchandise bearing the YSL Marks as being of the highest quality and as emanating from and being sponsored and approved by YSL Parfums.

12.      The YSL Marks constitute famous marks under 15 U.S.C. § 1125(c)(1).

13.     Two of the cosmetic and beauty products sold by YSL are its Mascara Volume Effet Faux Cils product (the "Mascara Product") and its Touche Brillance lip care product (the "Lip Care Product"). In accordance with United States Food and Drug Administration regulations, YSL sells its products in the United States with an ingredient declaration on the packaging therefor, which ingredient declaration is accessible to the consumer at the point-of-sale.

14.     YSL sells its line of cosmetic and beauty products, including products bearing the YSL Marks, only in company-owned stores, in select duty-free boutiques, and in certain high-end department and specialty stores, including Bloomingdales, Neiman Marcus and Saks Fifth Avenue. YSL does not sell such products to off-price retail chains such as Defendant.

15.     In addition to the YSL Marks, YSL Parfums is also the owner of trade dress rights in its unique and distinctive gold and copper color combination used on packaging for certain of YSL's cosmetic and beauty products, including the Mascara Product (the "YSL Trade Dress"). Photographs of the packaging for the Mascara Product are attached hereto as Exhibit B. The YSL Trade Dress has come to identify YSL as the source of the products bearing such trade dress, and signifies goodwill of substantial value.

16.     The YSL Trade Dress is inherently distinctive. In addition, the YSL Trade Dress has acquired distinctiveness as a result of uninterrupted promotion and sale of products bearing such trade dress, and accordingly has acquired secondary meaning as an indicator of YSL Parfums as the exclusive source of products bearing the YSL Trade Dress.

17.     The YSL Trade Dress is non-functional.

4

## **DEFENDANT'S INFRINGING CONDUCT**

18.     YSL has recently discovered that Defendant is importing, distributing, advertising, offering for sale and/or selling, in its store locations throughout the United States, repackaged YVES SAINT LAURENT cosmetic and beauty products bearing the YSL marks, including YSL's Mascara and Lip Care Products (respectively, the "Unauthorized Lip Care Product" and the "Unauthorized Mascara Products"; and collectively the "Unauthorized Products"). Defendant is not an authorized purchaser or reseller of YSL cosmetic and beauty products, and has purchased such products through unauthorized channels of distribution. Photographs of the Unauthorized Lip Care Product are attached hereto as Exhibit C, and photographs of the Unauthorized Mascara Products are attached hereto as Exhibits D and E, respectively.

19.     Although Defendant has placed notices on the packaging for the Unauthorized Products indicating that the products are repackaged, such notices are not readily visible at the point of sale. Accordingly, Defendant has failed to adequately inform the consumer that the Unauthorized Products are repackaged.

20.     The manner in which Defendant is marketing, promoting, offering for sale and/or selling the Unauthorized Products fails to comply with YSL's quality control standards. For example, Defendant's packaging for the Unauthorized Products is of poor quality and is not aesthetically pleasing, and is not in keeping with the carefully guarded image and reputation of YSL cosmetic and beauty products as high-end, high-quality products.

21.     Further, the manner in which Defendant has packaged and is selling the Unauthorized Products is misleading, in that it appears to consumers that they are purchasing two units of the YSL product contained therein rather than just one unit.

22.     Defendant has repackaged and sold the Unauthorized Mascara Product shown in Exhibit D in packaging that is based upon and is confusingly similar to the distinctive and well-known gold and copper color combination that is used on authorized packaging for the same product, in a deliberate effort to deceive consumers into believing that Defendant's packaging was made or authorized by YSL Parfums, and that the product is being sold in its original packaging.

23.     Moreover, Defendant's packaging for the Unauthorized Mascara Product shown in Exhibit D conceals from the consumer at the point of sale the ingredient listing appearing on the original packaging therefor and, accordingly, is in violation of United States Food and Drug Administration regulations, thereby exposing YSL to liability.

24.     Defendant's conduct as aforesaid constitutes infringement of the YSL Marks, trade dress infringement, false designation of origin, and false advertising under Section 43(a) of the Lanham Trademark Act, dilution of the famous YSL Marks, and unfair competition and false and deceptive trade practices under state and common law. Further, upon information and belief, such conduct on the part of Defendant was willful and intentional.

**FIRST CLAIM FOR RELIEF BY YSL PARFUMS**
**INFRINGEMENT OF REGISTERED TRADEMARKS UNDER 15 U.S.C. § 1114**

25.     YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 24 above.

26.     Upon information and belief, the aforesaid acts of Defendant constitute infringement of the YSL Marks, in that Defendant has failed to adequately inform consumers at the point of sale that the Unauthorized Products are repackaged, and,

accordingly, consumers are likely to be confused and believe that such products are being sold in their original packaging.

27. Defendant's conduct further constitutes infringement of the YSL Marks in that Defendant is not marketing, promoting, offering for sale and/or selling the Unauthorized Products in compliance with YSL's quality control standards. By way of example, Defendant has used inferior packaging for the Unauthorized Products not in keeping with YSL's quality control standards and has otherwise altered an element of the Mascara Product that is material to the purchasing decision of the consumer at the point of sale, namely, the ingredient declaration.

28. Upon information and belief, the aforesaid acts of Defendant are likely to cause confusion, mistake, or deception among consumers as to the origin of the Unauthorized Products.

29. Upon information and belief, Defendant has acted with knowledge of YSL Parfums' ownership of the YSL Marks and with the deliberate intention to unfairly benefit from the goodwill associated therewith.

30. Defendant's acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. Upon information and belief, by its acts, Defendant has made and will make substantial profits and gains to which it is not in law or equity entitled.

32. Upon information and belief, Defendant intends to continue its infringing acts, and will continue to willfully infringe the YSL Marks, unless restrained by this Court.

33. Defendant's acts have caused, and will continue to cause, irreparable injury to YSL Parfums, and YSL Parfums has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF BY YSL
## TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125(a)

34.     YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 33 above.

35.     The YSL Trade Dress, consisting of the unique and distinct gold and copper color combination, when used on and in connection with cosmetic and beauty products, is non-functional and inherently distinctive.

36.     In addition to being inherently distinctive, the YSL Trade Dress, through substantial sales, advertising and promotion, has acquired secondary meaning, indicating YSL as the source of products on or in connection with which the YSL Trade Dress is used.

37.     Defendant has distributed, advertised, promoted, sold and offered for sale, in commerce, packaging that is confusingly similar to the YSL Trade Dress.

38.     Defendant's aforesaid conduct is calculated, and is likely to deceive consumers who associate the YSL Trade Dress with YSL into believing that the Unauthorized Mascara Product shown in Exhibit D emanates from YSL.

39.     Upon information and belief, Defendant's use of the YSL Trade Dress on and in connection with the unauthorized repackaging of the Mascara Product shown in Exhibit D, is part of a deliberate plan to trade on the valuable goodwill symbolized by the YSL Trade Dress.

40.     Upon information and belief, by its acts, Defendant has made and will make substantial profits and gains to which it is not in law or equity entitled.

41.     Upon information and belief, Defendant intends to continue its infringing acts, and will continue to willfully infringe YSL's Trade Dress, unless restrained by this Court.

42.     Defendant's acts have caused, and will continue to cause, irreparable injury to YSL and YSL has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF BY YSL**
**FALSE DESIGNATION OF ORIGIN & FALSE ADVERTISING**
**UNDER 15 U.S.C. § 1125(a))**

43.     YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 42 above.

44.     Upon information and belief, the aforesaid acts of Defendant constitute a false designation of origin, in that Defendant has failed to adequately inform consumers at the point of sale that the Unauthorized Products are repackaged, and is presenting the Unauthorized Products to consumers as if they were materially the same as the corresponding products sold by YSL in the United States.

45.     Upon further information and belief, Defendant's conduct constitutes false advertising, in that the manner in which Defendant has packaged and is selling the Unauthorized Products is misleading, as Defendant has packaged the Unauthorized Products in such a way that consumers believe they are purchasing two units of the YSL product rather than just one unit.

46.     Upon information and belief, Defendant's acts as aforesaid violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.     Upon information and belief, by its acts, Defendant has made and will make substantial profits and gains to which it is not in law or equity entitled.

48. Upon information and belief, Defendant intends to continue its willfully infringing acts unless restrained by this Court.

49. Defendant's acts have caused, and will continue to cause, irreparable injury to YSL and YSL has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF BY YSL PARFUMS
DILUTION OF A REGISTERED TRADEMARK UNDER 15 U.S.C. § 1125(c)**

50. YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 49 above.

51. YSL Parfums is the exclusive owner of the YSL Marks in the United States.

52. The YSL Marks are distinctive marks that have been in use for many years and have achieved widespread public recognition.

53. The YSL Marks are famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

54. Defendant, without authorization from YSL Parfums, is using the YSL Marks in commerce in such a manner as to dilute the distinctive quality of the YSL Marks and to decrease the capacity of such marks to identify and distinguish YSL's goods.

55. Defendant's unlawful use of the YSL Marks in connection with inferior packaging materials is also likely to tarnish the YSL Marks, thereby lessening the value of the YSL Marks.

56. Defendant has intentionally and willfully diluted the distinctive quality of the famous YSL Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

57.     Upon information and belief, by their acts, Defendant has made and will make substantial profits and gains to which it is not in law or equity entitled.

58.     Upon information and belief, Defendant intends to continue its willfully infringing acts unless restrained by this Court.

59.     Defendant's acts have caused, and will continue to cause, irreparable injury to YSL Parfums and YSL Parfums has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF BY YSL
## TRADEMARK INFRINGEMENT UNDER COMMON LAW

60.     YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 59 above.

61.     YSL owns all right, title, and interest in and to the YSL Marks as aforesaid, including all common law rights in such marks.

62.     The aforesaid acts of Defendant constitute trademark infringement in violation of the common law of the State of New York.

63.     Upon information and belief, by their acts, Defendant has made and will make substantial profits and gains to which it is not in law or equity entitled.

64.     Upon information and belief, Defendant intends to continue its willfully infringing acts unless restrained by this Court.

65.     Defendant's acts have caused, and will continue to cause, irreparable injury to YSL and YSL has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF BY YSL
## UNFAIR COMPETITION UNDER COMMON LAW

66.     YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 65 above.

67.     The aforesaid acts of Defendant constitute unfair competition in violation of the common law of the State of New York.

68.     Upon information and belief, by their acts, Defendant has made and will make substantial profits and gains to which it is not in law or equity entitled.

69.     Upon information and belief, Defendant intends to continue its willfully infringing acts unless restrained by this Court.

70.     Defendant's acts have caused, and will continue to cause, irreparable injury to YSL and YSL has no adequate remedy at law.

### SEVENTH CLAIM FOR RELIEF BY YSL
### SECTION 349 OF THE NEW YORK GENERAL BUSINESS LAW

71.     YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 70 above.

72.     Through its importation, distribution, advertising, offering for sale and/or sale of the Unauthorized Products, Defendant has engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted and/or may result in injury to consumers in New York and/or harm to the public.

73.     By the acts described herein, Defendant has willfully engaged in deceptive acts or practices in the conduct of its business in violation of New York General Business Law § 349.

74.     Upon information and belief, by their acts, Defendant has made and will make substantial profits and gains to which it is not in law or equity entitled.

75.     Upon information and belief, Defendant intends to continue its willfully infringing acts unless restrained by this Court.

12

76.     Defendant's acts have caused, and will continue to cause, irreparable injury to YSL and YSL has no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF BY YSL PARFUMS
## SECTION 360-l OF NEW YORK GENERAL BUSINESS LAW

77.     YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 76 above.

78.     YSL Parfums is the exclusive owner of the YSL Marks throughout the United States, including the State of New York.

79.     Through prominent, long and continuous use in commerce, including commerce within the State of New York, YSL's Marks have become and continue to be famous and distinctive.

80.     By the acts described herein, Defendant has diluted the distinctiveness of the YSL Marks and has caused a likelihood of harm to YSL's business reputation in violation of New York General Business Law § 360-1.

81.     Upon information and belief, by their acts, Defendant has made and will make substantial profits and gains to which it is not in law or equity entitled.

82.     Upon information and belief, Defendant intends to continue its willfully infringing acts unless restrained by this Court.

83.     Defendant's acts have caused, and will continue to cause, irreparable injury to YSL Parfums and YSL Parfums has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be entered granting the following relief:

1.      Finding that (i) Defendant has violated Section 32 of the Lanham Act, 15 U.S.C. § 1114; Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (ii) Defendant has engaged in deceptive acts and practices under New York General Business Law § 349; (iii) Defendant has diluted the YSL Parfums Marks in violation of New York General Business Law § 360-1; (iv) Defendant has engaged in trademark infringement and unfair competition under the common law of New York; and (v) Defendant has been unjustly enriched in violation of New York common law.

2.      Granting an injunction preliminarily and permanently restraining and enjoining Defendant, its officers, agents, employees and attorneys, and all those persons or entities in active concert or participation with it or them, or any of them, from:

        (a)     manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale or selling any products which bear the YSL Parfums Marks or any other mark substantially or confusingly similar thereto, and engaging in any other activity constituting an infringement of any of YSL's rights in its YSL Parfums Marks; and

        (b)     engaging in any other activity constituting unfair competition with YSL.

3.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any product at issue in this case that has been manufactured, imported, advertised, marketed, promoted, supplied,

distributed, offered for sale or sold by Defendant, or has been authorized by YSL, or is related to or associated in any way with YSL or its products.

4.     Directing that Defendants account to and pay over to YSL all profits realized by their wrongful acts and directing that such profits be trebled in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

5.     Awarding YSL its actual damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

6.     Awarding YSL its costs and attorneys' fees and investigatory fees and expenses to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

7.     Requiring Defendant to deliver up to YSL for destruction or other disposition all remaining inventory of all Unauthorized Products, including all advertising, promotional and marketing materials therefor, as well as all means of making same.

8.     Awarding YSL pre-judgment interest on any monetary award made part of the judgment against Defendant.

9.     Awarding YSL such additional and further relief as the Court deems just and proper.

Dated:  New York, New York
        July 16, 2007

                                ARNOLD & PORTER LLP

                          By:   _____
                                Louis S. Ederer (LE 7574)
                                John Maltbie (JM 3658)
                                399 Park Avenue
                                New York, NY 10022
                                Telephone:  (212) 715-1000
                                Facsimile:  (212) 715-1399

                                Attorneys for Plaintiffs

15

# AMENDED COMPLAINT

# EXHIBIT A

Int. Cl.: 3

Prior U.S. Cls.: 51 and 52

## United States Patent and Trademark Office

Reg. No. 1,746,720
Registered Jan. 19, 1993

## TRADEMARK
### PRINCIPAL REGISTER



YVES SAINT LAURENT INTERNATIONAL B.V. (NETHERLANDS CORPORATION)
C/O TRUST INT'L MANAGEMENT B.V.WORLD TRADE CENTRE, TOWER B, 17TH FLOOR
STRAWINSKYLAAN 1725
1077 XX AMSTERDAM, NETHERLANDS

FOR: COSMETICS; NAMELY, LIPSTICK, LIP LINER, NAIL LACQUER, EYE MAKE-UP, FOUNDATION, FACE POWDER, CONCEALER, BLUSH, SKIN CLEANSERS, CREAMS AND LO-TIONS, IN CLASS 3 (U.S. CLS. 51 AND 52).

FIRST USE 1-1-1982; IN COMMERCE 1-1-1982.

OWNER OF U.S. REG. NOS. 855,232, 1,025,591, AND 1,289,676.

SER. NO. 74-270,524, FILED 4-29-1992.

NANCY L. HANKIN, EXAMINING ATTORNEY

Int. Cl.: 3

Prior U.S. Cls.: 1, 4, 6, 50, 51 and 52

Reg. No. 2,172,541

## United States Patent and Trademark Office

Registered July 14, 1998

## TRADEMARK
### PRINCIPAL REGISTER

## YVES SAINT LAURENT

YVES SAINT LAURENT PARFUMS (FRANCE CORPORATION)
28/34 BOULEVARD DU PARC
92521 NEUILLY CEDEX, FRANCE

FOR: COSMETIC PRODUCTS, NAMELY, EYE-SHADOW, EYEBROW PENCILS, MASCARA, FACE POWDER, FACE-POWDER FLUID, EMULSION, SKIN LOTION, TOILET CREAM, VANISHING CREAM, COLD CREAM, CLEANSING CREAM, FOUNDATION, BLUSH, NAIL LACQUER, MAKE-UP PRIMER, WHITENING CREAM, CONCEALER, AND LIP-STICK, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 6–0–1982; IN COMMERCE 6–0–1982.

"YVES SAINT LAURENT" REPRESENTS A PARTICULAR LIVING INDIVIDUAL WHOSE CONSENT, AUTHORIZING THE APPLICANT TO REGISTER HIS NAME, IS OF RECORD IN THIS APPLICATION.

SER. NO. 75–248,516, FILED 2–7–1997.

CRAIG D. TAYLOR, EXAMINING ATTORNEY

# AMENDED COMPLAINT

# EXHIBIT B





# AMENDED COMPLAINT
# EXHIBIT C





**AMENDED COMPLAINT**

**EXHIBIT D**



# AMENDED COMPLAINT

# EXHIBIT E



## CERTIFICATE OF SERVICE

I, Anthony D. Boccanfuso, the undersigned attorney at law duly admitted to practice in

the State of New York, respectfully show that on the 9th day of August 2007, the annexed

**AMENDED COMPLAINT** was served by hand delivery upon:

> James W. Dabney, Esq.
> Fried Frank Harris Shriver & Jacobson LLP
> One New York Plaza
> New York, New York 10004-1980

_____
Anthony D. Boccanfuso

EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

YVES SAINT LAURENT PARFUMS S.A. and YSL
BEAUTÉ INC.,

            Plaintiffs,

        - against -

COSTCO WHOLESALE CORPORATION,

           Defendant.

------------------------------------------------------------------ x

Civil Action No.
07 Civ. 3214 (LBS)

## PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiffs Yves Saint Laurent Parfums S.A. ("YSL Parfums") and YSL Beauté Inc.

("YSL Beauté") provide the foregoing responses and objections to Defendant Costco Wholesale

Corporation's First Set of Interrogatories (the "Interrogatories").

### A.    GENERAL OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiffs make the following general objections to each of Defendant's Interrogatories:

1.    Plaintiffs object to the Interrogatories to the extent they seek information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

2.    Plaintiffs object to the Interrogatories to the extent they are vague, overbroad and unduly burdensome, and seek to impose obligations that exceed those under the Federal Rules of Civil Procedure or the Local Rules of the Southern District of New York.

3.    Plaintiffs object to the Interrogatories to the extent they seek information that is privileged or exempt from discovery under the attorney-client privilege, work product doctrine, or other privilege or exemption under applicable law. Plaintiffs do not waive, and intend to

preserve, any applicable privilege or protection. In the event that any privileged or protected information is disclosed, such disclosure is inadvertent and will not constitute a waiver of any privilege or protection.

4.    Plaintiffs object to the Interrogatories to the extent they call for a legal conclusion.

5.    Plaintiffs object to the Interrogatories to the extent they do not specify a relevant time period.

6.    Plaintiffs object to the Interrogatories to the extent a request is unintelligible and/or incapable of being responded to in its current form. Accordingly, Plaintiffs will provide information which they believe is responsive to each such request and is relevant to the subject matter of this action.

7.    Plaintiffs' responses to the Interrogatories are made to the best of their present knowledge, information and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Plaintiffs' recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Plaintiffs' further discovery or investigation. Plaintiffs reserve the right to make use of, or to introduce at any hearing or trial, information responsive to the Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information obtained in discovery herein.

8.    Plaintiffs object to the Interrogatories as both fact and expert discovery are ongoing and reserve the right to amend its responses to the Interrogatories once fact and expert discovery have concluded.

9.    Plaintiffs reserve the right to amend its responses to the Interrogatories if and when additional information becomes available.

2

10.     Plaintiffs reserve all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever of Plaintiffs' responses herein and any information or thing identified or provided in response to the Interrogatories.

11.     Plaintiffs reserve the right to object on any ground at any time to such other or supplemental requests as Defendant may at any time propound involving or relating to the subject matter of these Interrogatories.

12.     These General Objections are deemed incorporated into each response to each of the Interrogatories.  Plaintiffs reserve the right to supplement these responses as discovery continues.

**B.      RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1:**

Please identify each and any person who either Plaintiff contends has purchased a Mascara Product from Costco as a result of confusion, mistake, or deception as to the origin of the product or its packaging.

**RESPONSE**

Plaintiffs object to Interrogatory No. 1 on the grounds set forth in the General Objections and as premature, as discovery is ongoing, and Defendant may well be in the possession of such information.  Subject to and without waiving said objections, Plaintiffs state that at the present time they do not know the identity of any particular such person.

3

**INTERROGATORY NO. 2:**

Please identify each and any person having knowledge of any incident in which a consumer purchased a Mascara Product from Costco as a result of confusion, mistake, or deception as to the origin of the product or its packaging.

**RESPONSE**

Plaintiffs object to Interrogatory No. 2 on the grounds set forth in the General Objections and as premature, as discovery is ongoing, and Defendant may well be in the possession of such information. Subject to and without waiving said objections, Plaintiffs state that at the present time they are not aware of the particulars of any such incident.

**INTERROGATORY NO. 3:**

Please identify each and any person who either Plaintiff contends has purchased a Lip Care Product from Costco as a result of confusion, mistake, or deception as to the origin of the product or its packaging.

**RESPONSE**

Plaintiffs object to Interrogatory No. 3 on the grounds set forth in the General Objections and as premature, as discovery is ongoing, and Defendant may well be in the possession of such information. Subject to and without waiving said objections, Plaintiffs state that at the present time they do not know the identity of any particular such person.

**INTERROGATORY NO. 4:**

Please identify each and any person having knowledge of any incident in which a consumer purchased a Lip Care Product from Costco as a result of confusion, mistake, or deception as to the origin of the product or its packaging.

4

**RESPONSE**

Plaintiffs object to Interrogatory No. 4 on the grounds set forth in the General Objections and as premature, as discovery is ongoing, and Defendant may well be in the possession of such information. Subject to and without waiving said objections, Plaintiffs state that at the present time they are not aware of the particulars of any such incident.

**INTERROGATORY NO. 5:**

Please identify each and any person having knowledge of any incident in which a consumer purchased a Lip Care Product from Costco believing that he or she was "purchasing two units of YSL product rather than just one unit", as alleged in paragraph 45 of the Complaint.

**RESPONSE**

Plaintiffs object to Interrogatory No. 5 on the grounds set forth in the General Objections and as premature, as discovery is ongoing, and Defendant may well be in the possession of such information. Subject to and without waiving said objections, Plaintiffs state that at the present time they are not aware of the particulars of any such incident.

**INTERROGATORY NO. 6:**

Please identify each and any person having knowledge of any incident in which a consumer purchased a Mascara Product from Costco believing that he or she was "purchasing two units of YSL product rather than just one unit", as alleged in paragraph 45 of the Complaint.

**RESPONSE**

Plaintiffs object to Interrogatory No. 6 on the grounds set forth in the General Objections and as premature, as discovery is ongoing, and Defendant may well be in the possession of such information. Subject to and without waiving said objections, Plaintiffs state that at the present time they are not aware of the particulars of any such incident.

**INTERROGATORY NO. 7:**

Please identify each and any person having knowledge of either Plaintiff's first knowledge of Costco's sale of the Lip Care Product or the Mascara Product.

**RESPONSE**

Plaintiffs object to Interrogatory No. 7 on the grounds set forth in the General Objections, and on the grounds that this Interrogatory is vague and ambiguous, and therefore not capable of being responded to without clarification.

**INTERROGATORY NO. 8:**

Please identify the "actual damages" referred to in WHEREFORE paragraph 5 of the complaint in this action, including a computation of each and any category of damages claimed by either Plaintiff to this action.

**RESPONSE**

Plaintiffs object to Interrogatory No. 8 on the grounds set forth in the General Objections and as premature, as discovery is ongoing. Since the total amounts of damages and/or profits being claimed by Plaintiffs may depend, in whole or in part, upon the volume of sales and/or profits realized by Defendant with respect to the products at issue in this case, Plaintiffs cannot accurately compute such amounts at this time.

**INTERROGATORY NO. 9:**

Please identify each and any person providing information to answer these interrogatories and, for each identified individual, please specify which interrogatories he or she participated in answering.

6

**RESPONSE**

Plaintiffs object to Interrogatory No. 9 on the grounds set forth in the General Objections.

Subject to and without waiving said objections, Plaintiffs identify Frank Bommelaer of YSL

Parfums and Lisa Beshlian of YSL Beauté as the individuals who assisted in answering each of

these Interrogatories.

Dated:  New York, New York
      July 23, 2007

                                  As to Objections,

                                  ARNOLD & PORTER LLP

                                  By: _____
                                  Louis S. Ederer  (LE 7574)
                                  John Maltbie  (JM 3658)
                                  399 Park Avenue
                                  New York, New York 10022
                                  Phone:  (212) 715-1000
                                  Fax:  (212) 715-1399
                                  *Attorneys for Plaintiff*

7

## VERIFICATION OF YSL BEAUTÉ INC.

I am an officer of YSL Beauté Inc., a Plaintiff in this action, and I am authorized to make this verification for and on its behalf. The foregoing Responses to Defendant's First Set of Interrogatories are true to the best of my knowledge.

I verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July _23_, 2007.

Signature: _Lisa Beshlian_

Print Name: _Lisa Beshlian_

Print Title: _SUP Sales + Training, YSL Beauté_

10

## <u>VERIFICATION OF YVES SAINT LAURENT PARFUMS S.A.</u>

I am an officer of Yves Saint Laurent Parfums S.A., a Plaintiff in this action, and I

authorized to make this verification for and on its behalf.  The foregoing Responses to Defendant's

First Set of Interrogatories are true to the best of my knowledge.

I verify under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Executed on July ___, 2007.

Signature: _____

Print Name: BONNEFLAER FRANK Y

Print Title: International Market Control & Coordination Manager