# EXHIBIT 7

# ARNOLD & PORTER LLP

Louis S. Ederer
Louis.Ederer@aporter.com

212.715.1102
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

September 12, 2007

**BY FAX**
Honorable Henry Pitman
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 750
New York, New York 10007

    Re:    Yves Saint Laurent Parfums, S.A. v. Costco Wholesale Corp.
           Civil Action No. 07 Civ. 3214

Dear Judge Pitman:

    This firm represents the Yves Saint Laurent plaintiffs ("YSL") in the above entitled action. We write in reply to defendant's ("Costco") counsel's September 10, 2007 letter, and in further support of YSL's August 30, 2007 letter application, which we understand has been referred to Your Honor. Unfortunately, as anticipated, Costco's counsel has repeatedly and grossly mischaracterized YSL's position in this dispute.

    *First*, in YSL's August 30 letter, YSL argued that their Amended Complaint, while directed towards the issue of whether Costco's repackaging of YSL's goods constitutes trademark infringement, also alleges that the goods may infringe for another reason, namely that their first introduction into the stream of commerce was unauthorized (Am. Comp. ¶ 19). Examples of this type of infringement would be unauthorized sales by a licensee or manufacturer (*see, e.g., Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 979 F.Supp. 224, 230 (S.D.N.Y.1997) (garments produced by apparel designer's contractor could support designer's trademark infringement claim if first sale of garments by contractor was not authorized by manufacturer), or if the goods were stolen. Accordingly, as YSL has alleged, if the goods at issue were first introduced into the stream of commerce without YSL's authorization, then Costco's purchase and sale of these goods would also constitute infringement. Clearly, Costco understood this to be what YSL was alleging, since, in its original Answer, Costco interposed a "first sale doctrine" defense, *i.e.*, a legal defense that the first sale of the goods was authorized by YSL. Costco only removed the "first sale doctrine" defense from its Amended Answer when it realized that it could not simultaneously maintain the defense and also continue to withhold disclosure of its supplier information.

    In its September 10 letter, however, Costco completely misstates YSL's position. Rather than acknowledging that YSL says it needs supplier information in order to support its claim that the first sale of the goods at issue was not authorized, Costco characterizes YSL's claim as one for unauthorized diversion of the goods *after* the first sale was concluded. Accordingly, says Costco, supplier information is not needed, since

# ARNOLD & PORTER LLP

Honorable Henry Pitman
September 12, 2007
Page 2

the diversion of goods following an authorized first sale is not infringement. That is not, however, what YSL is alleging, and clearly not what Costco understood YSL to be alleging when Costco interposed its "first sale doctrine" defense.

    Second, and in a similar vein, Costco continues to mischaracterize what YSL's undersigned counsel said to Judge Sand at the July 9, 2007 case management conference, and has now taken that mischaracterization to a new level. At the conference, in response to a direct question, I informed Judge Sand that YSL had no reason to believe that the goods in question were true counterfeits, *i.e.*, goods made by parties with whom YSL had no relations. I was not asked, nor did I say that, accordingly, the goods were authorized, and there was no discussion of the first sale issue at that time. The parties then went on to discuss, as a separate matter, YSL's claim that Costco's repackaging constitutes infringement. In that context, I explained to Judge Sand why YSL believed Costco's repackaging notice was inadequate. I never, however, said that this case was solely about the repackaging issue.

    Now, Costco's counsel not only misstates what I said to Judge Sand, but also goes on to say that Judge Sand relied on what I said in setting an aggressive case management schedule. That is false. The schedule that Judge Sand established was one that the parties agreed to in advance of the conference (and, notably, while Costco's first sale defense was still in the case). That schedule presupposed that Costco would make a complete and timely document production, and that discovery would proceed without interruption, none of which has happened. Indeed, neither party has even served deposition notices, in view of the disputes over document production that have been going on for nearly two months now. It was for this reason that YSL requested, in its August 30 letter, that the Court extend the current case management schedule by 60 days, a request that Costco fails to address in its September 10 response.

    Third, Costco has completely mischaracterized YSL's position that supplier information is needed to support additional claims against Costco, and to support YSL's damage claims. With respect to potential additional claims, YSL is not seeking to embark on a "fishing expedition" to see what other claims it might uncover, as Costco argues. Rather, as indicated in YSL's August 30 letter, it is evident from Costco's document production that at least some of the goods at issue are being imported from outside the U.S. Plaintiff Yves Saint Laurent Parfums, S.A. ("YSL Parfums"), the French parent and owner of the YSL brand, has several exclusive territorial distribution agreements with unaffiliated companies that require those parties to sell only within their assigned geographical territories. If Costco, knowing or having reason to know this to be the case, nevertheless prevailed on any of those parties to sell YSL product outside their territories, then it induced breaches of contract and has interfered with YSL's business relationships. YSL has the right to explore this in discovery.

# ARNOLD & PORTER LLP

Honorable Henry Pitman
September 12, 2007
Page 3

      As for the issue of damages, once again Costco mischaracterizes YSL's position. In its August 30 letter, YSL indicates that supplier information is needed because, to the extent infringing goods are coming from outside the U.S. and have not been sold by Plaintiff YSL Beaute Inc. ("YSL Beaute"), the U.S. subsidiary that is supposed to be initiating each and every U.S. sale of YSL product, then YSL Beaute has suffered a lost sale. In its September 10 response, Costco argues that the information in question is not needed because YSL Parfums, the French parent, will have already made the first sale of these goods, and therefore will not have suffered lost sales. That, however, is not the reason why YSL has sought supplier information; rather, it seeks that information in connection with its claim for lost sales on the part of the U.S. subsidiary, YSL Beaute.

      <u>Fourth</u>, and perhaps the best example of Costco's two faced approach to this issue, is its latest in a series of explanations as to why, despite all the protections YSL has built into the proposed protective order, YSL somehow cannot be trusted with supplier information. Initially, in its discovery responses, Costco took the position that no YSL attorney, inside or outside the Company (including this firm), should be privy to supplier information, because then, in direct violation of the protective order, YSL would immediately retaliate against the suppliers, and cut them off or sue them. Then, in a subsequent letter, apparently realizing how silly this argument was, Costco's counsel argued that the information should not be made available to any representative of YSL because it could be "inadvertently" disclosed or misused. Now, Costco has a new tack –– it claims that YSL wants the information so that it can subpoena Costco's suppliers and drag them into this case, thereby intimidating them into not doing business with Costco.

      None of these, of course, are good reasons for withholding supplier information. Discovery is broad, the information is relevant, and several layers of protection have been built into the protective order so that proprietary information cannot be used for any purpose other than in connection with this litigation. That is why parties enter into protective orders — to protect against the improper use and disclosure of exactly this type of information, under penalty of contempt. What Costco is trying to prevent here is exactly the kind of discovery that goes on in trademark and other types of litigation every day of the week. Just because the information at issue goes to the heart of Costco's business model does not mean that Costco can choose to withhold that information.

      The bottom line is that Costco is attempting to withhold evidence that is clearly relevant to the claims and defenses in this case, is found in documents that concededly contain other relevant information (and which have already been produced by Costco), and is completely protected from use or disclosure by YSL for any purpose other than in connection with this litigation. No known discovery rule gives Costco the right to withhold such evidence from YSL.

      Notwithstanding this, YSL is prepared to address this latest "concern" of Costco's. Although YSL, like any other litigant, should have the right to engage third

# ARNOLD & PORTER LLP

Honorable Henry Pitman
September 12, 2007
Page 4

parties, such as Costco's suppliers, in the discovery process, YSL is willing to agree that in this case, it will not subpoena any supplier until it has first deposed Costco. If YSL then decides to subpoena a supplier, it will give Costco the notice required by the Federal Rules, and Costco will then have the opportunity to seek the Court's protection. In this way, Costco is assured that it is not YSL's intention to run off with supplier information and use that information as an intimidation tactic.

<u>Fifth</u>, Costco has failed to respond to the following requests for relief set forth in YSL's August 30 letter:

a) YSL asks the Court to enter the protective order it proposed to Costco, without limiting the ability of YSL's in-house counsel to see "attorney eyes only" documents. Costco's most recent proposal is that such documents may only be shown to attorneys "of record". YSL has asked Costco several times to explain what this means, but has received no explanation;

b) This Court should put some parameters on the ability of a party to designate documents "attorneys eyes only". Costco has designated 95% of its document production as "Outside Attorneys Eyes Only", ensuring that YSL's outside counsel will have no ability to discuss the evidence with its clients; and

c) YSL has requested that the case management schedule be extended by 60 days. As noted above, the aggressive schedule set in this case presupposed that discovery would proceed smoothly. That has not happened. A short extension would allow discovery to be completed, the evidence to be evaluated, and the need for experts to be determined.

Finally, we disagree with Costco's request that the Court hear the issues raised in the parties' letters only after full briefing and oral argument. While we do not oppose oral argument, we see no need for additional briefing, as both sides have submitted lengthy position statements, and the disputes are ripe for determination.

We are available to conference this matter at the Court's convenience.

Respectfully,

ARNOLD & PORTER LLP

By: _Louis S. Ederer_
Louis S. Ederer

cc: James W. Dabney, Esq.