Louis S. Ederer
John Maltbie
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
(212) 715-1000

*Attorneys for Plaintiffs Yves Saint Laurent Parfums S.A.*
*and YSL Beauté Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                   :

YVES SAINT LAURENT PARFUMS S.A. and     :
YSL BEAUTÉ INC.,                        :    Civil Action No.
                                   :    07 Civ. 3214 (LBS) (HP)
               Plaintiffs,       :

         - against -             :

COSTCO WHOLESALE CORPORATION,     :

               Defendant.       :

------------------------------------------------------------------ x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE PITMAN'S**
**SEPTEMBER 25, 2007 ORDER**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

PRIOR PROCEEDINGS ....................................................................................... 5

LEGAL STANDARD............................................................................................. 9

ARGUMENT ........................................................................................................ 10

I.      MAGISTRATE JUDGE PITMAN CORRECTLY RULED THAT YSL'S
AMENDED COMPLAINT FAIRLY PLACED COSTCO ON NOTICE THAT
THE ISSUE OF WHETHER THE FIRST SALE OF THE YSL GOODS WAS
AUTHORIZED WAS IN THE CASE ................................................................. 10

II.     MAGISTRATE JUDGE PITMAN DID NOT ACT CONTRARY TO LAW IN
GRANTING YSL'S APPLICATION TO COMPEL DISCLOSURE OF
COSTCO'S SUPPLIER INFORMATION TO YSL'S OUTSIDE COUNSEL ............... 14

III.    MAGISTRATE JUDGE PITMAN DID NOT ACT CONTRARY TO LAW IN
RULING ON YSL'S FULLY LETTER BRIEFED AND ORALLY ARGUED
APPLICATION FOR A NON-DISPOSITIVE DISCOVERY ORDER ......................... 17

IV.    THE COURT SHOULD EXTEND THE CURRENT CASE MANAGEMENT
SCHEDULE ............................................................................................... 19

CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

*Anderson v. City of Bessemer City,*
    470 U.S. 564 (1985) ................................................................................. 9

*Andrews v. Cruz,*
    2006 WL 1984650 (S.D.N.Y. July 14, 2006) ...................................... 11

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ................................................................... 10, 11

*Brown Bag Software v. Symantec Corp.,*
    970 F.2d 1465 (9th Cir. 1992) .................................................. 11, 15, 16

*Coach Leatherware Co. v. AnnTaylor, Inc.,*
    933 F.2d 162 (2d Cir. 1991) ............................................................... 18

*Conley v. Gibson,*
    355 U.S. 41 (1957) ............................................................................. 11

*Davis v. AT&T Corp.,*
    1998 WL 912012 (W.D.N.Y. Dec. 23, 1998) ..................................... 17

*Dubin v. E.F. Hutton Group Inc.,*
    125 F.R.D. 372 (S.D.N.Y. 1989) .......................................................... 9

*Easley v. Cromartie,*
    532 U.S. 234 (2001) ............................................................................. 9

*First Fin. Ins. Co. v. Allstate Interior Demolition Corp.,*
    193 F.3d 109 (2d Cir. 1999) ............................................................... 18

*Hispanics For Fair & Equitable Reapportionment v. Griffin,*
    958 F.2d 24 (2d Cir. 1992) ................................................................. 18

*Infosint S.A. v. H. Lundbeck A.S.,*
    2007 WL 1467784 (S.D.N.Y. May 16, 2007) ............................... 15, 16

*Lyondell-Citgo Refining, LP v. Petroleos De Venezuela, S.A.,*
    2004 WL 30197767 (S.D.N.Y. Dec. 29, 2004) .................................... 9

*Ratliff v. Davis Polk & Wardwell,*
    354 F.3d 165 (2d Cir. 2003) ............................................................... 11

*State Farm Mut. Auto. Ins. Co. v. CPT Med Servs., Inc.,*
    375 F. Supp. 2d 141 (E.D.N.Y. 2005) ............................................... 16

*Thomas E. Hoar, Inc. v. Sara Lee Corp.,*
    900 F.2d 522, 525 (2d Cir. 1990) ........................................................ 9

*United States v. U.S. Gypsum Co.,*
    333 U.S. 364 (1948) ............................................................................. 9

*U.S. Steel Corp. v. United States,*
    730 F.2d 1465 (Fed. Cir. 1984) .......................................................... 15

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.,*
    2007 WL 2327068 (S.D.N.Y. Aug. 13, 2007) ..................................... 9

**TABLE OF AUTHORITIES**

<u>**Page**</u>

<u>**Statutes and Rules**</u>

Federal Magistrates Act, 28 U.S.C. § 636 ...................................................................... 9

Fed. R. Civ. P. 8 .............................................................................................................. 10

Fed. R. Civ. P. 12 ............................................................................................................ 12

Fed. R. Civ. P. 72 ...................................................................................................... *passim*

Local Civil Rule 37.2 ...................................................................................................... 18

## PRELIMINARY STATEMENT

### "FIRST AFFIRMATIVE DEFENSE

To the extent that the first sale doctrine is an affirmative defense, plaintiff's claims are barred by the first sale doctrine."[1]

The above affirmative defense appeared in Costco's Answer to YSL's original Complaint, filed on May 24, 2007. Incredibly, however, no reference to this affirmative defense appears anywhere in Costco's Rule 72(a) objections to Magistrate Judge Pitman's September 25, 2007 Order compelling Costco's production of supplier information. That is because, as Magistrate Judge Pitman recognized, Costco simply has no plausible explanation for its position, which it continues to advance, that it never understood that YSL is making an infringement claim based on an unauthorized first sale of the goods at issue. Clearly, from day one, Costco recognized and understood that the Complaint alleged, as an element of YSL's infringement claims, that Costco knowingly purchased the goods at issue from parties not authorized to sell those goods. In other words, from the outset, Costco recognized that YSL was alleging, as part of its infringement claim, that the goods at issue were infringing because they were sold in unauthorized channels. There would be no other reason to assert a first sale defense, because under the first sale doctrine, even if the goods in question are sold in unauthorized channels, if they were first introduced into commerce under YSL's authority, Costco's subsequent purchases further down the chain would not be infringing.

The issue on this motion, as framed by Judge Pitman, is whether YSL's infringement allegations can fairly be read to encompass the issue of whether the first sale of the allegedly

_____

[1] Costco's Answer, at p. 4, a true and correct copy of which is attached hereto as Exhibit A.

infringing goods was an authorized sale. By asserting a first sale defense, Costco answered that question emphatically: clearly the allegations in YSL's Complaint fairly and adequately placed Costco on notice that the issue of whether the first sale of the goods in question was authorized is squarely in this case. The only way to address the issue, then, is to permit discovery as to whether the first sale of the allegedly infringing goods was authorized. As far as YSL can tell, the only way to do this is to find out, first, who Costco bought the goods from, and then work up the distribution chain and see whether or not, in fact, the first sale was authorized.

Not surprisingly, ever since Costco asserted the first sale defense in its original Answer, it has been trying to backpedal away from this defense. Knowing that its first sale defense opened the door to discovery of its supplier information, Costco, when YSL filed its Amended Complaint, seized the opportunity to drop its first sale defense, hoping to use this as a basis for arguing that its supplier information was not relevant. When challenged, however, Costco could not even bring itself to say to Magistrate Judge Pitman that by dropping its first sale defense, it had removed the first sale issue from the case. Instead, Costco told Magistrate Judge Pitman that the reason it dropped its first sale defense was that it had determined that it was not Costco's obligation to show that the first sale was authorized, but rather YSL's burden to prove that the first sale was unauthorized. *Never* has Costco taken the position, however, that the first sale issue is out of the case entirely.[2]

---

[2]  Thus, in its September 10, 2007 letter to Magistrate Judge Pitman, p. 4, fn 1 (emphasis in original), Costco stated:

> [I]n its Answer to plaintiffs' original Complaint, Costco had pleaded as an affirmative defense as follows: "To the extent that the first sale doctrine is an affirmative defense, plaintiff's [sic] claims are barred by the first sale doctrine." In fact, at the time this Answer was served, Costco was simply uncertain whether its sale of genuine goods was properly described as rightful in "first

Footnote continued on next page

Faced with its own concession that the first sale issue is still in the case, and therefore, its supplier information is relevant, Costco, at the hearing before Magistrate Judge Pitman, nevertheless argued relentlessly that YSL's Complaint failed to put Costco on notice of any claim by YSL that the first sale of the goods at issue was unauthorized. When confronted with the fact that it had included a first sale defense in its Answer, however, Costco's counsel had no explanation for this argument.

At bottom, the issue on these Rule 72(a) objections is exactly the one framed by Magistrate Judge Pitman:  whether or not YSL's Complaint can fairly be read to raise the issue of whether the first sale of the goods in question was authorized. Tr. at 32:7-18.  Costco's belated attempted to argue that it was never on notice of this, and never understood YSL's claims to involve anything other than Costco's repackaging of YSL-branded goods, is completely belied by Costco's own assertion of the first sale defense in its original Answer.

Faced with its concession that the first sale issue has been in the case since day one, Costco is reduced to arguing that it should not be required to produce supplier information, even though Magistrate Judge Pitman restricted the disclosure to YSL's outside counsel only, because outside counsel — namely YSL's lead counsel, Louis S. Ederer — is sure to take that information and, in direct violation of the Protective Order that Magistrate Judge Pitman is prepared to enter, thumb his nose at the Court and do everything he can to "disrupt, interdict and terminate" Costco's supply of genuine YSL goods. Def. Mem. at 4.  In other words, even though

---

Footnote continued from previous page

sale" terms.  Costco has since satisfied itself that the "first sale doctrine" is not properly considered an affirmative defense in a case such as this one, and has so omitted any such defense in its Answer to plaintiffs' Amended Complaint.

the Protective Order will say that the information to be provided to outside counsel can be "used only for purposes of this action and not for any other action ... or any business purpose whatsoever", nevertheless, according to Costco, YSL's outside counsel will act in contempt of the Protective Order and use the information to intimidate and harass Costco's suppliers. This is obviously a ridiculous position, and one Magistrate Judge Pitman did not credit.[3]

Magistrate Judge Pitman obviously got the fair notice issue right. He looked at the four corners of YSL's Amended Complaint, and determined that it can fairly be read to raise the issue of whether or not the first sale of the YSL goods in question was authorized. Magistrate Judge Pitman then, recognizing Costco's concern that the supplier information be kept from YSL employees who might misuse it, ordered that the supplier information be disclosed to YSL's outside counsel only, and used only for purposes of this litigation. Magistrate Judge Pitman's September 25 Order is fair and reasonable, and strikes the proper balance between YSL's right to discovery on this issue and Costco's confidentiality concerns.

Finally, this four month dispute over whether or not Costco should produce supplier information has prevented discovery and other proceedings in this case from going forward.

---

[3] Costco's latest paranoiac proclamation is not unlike the objection Costco interposed to YSL's interrogatories and document requests seeking supplier information and other documents and information in support of Costco's first sale defense:

> Plaintiff's complaint makes very clear that plaintiffs would cut off sales to any vendor known to be supplying Costco. Outside counsel for plaintiffs in this action is directly involved in plaintiffs' activities relevant to the distribution of YSL-branded products. In the circumstances, there is no type of confidentiality undertaking that would adequately product [sic] Costco against irreparable harm that would inevitably flow from disclosure of trade secret vendor identities to trademark enforcement counsel for YSL. *See* Costco's Answers and Objections to Plaintiffs' First Set of Interrogatories, dated July 23, 2007.

When coupled with Costco's improper designation of over 90% of its document production "Confidential – Outside Attorneys' Eyes Only" — even after redacting the highly sensitive supplier information contained in the documents it produced — Costco has made it impossible for YSL to share any evidence with its client or otherwise proceed with this case. Accordingly, YSL asked Magistrate Judge Pitman to extend all dates in the current Case Management Schedule by sixty (60) days, an eminently reasonable request which Magistrate Judge Pitman was prepared to grant. Unbelievably, however, Costco opposed that application as well. Now that Costco has further delayed this case by filing these Rule 72(a) objections, YSL requests, once the objections have been ruled on, that the Court extend all dates in the current Case Management Schedule by ninety (90) days.

## PRIOR PROCEEDINGS

This is an action for trademark infringement, false designation of origin, dilution and other claims, arising out of Costco's unauthorized purchase, repackaging and sale of YVES SAINT LAURENT brand cosmetics and beauty products. YSL's Complaint was filed on April 20, 2007. YSL alleges in the Complaint, *inter alia*, that:

> YSL has recently discovered that Defendant is importing, distributing, advertising, offer for sale and/or selling, in its store locations throughout the United States, repackaged YVES SAINT LAURENT cosmetic and beauty products bearing the YSL marks, including YSL's Mascara and Lip Care Products . . . . ***Defendant is not an authorized purchaser or reseller of YSL cosmetic and beauty products, and has purchased such products through unauthorized channels of distribution***.

Compl. ¶ 19; Am. Compl. ¶ 18 (emphasis added).

On May 24, 2007, Costco filed its Answer. As noted above, without prompting from YSL, and based solely on its reading of the above allegations, Costco felt the need to assert an affirmative defense based on the "first sale doctrine" — namely, that its purchase and sale of the YSL goods was not infringing because the first sale of these goods was authorized by YSL or a party licensed by YSL. Obviously, in order to demonstrate that the first sale of the goods at issue

was authorized, Costco would have to disclose its suppliers of the goods, so that it could be determined where the goods came from, and, ultimately, whether in fact the first sale of those goods was authorized by YSL.

Thereafter, on June 8, 2007, YSL served its first requests for production of documents and its first set of interrogatories on Costco. Not surprisingly, YSL's requests sought, among other things, the production of documents and disclosure of information as to Costco's sources of supply. For example, YSL propounded the following document requests and interrogatories:

> **Document Request No. 1:** All Documents and Communications concerning the purchase by You of each of the Unauthorized Products.
>
> **Document Request No. 4:** Each contract, agreement, purchase order and invoice concerning the purchase of each of the Unauthorized Products.
>
> **Document Request No. 5:** All Documents and Communications concerning Your payment for each of the Unauthorized Products.
>
> **Document Request No. 31:** All Documents and Communications supporting Your First Affirmative Defense found in Your Answer to the Complaint that Plaintiffs' claims are barred by the first sale doctrine.
>
> **Interrogatory No. 9:** Identify by name and address each Person that supplied You with each of the Unauthorized Products.

Costco, however, refused to respond to any of these requests, ultimately, on July 23, 2007, registering the objections set out in footnote 3 on p. 4 above.

Shortly after YSL served its discovery requests, YSL's counsel, on June 15, 2007, proposed a protective order that would prohibit the improper disclosure of the parties' respective proprietary business information. Recognizing that both parties might have particularly sensitive

information in this case — such as Costco's supplier information — YSL even proposed a more highly restrictive protective order than usual.[4]

Following a July 9, 2007 initial case management conference, counsel for both parties discussed the proposed protective order and reached an agreement on the levels of confidentiality proposed by YSL. Before signing the protective order, however, Costco's counsel approached YSL's counsel and indicated that while Costco was prepared to produce documents in response to YSL's requests, some of the documents contained such highly sensitive information — in particular the supplier information — that Costco wanted to create yet a third category of confidentiality, "Confidential – Outside Attorneys' Eyes Only." Plaintiffs did not agree with this approach, but, believing that this would at least be a short term solution to Costco's reluctance to produce supplier information, agreed to Costco's use of the "Confidential – Outside Attorneys' Eyes Only" designation on an interim basis.

Thereafter, on July 27, 2007, Costco made its document production. Incredibly, however, in spite of the third level of confidentiality requested by Costco, Costco (i) still refused to provide any supplier information, redacting all references to its suppliers on invoices and correspondence, and (ii) designated over 90% of the nearly 500 documents it produced "Confidential–Outside Attorneys' Eyes Only." Basically, what Costco did was withhold all of its alleged highly sensitive information from YSL, and then designate nearly all remaining

---

[4] Thus, the proposed order had two levels of protection. First, a "Confidential" category that would limit the disclosure of such documents to a designated business person, who would "sign on" to the protective order, thereby subjecting himself to the Court's contempt power. Second, a "Confidential – Attorneys' Eyes Only" category that would limit the disclosure of highly sensitive information to in-house and outside counsel. In both instances, of course, persons designated to receive disclosure could not use the information for any purpose other than for purposes of this lawsuit, and could not disclose the information to anyone else not so designated.

information as so highly sensitive that only outside counsel could see it.  To this day, none of this

material has been "undesignated" by Costco, making it impossible for YSL's outside counsel to

even discuss any of the evidence in this case with its clients.

Based on the foregoing, following several attempts to resolve the issue with Costco, on

August 30, 2007 YSL made a letter application to the Court requesting that:

> (i) Costco be directed to produce all the documents and information it has
> withheld from disclosure, including documents and information concerning its
> suppliers and the origin of the goods at issue, and (ii) the Court enter the
> protective order proposed by plaintiffs.  In addition, YSL ask[ed] that Costco be
> directed to re-designate its confidential documents as either "Confidential" or
> "Confidential – Attorneys' Eyes Only" in accordance with the protective order,
> and that it utilize the "Confidential – Attorneys' Eyes Only" designation sparingly
> and only in connection with the most highly sensitive information it has been
> called upon to disclose.

The parties subsequently submitted substantive additional letter briefs for Magistrate Judge

Pitman's consideration, and oral argument on YSL's application was heard on September 21,

2007.

Upon considering the parties' submissions and argument at the September 21 hearing,

Magistrate Judge Pitman granted YSL's application, finding, contrary to Costco's counsel's

arguments, that the allegations in the Amended Complaint could fairly be made to encompass the

claim that the first sale of the goods at issue was not authorized by YSL.  Magistrate Judge

Pitman summarized his rulings as follows:

> It seems to me supplier information is relevant for — to a determination of
> whether or not the sale was with — was with the trademark owner's
> authorization.  So it seems to me that the supplier information is relevant.  And I
> say — as I said before, the amended complaint may not be a model of clarity, but
> I think fairly read, the reference to unauthorized channels of distribution, it is
> fairly — it can fairly be read to incorporate the theory that the initial sale was not
> authorized.  So I think discovery is appropriate and I am going to direct that the
> supplier information be disclosed. Tr. at 32:7-18.

However, in consideration of Costco's claim that its supplier information was highly confidential

and could be inadvertently misused by YSL personnel, Magistrate Judge Pitman restricted the

production of Costco's supplier information to YSL's outside counsel. Costco's Rule 72(a) objections followed.

**LEGAL STANDARD**

Rule 72(a) of the Federal Rules of Civil Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provide this Court with the standard by which to review Magistrate Judge Pitman's Order. *See Lyondell-Citgo Refining, LP v. Petroleos De Venezuela, S.A.*, 2004 WL 30197767, at *2 (S.D.N.Y. Dec. 29, 2004). As "[m]atters concerning discovery generally are considered 'nondispositive' of the litigation," this Court should modify or set aside Magistrate Judge Pitman's September 25 Order only if it is "found to be clearly erroneous or contrary to the law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). An order is clearly erroneous only where the reviewing court is "left with a definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001), quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Magistrate Judge Pitman's choice between two permissible views of the evidence "cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). Alternatively, an order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007). Magistrate Judge Pitman's September 25 Order is neither, and, thus, should be affirmed in its entirety.

Moreover, because Magistrate Judge Pitman is "best qualified" to address discovery issues in this action, "his rulings on discovery matters are entitled to substantial deference." *Id.* at *1; *see also Dubin v. E.F. Hutton Group Inc.*, 125 F.R.D. 372, 373 (S.D.N.Y. 1989) ("[a] magistrate's resolution of pretrial discovery is entitled to substantial deference"). Indeed, Costco "bears a heavy burden" in seeking to overturn or modify Magistrate Judge Pitman's discovery order. *Lyondell-Citgo Refining*, 2004 WL 30197767, at *2. Costco has failed to meet its burden

under either of the above standards, and this Court should deny Costco's Rule 72(a) objections and affirm Magistrate Judge Pitman's September 25 Order.

**ARGUMENT**

In its objections, Costco attacks Magistrate Judge Pitman's September 25 Order on three grounds:  (i) Magistrate Judge Pitman incorrectly ruled that YSL's Amended Complaint "can be fairly read to incorporate the theory that the initial sale [of YSL goods to Costco] was not authorized" (Tr. at 32:15-17); (ii) Magistrate Judge Pitman acted contrary to law in ordering the disclosure of Costco's supplier information to YSL's "regular trademark counsel" because such information is prone to inadvertent disclosure; and (iii) Magistrate Judge Pitman acted contrary to law in ruling on YSL's application for a non-dispositive discovery order after considering the parties' letter briefing and considering fifty-one transcribed pages of oral argument.  As described below, each of Costco's objections is utterly without merit.

**I.      Magistrate Judge Pitman Correctly Ruled That YSL's Amended Complaint Fairly Placed Costco On Notice That The Issue Of Whether The First Sale Of The YSL Goods Was Authorized Was In The Case**

As articulated by Magistrate Judge Pitman, "the issue here is whether or not the discovery sought is relevant to the claims in the complaint as fairly read." Tr. at 12:8-10.  As Magistrate Judge Pitman recognized, YSL's Amended Complaint clearly frames the claim that the YSL goods in question are infringing because they were introduced into commerce without authorization.  The best evidence of this, of course, is Costco's own assertion of a first sale defense.  Clearly, there would have been no other reason for Costco to assert such a defense unless it understood, as YSL intended, that the issue of whether or not the first sale of the YSL goods was authorized was encompassed within YSL's infringement claims.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Contrary to Costco's contention, "[s]pecific facts are not necessary; the statement need only "'give the

10

defendant *fair notice* of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic*

*Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (quoting *Conley v. Gibson,* 355 U.S. 41 (1957))

(emphasis added). As Magistrate Judge Pitman stated, "we're past magic language pleading."

Tr. at 14:14-15.

YSL's Amended Complaint states causes of action for trademark infringement, false

designation of origin and dilution, among others. Subsumed within each of these causes of

action is YSL's allegation, in paragraph 18 of the Amended Complaint, that the YSL goods at

issue were sold in and purchased from unauthorized distribution channels, and were, therefore,

infringements. As Magistrate Judge Pitman stated:

> [t]he amended complaint may not be a model of clarity, but I think fairly read, the
> reference to unauthorized channels of distribution, it is fairly — it can fairly be
> read to incorporate the theory that the initial sale was not authorized. So I think
> discovery is appropriate and I am going to direct that the supplier information be
> disclosed. Tr. at 32:12-18.

To support these allegations, then, YSL is clearly entitled, under the liberal discovery rules, to

elicit evidence as to where the YSL goods came from. *See Ratliff v. Davis Polk & Wardwell,*

354 F.3d 165, 170 (2d Cir. 2003) (noting that discovery rules are to be accorded broad and

liberal treatment); *Brown Bag Software v. Symantec Corp.,* 970 F.2d 1465, 1470 (9th Cir. 1992)

(describing Federal Rule of Civil Procedure 26(b)(1) as "an intentionally broad mandate");

*Andrews v. Cruz,* 2006 WL 1984650, at *2 (noting that "[r]elevancy is broadly construed 'to

encompass any matter that bears on, or that reasonably could lead to other matters that could

bear on, any issue that is or may be in the case'") (citation omitted).

Costco's main position on these objections is that notwithstanding that the unauthorized

first sale issue may be covered in YSL's pleadings, YSL has no separate infringement claim

based on an alleged unauthorized first sale, but rather its infringement claims focus only on

Costco's repackaging of YSL's goods. But, as noted above, YSL's allegations of unauthorized

distribution are incorporated as an element of its infringement claims, and clearly Costco

11

understood this from the inception.  Now, realizing that it will have to give up its supplier information, Costco pretends that it never understood this — but yet, it never moved to dismiss any of YSL's infringement claims, nor did it move under Rule 12(f) to strike the allegation concerning unauthorized channels of distribution as "unnecessary" to YSL's claim, nor did it move pursuant to Rule 12(e) for a more definite statement.  Instead, it seized the opportunity, when YSL amended its Complaint, to drop its first sale defense, and then make believe it never asserted the defense in the first place.

Further, contrary to Costco's argument, YSL's allegations concerning the purchase of the goods at issue in unauthorized channels, and consequently, the identity of Costco's suppliers, where the goods came from, and how they were handled along the way, are directly relevant and necessary to prove elements of YSL's claims.  Such information goes directly to the issue of damages as well as to YSL's claims that the sale of the goods at issue is causing YSL irreparable harm and diluting the distinctive quality of YSL's marks.  In addition, supplier information is needed to assist YSL in proving that Costco acted intentionally in infringing YSL's marks.

First, the issue of where and from whom Costco obtained the YSL goods at issue bears directly on the question of YSL's damages.  One of the plaintiffs in this case is YSL Beauté, Inc., the wholly-owned U.S. subsidiary of the French parent, plaintiff Yves Saint Laurent Parfums, S.A.  If any of the YSL goods in question were first sold outside of the U.S., and then resold into the U.S. without YSL's authorization and approval, the U.S. entity, YSL Beauté, will have suffered a lost sale.

Further, contrary to Costco's counsel's ridiculous representation during oral argument that only the sale of 964 units of YSL goods are at issue (Tr. at 10:13-16), the evidence elicited to date indicates that Costco has purchased and sold over 53,000 units of the YSL goods at issue over the last three years — accounting for approximately 10% of all of YSL's U.S. sales during this period.  Tr. at 29:25 - 30:1.  There is simply no way for YSL to know whether YSL Beauté

has suffered lost sales unless it can determine where and from whom the infringing goods originated. Accordingly, it is both relevant and necessary that YSL discover who supplied the YSL goods at issue to Costco, and where the goods came from.

Second, in its trademark infringement, false designation of origin, and dilution claims, YSL has alleged that Costco's sale of the goods at issue, as to which YSL has not been able to exercise quality control, has caused irreparable harm to YSL's goodwill and the distinctive quality of YSL's famous trademarks due to improper handling, repackaging and presentation of the YSL goods. One aspect of YSL's dilution claim addresses Costco's improper repackaging of YSL goods. The other, particularly relevant here, addresses the manner in which the goods have been handled. Unlike stationery or hardware, the goods at issue are applied to the skin and are subject to strict FDA regulation. Accordingly, the manner in which the YSL goods have been handled, not only by Costco but also by its suppliers is directly relevant to YSL's claim for loss of goodwill and dilution. The only way for YSL to make this showing is to have discovery of Costco's supply chain.

Third, the issue of where and how Costco purchased the goods at issue goes to the question of Costco's intent. YSL has alleged that Costco acted intentionally in purchasing and selling infringing goods, and YSL seeks a trebling of Costco's profits under Section 35 of the Lanham Act. If Costco purchased the goods at issue without regard to their origin, or whether or not they were authorized by YSL, this supports the notion that Costco acted in disregard of YSL's rights, and tends to show that Costco's alleged conduct was willful.

Thus, the supplier information sought by YSL is relevant and necessary to YSL's infringement allegations in this case, namely that the goods at issue in this case have been sold in unauthorized channels of distribution, starting potentially, with an unauthorized first sale. In addition, such information is needed to support various elements of YSL's claims, including its claims for damages, irreparable harm and willfulness.

**II.**     **Magistrate Judge Pitman Did Not Act Contrary To Law In Granting YSL's Application To Compel Disclosure Of Costco's Supplier Information To YSL's Outside Counsel**

Costco asserts that Magistrate Judge Pitman's September 25 Order, requiring the disclosure of its supplier information to YSL's undersigned outside counsel only, is contrary to the law because it "is the legal equivalent of disclosure to" YSL itself, as it "would create 'an unacceptable opportunity for inadvertent disclosure.'" Def. Mem. at 21-22. Indeed, incredibly, Costco has argued to this Court that "[i]t is inconceivable that plaintiffs' counsel in this case, if they knew the identity of Costco's source(s) of YSL-branded goods, would not then . . . seek to disrupt . . . sales to Costco."[5] In other word, Costco is claiming that YSL's outside counsel would risk his license to practice law, and use the supplier information disclosed by Costco for some nefarious purpose not authorized by this Court's Protective Order. In support of this untenable argument, Costco relies on fabrication and impertinent case law.

First, Costco's counsel takes great liberty in describing the nature of YSL's counsel's relationship with YSL. Contrary to Costco's assertions, this firm does not act as YSL's "regular trademark counsel", Def. Mem. at 21, indeed, this firm has never before represented YSL in any litigation. Costco's counsel's "understanding that these plaintiffs are long-time clients of Mr. Ederer" is simply not the case. Tr. at 35:20-22. In any event, even if this firm did act as YSL's regular outside trademark counsel, this would not give it license to misuse confidential information or violate court orders.

---

[5] Costco's September 10, 2007 letter to Magistrate Judge Pitman, p. 6.

14

Second, this firm is not "involved in 'competitive decision making' [for YSL]; that is, advising on decisions about pricing or design 'made in light of similar or corresponding information about a competitor'" — the very test set forth in the cases cited in Costco's brief. *Brown Bag Software v. Symantec Corp.*, 970 F.2d 1465, 1470 (9th Cir. 1992), quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984). In *Brown Bag Software*, the Ninth Circuit held that it was appropriate to preclude Brown Bag's *in-house counsel* from Symantec's trade secrets because he served as Brown Bag's "sole legal advisor and personnel manager" and "was responsible for advising his employer on a gamut of legal issues, including contracts, marketing, and employment." *Brown Bag Software*, 970 F.2d at 1471. This firm is not YSL's in-house counsel, nor its sole legal advisor, nor is it involved in competitive decision making on YSL's behalf.

Costco's reliance on *Infosint S.A. v. H. Lundbeck A.S.*, 2007 WL 1467784 (S.D.N.Y. May 16, 2007) is equally misplaced. As YSL's counsel pointed out during oral argument, it may, indeed, be appropriate to shield outside counsel from an opposing party's trade secrets in, for example, a patent litigation, where attorneys in the same firm are simultaneously handling the prosecution of a patent application covering the same technology, because it could use the defendant's otherwise unavailable technology. Tr. at 25:1-11. This was precisely the scenario in *Infosint*. Further, as the court in *Infosint* pointed out, it is a firm's involvement in its client's competitive decision making that it is "the determinative factor in [the] analysis" of whether an unacceptable opportunity for inadvertent disclosure exists. *Infosint*, 2007 WL 1467784, at *6. Given the limited nature and scope of this firm's representation of YSL, there is no such

opportunity here, nor is the supposed trade secret information at bar — the identity of a party's supplier — anywhere near the kind of "trade secret" that might give rise to an exclusion from disclosure, Costco's belated attempt to elevate the level of such "trade secret" notwithstanding.[6]

Third, as YSL's counsel pointed out during oral argument, even if YSL's outside attorneys in this litigation were involved in YSL's competitive decision making, "[t]here's no competitive advantage to be gained" by YSL from the disclosure of Costco's supplier information. Tr. at 27:3-4. Unlike the parties in *Brown Bag Software* and *Infosint*, YSL and Costco are not competitors, and the supplier information that YSL's outside counsel seek has no independent business value to YSL.

Fourth, Costco's supplier information will be disclosed to YSL's outside counsel pursuant to a comprehensive protective order that more than adequately protects any confidentiality concerns Costco may have. Moreover, as Magistrate Judge Pitman recognized, Costco's contention that the identities of its suppliers will be revealed to YSL should YSL's

---

[6] In Costco's newly submitted Declaration of Robert L. Pugmire, ¶¶ 4-15, Costco tries to bolster its argument, made below to Judge Pitman, that its supplier information rises to the level of a trade secret so sensitive that it should be excluded from discovery, just like the defendant's secret technology in *Infosint*. Aside from the fact that Costco already made this argument below, and Judge Pitman obviously considered it, ruling that supplier information may be shown to outside counsel only, the Pugmire declaration should be disregarded. Unlike Rule 72(b), which expressly provides that a district judge may consider "additional evidence" when considering objections to a Magistrate Judge's report and recommendation on dispositive motions, Rule 72(a) is tellingly silent on the issue. Fed. R. Civ. P. 72; *see also State Farm Mut. Auto. Ins. Co. v. CPT Med Servs., Inc.*, 375 F. Supp. 2d 141, 158 (E.D.N.Y. 2005) ("[w]hile the Court is generally not precluded from considering additional evidence not submitted by a party to a magistrate judge when reviewing a report and recommendation issued by such judge on a dispositive motion, there is nothing in Rule 72(a) of the Federal Rules of Civil Procedure which states that it may do so on a nondispositive issue"). Costco's submission of new evidence that its supplier information rises to the level of a trade secret, just like the formula for Coca-Cola or the composition of the atomic bomb would have been presented to Magistrate Judge Pitman and was not. *See State Farm Mut. Auto. Ins. Co.*, 375 F. Supp. 2d at 158 (stating that the court found no cases "in which Rule 72(a) objections are sustained based on evidence not presented to the magistrate judge").

outside counsel subpoena one or more of them, is baseless. As Magistrate Judge Pitman stated, "subpoenas are not filed . . . so even if Mr. Ederer subpoenaed somebody, the only people who would know about the subpoena would be Mr. Ederer, the entity or person subpoenaed and [Costco]." Tr. at 35:12-16.

Accordingly, Magistrate Judge Pitman did not act contrary to law in granting YSL's application to compel disclosure of Costco's supplier information to YSL's outside counsel. Rather, in an abundance of caution, he struck exactly the right balance between YSL's need for the disclosure and Costco's need to protect its confidential information. This is exactly what a Magistrate Judge is supposed to do in a situation like this. *See Davis v. AT&T Corp.*, 1998 WL 912012, at *2 (W.D.N.Y. Dec. 23, 1998) (it is the court's role to "implement the philosophy of full disclosure of relevant information during discovery, while at the same time affording the parties reasonable protection against harmful side effects") (citations omitted).

## III. Magistrate Judge Pitman Did Not Act Contrary To Law In Ruling On YSL's Fully Letter Briefed And Orally Argued Application For A Non-Dispositive Discovery Order

Choosing form over substance, Costco argues that Magistrate Judge Pitman acted contrary to law in ruling on YSL's fully briefed and argued application for a non-dispositive discovery order. Costco claims that it had no notice of Magistrate Judge Pitman's intent to rule on YSL's application, believing this was just going to be a "pre-motion conference." This is the height of disingenuousness. Everyone, including Costco's counsel, knew exactly what was going to happen at the oral argument, as Magistrate Judge Pitman made clear in his opening remarks:

> THE COURT:    We're here today to resolve . . . some discovery disputes and there's also a scheduling issue. Tr. at 2:7-9.

Notably, it was not until after the parties had fully argued their positions to the Court, and when Costco's counsel knew he was about to lose, that counsel feigned ignorance as to what the

17

purpose of the hearing would be — "we thought we were just going to be discussing the pre-motion conference here this morning." Tr. at 47:22-23.  Now, Costco's belated reliance on Local Civil Rule 37.2 is untenable in light of the parties' extensive letter submissions and their full and fair opportunity to orally argue the issue before the Magistrate Judge.

      None of the cases cited by Costco support its argument that Magistrate Judge Pitman acted contrary to law in ruling on YSL's *non-dispositive* discovery application.  Unlike the non-dispositive relief granted by Magistrate Judge Pitman here, each of the cases cited by Costco address the treatment of *dispositive* motions.  *See First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 119 (2d Cir. 1999) (summary judgment); *Hispanics For Fair & Equitable Reapportionment v. Griffin*, 958 F.2d 24, 25-26 (2d Cir. 1992) (motion to dismiss); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) (summary judgment).  As Costco is undoubtedly aware, discovery disputes are often decided without formal briefing, although here both parties made extensive submissions, including legal citations and arguments.

      Indeed, Costco had the opportunity to — and in fact did — make all of the same arguments it made orally to Magistrate Judge Pitman in a seven page letter brief submitted prior to oral argument.  Magistrate Judge Pitman considered each of Costco's arguments and soundly ruled against them.

      In sum, Costco fully understood and acknowledged, during the September 21 hearing, that Magistrate Judge Pitman would be "resolving" YSL's application.  This Court should not permit Costco to escape Magistrate Judge Pitman's reasoned ruling based on a concocted, after-the-fact argument that it did not know what the purpose of the hearing was.  Accordingly, YSL's procedural argument under Local Civil Rule 37.2 should be disregarded.

18

**IV.    The Court Should Extend The Current Case Management Schedule**

Costco also takes the opportunity to repeatedly argue that YSL's "time is up", and that no extension of the Case Management Schedule should be granted.  The flaw in Costco's argument is that its four month failure to produce relevant and necessary discovery is the sole reason why the parties have fallen behind in the current Case Management Schedule.  As noted above, it is because of Costco's stance on the supplier information, and its misuse of an "outside counsel only" designation on nearly all of the documents it has produced, that YSL's counsel has been unable to discuss the evidence in this case with its client or with experts.  YSL should not be punished for Costco's unwillingness to participate in the discovery process.  Accordingly, YSL respectfully requests, once these Rule 72(a) objections are decided that the Court extend the current Case Management Schedule for ninety (90) days to allow the parties to complete discovery and expert reporting.

<strong>CONCLUSION</strong>

For the reasons set forth above, the Court should affirm Magistrate Judge Pitman's September 25 Order and extend the current Case Management Schedule ninety (90) days to allow the parties to complete discovery.

Dated:  New York, New York
        October 9, 2007

                                        ARNOLD & PORTER LLP

                                    By:  _____
                                        Louis S. Ederer
                                        John Maltbie
                                        399 Park Avenue
                                        New York, NY 10022
                                        Telephone:  (212) 715-1000
                                        Facsimile:  (212) 715-1399

                                        *Attorneys for Plaintiffs Yves Saint Laurent*
                                        *Parfums S.A. and YSL Beauté Inc.*

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
                                      :

YVES SAINT LAURENT PARFUMS S.A. and YSL     :       **ECF CASE**
BEAUTÉ INC.,     :

                             Plaintiffs,     :       07 Civ. 3214 (LBS)

               - against -     :

                                          :       **ANSWER**

COSTCO WHOLESALE CORPORATION,     :

                             Defendant.     :

-------------------------------------------------------------------- x

       Defendant Costco Wholesale Corporation ("Costco"), by its attorneys, for its Answer to the Complaint:

       1.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1.

       2.     Admits the allegations of paragraphs 2-3.

       3.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 4-5.

       4.     Admits that Costco maintains its principal place of business at 999 Lake Drive, Issaquah, Washington 98027, admits that Costco maintains at least three places of business in this district, and except as so admitted denies the allegations of paragraph 6.

       5.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7-17.

6.    Admits that Costco is currently offering for sale genuine YSL lip products in theft-resistant outer packaging that appears to be partially depicted in Exhibit C to the complaint, admits that Costco formerly offered for sale genuine YSL mascara products in discontinued theft-resistant packaging that appears to be partially depicted in Exhibit C to the complaint, and except as so admitted denies the allegations of paragraph 18.

7.    Admits Costco placed certain notices on the theft-resistant outer packaging that appears to be partially depicted in Exhibit C to the complaint, refers to said packaging for its precise contents, and except as so admitted denies the allegations of paragraph 19.

8.    Denies the allegations of paragraphs 20-24.

### COUNT ONE

9.    Costco's responses to paragraphs 1-24, above, are realleged and incorporated by reference as if set forth in full.

10.    Denies the allegations of paragraphs 26-33.

### COUNT TWO

11.    Costco's responses to paragraphs 1-33, above, are realleged and incorporated by reference as if set forth in full.

12.    Denies the allegations of paragraphs 35-42.

### COUNT THREE

13.    Costco's responses to paragraphs 1-42, above, are realleged and incorporated by reference as if set forth in full.

14.    Denies the allegations of paragraphs 44-49.

2

**COUNT FOUR**

15.    Costco's responses to paragraphs 1-49, above, are realleged and incorporated by reference as if set forth in full.

16.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 51-53.

17.    Denies the allegations of paragraphs 54-59.

**COUNT FIVE**

18.    Costco's responses to paragraphs 1-59, above, are realleged and incorporated by reference as if set forth in full.

19.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61.

20.    Denies the allegations of paragraphs 62-65.

**COUNT SIX**

21.    Costco's responses to paragraphs 1-65, above, are realleged and incorporated by reference as if set forth in full.

22.    Denies the allegations of paragraphs 67-70.

**COUNT SEVEN**

23.    Costco's responses to paragraphs 1-70, above, are realleged and incorporated by reference as if set forth in full.

24.    Denies the allegations of paragraphs 72-76.

3

## COUNT EIGHT

25.    Costco's responses to paragraphs 1-76, above, are realleged and incorporated by reference as if set forth in full.

26.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 78-79.

27.    Denies the allegations of paragraphs 80-83.

## FIRST AFFIRMATIVE DEFENSE

To the extent that the first sale doctrine is an affirmative defense, plaintiffs' claims are barred by the first sale doctrine.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by laches.


WHEREFORE, Costco prays that the Court:

i.      Dismiss plaintiffs' complaint with prejudice;

ii.     Award Costco its costs, disbursements, and attorneys' fees incurred in connection with this action; and

iii.    Award Costco such other and further relief as the Court may deem just and proper.

4

Dated:    New York, New York
          May 24, 2007

                                FRIED, FRANK, HARRIS, SHRIVER
                                   & JACOBSON LLP

                                By:

                                        James W. Dabney
                                        Darcy M. Goddard

                                One New York Plaza
                                New York, New York 10004-1980
                                (212) 859-8000

                                Attorneys for Defendant
                                Costco Wholesale Corporation

550693.

                                      5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of May 2007, I caused true and correct copies of the attached Answer to Complaint and 7.1 Statement to be electronically filed with the Clerk of the United States District Court for the Southern District of New York using the CM/ECF system and that true and correct copies of the attached Answer to Complaint and 7.1 Statement were also served on the following by first-class mail:

Louis S. Ederer, Esq.
John Maltbie, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York 10022
*Attorneys for Plaintiff*

Dated: New York, New York
       May 24, 2007

_____
Jeffrey J. Bednar
Paralegal