UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
:
YVES SAINT LAURENT PARFUMS S.A. and YSL :
BEAUTÉ INC., :
:
                       Plaintiffs, :        **ECF CASE**
:
           - against - :        07 Civ. 3214 (LBS)
:
COSTCO WHOLESALE CORPORATION, :
:
                       Defendant. :
:
------------------------------------------------------------------------ x

**REPLY BRIEF IN SUPPORT OF RULE 72(a)
OBJECTIONS TO MAGISTRATE JUDGE'S ORDER**

JAMES W. DABNEY
DARCY M. GODDARD
ALEXANDER T. KORN
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004 - 1980
(212) 859 - 8000

Attorneys for Defendant
Costco Wholesale Corporation

Costco Wholesale Corporation ("Costco") respectfully submits this reply memorandum in support of its pending Rule 72(a) objections filed October 2, 2007, to the Order of United States Magistrate Judge Henry Pitman dated September 25, 2007 (the "September 25 Order").

I. **COSTCO SUPPLIER IDENTITIES ARE IRRELEVENT TO THE PLAINTIFFS' CLAIMS CHALLENGING COSTCO PACKAGING.**

In their opposition memorandum filed October 9, 2007 ("Pls.' Opp. Mem."), the plaintiffs make no argument that Costco supplier identities are relevant or necessary to the determination of any of the plaintiffs' claims challenging Costco's use of the theft-resistant display packaging depicted in Exhibits C-E to the Amended Complaint.

The plaintiffs' claims challenging Costco theft-resistant display packaging are substantially identical to the claims that were dismissed on summary judgment in *Farouk Systems, Inc. v. Target Corp.*, 2006 WL 2583449 (S.D. Tex. Sept. 6, 2006) (copy attached as Exhibit 1). In *Farouk*, as here, the plaintiff trademark owner challenged a discount retailer's so-called "unauthorized" purchase and re-sale of unaltered genuine branded goods, which were offered in their original packaging but placed in retailer-supplied outer packaging. *Id.* at *1. In *Farouk*, as here, it was irrelevant who supplied the defendant retailer with the branded goods in question, because the plaintiff did not allege that the goods or their original packaging had been altered or were anything other than genuine. *Id.* at *3. Rather, the *Farouk* plaintiff asserted—as Costco understood the plaintiffs to be asserting here—that the disputed outer packaging was actionable even though the goods inside the packaging were genuine. *Id.*

To the extent that the plaintiffs' Amended Complaint asserts *Farouk*-type claims challenging Costco's marketing of genuine YSL-branded lip and mascara products in the theft-resistant display packaging depicted in Exhibits C-E to the Amended Complaint, the plaintiffs'

opposition effectively concedes that there is no basis for compelled disclosure of Costco supplier identities with respect to those claims. As the court did in *Farouk*, the Court here can determine the merits of the plaintiffs' claims challenging Costco's use of theft-resistant display packaging without regard for what particular supplier or suppliers may have sold Costco the particular YSL-branded goods that are encased within the disputed display packaging.

II. **THE AMENDED COMPLAINT DOES NOT STATE ANY CLAIM THAT COSTCO HAS OFFERED YSL-BRANDED GOODS WHOSE "INITIAL SALE" WAS NOT "AUTHORIZED" BY THE PLAINTIFFS.**

In their October 9 opposition memorandum, the plaintiffs state: "YSL is making an infringement claim based on an unauthorized first sale of the goods at issue." Pls.' Opp. Mem. At 1. The clarity with which the plaintiffs make this statement serves to underscore the complete absence from the Amended Complaint of anything like such a "claim," much less a well-pleaded claim that could justify putting Costco at grave risk of irreparable harm due to the compelled disclosure of its trade secrets.

In sharp contrast with their October 9 opposition memorandum, the plaintiffs' Amended Complaint never once uses the phrases "first sale" or "unauthorized first sale." Still less does the Amended Complaint purport to set forth any "statement of circumstances, occurrences, and events" as could be considered "plausible grounds" for believing that secondary market sales to Costco were preceded by some supposed "unauthorized first sale." *Cf. Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 & n.3 (2007) (quoting C. Wright & A. Miller, Federal Practice and Procedure § 1202 at 94, 95 (3d ed. 2004)) (conclusory allegation that defendant companies agreed to divide markets was insufficient to justify discovery, where the plaintiffs' complaint did

2

not allege facts giving rise to "plausible grounds" for believing that any such "agreement" accounted for the observed parallel conduct).

Even now in their opposition, the plaintiffs do not state or identify any grounds for believing that Costco has sold YSL-branded goods whose "first sale" was not "authorized" by the plaintiffs. The plaintiffs have refused pointed requests that they disclose any such grounds to Costco. *See* Declaration of James W. Dabney, sworn to October 2, 2007 [hereinafter, "Dabney Decl."] ¶¶ 15-16 & Exs. 10-11. For all the record shows, these plaintiffs have absolutely no factual basis for alleging, or for even believing, that Costco has sold YSL-branded goods whose "first sale" was not "authorized" by plaintiffs.

Rather than point to any well-pleaded "infringement claim based on an unauthorized first sale" that appears on the face of the plaintiffs' Amended Complaint, the plaintiffs argue that such a claim should be implied, because Costco's Answer to the plaintiffs' original Complaint had stated as an affirmative defense, "To the extent that the first sale doctrine is an affirmative defense, plaintiffs' claims are barred by the first sale doctrine." Pls.' Opp. Mem. at 1. The plaintiffs argue that, by pleading this defense, Costco purportedly "recognized" that the plaintiffs' original Complaint stated "an infringement claim based on an unauthorized first sale of the goods at issue." *Id.* The plaintiffs' argument is illogical, erroneous, and unsupported.

Costco's initial pleading of a "first sale" defense reflected Costco's understanding that these plaintiffs had made and sold the YSL-branded goods in question and were complaining only of Costco's use of certain theft-resistant display packaging. As exemplified by the *Farouk* case attached hereto as Exhibit 1, some courts have held, in the context of claims challenging re-packaging of branded goods, that "[t]he 'first sale' rule provides that trademark law does not preclude sale of genuine goods bearing a true mark even though such sale is unauthorized, i.e.,

3

without the mark owner's consent." *Farouk*, 2006 WL 2583449, at *2. It was in that sense that Costco originally, and provisionally,[1] stated that "[t]o the extent that the first sale doctrine is an affirmative defense, plaintiffs' claims are barred by the first sale doctrine."

Far from demonstrating that Costco purportedly "recognized" that the plaintiffs' original Complaint stated "an infringement claim based on an unauthorized first sale of the goods at issue" (Pls.' Opp. Mem. at 1), Costco's initial pleading of a "first sale" defense indicated precisely the opposite. *See, e.g., Farouk*, 2006 WL 2583449, at *3 (first sale rule barred infringement claim arising from re-packaging of genuine goods). Like the defendant in *Farouk*, Costco here understood that these plaintiffs were complaining of Costco's <u>re-packaging</u> of <u>genuine</u> YSL-branded goods that these plaintiffs had initially made and sold.

The plaintiffs' erroneous speculation as to the legal reasoning behind Costco's inclusion of this language in its initial (and since withdrawn) pleading (*see* Pls.' Opp. Mem. at 1-3), is no substitute for well-pleaded allegations in the plaintiffs' own Amended Complaint that would

---

[1] In contrast with patents and copyrights, the mere use of a trademark, even a registered trademark, does not constitute infringement; rather, trademark infringement liability depends on a showing that a person's use of a trademark is likely to cause confusion, mistake, or deception of "a significant number of consumers." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). Hence although some case law, like *Farouk* (*see* Exhibit 1), suggests that secondary market purchases and resale of genuine goods are non-actionable under the "first sale" doctrine, the sounder view, which the *Farouk* case also adopts in the alternative, is that a retailer's secondary market purchase and resale of genuine goods is non-actionable so long as such activity does not give rise to any likelihood of confusion. *See Farouk*, 2006 WL 2583449, at *3 ("Target's sale of Farouk hair care products, as packaged in sets by Pro's Choice, cannot cause confusion because the products were manufactured by Farouk and sold without alternation."). Costco has consistently taken the position in this litigation that "trademark law does not vest in [the plaintiffs] any right to prevent Costco from purchasing and reselling genuine YSL-branded goods in secondary markets." Costco's October 2, 2007, Objections and Memorandum of Law in Support of Objections to Magistrate Judge's Order [hereinafter, "Costco Mem."] at 2. Costco's Answer to the plaintiffs' Amended Complaint does not rely on the "fist sale" doctrine.

constitute "<u>plausible grounds</u>" for believing that <u>some</u> "unauthorized" "initial sale" actually occurred and was a source of goods to Costco. *Twombly*, 127 S. Ct. at 1965 (emphasis added). Here, the plaintiffs' Amended Complaint points to absolutely nothing—no times, no places, no persons, no transactions, no events, no analyses, no circumstances—<u>nothing</u> as could constitute a factual or evidentiary basis for alleging (or even believing) that Costco has sold YSL-branded goods whose "initial sale" was not "authorized" by these plaintiffs.

The plaintiffs state that they want "to find out, first, who Costco bought the goods from, and then work up the distribution chain and see whether or not, in fact, the first sale was authorized." Pls.' Opp. Mem. at 2. That is to say, for all these plaintiffs know or have alleged, the "first sale" of the YSL-branded goods in question <u>was</u>, in fact, "authorized." The plaintiffs have presented nothing more than a <u>theoretical possibility</u> that a worldwide investigation of suppliers to suppliers to suppliers to suppliers to Costco might, or might not, uncover some transaction, somewhere in the world, in which some person made what the plaintiffs would characterize as an "unauthorized" "first sale" of YSL-branded goods that might, or might not, have resulted in a source of goods to Costco.

The plaintiffs' opposition conspicuously fails to cite *Twombly*, or to make any argument that the Amended Complaint in this case states any facts that constitute "plausible grounds" for believing that there was an "unauthorized" "first sale" of the YSL-branded goods at issue. The Amended Complaint here pleads far less in the way of facts than what the Supreme Court held insufficient, in *Twombly*, to justify invocation of coercive discovery mechanisms. The Magistrate Judge did not cite or receive briefing on *Twombly*, and did not analyze the sufficiency of the Amended Complaint under a correct legal standard. By permitting these plaintiffs to obtain compelled disclosure of highly confidential trade secret information that may, or may not,

5

eventually prove relevant to those unpleaded theoretical possibilities, the Magistrate Judge's September 25 Order effectively permits the plaintiffs to evade entirely the pleading requirements set forth in *Twombly* and Rule 11 of the Federal Rules of Civil Procedure, and forces Costco to produce trade secret information in support of an unpleaded theory that Costco was denied any opportunity to challenge, by motion or otherwise.

Costco respectfully submits that the lifeblood of its business cannot properly be put at grave risk based on nothing more than a lawyer's unsupported assertion that someone, somewhere upstream of Costco's immediate supply source(s) might—or might not—have made what the plaintiffs now characterize as an "unauthorized" "first sale" of goods that Costco eventually purchased and resold. Plaintiffs' counsel told the Court on July 9 that, insofar as the plaintiffs could tell, the goods in question were "authentic." Dabney Decl. ¶ 5. The plaintiffs presumably know the identities of all persons that could have made "first sales" of authentic YSL-branded goods over the past three years. And yet the plaintiffs have made no showing, nor have they even attempted to show, that they cannot find out, from their own licensees, whether any supposedly "unauthorized" "first sale" has occurred. The plaintiffs' stated desire to "find out, first, who Costco bought the goods from, and then work up the distribution chain and see whether or not, in fact, the first sale was authorized" (Pls.' Opp. Mem. at 2), is a most indirect and destructive way of investigating what the plaintiffs purportedly seek to know, especially given the plaintiffs' total failure, to date, to disclose any basis whatsoever for believing that there is any "unauthorized" "first sale" to be found at the end of such a destructive process in any event.

Sustaining Costco's objections would leave these plaintiffs perfectly free to file, if they chose to do so, a complaint that clearly and forthrightly states "an infringement claim based on

6

an unauthorized first sale of the goods at issue." Pls.' Opp. Mem. at 1. If the plaintiffs think they have any bona fide grounds for asserting such a claim, they can fairly and forthrightly state it in a complaint that would allow fair testing of its sufficiency by pre-answer motion (as was done in *Twombly*) and, if necessary, pretrial and trial processes that are appropriate to a claim that Costco's <u>sale</u> of <u>goods</u>, as distinct from Costco's <u>use</u> of theft-resistant <u>display packaging</u>, supposedly infringes trademark rights of these plaintiffs.

### III. PLAINTIFFS AVOWEDLY SEEK TO CUT OFF COSTCO'S SUPPLIES OF GENUINE YSL-BRANDED GOODS.

The plaintiffs' assertion that Costco supplier information "has no independent business value to YSL" (Pls.' Opp. Mem. at 16) is patently untrue. These plaintiffs <u>avowedly</u> seek to cut off Costco's supplies of genuine YSL-branded goods. The plaintiffs state that they do not sell YSL-branded products to "off-price retail chains such as Defendant." Am. Compl. ¶ 14. The plaintiffs further assert that Costco purchased YSL-branded goods in "unauthorized channels of distribution." *Id.* ¶ 19. And yet the plaintiffs in this case have done virtually nothing <u>except</u> attempt to identify the so-called "unauthorized channels" through which Costco has purchased the genuine YSL-branded goods at issue. The present case is a quintessential one in which trade secret information is being sought that, if obtained, could be put to immediate commercial use by the requesting party, and would if used cause immediate and irreparable harm to Costco. The Magistrate Judge properly so recognized in granting a stay of the September 25 Order.

If plaintiffs' trademark counsel in this case was engaged in no other representation for the plaintiffs apart from prosecuting the particular claims alleged in the Amended Complaint, and if plaintiffs' counsel gave an undertaking that, for a period of years in the future, they would do no further work for the plaintiffs as to which Costco supplier information would be relevant, then

7

that would be a different matter. But nothing remotely like such an undertaking is presented here.

As illustrated by the plaintiffs' pending request dated October 9, 2007, seeking leave to file a Second Amended Complaint in this action, the plaintiffs' current counsel have trademark-related responsibilities that extend far beyond the particular claims that were pleaded in the Amended Complaint in this action. The plaintiffs do not explain how their trademark enforcement counsel, if provided with Costco supplier identities, could possibly continue acting for the plaintiffs on YSL trademark enforcement matters without being influenced in what advice they would give, or what steps they would take, in furtherance of their clients' openly-stated commercial objectives.

The situation here is highly analogous to the one at issue in *Infosint S.A. v. H. Lundbeck A.S.*, 2007 WL 1467784 (S.D.N.Y. May 16, 2007) (Ellis, M.J.). There, as here, outside patent counsel for a party had ongoing responsibilities that necessarily would have been influenced by knowledge of the opposing party's trade secret information. *Infosint S.A.*, 2007 WL 1467784, at *3-5. The role occupied by plaintiffs' outside trademark counsel here is exactly the same: steps taken to investigate "unauthorized" distribution of genuine YSL-branded goods in the United States could not but be affected by knowledge of who has supplied Costco with such goods.

The Amended Complaint simply does not state any legally sufficient basis for ordering disclosure of Costco trade secret supplier identities in this case. But even if the plaintiffs had demonstrated that such disclosure was both "relevant" and "necessary" to the litigation of well-pleaded claims in this case—which the plaintiffs have not done —the Magistrate Judge acted contrary to law in ordering disclosure of trade secret information to legal agents of these plaintiffs who have given no undertaking to refrain for an appropriate period of time from

engaging in any further work for these plaintiffs as to which the trade secret information would be relevant.

## CONCLUSION

For the reasons set forth above and in Costco's original Rule 72(a) objections filed on October 2, 2007, the Court should set aside the September 25 Order as clearly erroneous and contrary to law, insofar as it directs Costco to disclose trade secret supplier identities to outside trademark counsel for the plaintiffs. The existing stipulated and "so ordered" Case Management Schedule should be maintained.

Dated:   New York, New York
         October 15, 2007

Respectfully submitted,

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By: _____
      James W. Dabney
      Darcy M. Goddard
      Alexander T. Korn

One New York Plaza
New York, New York 10004-1980
(212) 859-8000

Attorneys for Defendant
Costco Wholesale Corporation

557637

9