EXHIBIT 3

```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                        :
 4   YVES SAINT LAURENT PARFUMS, S.A.,   :   07-CV-3214 (LBS)
      et al.,                           :
 5                                       :
                       Plaintiffs,       :   October 22, 2007
 6                                       :
                  v.                     :   500 Pearl Street
 7                                       :   New York, New York
     COSTCO WHOLESALE CORPORATION,       :
 8                                       :
                       Defendant.        :
 9   ------------------------------------X

10
          TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
11             BEFORE THE HONORABLE HENRY B. PITMAN
               UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:

14
     For the Plaintiffs:          LOUIS SHERMAN EDERER, ESQ.
15                                Arnold & Porter, LLP
                                  399 Park Avenue
16                                New York, New York  10022

17   For the Defendant:           JAMES WILSON DABNEY, ESQ.
                                  DARCY GODDARD, ESQ.
18                                Fried, Frank, Harris, Shriver &
                                   Jacobson
19                                One New York Plaza
                                  New York, Ne York  10011
20
     Court Transcriber:           CARLA NUTTER
21                                TypeWrite Word Processing Service
                                  356 Eltingville Boulevard
22                                Staten Island, New York 10312

23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1          THE CLERK:  Yves Saint Laurent v. Costco.  Counsel,

2  please state your names for the record.

3          MR. EDERER:  Louis Ederer for Arnold & Porter for the

4  plaintiffs.

5          MR. DABNEY:  James Wilson Dabney and Darcy Goddard

6  for the defendant.

7          THE COURT:  All right.  Good afternoon.

8          Thank you for your patience.  Judge Sand called me

9  this morning and asked me to try to have a conference as soon

10  as possible.  He's picking a jury in another matter and was

11  unable to do it for that reason.

12          There are two issues raised in the correspondence of

13  October 19th and October 22nd.  I guess the first is let's,

14  first, talk about the 30(b)(6) deposition.  Were there two

15  30(b)(6) notices or one 30(b)(6) notice?  Why don't you tell me

16  what the chronology is.

17          MR. DABNEY:  Your Honor, the chronology very simply

18  is that in September we attempted to get the plaintiff to tell

19  us how it had gone about complying with the document requests,

20  what search terms that it used and so on.  We did not receive

21  any information at all on that subject so we served a Rule

22  30(b)(6) deposition notice that was returnable originally on

23  October 2nd.

24          THE COURT:  That was served when?

25          MR. DABNEY:  That was served in mid-September as I

3

1  recall.  Then we had the hearing before Your Honor and we had

2  only until October 2nd to serve our Rule 72 objections to the

3  order with regard supplier data and so we told opposing counsel

4  that we were going to continue the deposition to a subsequent

5  date because we couldn't do both on the same date.  Then on

6  October 3rd we renoticed the deposition for last Friday, the

7  19th, it was the exact same deposition notice.

8          THE COURT:  Okay.  At some point did Mr. Ederer call

9  you and articulate objections to this mid-September notice?

10          MR. DABNEY:  The only comment I can ever recall Mr.

11 Ederer making was as we were walking out of Your Honor's

12 courtroom he made a comment about why I was noticing up a

13 deposition with regard to their designee but I mean it was a

14 comment that lasted about five seconds and there was nothing

15 like the kind of discussion and legal argument that's presented

16 here in this letter and I mean we -- I don't know what --

17 particularly given we have repeatedly requested the plaintiff,

18 we originally wanted to work out mutually agreed protocols for

19 electronic document searches and we got no cooperation with

20 that, then when they unilaterally produced documents without

21 telling us how they had done it.  We wrote them, I can provide

22 the Court with repeated correspondence in which we asked us

23 tell us the search terms you used and tell us the names and

24 locations of the computers you searched and the consistent

25 response was nothing.  They wouldn't tell us anything.  So we

4

1   felt we had no choice but to serve a deposition notice which

2   simply would call upon the plaintiff to tell us what they would

3   not tell us in correspondence; just produce a witness that

4   tells us where you looked and how you looked and what search

5   terms you looked at.  It doesn't seem to me that there was

6   anything the slightest bit controversial or unusual about it

7   and in fact there hasn't really been until this letter I

8   received this morning.  This is the first articulation of an

9   explanation as to why they felt that they could just not show

10  up for the deposition.

11        THE COURT:  Was there any communication between you

12  and Mr. Ederer concerning the deposition scheduled for the 19th

13  after you served the notice on October 3rd?  After you served

14  the notice on October 3rd did he ever call you and voice

15  objection to the notice?

16        MR. DABNEY:  No.

17        THE COURT:  Okay.  All right.  Anything else you want

18  to tell me about the deposition that I haven't given you a

19  chance to tell me?

20        MR. DABNEY:  My associate is reminding me is that's

21  not pertinent to our deposition but during the week of October

22  3rd we had notified them that we would make our witnesses

23  available and they declined to go forward with our depositions

24  for reasons that I guess they felt they wanted to have more

25  document production before they went forward with ours.  But as

5

1  far as our attempt to get them to tell us how they produced

2  documents to us there was absolutely no communication; letter,

3  e-mail, nothing from between October 3rd to October 19th.

4          THE COURT:  All right.  Mr. Ederer, did you ever tell

5  Mr. Dabney why you weren't going to be showing up for the

6  deposition?

7          MR. EDERER:  No, Your Honor.

8          THE COURT:  Did you ever tell him after the October

9  3rd notice that you weren't going to be complying with the

10 notice of deposition?

11         MR. EDERER:  Yes, Your Honor.

12         THE COURT:  What did you tell him?

13         MR. EDERER:  We had a conversation on the telephone

14 about whether or not we were going to go forward with my

15 depositions that I noticed.

16         THE COURT:  When was this conversation?

17         MR. EDERER:  It was around October 3rd, Your Honor.

18         THE COURT:  Go ahead.

19         MR. EDERER:  In the course of that conversation I

20 told Mr. Dabney, first, that I wasn't prepared to proceed with

21 my depositions until the Court determined (a) the pending

22 dispute with respect to supplier documents which Your Honor had

23 heard and decided and which were then the subject of objections

24 and (b) the issue of case management scheduling, when that was

25 going to be determined.  As you know, the case management

6

1  schedule has now been extended by ninety days.

2          THE COURT:  Yes.

3          MR. EDERER:  I then told Mr. Dabney also that with

4  respect to the deposition notice that he had served that I

5  wasn't prepared to bring a witness from Paris to testify -- and

6  by the way, he did not notice my New York based client for this

7  deposition, only my Paris based client -- and I specifically

8  told him I was not planning to bring my Paris based client to

9  New York for a 30(b)(6) deposition about these topics, that we

10  were going to have one 30(b)(6) deposition and not two and I

11  also have compiled at least four letters that I had sent in

12  September and October to opposing counsel explaining what we

13  did in our search for electronic documents and regular

14  documents.  So nothing that you just heard from Mr. Dabney is

15  true, Your Honor.  We had a direct, specific discussion about

16  this and I also have submitted several letters indicating what

17  it is we've done to search for documents.

18          THE COURT:  Did this October 3rd conversation take

19  place, Mr. Dabney?

20          MR. DABNEY:  I have absolutely no recollection of

21  that and I'm very surprised to hear it to state it here to Your

22  Honor.  I mean I don't know what to say about it.  October 3rd

23  was the day after we filed our Rule 72 objections and I mean I

24  don't know what to say about it.  We would never have prepared

25  to go forward with this deposition but --

7

1          MR. EDERER:  Your Honor, may I ask you to ask Mr.

2    Dabney if he remembers if I told him that I was not bringing a

3    witness from Paris to testify about these topics?  I

4    specifically told him that.

5          THE COURT:  Well, I don't know, should we have an

6    evidentiary hearing?  You guys want to testify?  Be subject to

7    cross-exam?

8          MR. DABNEY:  Your Honor, I would be happy to do that

9    but the issue at the moment is first of all this plaintiff

10   wouldn't need to bring somebody from Paris, they can designate

11   anybody they want to give evidence on the part of the

12   corporation, number one, number two, it's well-established that

13   a corporation that brings a suit in the District can't refuse

14   to appear for deposition in the District and we have reason to

15   want to know what their documents are before taking substantive

16   depositions on other topics so, you know, if I were in the

17   process of trying to expand drastically the scope of this

18   lawsuit I would look for reasons to not go forward with

19   depositions myself but regardless of why they didn't show up I

20   haven't yet heard any argument why they shouldn't appear for

21   deposition on the topics in the notice.

22         THE COURT:  Well, with respect to the cost for the

23   busted deposition from last Friday it seems to me that the only

24   cost that's really in play is the court reporter's appearance

25   fee.  The prep time, I don't think, is recoverable in any event

8

1 because I think the deposition is appropriate and you would

2 have had to incur the prep time in any event.  So I don't think

3 the prep time -- the attorneys' time for preparation is

4 recoverable.

5          What's the appearance fee; $100.00?  It's usually

6 $100.00 or $200.00.  Isn't that it?

7          MR. DABNEY:  It's not that great.  Around that.

8          THE COURT:  Yes.  You know, look, if counsel want to

9 proceed with an evidentiary hearing on the issue where both

10 sides testify and are subject to cross-examination I'm happy to

11 do that or I'll decide it on the papers, the papers that are in

12 front of me right now.  What do counsel want to do?

13          MR. EDERER:  Your Honor, I'm happy for you to decide

14 on the papers.  I would just ask for the opportunity to submit

15 to you the four or five letters that we have given to the other

16 side in which we detailed what we've done to look for discovery

17 materials and then you can decide it.

18          THE COURT:  Mr. Dabney?

19          MR. DABNEY:  We're happy to proceed on the papers as

20 well and I would respectfully submit -- I mean counsel is free

21 to submit the letters but I believe the deposition is

22 appropriate.

23          THE COURT:  Well, I mean with respect to last

24 Friday's deposition the letters establish that the notice was

25 served, there is no paper trail establishing that objections

9

1   were lodged to the deposition and there was a written advice to

2   Fried, Frank that a witness would not be appearing in response

3   to the 30(b)(6).

4         It appears to me that Fried, Frank is entitled to

5   recover the cost that was unnecessarily incurred as a result of

6   the busted deposition on Friday but I think those costs are

7   limited to the court reporter's appearance fee.  As I said, the

8   prep time is something that is not really wasted because the

9   deposition should proceed, not that prep time is going to be

10   ultimately used and not wasted.

11        With respect to whether or not the deposition should

12   proceed, Mr. Ederer, if you want to submit the letters to me

13   that you believe make the 30(b)(6) unnecessary, I'm happy to

14   take a look at them.  I mean ordinarily a 30(b)(6) of the type

15   noticed by defendants here is appropriate.

16        You know, look, I'll give you a chance to make your

17   record.  If you want to submit to me the letters that you

18   believe make it unnecessary, I'm happy to consider them but

19   ordinarily a 30(b)(6) concerning what was done to produce

20   documents is appropriate.

21        All right.  Can you fax me those letters by tomorrow

22   without argument?

23        MR. EDERER:  Yes, Your Honor.

24        THE COURT:  Okay.  Because if you make argument I've

25   got to give Mr. Dabney a chance to respond so just submit the

10

1   letters.

2           All right.  Mr. Dabney, I appreciate that a great

3   many people whose opinions I value highly regard the County of

4   Kings as the center of the known universe but why are you

5   commencing a separate action in Brooklyn?

6           MR. DABNEY:  The reason is very simple, Your Honor,

7   the threatened claim that is the subject of the suit has no

8   connection to the claims that are pending here, number one.

9   The nature of the claims that were threatened is fundamentally

10  different than the claim that was originally brought here,

11  number two.  The way that a counterfeiting type --

12          THE COURT:  Let me ask you this.  How many cases

13  where Fried, Frank has a choice between the Southern and

14  Eastern Districts -- and I don't mean this to cast any

15  aspersions on the Eastern District, my question is really just

16  driven by travel time -- how many times when you have a choice

17  between the Southern and Eastern do you commence in the

18  Eastern?

19          MR. DABNEY:  The truth of the matter is Costco is 100

20  percent indemnified by a supplier located in the Eastern

21  District of New York so one of Costco's considerations in this

22  case is minimizing the cost to the person that's actually

23  paying for those proceedings which is Quality King.

24          THE COURT:  And it's going to be cheaper for them to

25  go to Brooklyn than to come to the Southern District?

11

1          MR. DABNEY:  They're in Ronkonkoma, Your Honor.

2          THE COURT:  Yes.  Yes.

3          MR. DABNEY:  That is their home district and I

4    believe --

5          THE COURT:  Right.  No, Ronkonkoma is not a district,

6    it's a town.  It's the Eastern District.  Okay?

7          MR. DABNEY:  It is in the Eastern District and it was

8    felt that for all kinds of reasons it was an entirely

9    legitimate and in fact the most convenient location for the

10   subject matter of that case which is going to involve entirely

11   events in the Eastern District; the people who sourced it,

12   supplied it, are paying for it, have been dealing with YSL are

13   located in the Eastern District.

14         THE COURT:  Well, there are a lot of cases involving

15   motions for transfer under 1404 between the Southern and

16   Eastern Districts where the motions are routinely rejected out

17   of hand because there's no material difference between the

18   Southern and Eastern Districts and it just seems to have --

19   look, it seems to me to have two Judges tied up in this

20   dispute.  It is an inefficient use of the respective clients'

21   resources and an inefficient use of the Court's resources.

22         Now, look, as a technical matter I don't think either

23   or even Judge Sand can do anything with respect to the Eastern

24   District action.  I think -- maybe I'm wrong about that -- but

25   I think Mr. Ederer has to make his application to Judge Bianco.

12

1   I don't think that a Southern District judicial officer can

2   take the case away from an Eastern District judicial officer

3   but, you know, it seems to me to make little sense to be

4   litigating in two separate districts what are not entirely

5   dissimilar disputes.

6            MR. DABNEY:  Well, other than the fact that they both

7   arise under the Trademark Act, I would say the similarity ends

8   there.  They are supplied by different people.  They are

9   completely different kinds of claims; one is a claim that the

10  product is counterfeit in which we have an indemnity, the

11  other, we thought, was a product about packaging or, now, the

12  goods we're selling as to which it's different products,

13  different suppliers, different witnesses, everything.  So the

14  time it's going to take -- I mean the draft complaint that they

15  want to file named twenty John Doe defendants and we got

16  Quality King whose nickel this is.  So it really is a very

17  different case.  We thought we were here on a case in which it

18  was Costco's packaging and Costco was responsible and we

19  thought we were going to have a very short, compact proceeding

20  and that was one thing.  This counterfeiting thing is a whole

21  other kettle of fish.  Costco has pulled the product from the

22  shelves, there's indemnity involved, it's a completely

23  different kettle of fish.  So I can see why the plaintiff might

24  want to try to smoosh the two together to make the one look --

25  you know, to color the Court's view of the one with the other

13

1    but they really are two entirely discrete disputes and I don't

2    think that the extremely short time frame that we agreed to in

3    a case where we thought all you needed to know to decide the

4    case is to look at the product on the shelf and decide whether

5    or not it's confusing to people can fairly --

6         THE COURT:  Well, let me ask you a question.  You

7    filed the case in the Eastern District.  Do you have a choice

8    between designating Brooklyn or Islip?

9         MR. DABNEY:  I don't know whether we have that

10   choice.  We designated Brooklyn.

11        THE COURT:  Well, is there a reason why you didn't

12   try to Islip if you were concerned about the convenience of a

13   client in Ronkonkoma?

14        MR. DABNEY:  My associate tells me we are in Islip.

15        THE COURT:  You are in Islip.  I thought -- is Judge

16   Bianco in Islip?

17        MR. DABNEY:  I was not aware of that.

18        THE COURT:  It's assigned to Judge Bianco and

19   Magistrate Judge Orenstein.  Are they in Islip?

20        MR. DABNEY:  Well, Michael L. Orenstein used to be in

21   Uniondale but, I guess, they've got a new courthouse.

22        THE COURT:  I don't know where Judge Bianco is.  Is

23   he in Islip?

24        MS. GODDARD:  I looked it up this morning, Your

25   Honor, he's in Islip.

14

1          THE COURT:  He is in Islip?

2          MS. GODDARD:  Yes.

3          THE COURT:  Well, as I said before I think plaintiff

4    has to make its application before Judge Bianco but, well, it

5    seems to me like --

6          MR. DABNEY:  Your Honor, from what I understand --

7          THE COURT:  It seems odd that a client wants to pay

8    Fried, Frank's attorneys to travel out to Islip as opposed to

9    traveling to Foley Square.  I guess, I think the issue is to --

10   the action in Islip is a question for Judge Bianco in the first

11   instance.  I don't think any Judge in the Southern -- as I

12   understand the law no Judge here can take that case from the

13   Eastern District.  The Eastern District has to make its own

14   decision.

15          I mean, Mr. Ederer, is your understanding different?

16          MR. EDERER:  That's correct, Your Honor, and that's

17   what I believe I said in my letter to you but I also said that

18   we've had a motion to amend our pleading in this case pending

19   since October 9th and on October 15th Mr. Dabney wrote to you

20   and said that they would be serving opposition to that motion

21   in due course and then went on to say that if that motion gets

22   granted then he will join in attempting to extend the case

23   management schedule.  There's a whole paragraph about what he

24   was going to do with respect to the motion to amend and not

25   once does he say, and we are cooking up a complaint that we're

15

1   planning to serve in Islip at the same time.

2          THE COURT:  Let me ask all counsel to try to focus on

3   generating light and not heat.  Okay?

4          MR. EDERER:  Sure.  Your Honor, I would submit,

5   though, that there's no practical difference between the motion

6   to amend that we filed and if we had filed a separate action

7   here in the Southern District and ask that it be transferred as

8   a related case to Judge Sand and then ask that the cases were

9   consolidated and I think that we have a right to have our

10  motion to amend decided and I think it's a good motion, a valid

11  motion for the reasons in our application.

12         THE COURT:  And that was served on the 9th?

13         MR. EDERER:  Yes.

14         THE COURT:  So the opposition is due tomorrow?  The

15  23rd?

16         MR. DABNEY:  Due the 24th.  We're going to file on

17  Wednesday.

18         THE COURT:  Is it due tomorrow or the 24th?  Isn't

19  due in ten days?  Ten business days?

20         MR. DABNEY:  I believe it's due on the 24th.  There

21  was an intervening holiday.

22         THE COURT:  Fair enough.  You're right.

23         Well, look, do you know what the appearance fee was

24  for Friday's deposition?

25         MR. DABNEY:  I could find that out.  I believe Your

16

1    Honor is correct that --

2           THE COURT:  Usually it's about $100.00, something in

3    that neighborhood.

4           MR. DABNEY:  I think Your Honor is --

5           THE COURT:  Do you want to settle on $100.00 or do

6    you want to spend more time -- drafting the correspondence is

7    going to chew up more time probably than the differential --

8           MR. DABNEY:  I think, actually, it's more like

9    $150.00.  I'll take $150.00.

10          THE COURT:  Any objection to $150.00 or you want to

11   spend $500.00 litigating over whether it's $100.00 or $150.00?

12   Mr. Ederer?

13          MR. EDERER:  Well, my objection is to the award, Your

14   Honor, not to the amount.  I clearly had a conversation with

15   Mr. Dabney about this and he clearly understood what I was

16   talking about.

17          THE COURT:  All right.  I'm deciding it on the paper

18   trail.  I'm not --

19          MR. EDERER:  I understand.

20          THE COURT:  -- making credibility findings with

21   respect to the individuals before me.  Okay?  I want to make

22   that clear.  I'm not crediting one side over the other, I'm

23   looking at the paper trail alone.

24          All right.  I'm going to direct that within ten days

25   of today the plaintiff remit to defendant $150.00 representing

17

1  the appearance fee for last Friday's -- for the deposition that

2  didn't take place and, Mr. Ederer, you're going to fax me the

3  letters purporting to disclose to advise your adversary about

4  how the document production was assembled; correct?

5           MR. EDERER:  Correct.

6           THE COURT:  Okay.  All right.

7           Anything else from either side?

8           MR. DABNEY:  Yes, Your Honor, I just would like the

9  record to include a copy of our letter of October 3rd which --

10          THE COURT:  Unless you docket it, it's not going to

11 be in the record.

12          MR. DABNEY:  Okay.  Well, can I -- I mean I can fax

13 it to Your Honor as well.

14          THE COURT:  Well, if you fax it to me it won't be

15 docketed.

16          MR. DABNEY:  Okay.

17          THE COURT:  We're not file clerks.  We don't file

18 with the clerk's office.  If you want to file, file it with the

19 clerk's office.

20          MR. DABNEY:  Okay.  Well, I just wanted to have Your

21 Honor see what it was we had specifically asked for and what we

22 didn't get.

23          THE COURT:  No, I have your notice of deposition.

24 When you say what you asked for and what you didn't get, what

25 are you referring to?

18

1          MR. DABNEY:  We had written, for example, on the 3rd

2    of October and said, "Please provide a list of all electronic

3    storage media; servers, data bases, back-up tapes, hard drives,

4    e-mail, Blackberries, etc., that have been searched for

5    potentially responsive ESI, (2) a list of all electronic

6    storage media plaintiffs are still searching and a list of all

7    search terms, document custodians and criteria utilized by the

8    plaintiffs when searching for any electronic storage media for

9    potentially responsive ESI."  So we had made fairly specific

10   requests that they tell us what they had done and it was

11   because we had not received any response to those requests that

12   we felt the necessity to go forward with a 30(b)(6) deposition.

13          I interpret Your Honor's comments to indicate that

14   ordinarily the kind of deposition we want to take is

15   appropriate and that if we renotice the deposition it should

16   proceed at a mutually convenient date.

17          THE COURT:  Well, after I get Mr. Ederer's submission

18   you might not even need to renotice it.  I may get Mr. Ederer's

19   submission and decide that you're entitled to the deposition

20   and if that's the case then I'm going to enter a summary order

21   saying that the deposition shall take place on a mutually

22   convenient date no later than X.  Okay?

23          MR. DABNEY:  Mr. Ederer's letter of today also raises

24   an issue as to the location of the deposition.  I believe it

25   clearly is a deposition that should proceed in the Southern

19

1    District of New York and the plaintiff can put up anybody they

2    want.  They don't have to bring someone from Paris if they

3    don't want to.

4            THE COURT:  Mr. Ederer, since this is the venue your

5    client has chosen why should the deposition not take place in

6    New York?

7            MR. EDERER:  Your Honor, all I was saying was let's

8    have one 30(b)(6) deposition, not two.  If I have to bring

9    somebody from Paris --

10           THE COURT:  Well, a 30(b)(6) deposition can cover a

11   number of topics which may or may not be related.

12           MR. EDERER:  I understand, Your Honor.

13           THE COURT:  So I mean sometimes there's nothing --

14   sometimes you need multiple witnesses at 30(b)(6) depositions

15   so the prospect of multiple 30(b)(6) depositions is not an

16   obstacle.  I mean it's not a problem.  I mean it happens all

17   the time.  I mean if you have a 30(b)(6) on document discovery,

18   you could have a 30(b)(6) on liability issues, you could have a

19   30(b)(6) on damages issues and there may be three different

20   witnesses on all three topics.  You know, it's not like you're

21   deposing an individual.  When you're deposing an individual

22   often times it makes sense to have a single deposition of an

23   individual and that's what the rules contemplate but because a

24   30(b)(6) can cover multiple and unrelated topics I don't know

25   why a 30(b)(6) should be limited to one session or one notice

20

1   of deposition.

2         MR. EDERER:  I understand, Your Honor, but on the

3   other hand if you look at the situation here my client that's

4   located in New York was not noticed and there's a reason for

5   that, they were trying to make it difficult and burdensome

6   because they only noticed the client that's based in Paris.  If

7   they want to know under oath what my client in Paris did to

8   look for documents why can't we do it by written

9   interrogatories or something like that?  We'll bring a witness

10  here to testify about the substantive aspect of the case and if

11  I could just point out one other thing, Your Honor?

12        THE COURT:  The other thing is, you know, be careful

13  about what you ask for because you may get it.  There's still a

14  Local Rule that says if a deposition takes place more than 150

15  miles from the courthouse -- well, actually, it's the other

16  way, they'd have to eventually -- strike that.  Nevermind.

17        MR. EDERER:  I understand what Your Honor is saying.

18  If I could say one more thing?

19        THE COURT:  Yes.

20        MR. EDERER:  This is a case where my client

21  discovered some goods on sale at Costco.  We don't have a lot

22  of documents relating to what they did.  We're not sure

23  internally what they did.  They've got all those documents and

24  they are required to produce them.  We don't have a whole hell

25  of a lot of documents to produce in this case because --

21

1          THE COURT:  Please moderate your language.

2          MR. EDERER:  Sorry, Your Honor.

3          Because the only documents we have about this case

4   are what we discovered at Costco and then there are a lot of

5   privilege documents about what to do about what was discovered

6   at Costco.  They're asking us to do a system-wide search of

7   everybody in our system to see what documents we have about

8   what went on at Costco and there's only a few people in the

9   company that were involved in the process of deciding to pursue

10  a claim against Costco.

11         THE COURT:  I think the issue right now if I

12  understand correctly, really, is just what search you did and

13  not the sufficiency or insufficiency of the search.

14         MR. EDERER:  Yes, and in a letter that we gave them

15  dated September 18, 2007 we sent them a three page letter

16  telling them all of the searches that we did.

17         THE COURT:  All right.  Well, I'll get that letter

18  and if I have questions about whether or not there still is a

19  need for a 30(b)(6) I will submit something or I'll advise Mr.

20  Dabney to submit something explaining that.

21         All right.  Anything else from counsel that we should

22  be considering?

23         MR. DABNEY:  I can't think of anything else right

24  now, Your Honor.  We told Mr. Ederer we'll be supplying the

25  documents Your Honor ordered produced by today or tomorrow.

22

1          THE COURT:  All right.  Mr. Ederer, anything else?

2          MR. EDERER:  The only other thing I can think of,

3  Your Honor, is that I think we also have a dispute about where

4  counsel's witnesses are going to be produced for deposition.

5  Although, for now we don't have dates for those depositions.

6  So I was hoping I would be able to work something out with Mr.

7  Dabney relating to that.

8          THE COURT:  Well, why don't you try to do that.  I

9  mean there's a treatise authored by Silberberg, is the lead

10 author, entitled "Civil Practice in the Southern District of

11 New York" which clearly and succinctly sets forth the general

12 rules on the locations of depositions for plaintiffs and

13 defendants.

14          Ordinarily, the default for defendant is the

15 defendant is deposed where he or she resides or works.  That's

16 the general rule.  If there are reasons to depart from the

17 general rule I'm happy to hear any arguments you want to make

18 but the rules are different for plaintiff and defendant.

19          MR. EDERER:  I understand.

20          THE COURT:  Okay.  All right.

21          MR. DABNEY:  Thank you, Judge.

22          THE COURT:  Anything else from anybody?  Okay.

23          ALL ATTORNEYS:  Thank you, Judge.

24                        * * * * *

25

23

1                              * * * * *

2       I certify that the foregoing is a transcript from an

3   electronic sound recording of the proceedings in the above-

4   entitled matter.

5

6                   _____

7                              CARLA NUTTER

8

9   Dated:  October 24, 2007

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25