# **EXHIBIT B**

# ARNOLD & PORTER LLP

Louis S. Ederer
Louis.Ederer@aporter.com

212.715.1102
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

October 19, 2007

**BY HAND**
Hon. Leonard B. Sand
United States District Judge
Southern District of New York
500 Pearl Street, Room 1650
New York, New York 10007

**BY HAND**
Hon. Henry Pitman
United States Magistrate Judge
Southern District of New York
United States Courthouse
500 Pearl St., Room 750
New York, New York 10007

**BY ECF — COURTESY COPY BY FEDEX**
Hon. Joseph F. Bianco
United States District Judge
Eastern District of New York
100 Federal Plaza, Room 920
Central Islip, New York 11722

Re:    Yves Saint Laurent Parfums S.A. and YSL Beaute Inc., v. Costco
Wholesale Corp., 07 cv 3214, SDNY (LBS) (HP) ("Action No. 1")

Costco Wholesale Corp. v. Yves Saint Laurent Parfums S.A., YSL Beaute
Inc., and Quality King Distribs, Inc., 07 cv 4333, EDNY (JFB) ("Action
No. 2")

Dear Judge Sand, Judge Pitman and Judge Bianco:

We represent the Yves St. Laurent parties ("YSL") in the above cases. We regret
having to send this letter, but we need to straighten out what has become a very serious
matter involving recent initiatives by our adversary, Costco Wholesale Corporation
("Costco"), in the above actions.

As Judges Sand and Pitman are aware, there has been recent activity in Action
No. 1, including Judge Sand's October 16, 2007 Decision and Order (a copy of which is
attached as Exhibit A) denying Costco's Rule 72(a) Objections to Judge Pitman's recent

# ARNOLD & PORTER LLP

Hon. Leonard B. Sand
Hon. Henry Pitman
Hon. Joseph F. Bianco
October 19, 2007
Page 2

discovery order and granting YSL's application to extend the Case Management Schedule by ninety (90) days. In addition, YSL has had a letter motion pending before Judge Sand since October 9, 2007 (a copy of which is attached as Exhibit B), seeking to amend their complaint to add a claim against Costco for counterfeiting (a copy of YSL's Proposed Second Amended Complaint is attached to YSL's October 9 letter application). Further, it is not as though Costco was unaware of YSL's pending motion to amend — Costco referred to that motion on several occasions in its Rule 72(a) Objections, and indicated in an October 15, 2007 letter to Judge Pitman (a copy of which is attached as Exhibit C) that it would be responding to YSL's motion "in due course." We even wrote a letter to Judge Sand on October 16, 2007 (a copy of which is attached as Exhibit D), asking him to set a briefing schedule and accelerate the hearing on YSL's motion to amend.

As over a week has passed since YSL filed its motion to amend (and more than two weeks have passed since YSL first put Costco on notice of its counterfeiting claim, and informed Costco's counsel that we intended to bring that claim before the Court in Action No. 1 — see YSL's October 2, 2007 letter to Costco, a copy of which is attached as Exhibit E), we could not understand why Costco has not responded to our motion. Last night we learned why. Yesterday, Costco filed Action No. 2, a declaratory judgment complaint against YSL in the Eastern District of New York (a copy of which is attached as Exhibit F), in a case assigned to Judge Bianco, raising the exact same counterfeiting claim included over a week ago in YSL's Proposed Second Amended Complaint, the subject of YSL's pending motion to amend. Indeed, as Your Honors can see, in its complaint in Action No. 2 (at ¶¶ 11-13), Costco actually refers to a "Proposed Complaint" incorporating the counterfeiting claim that YSL "submitted" to Costco, but conveniently neglects to mention that this "Proposed Complaint" is actually the Proposed Second Amended Complaint that is the subject of YSL's pending motion to amend in Action No. 1. Indeed, Costco's complaint in Action No. 2 fails to even mention Action No. 1 or the pending motion to amend. We think that the failure to do so raises serious issues as to the propriety of Costco's pleading in Action No. 2.

It is, therefore, YSL's intention to, at the appropriate time, move to dismiss, stay or transfer Action No. 2 under the first-to-file rule and the Declaratory Judgment Act, for the reason that it is clearly an anticipatory filing made in bad faith. *See, e.g., CGI Solutions, LLC v. Sailtime Licensing Group, LLC,* No. 05 Civ. 4120 (DAB) 2005 WL 3097533, *2-8 (S.D.N.Y. Nov. 17, 2005). By this letter, however, we are merely respectfully asking Judge Sand or Judge Pitman to call an immediate conference so that these very serious issues can be dealt with, and YSL's motion to amend can be heard and

# ARNOLD & PORTER LLP

Hon. Leonard B. Sand
Hon. Henry Pitman
Hon. Joseph F. Bianco
October 19, 2007
Page 3

decided.  We also respectfully ask that Judge Bianco stay or suspend all proceedings in Action No. 2 pending the decision of the Court on YSL's pending motion to amend in Action No. 1.

We stand ready to conference these issues at the Courts' convenience.  Thank you for your consideration.

Respectfully,

ARNOLD & PORTER LLP

By:  _Louis S. Ederer_

Louis S. Ederer

Enclosures

cc:    James W. Dabney, Esq. (By Hand)

# **<u>EXHIBIT A</u>**

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:                          │
│ DATE FILED: 10-16-07            │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------x

YVES SAINT LAURENT PARFUMS S.A.
AND YSL BEAUTE INC.,

                    Plaintiffs,

        v.

COSTCO WHOLESALE CORPORATION,

                    Defendant.

-----------------------------------------x

**Memorandum & Order**

07 Civ. 3214 (LBS)

SAND, J.,

       On September 25, 2007, United States Magistrate Judge Henry Pitman issued a discovery Order compelling Costco to produce information relating to its suppliers of Yves Saint Laurent products. On October 2, 2007, Defendant Costco Corporation filed objections to the Magistrate Judge's Order pursuant to Rule 72(a) of the Federal Rules of Civil Procedure. The Court has considered the arguments raised by Costco and finds them without merit. Judge Pitman's September 25, 2007 Order is hereby AFFIRMED.

       Plaintiffs have requested that the Case Management Schedule be extended for ninety (90) days to allow the parties to complete discovery. Plaintiffs' request for an extension of time is GRANTED.

       SO ORDERED.

Dated: October 16, 2007
      New York, NY

                                _____
                                    U.S.D.J.

# EXHIBIT B

# ARNOLD & PORTER LLP

Louis S. Ederer
Louis.Ederer@aporter.com

212.715.1102
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

October 9, 2007

**BY FEDERAL EXPRESS**
Hon. Leonard B. Sand
United States District Judge
Southern District of New York
500 Pearl Street, Room 1650
New York, New York 10007

Re:   Yves Saint Laurent v. Costco Wholesale Corp., 07 cv 3214 (LBS) (HP)

Dear Judge Sand:

We represent the plaintiffs in the above action. By this letter application, we ask the Court, pursuant to Federal Rule 15(a), to grant plaintiffs leave to file a Second Amended Complaint in this action.

As Your Honor will recall, up until now, this case involved certain Yves Saint Laurent cosmetic products purchased by defendant Costco through unauthorized distribution channels and then repackaged and sold to consumers. The Complaint, filed on April 20, 2007, was amended once previously to include an additional Yves Saint Laurent cosmetic product that plaintiffs were not aware that defendant was selling at the time the Complaint was filed. The Amended Complaint was filed on July 16, 2007.

Last week, it came to plaintiffs' attention that defendant Costco is now also selling counterfeits of plaintiffs' well-known OPIUM fragrance product. We have contacted Costco's counsel and asked Costco several times to remove such product from sale, and for other information, in the hopes of resolving the matter without litigation, but as of today, Costco has not done so. Accordingly, we have prepared, and seek to file, a Second Amended Complaint adding claims with respect to Costco's sale of these counterfeit goods.

We move to amend the existing pleadings and proceed before Your Honor in the interest of judicial economy. As Your Honor is aware, although the instant case was filed in April 2007, the parties have been locked in a four month discovery dispute, and nothing has happened in the case other than the parties' initial exchange of documents. Most recently, Magistrate Judge Pitman, in ruling on the parties' dispute, ordered Costco to produce the documents and information it has been withholding concerning their suppliers of the goods at issue, but Costco has taken Federal Rule 72(a) objections to Judge Pitman's September 25 Order, which are now pending before Your Honor.

# ARNOLD & PORTER LLP

Hon. Leonard B. Sand
October 9, 2007
Page 2

Under Federal Rule 15(a), leave to amend "shall be freely given", provided there is no prejudice to the non-amending party. Fed. R. Civ. P. 15(a); *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). Here, plaintiffs will be suing Costco anyway, so there is no prejudice to Costco in defending plaintiffs' new claims within the present litigation, especially since little has happened in this case to date, and we are still in the earliest stages of discovery, with no depositions having been taken in view of the longstanding discovery dispute. We enclose the proposed amended pleading (without exhibits), which adds a single new count for counterfeiting, and ask that the Court issue an order granting plaintiffs leave to file a Second Amended Complaint forthwith.

We thank the Court for its consideration, and stand ready to conference this matter at the Court's convenience.

Respectfully,

ARNOLD & PORTER LLP

By: _____
Louis S. Ederer

cc:    Magistrate Judge Henry Pitman
       James W. Dabney, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

| | |
|---|---|
| YVES SAINT LAURENT PARFUMS S.A. and YSL BEAUTÉ INC., | Civil Action No. 07 Civ. 3214 (LBS) |
| Plaintiffs, | |
| - against - | **[PROPOSED] SECOND AMENDED COMPLAINT** |
| COSTCO WHOLESALE CORPORATION, ABC CORPORATIONS 1-10, and JOHN DOES 1-10, | |
| Defendants. | |

-------------------------------------------------------- x

Plaintiffs Yves Saint Laurent Parfums S.A. ("YSL Parfums") and YSL Beauté Inc. ("YSL Beauté") (sometimes collectively referred to as "YSL"), by their attorneys Arnold & Porter LLP, complain and allege against defendants Costco Wholesale Corporation ("Costco"), ABC Corporations 1-10 and John Does 1-10 as follows:

## NATURE OF ACTION

1.      In this complaint, YSL seeks injunctive relief and damages pursuant to Sections 32, 43(a) and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and (c); Sections 349 and 360-l of the New York General Business Law; and the common law of the State of New York.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3.     Upon information and belief, Costco is registered to do business, and is doing business in the State of New York and in this judicial district. Venue in this Court is therefore proper under 28 U.S.C. § 1391(b).

## THE PARTIES

4.     Plaintiff Yves Saint Laurent Parfums S.A. is a French corporation with a principal place of business located at 28-34, Boulevard Du Parc 92200 Neuilly-Sur-Seine, France. YSL Parfums is the producer and brand owner of the world famous YVES SAINT LAURENT line of cosmetic, fragrance and beauty products.

5.     Plaintiff YSL Beauté Inc. is a New York corporation with a principal place of business located at 685 5th Avenue, New York, New York 10022. YSL Beauté is the exclusive U.S. importer and distributor of the world famous YVES SAINT LAURENT line of cosmetic, fragrance and beauty products.

6.     Upon information and belief, Defendant Costco Wholesale Corporation is a California corporation with its principal place of business located at 999 Lake Drive, Issaquah, Washington 98027. Costco maintains several locations for the conduct of business in this judicial district.

7.     ABC Corporations 1-10 and John Does 1-10 are corporations or other legal entities and/or individuals whose identities or location are unknown to YSL, and who are also engaged in manufacturing, distributing, offering for sale and selling infringing and/or counterfeit YSL products.

## YSL PARFUMS' VALUABLE TRADEMARKS

8.     YSL Parfums is the owner of all rights in and to numerous trademarks in the United States, which trademarks have come to be well known and to symbolize the company's high quality, luxury product lines.

2

9.     Among the trademarks owned by YSL Parfums are the world famous YSL Design mark, the YVES SAINT LAURENT word mark (collectively referred to as the "YSL Marks") and the world famous OPIUM word mark and package design mark (the "OPIUM Marks"). The YSL and OPIUM Marks are the subject of the following registrations, among others, on the Principal Register in the United States Patent and Trademark Office:

| | | | |
|---|---|---|---|
| YSL (Design mark) | 1,746,720 | 1/19/1993 | Cosmetics |
| YVES SAINT LAURENT | 2,172,541 | 7/14/1998 | Cosmetic products |
| OPIUM | 1,082,145 | 1/17/1978 | Perfume |
| | 3,041,860 | 1/10/2006 | Perfume |

Copies of the trademark registrations for the YSL and OPIUM Marks are attached hereto as Exhibit A.

10.     The registrations for the YSL Marks and the OPIUM Marks are in full force and effect. The registrations for the YSL Marks and for the OPIUM word mark (registration number 1,082,145) have become incontestable pursuant to 15 U.S.C. § 1065.

3

11.    YSL has used the YSL Marks and the OPIUM Marks for many years on and in connection with the sale of high quality products, including cosmetic, fragrance and beauty products.

12.    YSL has expended substantial time, money and other resources in developing, advertising and promoting cosmetic and beauty products bearing the YSL Marks and the OPIUM Marks, and in the presentation of such products to consumers at the point of sale. As a result of these efforts, consumers readily identify merchandise bearing the YSL Marks and the OPIUM Marks as being of the highest quality and as emanating from and being sponsored and approved by YSL Parfums.

13.    The YSL Marks and the OPIUM Marks constitute famous marks under 15 U.S.C. § 1125(c)(1).

14.    Three of the cosmetic and beauty products sold by YSL are its Mascara Volume Effet Faux Cils product (the "Mascara Product"), its Touche Brillance lip care product (the "Lip Care Product") and its OPIUM natural spray perfume product (the "OPIUM Perfume").

15.    In accordance with United States Food and Drug Administration regulations, YSL sells its products, including the Mascara Product, in the United States with an ingredient declaration on the packaging therefor, which ingredient declaration is accessible to the consumer at the point-of-sale.

16.    YSL sells its line of cosmetic, fragrance and beauty products, including products bearing the YSL Marks and the OPIUM Marks, only in company-owned stores, in select duty-free boutiques, and in certain high-end department and specialty stores, including Bloomingdales, Neiman Marcus and Saks Fifth Avenue. YSL does not sell such products to off-price retail chains such as Defendant.

4

17.    In addition to the YSL Marks and the OPIUM Marks, YSL Parfums is also the owner of trade dress rights in its unique and distinctive gold and copper color combination used on packaging for certain of YSL's cosmetic and beauty products, including the Mascara Product (the "YSL Trade Dress"). Photographs of the packaging for the Mascara Product are attached hereto as Exhibit B. The YSL Trade Dress has come to identify YSL as the source of the products bearing such trade dress, and signifies goodwill of substantial value.

18.    The YSL Trade Dress is inherently distinctive. In addition, the YSL Trade Dress has acquired distinctiveness as a result of uninterrupted promotion and sale of products bearing such trade dress, and accordingly has acquired secondary meaning as an indicator of YSL Parfums as the exclusive source of products bearing the YSL Trade Dress.

19.    The YSL Trade Dress is non-functional.

## DEFENDANT'S INFRINGING CONDUCT

20.    YSL has recently discovered that Costco is importing, distributing, advertising, offering for sale and/or selling, in its store locations throughout the United States, repackaged YVES SAINT LAURENT cosmetic and beauty products bearing the YSL marks, including YSL's Mascara and Lip Care Products (respectively, the "Unauthorized Lip Care Product" and the "Unauthorized Mascara Products", and collectively the "Unauthorized Products"). Costco is not an authorized purchaser or reseller of YSL cosmetic and beauty products, and has purchased such products through unauthorized channels of distribution. Photographs of the Unauthorized Lip Care Product are attached hereto as Exhibit C, and photographs of the Unauthorized Mascara Products are attached hereto as Exhibits D and E, respectively.

5

21. Although Costco has placed notices on the packaging for the Unauthorized Products indicating that the products are repackaged, such notices are not readily visible at the point of sale. Accordingly, Costco has failed to adequately inform the consumer that the Unauthorized Products are repackaged.

22. The manner in which Costco is marketing, promoting, offering for sale and/or selling the Unauthorized Products fails to comply with YSL's quality control standards. For example, Costco's packaging for the Unauthorized Products is of poor quality and is not aesthetically pleasing, and is not in keeping with the carefully guarded image and reputation of YSL cosmetic and beauty products as high-end, high-quality products.

23. Further, the manner in which Costco has packaged and is selling the Unauthorized Products is misleading, in that it appears to consumers that they are purchasing two units of the YSL product contained therein rather than just one unit.

24. Costco has repackaged and sold the Unauthorized Mascara Product shown in Exhibit D in packaging that is based upon and is confusingly similar to the distinctive and well-known gold and copper color combination that is used on authorized packaging for the same product, in a deliberate effort to deceive consumers into believing that Costco's packaging was made or authorized by YSL Parfums, and that the product is being sold in its original packaging.

25. Moreover, Costco's packaging for the Unauthorized Mascara Product shown in Exhibit D conceals from the consumer at the point of sale the ingredient listing appearing on the original packaging therefor and, accordingly, is in violation of United States Food and Drug Administration regulations, thereby exposing YSL to liability.

6

26.     Upon information and belief, in or about late September 2007, YSL discovered that Costco was offering for sale and selling, in its store locations throughout the United States, counterfeit OPIUM Perfume.  A photograph of Costco's counterfeit OPIUM Perfume product is attached hereto as Exhibit F.

27.     Upon learning that Costco was selling counterfeit OPIUM Perfume, YSL contacted Costco and demanded that it immediately stop offering for sale and selling the counterfeit OPIUM Perfume.  Upon information and belief, Costco has not stopped selling the counterfeit OPIUM Perfume.

28.     Upon information and belief, ABC Corporations 1-10 and John Does 1-10 are manufacturing, importing, distributing, advertising, offering for sale and/or selling to Costco and others, counterfeit OPIUM Perfume.

29.     The aforesaid acts of Defendants were willful and intentional, in that Defendants either knew that the OPIUM Perfume bore counterfeit and/or unauthorized reproductions, copies, or colorable imitations of the YSL Marks and the OPIUM Marks, or willfully ignored such fact.

30.     The conduct as aforesaid constitutes trademark counterfeiting, trademark infringement, trade dress infringement, false designation of origin, and false advertising under Section 43(a) of the Lanham Trademark Act, dilution of the famous YSL Marks and the OPIUM Marks, and unfair competition and false and deceptive trade practices under state and common law.  Further, upon information and belief, such conduct on the part of Defendants was willful and intentional.

7

## FIRST CLAIM FOR RELIEF BY YSL PARFUMS
## TRADEMARK COUNTERFEITING UNDER UNDER 15 U.S.C. § 1114

31.    YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 30 above.

32.    Defendants, without authorization, have used spurious designations that are identical with, or substantially indistinguishable from the YSL Marks and the OPIUM Marks in connection with their importation, distribution, advertising, promotion, marketing, sale and/or offering for sale of counterfeit OPIUM Perfume.

33.    Defendants' unauthorized use of the YSL Marks and the OPIUM Marks on and in connection with the distribution and sale of counterfeit goods constitutes Defendants' use of YSL's registered trademarks in commerce.

34.    Defendants' unauthorized use of the YSL Marks and the OPIUM Marks is likely to cause confusion, or to cause mistake, or to deceive consumers into believing that Defendants' products are genuine, authorized, sponsored or approved by YSL or that Defendants are affiliated, connected or associated with or in some way related to YSL.

35.    Defendant's acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Section 34 of the Lanham Act, 15 U.S.C. § 1116.

36.    Upon information and belief, by their acts, Defendants have made, and will continue to make, substantial profits and gains to which they are not in law or equity entitled.

37.    Upon information and belief, Defendants intend to continue their acts of counterfeiting, and will continue to willfully counterfeit the YSL Marks and the OPIUM Marks, unless restrained by this Court.

38.    Defendants' acts have caused, and will continue to cause, irreparable injury to YSL Parfums, and YSL Parfums has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF BY YSL PARFUMS
### INFRINGEMENT OF REGISTERED TRADEMARKS UNDER 15 U.S.C. § 1114

39.    YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 38 above.

40.    Upon information and belief, the aforesaid acts of Costco constitute infringement of the YSL Marks, in that Costco has failed to adequately inform consumers at the point of sale that the Unauthorized Products are repackaged, and, accordingly, consumers are likely to be confused and believe that such products are being sold in their original packaging.

41.    Costco's conduct further constitutes infringement of the YSL Marks in that Costco is not marketing, promoting, offering for sale and/or selling the Unauthorized Products in compliance with YSL's quality control standards.  By way of example, Costco has used inferior packaging for the Unauthorized Products not in keeping with YSL's quality control standards and has otherwise altered an element of the Mascara Product that is material to the purchasing decision of the consumer at the point of sale, namely, the ingredient declaration.

42.    Upon information and belief, the aforesaid acts of Costco are likely to cause confusion, mistake, or deception among consumers as to the origin of the Unauthorized Products.

43.    Upon information and belief, Costco has acted with knowledge of YSL Parfums' ownership of the YSL Marks and with the deliberate intention to unfairly benefit from the goodwill associated therewith.

9

44.    Costco's acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

45.    Upon information and belief, by its acts, Costco has made, and will continue to make, substantial profits and gains to which it is not in law or equity entitled.

46.    Upon information and belief, Costco intends to continue its infringing acts, and will continue to willfully infringe the YSL Marks, unless restrained by this Court.

47.    Costco's acts have caused, and will continue to cause, irreparable injury to YSL Parfums, and YSL Parfums has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF BY YSL
## TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125(a)

48.    YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 47 above.

49.    The YSL Trade Dress, consisting of the unique and distinct gold and copper color combination, when used on and in connection with cosmetic and beauty products, is non-functional and inherently distinctive.

50.    In addition to being inherently distinctive, the YSL Trade Dress, through substantial sales, advertising and promotion, has acquired secondary meaning, indicating YSL as the source of products on or in connection with which the YSL Trade Dress is used.

51.    Costco has distributed, advertised, promoted, sold and offered for sale, in commerce, packaging that is confusingly similar to the YSL Trade Dress.

52.    Costco's aforesaid conduct is calculated, and is likely to deceive consumers who associate the YSL Trade Dress with YSL into believing that the Unauthorized Mascara Product shown in Exhibit D emanates from YSL.

10

53.    Upon information and belief, Costco's use of the YSL Trade Dress on and in connection with the unauthorized repackaging of the Mascara Product shown in Exhibit D, is part of a deliberate plan to trade on the valuable goodwill symbolized by the YSL Trade Dress.

54.    Upon information and belief, by its acts, Costco has made, and will continue to make, substantial profits and gains to which it is not in law or equity entitled.

55.    Upon information and belief, Costco intends to continue its infringing acts, and will continue to willfully infringe YSL's Trade Dress, unless restrained by this Court.

56.    Costco's acts have caused, and will continue to cause, irreparable injury to YSL and YSL has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF BY YSL
### FALSE DESIGNATION OF ORIGIN & FALSE ADVERTISING
### UNDER 15 U.S.C. § 1125(a))

57.    YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 56 above.

58.    Upon information and belief, the aforesaid acts of Costco constitute a false designation of origin, in that Costco has failed to adequately inform consumers at the point of sale that the Unauthorized Products are repackaged, and is presenting the Unauthorized Products to consumers as if they were materially the same as the corresponding products sold by YSL in the United States.

59.    Upon further information and belief, Costco's conduct constitutes false advertising, in that the manner in which Costco has packaged and is selling the Unauthorized Products is misleading, as Costco has packaged the Unauthorized Products in such a way that consumers believe they are purchasing two units of the YSL product rather than just one unit.

11

60.    Upon information and belief, Costco's acts as aforesaid violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.    Upon information and belief, by its acts, Costco has made, and will continue to make, substantial profits and gains to which it is not in law or equity entitled.

62.    Upon information and belief, Costco intends to continue its willfully infringing acts unless restrained by this Court.

63.    Costco's acts have caused, and will continue to cause, irreparable injury to YSL and YSL has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF BY YSL PARFUMS
## DILUTION OF A REGISTERED TRADEMARK UNDER 15 U.S.C. § 1125(c)

64.    YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 63 above.

65.    YSL Parfums is the exclusive owner of the YSL Marks and the OPIUM Marks in the United States.

66.    The YSL Marks and the OPIUM Marks are distinctive marks that have been in use for many years and have achieved widespread public recognition.

67.    The YSL Marks and the OPIUM Marks are famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

68.    Defendants, without authorization from YSL Parfums, are using the YSL Marks and the OPIUM Marks in commerce in such a manner as to dilute the distinctive quality of the YSL Marks and the OPIUM Marks and to decrease the capacity of such marks to identify and distinguish YSL's goods.

69.    By the acts described herein, Defendants are also likely to tarnish the YSL Marks and the OPIUM Marks, thereby lessening the value of the such marks.

12

70.    Defendants have intentionally and willfully diluted the distinctive quality of the famous YSL Marks and the OPIUM Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

71.    Upon information and belief, by their acts, Defendants have made, and will continue to make, substantial profits and gains to which it is not in law or equity entitled.

72.    Upon information and belief, Defendants intend to continue their willfully infringing acts unless restrained by this Court.

73.    Defendants' acts have caused, and will continue to cause, irreparable injury to YSL Parfums and YSL Parfums has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF BY YSL
## TRADEMARK INFRINGEMENT UNDER COMMON LAW

74.    YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 73 above.

75.    YSL owns all right, title, and interest in and to the YSL Marks as aforesaid, including all common law rights in such marks.

76.    The aforesaid acts of Costco constitute trademark infringement in violation of the common law of the State of New York.

77.    Upon information and belief, by their acts, Costco has made, and will continue to make, substantial profits and gains to which it is not in law or equity entitled.

78.    Upon information and belief, Costco intends to continue its willfully infringing acts unless restrained by this Court.

79.    Costco's acts have caused, and will continue to cause, irreparable injury to YSL and YSL has no adequate remedy at law.

13

### SEVENTH CLAIM FOR RELIEF BY YSL
### <u>UNFAIR COMPETITION UNDER COMMON LAW</u>

80.    YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 79 above.

81.    The aforesaid acts of Defendants constitute unfair competition in violation of the common law of the State of New York.

82.    Upon information and belief, by their acts, Defendants have made, and will continue to make, substantial profits and gains to which it is not in law or equity entitled.

83.    Upon information and belief, Defendants intend to continue its willfully infringing acts unless restrained by this Court.

84.    Defendants' acts have caused, and will continue to cause, irreparable injury to YSL and YSL has no adequate remedy at law.

### EIGHTH CLAIM FOR RELIEF BY YSL
### <u>SECTION 349 OF THE NEW YORK GENERAL BUSINESS LAW</u>

85.    YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 84 above.

86.    Through its importation, distribution, advertising, offering for sale and/or sale of the counterfeit and Unauthorized Products, Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted and/or may result in injury to consumers in New York and/or harm to the public.

87.    By the acts described herein, Defendants have willfully engaged in deceptive acts or practices in the conduct of its business in violation of New York General Business Law § 349.

88.    Upon information and belief, by their acts, Defendants have made, and will continue to make, substantial profits and gains to which it is not in law or equity entitled.

14

89.    Upon information and belief, Defendants intend to continue its willfully infringing acts unless restrained by this Court.

90.    Defendants' acts have caused, and will continue to cause, irreparable injury to YSL and YSL has no adequate remedy at law.

### NINTH CLAIM FOR RELIEF BY YSL PARFUMS
### SECTION 360-l OF NEW YORK GENERAL BUSINESS LAW

91.    YSL hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 90 above.

92.    YSL Parfums is the exclusive owner of the YSL Marks and the OPIUM Marks throughout the United States, including the State of New York.

93.    Through prominent, long and continuous use in commerce, including commerce within the State of New York, YSL's marks have become and continue to be famous and distinctive.

94.    By the acts described herein, Defendants have diluted the distinctiveness of the YSL Marks and the OPIUM Marks and has caused a likelihood of harm to YSL's business reputation in violation of New York General Business Law § 360-1.

95.    Upon information and belief, by their acts, Defendants have made, and will continue to make, substantial profits and gains to which it is not in law or equity entitled.

96.    Upon information and belief, Defendants intend to continue their willfully infringing acts unless restrained by this Court.

97.    Defendants' acts have caused, and will continue to cause, irreparable injury to YSL Parfums and YSL Parfums has no adequate remedy at law.

15

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be entered granting the following relief:

1.      Finding that (i) Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114; Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (ii) Defendants have engaged in deceptive acts and practices under New York General Business Law § 349; (iii) Defendants have diluted the YSL Parfums Marks in violation of New York General Business Law § 360-1; (iv) Defendants have engaged in trademark infringement and unfair competition under the common law of New York.

2.      Granting an injunction preliminarily and permanently restraining and enjoining Defendants, their officers, agents, employees and attorneys, and all those persons or entities in active concert or participation with it or them, or any of them, from:

(a)      manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale or selling any products which bear the YSL Marks and the OPIUM Marks or any other mark substantially or confusingly similar thereto, and engaging in any other activity constituting an infringement of any of YSL's rights in its YSL Marks and the OPIUM Marks; and

(b)      engaging in any other activity constituting unfair competition with YSL; and

(c)      engaging in any activity that will cause the distinctiveness of the YSL Marks and the OPIUM Marks to be diluted

3.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any product at issue in

16

this case that has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered for sale or sold by Defendants, or has been authorized by YSL, or is related to or associated in any way with YSL or its products.

4.      Directing that Defendants account to and pay over to YSL all profits realized by their wrongful acts and directing that such profits be trebled in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

5.      At its election, awarding YSL statutory damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

6.      Awarding YSL its actual damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

7.      Awarding YSL its costs and attorneys' fees and investigatory fees and expenses to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

8.      Order Defendants to deliver up to YSL for destruction, or to show proof of destruction of, all remaining inventory of all counterfeit products and Unauthorized Products, including all advertising, promotional and marketing materials therefor, as well as all means of making same.

9.      Order Defendants to immediately recall any and all counterfeit products sold by Defendants bearing the YSL Marks and/or the OPIUM Marks.

10.      Order Defendants to file with this Court and to serve upon Plaintiffs, within 30 days after the entry and service on Defendants of any injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

11.    Awarding YSL pre-judgment interest on any monetary award made part of the judgment against Defendants.

12.    Awarding YSL such additional and further relief as the Court deems just and proper.

Dated:  New York, New York
        October 8, 2007

                        ARNOLD & PORTER LLP

                        By: _____
                            Louis S. Ederer (LE 7574)
                            John Maltbie (JM 3658)
                            399 Park Avenue
                            New York, NY 10022
                            Telephone: (212) 715-1000
                            Facsimile: (212) 715-1399

                            *Attorneys for Plaintiffs*

18

# **EXHIBIT C**

**Fried, Frank, Harris, Shriver & Jacobson LLP**

One New York Plaza
New York, New York 10004-1980
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com



Direct Line: 212.859.8966
Facsimile: 212.859.4000
E-mail: james_dabney@friedfrank.com

October 15, 2007

**BY HAND**

The Honorable Henry Pitman
United States Magistrate Judge
United States District Court for
    the Southern District of New York
New York, NY 10007

Re:    Yves Saint Laurent Parfums, S.A. v. Costco Wholesale Corp.
       Civil Action No. 07 Civ. 3214

Dear Judge Pitman:

This office represents defendant Costco Wholesale Corporation ("Costco") in the above-entitled action. We write in response to plaintiffs' counsel's letter to Your Honor dated October 12, 2007.

On July 3, 2007, the parties to this action entered into a written stipulation (see Exhibit 1 at 3; "STIPULATED AND AGREED") that provided for, among other things, an expedited timetable for the completion of pretrial discovery, service of expert reports, filing of dispositive motions, and trial.

"A party to a stipulation is not entitled to withdraw from its agreement unilaterally." *United States ex rel. Reilly, Jr. v. New England Teamsters & Trucking Indus. Pension Fund*, 737 F.2d 1274, 1278 (2d Cir. 1984). Unlike interlocutory Orders that a Court can modify at any time in its discretion, party stipulations can be withdrawn over objection only on a "showing of good cause sufficient to invalidate a contract, such as fraud, overreaching, duress or mistake," *Keiser v. CDC Inv. Mgmt. Corp.*, 2003 WL 1733729, at *3 (S.D.N.Y. Mar. 25, 2003) (Pauley, J.) (quoting *Town of Clarkstown v. M.R.O. Pump & Tank, Inc.*, 731 N.Y.S.2d 231, 232 (2d Dep't 2001)), or to avoid "manifest injustice." *Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, 2005 WL 3750749, at *7 (S.D.N.Y. Jul. 13, 2005) (Conner, J.). The plaintiffs have made no showing as would remotely permit them to rescind and withdraw from the July 3 stipulation.

The plaintiffs assert that they supposedly "have been not able to show any discovery materials to experts to date." October 12 letter at 1. The statement is simply untrue. Costco has never objected to these plaintiffs showing discovery materials to independent experts in this case.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Henry Pitman
October 15, 2007
Page 2

These plaintiffs have <u>never once asked</u> to show discovery materials to any expert in this case. In numerous draft Protective Orders exchanged between the parties Costco has consistently indicated its agreement that independent experts can have full access to discovery materials.

As an interim measure last July, in order to expedite discovery pending the conclusion of a long form protective order, the parties agreed to exchange discovery on the basis that outside counsel would hold certain discovery materials in confidence for the time being. But since then the plaintiffs have never once requested that they be permitted to show discovery materials to an expert. What prevented agreement on the form of a Protective Order was the plaintiffs' insistence that in-house counsel have access to certain Costco discovery materials, not whether outside independent experts could have access.

Equally importantly, the plaintiffs' purported (and completely non-existent) inability to show unspecified "discovery materials" to independent experts is simply not a valid or credible explanation for the plaintiffs' total failure to make <u>any</u> expert disclosures in this case concerning <u>any</u> of their purported claims. The plaintiffs have had samples of the re-packaged products at issue in this case from day one. The plaintiffs have had available to them, since day one, all information needed to conduct any desired survey or other expert analysis of the products at issue at any time.

The pending discovery dispute over Costco vendor identities also did not in any way prevent these plaintiffs from conducting survey, poll, or other research of consumer perceptions of YSL-branded products as re-packaged and marketed by Costco. The vendor identity dispute also did not prevent these plaintiffs from conducting expert analysis of the contents or quality of YSL-branded products sold by Costco. The nature of trademark litigation is such that the information needed to establish liability is nearly all, if not all, public marketplace information.

If Judge Sand were to lift the existing stay of Your Honor's recent ruling concerning disclosure of Costco supplier identities, and if subsequently, following a worldwide investigation of suppliers to suppliers to suppliers to suppliers to Costco, the plaintiffs discovered (what they apparently have no factual basis for alleging at present) that some person, in some place, supposedly made an "initial sale" of goods at some time that was both "unauthorized" and resulted in goods being shipped to Costco, then the plaintiffs might conceivably be in a position to make a showing that would sufficient to permit relief from the July 3 stipulation.[1] But as matters now stand, the plaintiffs have made no showing as would justify the scheduling relief that they seek.

It is remarkable that in a letter to Your Honor dated October 12, 2007, and devoted to explaining why Your Honor should grant plaintiffs more time to make expert witness disclosures in this case, the plaintiffs could somehow manage to omit any reference of the fact that on October 9, 2007, plaintiffs made a letter motion to Judge Sand for leave to serve a second amended complaint that would join no fewer than twenty (20) additional parties-defendant and would raise wholly new and different claims, arising from wholly different transactions and

---

[1] It is entirely unclear how expert testimony would add anything to a "theory that the initial sale was not authorized."

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Henry Pitman

October 15, 2007
Page 3

events, and involving completely different products, from what purportedly gave rise to this action initially. A copy of plaintiffs' October 9 letter motion to Judge Sand is attached as Exhibit 2 hereto.

Plaintiffs' counsel's October 12 letter to Your Honor alludes to plaintiffs' October 9 letter motion to Judge Sand, but notably fails to provide Your Honor with a copy of that motion. The reason for this is apparent: the plaintiffs would have Your Honor believe that their October 9 letter to Judge Sand asked merely "to extend the case Management Schedule by ninety (90) days" (Pltf. Oct. 12 Letter at 1). In fact, the plaintiffs coupled such a request with a letter motion for leave to serve a drastically expanded and altered complaint (see Exhibit 2 hereto), a complaint whose disposition would not lend itself to anything like the kind of expedited pretrial and trial schedule that the parties stipulated to last July.

Costco will be serving opposition to the plaintiff's letter motion to amend in due course. Under the existing, stipulated pretrial schedule (see Exhibit 1), the deadline for amending the pleadings or joining additional parties to this action expired months ago. In the unlikely event that Judge Sand were to grant the plaintiffs' application to amend the complaint in this case yet again, Costco would then join with the plaintiffs in seeking to change the pretrial schedule, for the existing schedule is totally unsuited to the kind of multi-party, worldwide counterfeiting-type case that plaintiffs now apparently seek to litigate. That matter is before Judge Sand.

With regard to the existing Amended Complaint, the plaintiffs have simply made no showing as could justify Your Honor relieving the plaintiffs of their own written stipulation for the prompt and economical completion of pretrial proceedings in this action. Costco was to serve its responsive expert reports on October 17 if the plaintiffs had timely made expert disclosures to Costco. The Court could not grant the plaintiffs' expert extension request without throwing out the whole existing and, to emphasize, <u>stipulated</u> schedule for bringing this case to a prompt and economical conclusion.

The plaintiffs' October 12 letter request to Your Honor, which conflicts with their parallel request to Judge Sand, should be denied.

Respectfully yours,

James W. Dabney

Enclosure

557626

cc (w/encl.):
    Louis S. Ederer, Esq.
    The Honorable Leonard B. Sand

# **EXHIBIT D**

# ARNOLD & PORTER LLP

**Louis S. Ederer**
Louis.Ederer@aporter.com

212.715.1102
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

October 16, 2007

**BY HAND**
Hon. Leonard B. Sand
United States District Judge
Southern District of New York
500 Pearl Street, Room 1650
New York, New York 10007

Hon. Henry Pitman
United States Magistrate Judge
Southern District of New York
United States Courthouse
500 Pearl St., Room 750
New York, New York 10007

Re:     Yves Saint Laurent v. Costco Wholesale Corp., 07 cv 3214 (LBS) (HP)

Dear Judge Sand and Judge Pitman:

We represent plaintiffs in the above action. We write with respect to defendant's counsel's letter of yesterday to Judge Pitman, which Judge Sand was also copied on. Counsel's letter purports to respond to our October 12, 2007 letter to Judge Pitman, which was not copied to Judge Sand. We therefore take this opportunity to attach a copy of our October 12 letter, so that Judge Sand can have a complete record of the parties' exchange.

We also take this opportunity to express our strong disagreement with everything defendant's counsel says in his October 15 letter. The letter is replete with errors and mischaracterizations about our application to Judge Pitman for an extension of the Case Management Schedule, and the circumstances leading up to Judge Pitman's October 9 Order granting plaintiffs' application in part. In order to avoid burdening the Court, however, we will address only one of those mischaracterizations here. Counsel characterizes as "remarkable" plaintiffs' failure to attach to our October 12 letter to Judge Pitman a copy of our October 9 letter to Judge Sand requesting leave to file a second amended complaint. The only thing "remarkable" about this, however, is defendant's failure to look at the "cc" line on our October 9 letter, which clearly indicates that Judge Pitman was copied on that letter.

# ARNOLD & PORTER LLP

Hon. Leonard B. Sand
Hon. Henry Pitman
October 16, 2007
Page 2

We, on the other hand, find it "remarkable" that defendant's counsel found the time over the weekend to prepare a three page reply to our October 12 letter, which simply asks Judge Pitman to grant a short additional extension of the deadline for submitting expert reports, but has not yet responded to our October 9 letter application seeking leave to file a second amended complaint, which counsel says he will respond to in "due course." As plaintiffs are seeking leave to add a claim for the sale of counterfeit Yves Saint Laurent goods at Costco, a situation which we first brought to counsel's attention on October 1, one would think defendant would have found the time to respond to our application sometime in the last week. Plaintiffs accordingly ask that the Court set a date for submission of defendant's opposition, so that plaintiffs' motion to amend can be heard promptly, and, if appropriate, the Case Management Schedule can be adjusted accordingly.

We thank the Court for its consideration of these matters.

Respectfully,

ARNOLD & PORTER LLP

By: _Louis S. Ederer_

Louis S. Ederer

cc:    James W. Dabney, Esq.

# ARNOLD & PORTER LLP

Louis S. Ederer
Louis.Ederer@aporter.com

212.715.1102
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

October 12, 2007

**BY FACSIMILE**

The Honorable Henry Pitman
United States Magistrate Judge
Southern District of New York
United States Courthouse
500 Pearl St., Room 750
New York, New York 10007

Re:     Yves Saint Laurent v. Costco Wholesale Corp., 07 cv 3214 (LBS)

Dear Judge Pitman:

We represent plaintiffs in the above action. We write with respect to Your Honor's October 9, 2007 Order granting, in part, plaintiffs' application to extend the Case Management Schedule. While plaintiffs appreciate Your Honor's consideration and attention to their application, plaintiffs respectfully request that Your Honor reconsider plaintiffs' application to a limited extent, and modify your October 9 Order to extend the date for service of expert reports by an additional thirty (30) days, until November 14, 2007.

As Your Honor is aware, following the September 21, 2007 hearing (where Your Honor granted plaintiffs' application for an order compelling disclosure of defendant's supplier information, and indicated you would enter a Protective Order), defendant filed Rule 72(a) objections to Your Honor's Order. Plaintiffs have now submitted their reply to defendant's objections, and the objections are pending before Judge Sand. However, as we indicated in our reply, the objections have now further delayed the overall case schedule, and so we have proposed to Judge Sand (and to Your Honor as well, in our October 9, 2007 letter in which we submitted a proposed Protective Order for execution), to extend the case Management Schedule by ninety (90) days rather than sixty (60) days. Unfortunately, Your Honor would not have been aware of this request when you issued your October 9 Order extending all dates for thirty (30) days, as our October 9 letter was not received by you until October 10.

Pursuant to Your Honor's October 9 Order, expert reports (point 5 in the original Case Management Schedule) are now to be served by Monday, October 15, that is, this coming Monday. In view of the delays in discovery resulting from the parties' now four-month-old discovery dispute, however, and the consequent delay in resolving the terms of the Protective Order, plaintiffs have been not able to show any discovery materials to experts to date, and are not in a position to serve expert reports by Monday. Accordingly, plaintiffs respectfully request that, pending consideration of plaintiffs' request to adjourn

# ARNOLD & PORTER LLP

The Honorable Henry Pitman
October 12, 2007
Page 2

all dates in the Case Management Order by ninety (90) days, Your Honor extend the date
for service of expert reports by thirty (30) days (to Wednesday, November 14), without
otherwise modifying your October 9 Order.

We thank you for your consideration of these matters.

Yours truly,

ARNOLD & PORTER LLP

By:  Louis S. Ederer

Louis S. Ederer

cc:    James W. Dabney, Esq.

# **EXHIBIT E**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

COSTCO WHOLESALE CORPORATION,

Plaintiff,

- against -

YVES SAINT LAURENT PARFUMS S.A.,
YSL BEAUTÉ INC., and QUALITY KING
DISTRIBUTORS, INC.,

Defendants.

------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 17 2007 ★

BROOKLYN OFFICE

ECF CASE

COMPLAINT

BIANCO, J.

ORENSTEIN, M.J.

Plaintiff Costco Wholesale Corporation, by its attorneys, for its complaint in this action alleges:

### PARTIES AND JURISDICTION

1.      Plaintiff Costco Wholesale Corporation ("Costco") is a corporation organized and existing under the laws of the State of Washington, having its principal place of business in Issaquah, Washington.

2.      On information and belief, defendant Yves Saint Laurent Parfums S.A. is a corporation organized and existing under the laws of France, having its principal place of business in Neuilly-Sur-Seine, France.

3.      On information and belief, defendant YSL Beauté Inc. is a corporation organized and existing under the laws of the State of New York, having its principal place of business located at 685 Fifth Avenue, New York, New York 10022.

4.    On information and belief, defendant Quality King Distributors, Inc. is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 2060 9th Avenue, Ronkonkoma, New York 11799.

5.    This action arises under the Lanham Act, 15 U.S.C. §§ 1051 et seq., the New York General Business Law, and the common law of the State of New York.

6.    The Court has jurisdiction to hear this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 1367(a), and 2201(a).

**CLAIM FOR RELIEF**

7.    Costco owns and operates a chain of COSTCO retail stores located throughout the United States. Costco markets and sells a wide variety of quality merchandise, including name brand merchandise, at reasonable prices. Costco's policy is to sell only genuine products that are truthfully marked as to their origin.

8.    Prior to October 2, 2007, defendant Quality King Distributors, Inc. ("Quality King") sold and delivered to Costco, for the total cash sum of $87,500.00, approximately 2,500 units of a perfume product that Quality King represented and warranted was genuine OPIUM perfume (the "Product").

9.    On October 2, 2007, defendants Yves Saint Laurent Parfums S.A. and YSL Beauté Inc. (collectively, the "YSL Defendants") demanded that Costco cease selling the Product, remove the Product from its store shelves, and provide various information to litigation counsel for YSL on the basis that the Product allegedly was "counterfeit."

10.    Since October 2, 2007, the YSL Defendants have refused repeated requests that they provide Costco with whatever evidence the YSL Defendants may have had that led them to conclude that the Product was "counterfeit."

2

11.    On October 10, 2007, Costco received a letter from litigation counsel for YSL that enclosed a proposed lawsuit complaint against Costco and twenty (20) co-defendants identified as "ABC Corporations 1-10" and "John Does 1-10" (the "Proposed Complaint").

12.    In their Proposed Complaint, the YSL Defendants allege that, prior to October 2, 2007, "Costco was selling counterfeit OPIUM perfume" and that "ABC Corporations 1-10 and John Does 1-10 are manufacturing, importing, distributing, advertising, offering for sale and/or selling to Costco and others, counterfeit OPIUM perfume."

13.    In their Proposed Complaint, the YSL Defendants further allege that Costco and others have made "unauthorized use" of "OPIUM Marks" and allegedly have diluted the distinctiveness of "OPIUM marks" under 15 U.S.C. § 1125(c) and N.Y. Gen. Bus. Law § 360-l.

14.    Costco lacks knowledge or information sufficient to form a belief whether the YSL Defendants' allegations and claims in regard to the Product are well-grounded in fact or entitle either or both of the YSL Defendants to any relief.

15.    On October 11, 2007, Costco initiated the removal of all Product from COSTCO retail store shelves and a cessation of all sales of the Product. Costco is holding all unsold Product in storage pending resolution of this action.

16.    Defendant Quality King is liable to Costco for any costs and expenses, including reasonable attorneys' fees, that Costco may incur as a result of its purchase of the Product for resale, including any costs and expenses that Costco may incur in defending or settling claims made by the YSL Defendants, any costs and expenses that Costco may incur in complying with any orders or judgments directing Costco to pay monies to the YSL Defendants, and all costs and expenses that Costco has incurred or may hereafter incur in removing the Product from sale.

3

17.     An actual controversy exists between Costco, the YSL Defendants, and Quality King over whether Costco's sale of the Product has infringed any rights of the YSL Defendants under the Lanham Act, 15 U.S.C. § 1051 et seq., the New York General Business Law, or the common law of the State of New York, and over whether Quality King's representations and warranties to Costco concerning the Product were accurate.

WHEREFORE, Costco prays that the Court:

(i)     declare, adjudge, and decree whether Costco's sale of the Product has infringed any rights of the YSL Defendants under 15 U.S.C. § 1051 et seq., the New York General Business Law, or the common law of the State of New York;

(ii)     declare, adjudge, and decree whether Quality King is liable to Costco for breach of representations and warranties that Quality King made to Costco concerning the Product;

(iii)     declare, adjudge, and decree that Quality King is liable to reimburse Costco for all costs and expenses, including reasonable attorneys' fees, incurred in connection with investigating and defending the YSL Defendants' claims regarding the Product; and

(iv)     award such other and further relief as the Court may deem just and proper.

4

Dated:    New York, New York
          October 17, 2007

                              FRIED, FRANK, HARRIS, SHRIVER
                              & JACOBSON LLP

                              By: _____
                                     James W. Dabney
                                     Alexander T. Korn

                              One New York Plaza
                              New York, New York 10004-1980
                              (212) 859-8000

                              Attorneys for Plaintiff
                              Costco Wholesale Corporation

557814

5

# __EXHIBIT F__

# ARNOLD & PORTER LLP

**Louis S. Ederer**
Louis.Ederer@aporter.com

212.715.1102
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

October 2, 2007

**VIA EMAIL**

James W. Dabney, Esq.
Fried Frank Harris Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004-1980

      Re:     Yves Saint Laurent v. Costco Wholesale Corp., 07 cv 3214 (CBS)

Dear Mr. Dabney:

      This is in response to your September 24, 2007 letter.

      Just as you asked Magistrate Judge Pitman at the oral argument on September 21 to direct me to tell you what evidence YSL had that the goods at issue were first introduced without its authorization, and Judge Pitman declined to do so, I will similarly not respond to what appears to be the same request in your letter. You will have the opportunity to inquire in discovery as to the evidence YSL may have in its possession that relates to these allegations.

      I do have, however, another issue to take up with you. Last week, YSL determined that an OPIUM brand perfume product purchased at a Costco store in Florida is counterfeit. OPIUM is an extremely important brand for YSL and this is a very serious matter. We are in the process of investigating this situation further. However, YSL has no doubt that counterfeits of its products are currently being sold at Costco.

      We accordingly hereby ask you to instruct your client to immediately remove from sale all units of OPIUM fragrance products now being sold at Costco, and to preserve all inventory of OPIUM products (and specifically not to return such products to their supplier) while we continue our investigation. We also ask that you immediately inform us of the identity of Costco's supplier for these products, so that we may notify that party of its sale of counterfeit goods.

# ARNOLD & PORTER LLP

James W. Dabney, Esq.
October 1, 2007
Page 2

Please immediately acknowledge your receipt of this letter and confirm your client's agreement to take the goods in question off sale and hold them in inventory. Please also include a copy of this letter in your submission to Judge Sand if you intend to refer to your September 24 letter, or the issues raised therein, in your submission.

Very truly yours,

ARNOLD & PORTER LLP

By: Louis S. Ederer

Louis S. Ederer

cc: YSL Beaute, Inc.