**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

YVES SAINT LAURENT PARFUMS S.A. and : Civil Action No.
YSL BEAUTÉ INC., : 07 Civ. 3214 (LBS) (HP)

        Plaintiffs,

    - against -

COSTCO WHOLESALE CORPORATION,
QUALITY KING DISTRIBUTORS, INC. and
J & H COSMETICS LTD.,

        Defendants.

------------------------------------------------------------- x
------------------------------------------------------------- x

QUALITY KING FRAGRANCE, INC.,

        Third Party Plaintiff,

    - against -

J & H COSMETICS LTD.,

        Third Party Defendant.

------------------------------------------------------------- x


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR A PROTECTIVE ORDER PURSUANT TO RULE 26(c)**
**OF THE FEDERAL RULES OF CIVIL PROCEDURE**


ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Plaintiffs*
*Yves Saint Laurent Parfums S.A.*
*and YSL Beauté Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .......................................................................................................1

ARGUMENT ............................................................................................................................4

I.  YSL Parfums' Compliance With Costco's Request For Discovery Of Its France-Based Computer Servers Would Require YSL Parfums To Violate The French Data Protection Act And Expose Itself To Criminal Liability ........................5

II. YSL Parfums' Compliance With Costco's Request For Discovery Of Its France-Based Computer Servers Would Require YSL Parfums To Violate The Principle of Secrecy of Private Correspondence And Expose Itself To Criminal Liability ...............................................................................................8

III. YSL Parfums' Compliance With Costco's Request For Discovery Of Its France-Based Computer Servers Would Require YSL Parfums To Violate The French Blocking Statute And Expose Itself To Criminal Liability ................10

CONCLUSION .......................................................................................................................12

## PRELIMINARY STATEMENT

Plaintiffs Yves Saint Laurent Parfums S.A. ("YSL Parfums") and YSL Beauté Inc. ("YSL Beauté") submit this memorandum of law, together with the accompanying declarations of Ariane Mole dated January 24, 2008 ("Mole Decl."), and Louis S. Ederer dated January 25, 2008 ("Ederer Decl."), in support of their motion, pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, for a protective order (i) forbidding defendant Costco Wholesale Corporation ("Costco") from having discovery of YSL Parfums' France-based computer servers by way of electronic term searches, and having the resulting electronic data transferred and produced to Costco in the United States, and/or (ii) proscribing that Costco pursue alternative discovery procedures which will permit YSL Parfums to comply with such discovery requests without exposing itself to criminal liability under French law.

## STATEMENT OF FACTS

Plaintiff YSL Parfums, a French corporation, is the producer and brand owner of the world famous YVES SAINT LAURENT line of cosmetic, fragrance and beauty products. Plaintiff YSL Beauté is the exclusive U.S. importer and distributor of the world famous YVES SAINT LAURENT line of cosmetic, fragrance and beauty products. YSL Parfums is the owner of all rights in and to numerous trademarks in the United States, which have come to symbolize the company's high quality, luxury product lines. Among YSL Parfums' trademarks are those affiliated with the three cosmetic and beauty products at issue in this action — namely, its Mascara Volume Effet Faux Cils product (the "Mascara Product"), its Touche Brillance lip care product (the "Lip Care Product") and its OPIUM natural spray perfume product (the "OPIUM Product"). (Ederer Decl. ¶ 2).

In this action, Plaintiffs allege that defendants Costco, Quality King Distributors, Inc. and J&H Cosmetics Ltd. have engaged in the distribution and sale of counterfeit OPIUM Product in violation of 15 U.S.C. § 1114. Plaintiffs further allege that defendant Costco has infringed Plaintiffs' intellectual property rights by improperly and deceptively repackaging and selling genuine Mascara Product and Lip Care Product. (Ederer Decl. ¶ 3).

In June 2007, Costco propounded its First Requests For the Production of Documents and Things relating to the repackaging claims (Plaintiffs did not amend the complaint to include counterfeiting claims until later). On July 23, 2007, Plaintiffs responded to Costco's requests and produced numerous documents, including copies of emails compiled both in the United States and at YSL Parfums' French headquarters. Not satisfied, Costco has since engaged in a systematic effort to call into question the adequacy of Plaintiffs' document production — not coincidentally after Plaintiffs obtained this Court's order requiring Costco to identify its suppliers of the repackaged goods. Costco's obsession with Plaintiffs' document production has included a Rule 30(b)(6) deposition devoted exclusively to the subject of what efforts Plaintiffs undertook to locate documents responsive to Costco's document requests, as well as repeated calls for electronic term searches to be conducted on Plaintiffs' computer servers, an undertaking which Plaintiff YSL Beauté voluntarily carried out with respect to its United States-based servers. (Ederer Decl. ¶ 4).

Now, Costco seeks a Court Order requiring YSL Parfums to search all of the electronic data on its France-based computer servers for twenty-eight specified terms, notwithstanding the manual searches that were diligently conducted by individual key custodians located in France over the last six months.[1] Through all of this, Costco has failed to identify any legitimate

---

[1] By Order dated January 8, 2008, this Court ordered YSL Parfums' United States-based affiliate, YSL Beauté, to conduct the very same electronic term searches on its United States-based servers. The twenty-eight terms to be searched are: trace, traceability, traçibilité, Anti-Diversion Coding System, ADCS, système de codage anti-contrefaçon, code, coded, coding, codage, encodage, touchy client, controlled client, client contrôlé, market report,

2

deficiencies in YSL Parfums' document production (or YSL Beauté's production for that matter) that would lead it or the Court to believe that the individual key custodian electronic searches conducted in France failed to capture all of the electronic data relevant to this action. What is clear is that Costco seeks this discovery not for the purpose of uncovering a smoking gun or any particular "missing" documents, but rather simply to burden YSL Parfums and punish Plaintiffs for causing Costco to reveal its closely guarded supplier information. (Ederer Decl. ¶ 6).

Beyond the tremendous financial burden associated with Costco's requested discovery of YSL Parfums, as discussed below, by conducting the requested electronic term searches on its France-based computer servers and transferring such data to the United States for production to Costco, YSL Parfums will violate European and French law, and expose itself to serious criminal liability. Accordingly, Costco's request for such electronic searches should be denied, or, at a minimum, Costco should be required to follow the strict procedures outlined under French law for the transfer of electronic data in connection with a foreign legal proceeding. (Ederer Decl. ¶ 7).

On this motion, Plaintiffs rely on the accompanying Declaration of Ariane Mole, Esq. Ms. Mole is a member of the Paris Bar and is partner in the Paris, France office of the international law firm of Bird & Bird. Ms. Mole specializes in IT and privacy legislation, with a particular focus on personal data protection in France and across Europe. Prior to entering private practice, Ms. Mole served as an official representative in the legal department of the Commission nationale de l'informatique et des libertés (the "CNIL" or "French Data Protection Authority"). While with the CNIL, Ms. Mole was primarily involved in international matters, and personal data protection issues. As a result of her extensive experience with personal data protection, Ms. Mole subsequently served as an expert to the European Union Directorate General Information Society

---

market forecast, market projection, market research, market study, rapport de marché, prévisions de marché, projection de marché, analyse de marché, etude de marché, diverted goods, diverted product, produit fantaisie, and 7862992018. (Ederer Decl. ¶ 5).

3

and Media (the "DG XIII"), a Directorate-General of the European Commission. In her capacity as an expert to the DG XIII, Ms. Mole participated in drafting European Directive n°95/46/EC on personal data protection (the "European Directive"), which France subsequently implemented through enactment of Act n°78-17 of 6 January 1978 on Data Processing, Data Files and Individual Liberties, as amended by the Act of 6 August 2004 relating to the protection of individuals with regard to the processing of personal data (the "French Data Protection Act"). In private practice, Ms. Mole counsels numerous major private companies on such intricate subject matters, including YSL Parfums. (Mole Decl. ¶¶ 1-2).

## ARGUMENT

Rule 26(c)(1) of the Federal Rules of Civil Procedure permits a court, upon a showing of good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such a protective order may forbid the requested discovery, or prescribe a discovery method other than the one selected by the party seeking discovery. Fed. R. Civ. P. 26(c)(1)(A) and (C). Clearly, the threat of criminal prosecution under French law constitutes just such an undue burden under Rule 26(c)(1), and may properly be alleviated through a Rule 26(c)(1) protective order.

Here, YSL Parfums seeks a protective order pursuant to either Rule 26(c)(1)(A) or (C), in light of the fact that, as explained below, if YSL Parfums were to comply with Costco's request for the discovery of its France-based computer servers and the transfer of the resulting electronic data to the United States in connection with this litigation, YSL Parfums would, in all likelihood, be subjected to criminal prosecution under three distinct branches of European privacy law: (i) the law against unauthorized transfer of personal data outside of the European Union; (ii) the principle of secrecy of private correspondence; and (iii) the violation of the French Blocking Statute. As

discussed below, the Court should either issue a protective order forbidding Costco from taking discovery of YSL Parfums' France-based computer servers by way of electronic term searches, the results of which would necessarily have to be transferred and produced to Costco in the United States, or order that Costco pursue the requested discovery through an alternative discovery method that will permit YSL Parfums to make the requested disclosure without exposing itself to criminal prosecution.

I.  **YSL Parfums' Compliance With Costco's Request For Discovery Of Its France-Based Computer Servers Would Require YSL Parfums To Violate The French Data Protection Act And Expose Itself To Criminal Liability**

The first reason why this Court should not order YSL Parfums to perform the electronic term searches in question, and transfer the results of such term searches to the United States for purposes of this litigation, is that this would clearly run afoul of the French Data Protection Act. Unlike the United States, the European Union, and France in particular, have adopted stringent regulations relating to the processing and transfer of personal data. These European Union-wide regulations have been adopted to combat what the European Union has determined to be very serious privacy issues relating to the transfer of personal data. The backbone of all of this is the European Directive, an initiative of the European Union, which France implemented through the French Data Protection Act. (Mole Decl. ¶¶ 4-7, Exs. A and B). The European Directive, which applies to all data relating to identified or identifiable individuals, strictly regulates the transfer of personal data to recipients located outside of the European Union. Specifically, Article 25 of the European Directive establishes narrow conditions for the transfer of personal data, providing that:

> [t]he Member States shall provide that the transfer to a third country of personal data which are undergoing processing or are intended for processing after transfer may take place only if, without prejudice to compliance with the national provisions adopted pursuant to the other provisions of this Directive, the third country in question ensures an adequate level of protection.

5

(Mole Decl. ¶ 5, Ex. A, Art. 25). In compliance with Article 25 of the European Directive, Article 68 of the French Data Protection Act provides that:

> [t]he data controller may not transfer data to a State that is not a Member of the European Community if this State does not provide a sufficient level of the protection of individuals' privacy, liberties and fundamental rights with regard to the actual or possible processing of their personal data.

(Mole Decl. ¶ 6, Ex. B, Art. 68).

Importantly, the European Commission has not recognized the United States as a country which ensures an adequate level of protection to personal data originating in the European Union. Accordingly, YSL Parfums' mere transfer of the personal data captured by the twenty-eight term searches to be conducted on its France-based computer servers — including its employees' professional emails — from France to the United States, is strictly forbidden absent express prior authorization from the CNIL. (Mole Decl. ¶ 7). The only relevant exception to this European Union and French prohibition against the transfer of personal data is where "the transfer is necessary or legally required on important public interest grounds, or for the establishment, exercise or defense of legal claims." (Mole Decl. ¶ 8, Ex. A, Art. 26(1)(d); *see* Ex. B, Art. 69(3)). While there was initially some confusion as to whether this exception applied to discovery orders directed toward French entities issued by United States courts, the French Minister of Justice recently advised the CNIL that such discovery orders do *not* fall under this exception; in other words, without more, the transfer of such data to the United States pursuant to a United States court order still violates the French Data Protection Act. (Mole Decl. ¶¶ 9-10, Exs. C and D).

Thus, by letter dated June 9, 2005, the Chairman of the CNIL, Alex Türk, brought this precise issue to the attention of the French Minister of Justice. In his letter, Chairman Türk requested clarification with respect to the Minister of Justice's position on the enforceability of discovery orders issued by United States courts against French entities. In particular, Chairman

6

Türk inquired as to whether a discovery order issued by a United States court requires an exequatur (*i.e.*, a judicial authorization to enforce a foreign judgment) issued by a French court prior to compliance in order to satisfy the data transfer prohibition set forth in French Data Protection Act. (Mole Decl. ¶ 9, Ex. C). By letter dated September 28, 2005, the Minister of Justice informed the CNIL that a discovery order issued by a United States court does not fall within the exception set forth is Article 69(3) of the French Data Protection Act (Article 26(1)(d) of the European Directive). Rather, the Minister of Justice advised that a discovery order emanating from a United States court falls within the scope of Chapter II of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Hague Convention"). Under the Hague Convention, this means that an order from a French court of competent jurisdiction must first be obtained to enforce a discovery order issued by a United States court. (Mole Decl. ¶ 10, Ex. D). Not surprisingly, the CNIL has adopted the Minister of Justice's position. (Mole Decl. ¶ 11).

The possibility of criminal prosecution for transferring personal data in contravention of the French Data Protection Act is very real. First, Article 226-22-1 of the French Criminal Code provides that violators of the French Data Protection Act may be sentenced to up to five years of imprisonment and fined up to €300,000. (Mole Decl. ¶ 12, Ex. E). Second, this provision is enforced. For example, the CNIL recently published a decision against Tyco Healthcare France, the French subsidiary of United States-based Tyco Healthcare, in which it fined Tyco Healthcare France €30,000 for improperly transferring personal data concerning its employees to its parent company in the United States. Although the unauthorized data transfer was not litigation-related, legal commentators have characterized the fine assessed against Tyco Healthcare France as "indicative of the recent drive by European data protection authorities to more aggressively

enforce the EU's data protection regime." *See* Ashley Winton, *Stark Warning to Those Who Flout EU Data Privacy Laws* (White & Case LLP, Data Protection and Privacy Update July 2007). (Mole Decl. ¶ 13, Ex. F).

Moreover, the CNIL recently released a statement on its website advising that although the number of discovery orders originating from United States courts which seek the transfer of personal data to the United States in connection with legal proceedings is increasing, the unauthorized compliance with such discovery orders violates European Union data protection laws, including the French Data Protection Act. *See* http://www.cnil.fr/. (Mole Decl. ¶ 14, Ex. G).

Accordingly, absent strict adherence to procedures set forth under the Hague Convention, as directed by the Minister of Justice and enforced by the CNIL, YSL Parfums faces the very real possibility of being criminally prosecuted for violating the French Data Protection Act if it complies with Costco's discovery requests. As explained above, only a French court order obtained pursuant to the procedures set out in the Hague Convention will satisfy the exception provided in Article 26(1)(d) of the European Directive and Article 69(3) of the French Data Protection Act — "the meeting of obligations ensuring the establishment, exercise or defense of legal claims" — and legitimize the transfer of personal data to the United States. Once such an order issues, YSL Parfums would need only notify the CNIL of the transfer to be in compliance with French data protection law. Otherwise, prior authorization must be obtained from the CNIL, which would refuse to grant such authorization in light of the Minister of Justice's September 28, 2005 letter. (Mole Decl. ¶ 15).

II.  **YSL Parfums' Compliance With Costco's Request For Discovery Of Its France-Based Computer Servers Would Require YSL Parfums To Violate The Principle of Secrecy of Private Correspondence And Expose Itself To Criminal Liability**

The second reason why this Court should decline to order YSL Parfums to conduct the requested electronic searches of its France-based computer servers is that this would run afoul of

8

the French principle of secrecy of private correspondence. In France, the principle of secrecy of an individual's private correspondence, as established by Article 8 of the European Convention of Human Rights and Article 9 of the French Civil Code, is considered a fundamental right encompassed in the protection of private life. This principle is so broad that it even extends to private correspondence transmitted through one's employer's computer system. (Mole Decl. ¶¶ 17-18). In fact, the French Supreme Court ("Cour de Cassation") has ruled that employers are prohibited from opening employee email which can be identified as private — even if the employer has forbidden its employees from using the employer's computer system for private purposes. *See* Cass. Soc., 2 October 2001, n° 99-42942, the "Nikon case". (Mole Decl. ¶ 20).

Under the French principle of secrecy of private correspondence, the mere unauthorized (and perhaps unintentional) collection of an employee's private email correspondence stored on an employer's computer server is a criminal offense punishable by up to one year of imprisonment and a monetary fine up to €45,000. *See* Article 226-15 (private sector bodies) and Article 432-9 (public sector bodies) of the French Criminal Code. (Mole Decl. ¶ 19, Ex. H). Similar to the threat of criminal prosecution faced by violators of the French Data Protection Act, violators of the principle of secrecy of private correspondence really do face criminal prosecution. For example, in 2001, the Court of Appeal of Paris confirmed a decision of the Paris First Level Criminal Court condemning the director, network administrator and the network administrator's assistant of a French laboratory for the unauthorized interception and disclosure of a private email sent by a student who had been accused of stealing from the laboratory. Each of the three individuals were prosecuted under the French Criminal Code and fined between €750 and €1,500. *See* Court of Appeal of Paris, 17 December 2001, n° 00-07565. (Mole Decl. ¶ 21).

9

While it may be possible to craft electronic term searches that will generate only non-private, professional emails — the collection of which would not violate the principle of secrecy of an individual's private correspondence — the terms used must be sufficiently technical so as to avoid the unauthorized collection of private emails. Here, a number of the search terms that Costco has requested that YSL Parfums use to search its France-based servers are not sufficiently technical, and, therefore, expose YSL Parfums to potential criminal liability for violating the principle of secrecy of an individual's private correspondence. The word "code", for example, is commonly used in everyday life in both professional and private contexts (e.g., "dress code", "pass code"), and the likelihood that a server wide search for the word "code" would result in the collection of private emails is high. (Mole Decl. ¶¶ 23-24).

In addition, as noted in Point I above, regardless of how technically specific the search terms are, absent prior authorization from the CNIL, or prior notification to the CNIL of an order issued by a French court of competent jurisdiction authorizing compliance with a discovery order issued by this Court, the transfer to the United States of the personal data constituting the results of the searches conducted would violate the French Data Protection Act, and also subject YSL Parfums to criminal prosecution. (Mole Decl. ¶¶ 22, 26).

### III. YSL Parfums' Compliance With Costco's Request For Discovery Of Its France-Based Computer Servers Would Require YSL Parfums To Violate The French Blocking Statute And Expose Itself To Criminal Liability

The third reason why the Court should not order the requested discovery of YSL Parfums' France-based computer servers is that the disclosure of the results of such discovery to Costco runs afoul of the French Blocking Statute, and would expose YSL Parfums to criminal liability. (Mole Decl. ¶ 27). Specifically, Article 1bis of French Law n° 68-678 of July, 26, 1968 (inserted by French Law n° 80-538 of July, 16, 1980) provides that:

> [s]ubject to international treaties or agreements and to laws and regulations in effect, any person is prohibited from requesting, setting, or disclosing, in writing, orally or in any other form documents or information of an economic, commercial, industrial, financial or technical nature directed towards establishing evidence in view of legal or administrative proceedings abroad or in relation thereto.

(Mole Decl. ¶ 27, Ex. I). Article 3 of the French Blocking Statute further provides that:

> [w]ithout prejudice to heavier penalties set out by law, any violation to the provisions of Articles 1 and 1bis of this law shall be punishable by imprisonment of six months and a fine of 18,000.00 euros or by either one of these two penalties.

(Mole Decl. ¶ 27, Ex. I).

Unlike the French Data Protection Act, or the principle of secrecy of private correspondence, the French Blocking Statute prohibits the disclosure of all forms of data — whether such disclosure is ordered by a foreign court or authority or not — provided that such disclosure is directed towards establishing evidence in view of or in relation to legal or administrative proceedings abroad. (Mole Decl. ¶ 28).

Although some United States courts, including this one, have found that the risk of prosecution under the French Blocking Statute is speculative and unrealistic, *see In re Vivendi Universal, S.A. Securities Litigation*, 2006 WL 3378115, at *3-4 (S.D.N.Y. Nov. 16, 2006), a recent French Supreme Court decision rebuts that. On December 12, 2007, the French Supreme Court (Cour de Cassation of December, 12, 2007) confirmed the criminal conviction of a French attorney for disclosing company information to the American attorney in connection with ongoing legal proceedings in the United States. (Mole Decl. ¶¶ 29-31, Ex. J). There, the French attorney obtained company information from a former Board member of a company involved in a United States litigation, and provided that information to the American attorney for use in connection with the litigation. Upon learning of this disclosure, the French State commenced an action against the

11

French attorney alleging that he violated the French Blocking Statute by disclosing information of an economic, commercial, industrial, financial or technical nature for the purpose of establishing evidence in furtherance of legal proceedings abroad. On March 28, 2007, the Paris Court of Appeal sanctioned the French attorney with a criminal fine in the amount of €10,000. (Mole Decl. ¶ 30, Ex. J).

Thereafter, by decision dated December 12, 2007, the French Supreme Court confirmed the decision of the Paris Court of Appeal on the grounds that the French attorney had not followed the specific procedures set forth under Chapter II of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters — namely the obligation to inform the French Ministry of Justice who transfers the matter to a French court or to another French authorized representative which then proceeds with the disclosure abroad. (Mole Decl. ¶ 31, Ex. J).

In light of this recent French Supreme Court ruling, unlike the situation in *In re Vivendi* and other cases under the French Blocking Statute, it is now very clear that violators of the French Blocking Statute do indeed expose themselves to the grave risk of criminal prosecution in France. Contrary to this Court's prior rulings, the French Blocking Statute is no longer a mere paper tiger. Accordingly, YSL Parfums faces a substantial risk of criminal prosecution for violating the French Blocking Statute if it complies with Costco's request to search YSL Parfums' France-based computer servers to establish evidence in a pending legal proceeding in the United States.

## CONCLUSION

Based on the foregoing, the Court should either issue a protective order (i) forbidding Costco from taking discovery of YSL Parfums' France-based computer servers by way of electronic term searches, the results of which are to be transferred and produced to Costco in the United States, or (ii) prescribing that Costco pursue the requested discovery through an alternative

discovery method that will permit YSL Parfums to make the requested disclosure without exposing itself to criminal prosecution. As noted above, this require compliance with the procedures set forth in the Hague Convention.

Dated: New York, New York
January 25, 2008

ARNOLD & PORTER LLP

By: _____
Louis S. Ederer
John Maltbie
Matthew T. Salzmann
399 Park Avenue
New York, NY 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399

*Attorneys for Plaintiffs*
*Yves Saint Laurent Parfums S.A.*
*and YSL Beauté Inc.*

13