Louis S. Ederer
John Maltbie
Matthew T. Salzmann
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
(212) 715-1000
*Attorneys for Plaintiffs Yves Saint Laurent Parfums S.A.*
*and YSL Beauté Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                        :

YVES SAINT LAURENT PARFUMS S.A. and :    Civil Action No.
YSL BEAUTÉ INC.,                     :    07 Civ. 3214 (LBS) (HP)

                 Plaintiffs,         :

            - against -         :

COSTCO WHOLESALE CORPORATION,    :
QUALITY KING DISTRIBUTORS, INC. and   :
J & H COSMETICS LTD.,               :

              Defendants.       :

                                         :
------------------------------------------------------- x
------------------------------------------------------- x
                                         :

QUALITY KING FRAGRANCE, INC.,      :

           Third Party Plaintiff,    :

            - against -         :

J & H COSMETICS LTD.,               :

           Third Party Defendant.    :

------------------------------------------------------- x

**DECLARATION OF ARIANE MOLE IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR A PROTECTIVE ORDER PURSUANT TO RULE 26(c)**
**OF THE FEDERAL RULES OF CIVIL PROCEDURE**

ARIANE MOLE, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the

following is true and correct to the best of her knowledge:

1

1.      I am a partner in the Paris, France office of the international law firm of Bird &

Bird.  The Plaintiff in this case, Yves Saint Laurent Parfums S.A. ("YSL Parfums"), is a client of

my office.  I make this declaration in support of YSL Parfums' motion for a protective order

against defendant Costco Wholesale Corporation ("Costco")'s discovery of YSL Parfums'

France-based computer servers by way of electronic term searches, and having the resulting data

transferred and produced to Costco in the United States, and/or requiring that Costco pursue

discovery procedures which will allow YSL Parfums to comply with such requests without

exposing itself to criminal prosecution under French law.

2.      I have been a member of the Paris Bar for more than twelve years, during which

time I have specialized in IT and privacy legislation, with a particular focus on personal data

protection in France and across Europe.  Prior to entering private practice, I served as an official

representative in the legal department of the Commission nationale de l'informatique et des

libertés (the "CNIL" or "French Data Protection Authority").  While with the CNIL, I was

primarily involved in international matters, and personal data protection.  As a result of my

experience with personal data protection, I thereafter served as an expert to the European Union

Directorate General Information Society and Media (the "DG XIII"), a Directorate-General of

the European Commission.  In my capacity as an expert to the DG XIII, I participated in drafting

European Directive n°95/46/EC on personal data protection (the "European Directive").  France

subsequently implemented the European Directive through enactment of Act n°78-17 of 6

January 1978 on Data Processing, Data Files and Individual Liberties, as amended by the Act of

6 August 2004 relating to the protection of individuals with regard to the processing of personal

data (the "French Data Protection Act").

3.      I have been informed by YSL Parfums that, in connection with a civil litigation against Costco and two other corporate entities in the United States District Court for the Southern District of New York, YSL Parfums may be required, pursuant to discovery requests received from Costco, to conduct twenty-eight electronic term searches on its French computer servers, and transfer the electronic data resulting from such searches to counsel in the United States.  As explained below, were YSL Parfums to comply with the requested discovery, it would expose itself to criminal prosecution under three distinct branches of European privacy law:  (i) the unauthorized transfer of personal data outside of the European Union; (ii) the principle of secrecy of private correspondence in France; and (iii) the violation of the French Blocking Statute.

### The Unauthorized Transfer of Personal Data

4.      First, there is the European Directive (a copy of which is attached hereto as Exhibit A), an initiative of the European Union, which France implemented through the French Data Protection Act (a copy of which is attached hereto as Exhibit B).  The European Directive strictly regulates the transfer of personal data relating to identified or identifiable individuals to recipients located outside of the European Union.

5.      Article 25 of the European Directive establishes narrow conditions for the transfer of personal data, stating that:

> [t]he Member States shall provide that the transfer to a third country of personal data which are undergoing processing or are intended for processing after transfer may take place only if, without prejudice to compliance with the national provisions adopted pursuant to the other provisions of this Directive, the third country in question ensures an adequate level of protection.

Exhibit A, Art. 25.

6.    In compliance with Article 25 of the European Directive, Article 68 of the French Data Protection Act provides that:

> [t]he data controller may not transfer data to a State that is not a Member of the European Community if this State does not provide a sufficient level of the protection of individuals' privacy, liberties and fundamental rights with regard to the actual or possible processing of their personal data.

Exhibit B, Art. 26.

7.    To date, the European Commission has not recognized the United States as a country which ensures an adequate level of protection to personal data.  Therefore, the transfer of personal data from France to the United States — *i.e.*, the very data which will result from the electronic term searches of YSL Parfums' France-based computer servers that Costco has requested — is strictly forbidden absent express prior authorization from the CNIL.

8.    There are, however, certain exceptions to this stringent prohibition against the transfer of personal data.  In particular, Article 26(1)(d) of the European Directive sets forth specific derogations to the general data transfer prohibition, including instances where "the transfer is necessary or legally required on important public interest grounds, or for the establishment, exercise or defense of legal claims."  Exhibit A, Art. 26(1)(d).  A similar provision has been implemented by Article 69(3) of the French Data Protection Act.

9.    The issue of whether a discovery order issued by a United States court in a civil litigation falls within the derogation set forth in Article 26(1)(d), as implemented by Article 69(3) of the French Data Protection Act, was brought to the attention of the French Minister of Justice by a letter from the Chairman of the CNIL, Alex Türk, dated June 9, 2005.  Through his letter, Chairman Türk requested clarification of the Minister of Justice's position with respect to the enforceability of discovery orders issued by United States courts against French companies, and questioned whether such orders require an exequatur (*i.e.*, a judicial authorization to enforce

4

a foreign judgment) issued by a French court before compliance with such order can be made without threat of criminal prosecution under the French Data Protection Act. A copy of Chairman Türk's June 9, 2005 letter, along with an English language translation thereof, is attached hereto as Exhibit C.

10.     By letter dated September 28, 2005, the Minister of Justice responded to Chairman Türk's June 9, 2005 letter and explained that a discovery order issued by a United States court falls with the scope of Chapter II of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Hague Convention"). Accordingly, the Minister of Justice advised the CNIL that the procedure set forth under the Hague Convention — namely, obtaining an order from a French court of competent jurisdiction which endorses the discovery order issued by a United States court — must be followed to avoid prosecution under the French Data Protection Act. A copy of the Minister of Justice's September 28, 2005 letter, along with an English language translation thereof, is attached hereto as Exhibit D.

11.     In light of the Minister of Justice's response to Chairman Türk's letter, the CNIL has adopted the following position with respect to requests made for the transfer of personal data outside of the European Union pursuant to a discovery order issued by a United States court — a French court order endorsing the United States court discovery order must be obtained prior to the transfer of any personal data to the United States.

12.     The failure to follow the strict provisions relating to the transfer of personal data under the French Data Protection Act may result in criminal prosecution. Pursuant to Article 226-22-1 of the French Criminal Code, violations of the French Data Protection Act are punishable by up to five years of imprisonment and a fine of €300,000. A copy of Article 226-22 of the French Criminal Code is attached hereto as Exhibit E.

13.     Although French law regulating the transfer of personal data is relatively new, the threat of prosecution for the unauthorized transfer of personal data is real. In fact, in a published decision, the CNIL recently fined Tyco Healthcare France, the French subsidiary of United States-based Tyco Healthcare, €30,000 for improperly transferring personal data relating to its employees to its parent company in the United States. While the unauthorized data transfer at issue was not litigation-related, legal commentators have described the fine assessed to Tyco Healthcare France as being "indicative of the recent drive by European data protection authorities to more aggressively enforce the EU's data protection regime." *See* Ashley Winton, *Stark Warning to Those Who Flout EU Data Privacy Laws* (White & Case LLP, Data Protection and Privacy Update July 2007), a copy of which is attached hereto as Exhibit F.

14.     Moreover, just last week, on January 15, 2008, the CNIL released a statement on its website advising that although the number of discovery orders originating for United States courts which seek the transfer of personal data to the United States in connection of commercial litigation is increasing, the unauthorized compliance with such discovery orders violates European Union data protection laws, including the French Data Protection Act. A copy of the printout from the CNIL website, which is available at http://www.cnil.fr/, is attached hereto as Exhibit G.

15.     Accordingly, absent strict adherence to procedures set forth under the Hague Convention, as directed by the Minister of Justice and enforced by the CNIL, YSL Parfums faces the very real possibility of being criminally prosecuted for violating the French Data Protection Act if it complies with Costco's discovery requests. As explained above, only a French court order obtained pursuant to the procedures set out in the Hague Convention will satisfy the exception provided in Article 26(1)(d) of the European Directive and Article 69(3) of the French

Data Protection Act — "the meeting of obligations ensuring the establishment, exercise or defense of legal claims" — and legitimize the transfer of personal data to the United States. Once such an order issues, YSL Parfums would need only notify the CNIL of the transfer to be in compliance with French data protection law. Otherwise, prior authorization must be obtained from the CNIL, who would refuse to grant such authorization in light of the Minister of Justice's September 28, 2005 letter.

16.     Absent adherence to the above procedure, YSL Parfums would face a very real possibility of criminal liability for voluntarily complying with an order issued by a United States court to transfer personal data from France to the United States.

### The Principle of Secrecy of Private Correspondence

17.     Second, in addition to facing criminal liability for transferring personal data outside of the European Union, YSL Parfums could also face criminal liability for simply conducting the requested electronic term searches on its France-based computer servers.

18.     In France, the principle of secrecy of an individual's private correspondence, as provided for in Article 8 of the European Convention of Human Rights and Article 9 of the French Civil Code, is considered a fundamental right encompassed in the protection of private life. This principle even extends to private correspondence transmitted through one's employer's computer system.

19.     Accordingly, the mere unauthorized (and perhaps unintentional) collection of an employee's private email correspondence stored on an employer's computer server is a criminal offense punishable by up to one year of imprisonment and a monetary fine up to €45,000, under Article 226-15 (private sector bodies) or 432-9 (public sector bodies) of the French Criminal Code. Copies of Article 226-15 and 432-9 are attached hereto as Exhibit H.

7

20.    In 2001, the French Supreme Court ("Cour de Cassation") ruled that an employer is prohibited from opening an employee's email which could reasonably be identified as private (for instance, located in a private file or with a private subject). Notably, this prohibition applies even if the employer has a policy forbidding its employees from using the computer for private purposes (Cass. Soc. , 2 October 2001, n° 99-42942, the "Nikon case").

21.    In another case, the director of a French laboratory instructed his network administrator and the network administrator's assistant to monitor the email of a student suspected in several piracy incidents which occurred within the laboratory. The monitoring revealed a message written by the student intended for the press with respect to the accusations born against him. The network administrator and his assistant disclosed the email to the director of the laboratory who immediately convoked the student. Instead of showing up to the convocation, the student filed a complaint for violation of his private correspondence. The Paris First Level Criminal Court condemned the director, the network administrator and his assistant for having intercepted and disclosed the student's email in breach of the French Criminal Code, and sentenced them to fines ranging from 5,000.00 to 10,000.00 French francs (from €750 to €1,500). The Court of Appeal of Paris confirmed in its decision of December 17, 2001 the lower court's condemnation for the disclosure of a private correspondence (Court of Appeal of Paris December 17, 2001 n°00/07565).

22.    The electronic search of such emails in France — non-private, professional emails — requires a prior notification to the CNIL, as it constitutes an electronic processing of personal data relating to identified or identifiable individuals under Article 22 of the French Data Protection Act.

23.    While it may be possible to craft electronic term searches on YSL Parfums' France-based computer servers that will generate only non-private, professional emails — the collection of which would not violate the principle of secrecy of an individual's private correspondence — the terms used must be sufficiently technical to avoid the selection of private emails.

24.    Based on my review of the proposed search terms, a number of them do not appear to be sufficiently technical, and, therefore, expose YSL Parfums to criminal sanctions if used. For example, the word "code" is commonly used in everyday life in both professional and personal contexts, and is likely to appear in private emails concerning invitations to one's home, where the inviting party provides his/her guests with a home access code.

25.    Accordingly, the selection of employees' emails through electronic term searches on YSL's France-based computer servers may be an adequate means to collect non-private professional emails only if the terms utilized are sufficiently technical, so as to eliminate the chance of selecting private correspondence.

26.    Nevertheless, as discussed above, even if the terms used to electronically search YSL Parfums' France-based computer servers are sufficiently technical, and captured only professional emails, absent prior authorization from the CNIL or a French court endorsing an order issued by a Unites States court, the transfer of such personal data to the United States would violate the French Data Protection Act and subject YSL Parfums to criminal liability.

### The French Blocking Statute

27.    Third, YSL Parfums could face criminal liability for merely disclosing information for the purpose of establishing evidence in view of legal proceeding aboard — precisely what it would be doing here by complying with Costco's discovery request. Article

1bis of French Law n° 68-678 of July, 26, 1968 (inserted by French Law n° 80-538 of July, 16,

1980) (the "French Blocking Statute") provides:

> [s]ubject to international treaties or agreements and to laws and
> regulations in effect, any person is prohibited from requesting,
> setting, or disclosing, in writing, orally or in any other form
> documents or information of an economic, commercial, industrial,
> financial or technical nature directed towards establishing evidence
> in view of legal or administrative proceedings abroad or in relation
> thereto.

Article 3 of the French Blocking Statute provides:

> [w]ithout prejudice to heavier penalties set out by law, any
> violation to the provisions of Articles 1 and 1bis of this law shall
> be punishable by imprisonment of six months and a fine of
> 18,000.00 euros or by either one of these two penalties.

A copy of the French Blocking Statute is attached hereto as Exhibit I.

28.    Accordingly, the French Blocking Statute prohibits the disclosure, by any means,

of all information relating to an entity's commercial activities, even if such disclosure is ordered

by a foreign court or authority, provided that such disclosure is sought to establish evidence in

view of or in relation to legal or administrative proceedings abroad.

29.    A recent decision from the French Supreme Court (Cour de Cassation of

December, 12, 2007) confirmed a criminal conviction against a French attorney for having

communicated information to an American attorney handling a legal proceeding in the United

States against a French insurance company, MAAF, relating to the purchase of Executive Life.

30.    There, the French attorney had contacted a former member of the Board of

MAAF in order to find out how certain decisions of the Board had been taken at the time

Executive Life was being acquired.  The French attorney then provided such information to the

American attorney.  Upon learning of this disclosure, the French State sued the French attorney

for violating the French Blocking Statute by disclosing information of an economic, commercial,

industrial, financial or technical nature directed towards establishing evidence in view of legal proceedings abroad. The French counsel was sanctioned by the Paris Court of Appeal on March, 28, 2007, to a fine in the amount of €10,000, with such a notation placed in his criminal file.

31.    The Supreme Court confirmed the decision of the Paris Court of Appeal on the grounds that the French attorney had not followed the specific procedures set out by Chapter II of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters — namely his failure to inform the French Ministry of Justice who transfers the matter to a French court or to other French authorized representative which then proceeds with the disclosure abroad. A copy of this French Supreme Court decision of December, 12, 2007 is attached to as Exhibit J.

32.    The French Supreme Court clearly ruled that the disclosure of any document or information of an economic, commercial, industrial, financial or technical nature is forbidden, where such information is intended to establish evidence in view of legal proceedings abroad, unless the procedures set out by the Hague Convention are complied with.

33.    Accordingly, YSL Parfums would expose itself to a substantial risk of prosecution if it complied with an order issued by this Court to transfer the results of electronic term searches conducted on its France-based computers servers to the United States for the purpose of establishing evidence in this pending legal proceeding.

34.    For example, an employee could complain to the CNIL and/or sue YSL Parfums for processing, disclosing and transferring his or her personal data abroad.

35.    Thus, I respectfully submit that this court should forbid the discovery sought by Costco, or, in the alternative, prescribe that Costco follow the procedures set forth under the Hague Convention, and have any discovery order requiring the transfer of personal data to the

11

United States issued by this Court formally endorsed by the CNIL and/or a French court of competent jurisdiction.

EXECUTED UNDER PENALTY OF PERJURY THIS 24th DAY OF JANUARY,

2008.

_____
Ariane Mole