Louis S. Ederer
John Maltbie
Matthew T. Salzmann
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
(212) 715-1000

*Attorneys for Plaintiffs Yves Saint Laurent Parfums S.A.
and YSL Beauté Inc.*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------- x

YVES SAINT LAURENT PARFUMS S.A. and :
YSL BEAUTÉ INC.,

               Plaintiffs,

       - against -

COSTCO WHOLESALE CORPORATION,
QUALITY KING DISTRIBUTORS, INC. and
J & H COSMETICS LTD.,

           Defendants.

---------------------------------------------------- x
---------------------------------------------------- x

QUALITY KING FRAGRANCE, INC.,

          Third Party Plaintiff,

       - against -

J & H COSMETICS LTD.,

         Third Party Defendant.

---------------------------------------------------- x

Civil Action No.
07 Civ. 3214 (LBS) (HP)


**EXHIBIT B**

**Act n°78-17 of 6 January 1978 on Data Processing, Data Files and Individual Liberties**

(Amended by the Act of 6 August 2004 relating to the protection of individuals with regard to the processing of personal data)

Annotated text

| |
|---|
| In order to simplify the reading of this Act, a reference in an Article to another Article is shown. |

| |
|---|
| <u>Methodology of translation</u>: as a principle it was decided not to translate the original titles of French institutions or procedures which appear in the text when their translation risked to be misleading. As an example, the title of the "Commission nationale de l`informatique et des libertés" (CNIL), the French Data Protection Authority, was not translated and its title appears as such in the main text.<br>Occasionally some titles were translated if their literal translation into English was considered non-problematic and unlikely to generate confusion in the mind of the reader. |

1

2 November 2004 ................................................................................................ 1
   Act n°78-17 of 6 January 1978 on Data Processing, Data Files and Individual Liberties 1
   CHAPTER I ...................................................................................................... 5
     Article 1 ..................................................................................................... 5
     Article 2 ..................................................................................................... 5
     Article 3 ..................................................................................................... 6
     Article 4 ..................................................................................................... 6
     Article 5 ..................................................................................................... 6
   CHAPTER II ..................................................................................................... 7
   CONDITIONS ON LAWFULNESS OF THE PROCESSING OF PERSONAL DATA ........... 7
   Section 1: General provisions ........................................................................ 7
     Article 6 ..................................................................................................... 7
     Article 7 ..................................................................................................... 8
   Section 2: Specific provisions of certain categories of data ................................. 8
     Article 8 ..................................................................................................... 8
     Article 9 ..................................................................................................... 10
     Article 10 ................................................................................................... 10
   CHAPTER III .................................................................................................... 11
   THE  COMMISSION NATIONALE DE L'INFORMATIQUE ET DES LIBERTÉS (CNIL).... 11
     Article 11 ................................................................................................... 11
     Article 12 ................................................................................................... 13
     Article 13 ................................................................................................... 13
     Article 14 ................................................................................................... 15
     Article 15 ................................................................................................... 15
     Article 16 ................................................................................................... 16
     Article 17 ................................................................................................... 17
     Article 18 ................................................................................................... 17
     Article 19 ................................................................................................... 17
     Article 20 ................................................................................................... 18
     Article 21 ................................................................................................... 18
   CHAPTER IV .................................................................................................... 18
   FORMALITIES PRIOR TO COMMENCING DATA PROCESSING ............................ 18
     Article 22 ................................................................................................... 18
   Section 1: Notification .................................................................................. 20
     Article 23 ................................................................................................... 20
     Article 24 ................................................................................................... 20
   Section 2: Authorisation................................................................................ 21
     Article 25 ................................................................................................... 21
     Article 26 ................................................................................................... 23
     Article 28 ................................................................................................... 25
     Article 29 ................................................................................................... 25
   Section 3: Common provisions........................................................................ 26
     Article 30 ................................................................................................... 26
     Article 31 ................................................................................................... 27
   CHAPTER V ..................................................................................................... 29
   OBLIGATIONS  INCUMBENT  UPON  DATA  CONTROLLERS  AND  RIGHTS  OF
   INDIVIDUALS................................................................................................... 29

Section 1: Obligations incumbent upon data controllers ..................................... 29
    Article 32 ..................................................................................... 29
    Article 33 ..................................................................................... 31
    Article 34 ..................................................................................... 31
    Article 35 ..................................................................................... 31
    Article 36 ..................................................................................... 32
    Article 37 ..................................................................................... 32
Section 2: Rights of individuals in respect of processing of personal data ............... 33
    Article 38 ..................................................................................... 33
    Article 39 ..................................................................................... 33
    Article 40 ..................................................................................... 34
    Article 41 ..................................................................................... 35
    Article 42 ..................................................................................... 36
    Article 43 ..................................................................................... 36
CHAPTER VI ..................................................................................... 36
SUPERVISION OF THE IMPLEMENTATION OF DATA PROCESSING ..................... 36
    Article 44 ..................................................................................... 36
CHAPTER VII ..................................................................................... 38
SANCTIONS THAT THE « COMMISSION NATIONALE DE L'INFORMATIQUE ET DES
LIBERTÉS" MAY IMPOSE ..................................................................... 38
    Article 45 ..................................................................................... 38
    Article 46 ..................................................................................... 39
    Article 47 ..................................................................................... 40
    Article 48 ..................................................................................... 40
    Article 49 ..................................................................................... 40
CHAPTER VIII ..................................................................................... 41
CRIMINAL PROVISIONS ..................................................................... 41
    Article 50 ..................................................................................... 41
    Article 51 ..................................................................................... 41
    Article 52 ..................................................................................... 42
CHAPTER IX ..................................................................................... 42
PROCESSING OF PERSONAL DATA FOR THE PURPOSE OF MEDICAL RESEARCH .. 42
    Article 53 ..................................................................................... 42
    Article 54 ..................................................................................... 42
    Article 55 ..................................................................................... 44
    Article 56 ..................................................................................... 44
    Article 57 ..................................................................................... 45
    Article 58 ..................................................................................... 46
    Article 59 ..................................................................................... 46
    Article 60 ..................................................................................... 46
    Article 61 ..................................................................................... 46
CHAPTER X ..................................................................................... 46
PROCESSING OF PERSONAL MEDICAL DATA FOR THE PURPOSES OF EVALUATION
OR ANALYSIS OF CARE AND PREVENTION PRACTICES OR ACTIVITIES ............... 46
    Article 62 ..................................................................................... 47
    Article 63 ..................................................................................... 47
    Article 64 ..................................................................................... 47
    Article 65 ..................................................................................... 48

3

Article 66 ................................................................................. 48
CHAPTER XI ................................................................................. 49
PROCESSING OF PERSONAL DATA FOR THE PURPOSE OF JOURNALISM AND
LITERARY AND ARTISTIC EXPRESSION ........................................... 49
Article 67 ................................................................................. 49
CHAPTER XII ................................................................................ 50
TRANSFER OF PERSONAL DATA TO STATES THAT ARE NOT MEMBERS OF THE
EUROPEAN COMMUNITY .................................................................. 50
Article 68 ................................................................................. 50
Article 69 ................................................................................. 50
Article 70 ................................................................................. 51
CHAPTER XIII ............................................................................... 52
MISCELLANEOUS ............................................................................ 52
Article 71 ................................................................................. 52
Article 72 ................................................................................. 52

4

# CHAPTER I
## PRINCIPLES AND DEFINITIONS

### Article 1

Information technology should be at the service of every citizen. Its development shall take place in the context of international co-operation. It shall not violate human identity, human rights, privacy, or individual or public liberties.

### Article 2

This Act shall apply to automatic processing of personal data as well as non-automatic processing of personal data that is or may be contained in a personal data filing system, with the exception of processing carried out for the exercise of exclusively private activities, where the data controller meets the conditions provided for in Article 5 (*subject to national law*).

Personal data means any information relating to a natural person who is or can be identified, directly or indirectly, by reference to an identification number or to one or more factors specific to him. In order to determine whether a person is identifiable, all the means that the data controller or any other person uses or may have access to should be taken into consideration.

Processing of personal data means any operation or set of operations in relation to such data, whatever the mechanism used, especially the obtaining, recording, organisation, storage, adaptation or alteration, retrieval, consultation, use, disclosure by transmission, dissemination or otherwise making available, alignment or combination, blocking, deletion or destruction.

A personal data filing system means any structured and stable set of personal data that are accessible according to specific criteria.

The data subject of a processing of personal data means an individual to whom the data covered by the processing relate.

5

**Article 3**

I. - The data controller means, unless expressly designated by legislative or regulatory provisions relating to this processing, a person, public authority, department or any other organisation who determines the purposes and means of the data processing.

II. - The recipient of a processing of personal data is any authorised person to whom the data are disclosed, other than the data subject, the data controller, the sub-contractor and persons who, due to their functions, are in charge of processing the data. However, the authorities who are legally entitled to ask the data controller to send them the personal data, in the context of a particular mission or that of the exercise of a right to receive such data, shall not be regarded as recipients.

**Article 4**

The provisions of this Act shall not apply to temporary copies made in the context of technical operations of transmission and access provision to a digital network for the purpose of automatic, intermediate and transitory storage of data and with the sole aim of allowing other recipients of the service to benefit from the best access possible to the transmitted information.

**Article 5**

I. – This Act shall apply to the processing of personal data only if:

(1) the data controller is established on French territory. The data controller who carries out his activity on French territory within an establishment, whatever its legal form, is considered established on French territory;

(2) the data controller, although not established on French territory or in any other Member State of the European Community, uses means of processing located on French territory, with the exception of processing used only for the purposes of transit through this territory or that of any other member State of the European Community.

6

II. - For the purposes of the processing mentioned in Sub-section (2) of Section I, the data controller shall notify the "Commission nationale de l'informatique et des libertés" (CNIL) of the appointment of a representative established on French territory who shall represent him for the fulfilment of the duties required by this Act. This appointment shall not preclude any legal recourse that could otherwise be initiated against the data controller.

## CHAPTER II
### CONDITIONS ON THE LAWFULNESS OF THE PROCESSING OF PERSONAL DATA

**Section 1: General provisions**

### Article 6

Processing may be performed only on personal data that meet the following conditions:

(1) the data shall be obtained and processed fairly and lawfully;

(2) the data shall be obtained for specified, explicit and legitimate purposes, and shall not subsequently be processed in a manner that is incompatible with those purposes. However, further data processing for statistical, scientific and historical purposes shall be considered compatible with the initial purposes of the data collection, if it is carried out in conformity with the principles and procedures provided for in this Chapter, in Chapter IV (*formalities prior to commencing data processing*) and in Section 1 of Chapter V (*obligations incumbent upon the data controllers and the rights of individuals*) as well as in Chapters IX (*processing of personal data for the purpose of medical research*) and X (*processing of personal medical data for the purposes of evaluation or analysis of care and prevention practices or activities*) and if it is not used to take decisions with respect to the data subjects;

(3) they shall be adequate, relevant and not excessive in relation to the purposes for which they are obtained and their further processing;

(4) they shall be accurate, complete and, where necessary, kept up-to-date. Appropriate steps shall be taken in order to delete and rectify data that are inaccurate and incomplete with regard to the purposes for which they are obtained and processed;

(5) they shall be stored in a form that allows the identification of the data subjects for a period no longer than is necessary for the purposes for which they are obtained and processed.

**Article 7**

Processing of personal data must have received the consent of the data subject or must meet one of the following conditions:

(1) compliance with any legal obligation to which the data controller is subject;

(2) the protection of the data subject's life;

(3) the performance of a public service mission entrusted to the data controller or the data recipient;

(4) the performance of either a contract to which the data subject is a party or steps taken at the request of the data subject prior to entering into a contract;

(5) the pursuit of the data controller's or the data recipient's legitimate interest, provided this is not incompatible with the interests or the fundamental rights and liberties of the data subject.

**Section 2: Specific provisions of certain categories of data**

**Article 8**

I. – The collection and processing of personal data that reveals, directly or indirectly, the racial and ethnic origins, the political, philosophical, religious opinions or trade union affiliation of persons, or which concern their health or sexual life, is prohibited.

II. – In so far as the purpose of the processing may so require in respect of certain categories of data, the prohibition provided for in Section I shall not apply to:

(1) processing for which the data subject has given his express consent, except in cases where the law stipulates that the prohibition provided for in Section I may not be lifted by the consent of the data subject;

(2) processing necessary for the protection of human life, but to which the data subject is unable to give his consent because of a legal incapacity or physical impossibility;

(3) processing carried out by an association or any other not- profit-seeking religious, philosophical, political or trade union body:

8

- only for the data referred to in Section I corresponding to the object of that association or body;

- if it relates only to members of this association or body and, when appropriate, individuals who have regular contact with it in connection with its activity;

- and that it relates only to data not transmitted to third parties, except where the data subjects expressly consent to such transmission.

(4) processing that relates to personal data that the data subject has made public;

(5) processing that is necessary for the establishment, exerciseor defence of a legal claim;

(6) processing that is necessary for the purposes of preventive medicine, medical diagnosis, provision of healthcare or treatment, or for the management of healthcare services and carried out by a member of a medical profession, or by any other person who, due to his functions, is bound by a duty of confidentiality as stipulated in Article 226-13 of the Criminal Code;

(7) statistical processing carried out by the National Institute of Statistics and Economic Studies (INSEE) or one of the statistical services of Ministries in conformity with Act No. 51-711 of 7 June 1951 relating to obligations, co-ordination and confidentiality as regards statistics, following an opinion of the National Council for Statistical Information (CNIS) and in accordance with the conditions provided for in Article 25 of this Act (*authorisation by the CNIL*);

(8) processing necessary for medical research according to the conditions provided for in Chapter IX (*processing of personal data for the purpose of medical research*).

III. – If the personal data mentioned in Section I are, within a short period of time, to be subject to an anonymisation procedure which the the "Commission nationale de l'informatique et des libertés" has earlier approved as complying with the provisions of this Act, the Commission may authorise certain categories of processing according to the conditions stipulated in Article 25 (*authorisation by the CNIL*), taking their purpose into consideration. The provisions of Chapter IX (*processing of personal data for the purpose of medical research*) and Chapter X (*processing of personal medical data for the purposes of evaluation or analysis of care and prevention practices or activities*) shall not apply.

IV. - Likewise, an automatic or non-automatic processing shall not be subject to the prohibition provided for in Section I when it is justified by the public interest and authorised within the conditions stipulated in Section I of

Article 25 (*authorisation by the CNIL*) or in Section II of Article 26 (*authorisation by a decree in Conseil d'Etat after a reasoned and published opinion of the CNIL*).

## Article 9

Processing of personal data relating to offences, convictions and security measures may be put in place only by:

(1) the courts, public authorities and legal entities that manage public services, within the framework of their legal remit ;

(2) the representatives of the law for the strict needs of the exercise of the functions granted to them by the law;

(3) [*Provisions considered contrary to the Constitution by decision No. 2004-499 DC of 29 July 2004 of the Constitutional Court*];

(4) the legal persons mentioned in Articles L321-1 and L331-1 of the Intellectual Property Code, acting by virtue of the rights that they administer or on behalf of victims of infringements of the rights provided for in Books I, II and III of the same Code, and for the purposes of ensuring the defence of these rights.

## Article 10

No court decision involving the assessment of an individual's behaviour may be based on an automatic processing of personal data intended to assess some aspects of his personality.

No other decision having a legal effect on an individual may be taken solely on the grounds of automatic processing of data intended to define the profile of the data subject or to assess some aspects of his personality.

Neither the decisions taken in the context of entering into or performing a contract and concerning which the data subject had an opportunity to give his remarks nor those that meet the request of the data subject shall be regarded as taken solely on the grounds of automatic processing.

## CHAPTER III
### THE  COMMISSION NATIONALE DE L'INFORMATIQUE ET DES LIBERTÉS (CNIL)

### Article 11

The  "Commission nationale de l'informatique et des libertés" (CNIL) is an independent administrative authority. It shall have the following assignments :

(1) it shall inform all data subjects and data controllers of their rights and duties;

(2) it shall ensure that the processing of personal data is carried out in conformity with the provisions of this Act;

For that:

(a) it shall authorise the processing mentioned in Article 25 (*political, philosophical, medical and sexual life data; genetic data; offences; waiver of a right; combination; NIR, i.e. social security number; social difficulties; biometrics)*, give its opinion on the processing mentioned in Articles 26 (*State security and criminal offences processing)* and 27 (*public processing including NIR, i.e. social security number– census operations – public online services*) and receive the notifications relating to other processing;

(b) it shall establish and publish the standards mentioned in Section I of Article 24 (*simplified standards*) and impose, when necessary, standard regulations bearing on the security of systems;

(c) it shall receive claims, petitions and complaints relating to the carrying out of the processing of personal data and inform the initiators of these actions of the decisions taken regarding them;

(d) it shall respond to requests from public authorities and courts for an opinion and advise individuals and bodies that set up or intend to set up automatic processing of personal data;

(e) it shall immediately inform the Public Prosecutor, in accordance with Article 40 of the Criminal Procedure Code of offences of which it has knowledge and may present its remarks in criminal proceedings according to the conditions set out in Article 52 (*remarks filed or presented by the chairman or his representative*);

(f) it may, by a specific decision, entrust one or several of its members or agents of its office to undertake, within the limits of the conditions provided for in Article 44 (*on-site inspections*), verifications relating to

11

all processing and, if necessary, to obtain copies of all documents or any medium that are useful to its tasks;

(g) it may within the conditions defined in Chapter VII (*sanctions*), take one of the measures provided for in Article 45 (*sanctions and urgent measures*) against the data controller;

(h) it shall respond to the requests for access concerning a processing mentioned in Articles 41 (*processing involving state security, defence or public safety*) and 42 (*public processing in relation to offences and taxation*).

(3) when asked by professional organisations or institutions of which the members are mainly data controllers:

(a) it shall give its opinion on the conformity with the requirements of this Act of draft professional rules, products and procedures which are intended to protect individuals in respect of the processing of personal data or the anonymisation of data;

(b) it shall assess the guarantees provided by the professional rules that it has previously recognised to be in conformity with the provisions of this Act, with respect to the fundamental rights of individuals;

(c) it shall deliver a quality-label to products or procedures intended to protect individuals in respect of processing of personal data, once it has recognised them to be in conformity with the provisions of this Act.

(4) It shall keep itself informed of developments in information technology and make public its assessment of the consequences resulting from them for the exercise of the rights and liberties mentioned in Article 1 (*human rights, privacy, individual or public liberties*).

For that:

(a) it shall be consulted on any bill or draft decree relating to the protection of individuals in relation to automatic data processing;

(b) it shall propose legislative or regulatory measures to the government in order to adapt the protection of liberties to developments in computer processes and techniques;

(c) at the request of other independent administrative authorities, it may provide its assistance as regards data protection;

12

(d) it may contribute, at the request of the Prime Minister, to the preparation and definition of France's position in international negotiations in the field of personal data protection. It may take part, at the request of the Prime Minister, in France's delegations to competent international and European Community organisations in this field.

In order to perform its functions, the commission may act by making recommendations and take individual or regulatory decisions in the cases provided for in this Act.

The commission shall present annually a public report reviewing the performance of its mission to the President of the French Republic, the Prime Minister and Parliament.

## Article 12

The "Commission nationale de l'informatique et des libertés" shall avail of the financial means necessary to perform its functions. The provisions of the Act of 10 August 1992 relating to financial audit shall not apply to their management. The commission's accounts shall be presented to the "Cour des Comptes" (Accounting Court).

## Article 13

I. - The "Commission nationale de l'informatique et des libertés" shall be composed of seventeen members:

(1) two Members of the "Assemblée nationale" (National Assembly) and two Members of the "Sénat" (Senate), appointed by the National Assembly and the Senate respectively;

(2) two members of the "Conseil économique et social" (Economic and Social Council), elected by that body;

(3) two members or former members of the "Conseil d'Etat" (the French Supreme Administrative Court), at least with the rank of "conseiller" (counsellor), elected by the general assembly of the "Conseil d'Etat";

(4) two members or former members of the "Cour de Cassation" (the French Judicial Supreme Court), at least with the rank of "conseiller" (counsellor), elected by the general assembly of the "Cour de Cassation";

(5) two members or former members of the "Cour des Comptes" (Accounting Court), at least with the rank of "conseiller maître" (senior counselor), elected by the general assembly of the "Cour des Comptes";

13

(6) three eminent persons chosen for their knowledge of information technology or questions related to individual liberties, appointed by decree;

(7) two eminent persons chosen for their knowledge of information technology, appointed by the President of the National Assembly and by the President of the Senate respectively.

The Commission shall elect among its members a chairman and two vice-chairmen, one of them as delegate vice-chairman, who together form the "bureau" (executive committee)).

The "formation restreinte" (restricted committee) of the commission shall be composed of the chairman, vice-chairmen and three members elected by the commission among its members for the duration of their term of office.

In the event of a tie in the voting, the chairman shall have the casting vote.

II. - The term of office of the members of the commission mentioned in Sub-sections (3), (4), (5), (6) and (7) of Section I shall be five years. It may be renewed once. The term of office of the members mentioned in Sub-sections (1) and (2) shall be the same as their term of office as Member of the National Assembly, Senate or Economic and Social Council. Their terms of office as members of the »Commission nationale de l'informatique et des libertés" «Commission nationale de l'informatique et des libertés" may not exceed ten years.

A member of the commission who ceases to exercise his functions before the end of his term of office shall be replaced, according to the same rules, for the remaining period of the term of office.

Except  in the case where he/she decides to resign, a member of the Commission may be removed from his/her functions only in case of impediment observed by the commission according to the terms that it shall define.

The commission shall establish an internal regulation. This regulation shall define the rules relating to the organisation and running of the commission. It shall specify in particular the rules relating to their deliberations, the examination of applications and their presentation to the commission.

14

**Article 14**

I. – Membership of the commission shall be incompatible with membership of the government.

II. – No member of the commission may:

   - participate in a deliberation or undertake verifications relating to a body in which he holds a direct or indirect interest, exercises functions or holds a mandate;

   - participate in a deliberation or undertake verifications relating to a body in which he has, during the thirty-six months preceding the deliberation or the verifications, held a direct or indirect interest, exercised functions or held a mandate.

III. All members of the commission shall inform the chairman about any direct or indirect interest that he holds or comes to hold, functions that he exercises or comes to exercise or any mandate that he holds or comes to hold within a legal entity. These particulars, as well as those relating to the chairman, shall be made available to the members of the commission.

The chairman of the commission shall take appropriate measures to ensure that the obligations resulting from this Article are adhered to.

**Article 15**

Subject to the attributions of the executive committee ("bureau") and the restricted committee ("formation restreinte") of the commission, the commission shall meet in plenary session.

In the event of a tie in the voting, the chairman shall have the casting vote.

The commission may entrust the chairman or the delegated vice-chairman to exercise the powers mentioned:

   -   in paragraph 3 of Section I of Article 23 (*delivery of a receipt of notification*);

15

- in (e) (*information to the public prosecutor and assessments of a criminal proceedings*) and (f) (*power in relation to the mission of supervision given to the commissioner or an officer*) of Sub-section (2) of Article 11;

- in (c) (*processing of complaints*) of Sub-section (2) of Article 11;

- in (d) (*participation in international negotiations*) of Sub-section (4) of Article 11;

- in Articles 41 and 42 (*appointment of the commissioner responsible for the right of indirect access);*

- in Article 54 (*authorisation of processing for the purpose of medical research);,*

- in Articles 63, 64 and 65 (*authorisation of processing of medical data for the purpose of evaluation or analysis of care and prevention practices or activities*);

- in the last paragraph of Article 69 (*notification to the European Commission and to other supervisory authorities of authorisation in relation to transfer of data to a State that would not ensure an adequate level of protection);*

- in the first paragraph of Article 70 (*delivery of a receipt of notification with prohibition to transfer data to a State regarded by the European Commission as not providing an adequate level of protection*).

### Article 16

The executive committee ("bureau") may be entrusted by the commission with exercising the powers mentioned:

- in the last paragraph of Article 19 (*accreditation of officers for verification missions);*

- in Article 25, in the event of an emergency (*authorisation of processing by the CNIL);*

- in the second paragraph of Article 70 (*order to suspend the transfer to a State regarded by the CNIL as not providing an adequate level of protection*).

The executive committee may also be charged with taking, in the event of urgency, the decisions mentioned in the first paragraph of Section I of Article 45 *(warning or formal notice).*

16

**Article 17**

The restricted committee ("formation restreinte") of the commission shall take the measures set out in Section I *(warning, formal notice, fine, order to stop processing, withdrawal of authorisation)* and in Sub-section (1) of Section II *(interruption of processing)* of Article 45.

**Article 18**

A government commissioner, appointed by the Prime Minister, shall sit on the commission. Deputy government commissioners may be appointed according to the same conditions.

The government commissioner shall attend all the deliberations of the commission meeting in plenary session or in a restricted committee, as well as the deliberations of meetings of its executive committee in relation to the exercise of the delegated powers by virtue of Article 16 *(accreditation of officers for verification missions, authorisation of processing in case of urgency, suspension of transfer of data, warning or formal notice)*; he is informed of all opinions and decisions.

He may, except as regards penalties, require a second deliberation, to be handed down within ten days of the first.

**Article 19**

The commission shall have operational offices managed by the chairman and placed under his authority.
The chairman shall appoint the commission's officers.

When necessary, the delegate vice-chairman shall exercise the powers of the chairman.

The Secretary General shall be entrusted with the functioning and the co-ordination of the support services under the authority of the chairman.

The officers who may be called to participate in the performance of the verification duties mentioned in Article 44 *(on-site verification)* must be authorised by the commission. This accreditation shall not grant exemption from application of the provisions defining the procedures authorising access to secrets protected by law.

### Article 20

Members and officers of the commission are bound by a duty of confidentiality in respect of the facts, acts and information of which they have knowledge by virtue of their functions, according to the conditions provided for in Article 413-10 of the Criminal Code and, subject to what shall be necessary for the preparation of the annual report, in Article 226-3 of the same Code.

### Article 21

The members of the commission shall receive no order from any authority in the exercise of their missions and powers.

The ministers, public authorities, executives of state-owned or private companies, heads of various groupings and more generally the holders and users of data processing and personal data filing systems may not oppose the actions of the commission or its members. They must rather take all useful steps to facilitate its task.

Except when they are bound by a duty of confidentiality, the persons interrogated in the context of verifications carried out by the commission in application of paragraph (f) of Sub-section (2) of Article 11 *(on-site verification)* shall be bound to supply the information requested by it for the performance of its missions.

**CHAPTER IV**
**FORMALITIES PRIOR TO COMMENCING DATA PROCESSING**

### Article 22

I. - Automatic processing of personal data must be notified to the »Commission nationale de l'informatique et des libertés" "Commission nationale de l'informatique et des libertés" except when the processing falls under the provisions of Articles 25 *(political, philosophical..., medical, sexual life data; genetic data; offences; exclusion from*

18

a right; combination; use use of NIR, i.e. social security number), 26 *(State security and criminal offences processing)* and 27 *(public processing of NIR– State biometrics – census – online services)* that are indicated in paragraph 2 of Article 36 *(conservation of archives)*.

**II.** – However, the following shall not be subject to any of the formalities provided for in this Chapter:

(1) processing whose sole purpose is the keeping of a register which according to laws or regulations is intended exclusively for public information and is open for public consultation or by any person demonstrating a legitimate interest;

(2) processing mentioned in Sub-section (3) of Section II of Article 8 *(religious, philosophical, political or trade union association or body)*.

**III.** – Processing for which the data controller has appointed a personal data protection officer ("correspondant à la protection des données personnelles") charged with ensuring, in an independent manner, compliance with the obligations provided for in this Act shall be exempted from the formalities provided for in Articles 23 *(notification)* and 24 *(simplified notification)*, except where a transfer of personal data to a State that is not a Member State of the European Community is envisaged.

The appointment of the officer shall be notified to the »Commission nationale de l'informatique et des libertés" Commission nationale de l'informatique et des libertés. It shall be brought to the attention of the employee representative bodies.

The officer shall be a person who shall have the qualifications required to perform his duties. He shall keep a list of the processing carried out, which is immediately accessible to any person applying for access, and may not be sanctioned by his employer as a result of performing his duties. He may apply to the »Commission nationale de l'informatique et des libertés" Commission nationale de l'informatique et des libertés when he encounters difficulties in the performance of his duties.

In case of non-compliance with the provisions of this Act, the »Commission nationale de l'informatique et des libertés" Commission nationale de l'informatique et des libertés shall order the data controller to carry out the formalities provided for in Articles 23 *(notification)* and 24 *(simplified notification)*. In case of breach of his duties,

19

the representative shall be discharged from his functions upon the demand, or after consultation, of the »Commission nationale de l'informatique et des libertés" Commission nationale de l'informatique et des libertés.

IV. – A data controller who is not subject to any of the formalities provided for in this Chapter shall communicate to any person who requests it information relating to the processing mentioned in Sub-sections (2) to (6) of Section I of Article 31 *(denomination and purpose, data controller, department responsible for the right of access, categories of data and recipients, transfer outside the European Union).*

**Section 1: Notification**

**Article 23**

I. - The notification shall comprise an undertaking that the processing complies with the requirements of the law.

It may be sent to the »Commission nationale de l'informatique et des libertés" Commission nationale de l'informatique et des libertés electronically.

The commission shall deliver a receipt without delay and this may be delivered electronically. The applicant may carry out the processing as soon as receipt is received. He shall not be exempted from any of his responsibilities.

II. – When several data-processing operations are carried out by the same body and have identical or interrelated purposes, they may be  give rise to joint notification. In this case, the information required by Article 30 *(data controller, purpose, combination, data, period of storage, recipients, department responsible for the right of access, security measures, transfer outside the European Union)* shall be supplied for each processing only to the extent that they are specific to it.

**Article 24**

I. – For the most common categories of processing of personal data, which is not likely to be a violation of privacy or liberties, the "Commission nationale de l'informatique et des libertés"  shall establish and publish, after having

20

received any proposals by the representatives of public and private bodies, standards intended to simplify the obligation to notify.

These standards shall specify:

(1) the purposes of the processing covered by the simplified notification;

(2) the personal data or categories of personal data;

(3) the category or categories of the data subjects;

(4) the recipients or categories of recipients to whom the personal data are disclosed;

(5) the period during which the personal data is to be stored.

Processing corresponding to one of these standards shall be subject to a simplified notification of conformity to the commission, which may be sent electronically.

II. - The commission may determine, among the categories of the processing mentioned in Section I, the categories of processing that are exempt from the obligation to notify taking account of their purposes, recipients or categories of recipients, the personal data processed, the period of storage of the data and the categories of the data subjects.

According to the same conditions, the commission may authorise the data controllers of certain categories of processing to present a joint notification in accordance with the provisions of Section II of Article 23 (*common notification with provision of particulars specific to each processing*).

**Section 2: Authorisation**

**Article 25**

I. – The following may be carried out after authorisation by the  "Commission nationale de l'informatique et des libertés"  , with the exception of those mentioned in Articles 26 (*State security and criminal offences processing*) and 27 (*public processing NIR, i.e.  social security number – State biometrics –census – e-government online services)*:

21

(1) processing, whether automatic or not, mentioned in Sub-section (7) of Section II *(statistical processing by INSEE and Ministries)*, in Section III *(political, philosophical,…data made anonymous)* and in Section IV of Article 8 *(processing of political, philosophical…data justified by public interest)*;

(2) automatic processing of genetic data, unless carried out by physicians or biologists and necessary for preventive medicine, medical diagnosis or the administration of care or treatment;

(3) processing, whether automatic or not, of data relating to offences, convictions or security measures, except for those carried out by representatives of justice when necessary to carry out their task of defending data subjects;

(4) automatic processing which may, due to its nature, importance or purposes, exclude persons from the benefit of a right, a service or a contract in the absence of any legislative or regulatory provision;

(5) automatic processing whose purpose is:

- the combination of files of one or several legal entities who manage a public service and whose purposes relate to different public interests;

- the combination of other entities' files of which the main purposes are different.

(6) processing relating to data which contain the NIR (registration number of natural persons in the national register for the identification of individuals, i.e. social security number) and processing that requires the consultation of this register without including the registration number of natural persons in the processing;

(7) automatic processing of data comprising assessments of the social difficulties of natural persons;

(8) automatic processing comprising biometric data necessary for the verification of an individual's identity.

II. – For the implementation of this Article, processing that have the same purpose, that relates to identical categories of data and that has the same recipients or categories of recipients, may be jointly authorised by a single decision of the commission. In this case, each data controller shall send the commission an undertaking that the processing complies with the description in the authorisation.

III. - The "Commission nationale de l'informatique et des libertés" shall issue its decision within two months from the date of receipt of the application. However, this period may be renewed on one occasion by a reasoned decision

of its chairman. Where the commission has not given its opinion within this time limit, the application for authorisation shall be deemed to have been rejected.

### Article 26

I. – An order of the competent Minister or Ministers shall authorise, after a reasoned and published opinion of the "Commission nationale de l'informatique et des libertés" , the processing of personal data carried out on behalf of the State and:

> (1) which involves State security, defence or public safety; or
>
> (2) whose purpose is the prevention, investigation, or proof of criminal offences, the prosecution of offenders or the execution of criminal sentences or security measures.

The opinion of the commission shall be published together with the order authorising the processing.

II. – Processing relating to the data mentioned in Section I of Article 8 (*political, philosophical, medical, sexual life*) shall be authorised by a decree subject to a prior opinion of the "Conseil d'Etat" ("décret en Conseil d'Etat") issued after a reasoned and published opinion of the commission. This opinion shall be published with the decree authorising the processing.

III. – Some processing mentioned in Sections I and II may be exempted, by a decree subject to a prior opinion of the "Conseil d'Etat" ("décret en Conseil d'Etat"), from the publication of the regulation authorising it. For such processing, the opinion of the commission shall be published with the decree authorising the exemption from the publication of the decision.

IV. – For the implementation of this Article, processings which serve the same purpose, relate to identical categories of data and have the same recipients or categories of recipients may be authorised by a common regulatory decision. In this case, each data controller shall send the commission an undertaking that the processing complies with the description in the authorisation.

**Article 27**

I. – The "Conseil d'Etat" shall authorise by decree, taken after a reasoned and published opinion of the "Commission nationale de l'informatique et des libertés" :

(1) the processing of personal data carried out on behalf of the State, a legal entity governed by public law or a legal entity governed by private law that manages a public service, relating to data containing the registration number of individuals in the national register for the identification of individuals ("NIR", i.e. social security number);

(2) the processing of personal data carried out on behalf of the State relating to biometric data necessary for the identification or verification of the identity of individuals.

II. – An order or, in the case of a processing carried out on behalf of a legal entity governed by public law or a legal entity governed by private law that manages a public service, a decision of the authority in charge of their organisation, taken after a reasoned and published opinion of the "Commission nationale de l'informatique et des libertés" shall authorise:

(1) processing carried out by the State or legal entities mentioned in Section I that requires a consultation of the national register for the identification of individuals without including the registration number to this register (i.e. the "NIR");

(2) processing mentioned in Section I:

- that does not comprise any data mentioned in Section I of Article 8 (*political, philosophical, medical, sexual life)* or in Article 9 *(offences)*;

- that does not result in combination between processing or files corresponding to different public interests; and

- that is carried out by departments that have the mission, either to determine the conditions for the creation or the scope of citizens' rights, to control or collect taxation or taxes of any nature or to establish the basis for doing this, or to establish statistics,

24

(3) processing relating to the census of population, in metropolitan France and in the overseas communities;

(4) processing carried out by the State or legal entities mentioned in Section I in order to make available, to the users of the service, one or several on-line e-government services, if the processing relates to data containing the registration number of individuals ("NIR") in the national register for identification or any other identifier of individuals.

III. – The provisions of Section IV of Article 26 (*common regulatory decision for multiple processing and undertaking of conformity*) shall apply to the processing dealt with in this Article.

## Article 28

I. –The "Commission nationale de l'informatique et des libertés" shall issue the opinion referred to in Articles 26 or 27 (*request for opinion*) within two months from the date of receipt of the application. However, this period may be renewed once by a reasoned decision of the chairman.

II. – The commission's opinion on a given data processing, if not given during the time limit provided for in Section I, shall be taken to be positive.

## Article 29

The decisions authorising the creation of a processing by virtue of Articles 25 (*authorisation by the CNIL*), 26 (*authorisation by a decree in the Conseil d'Etat or order*) and 27 (*authorisation by a decree in the Conseil d'Etat, order or decision of a decision-making body*) shall specify:

(1) the title and the purpose of the processing;

(2) the department where the right of access defined in Chapter V (*Obligation of data controllers and rights of individuals*) may be exercised;

(3) the categories of the registered personal data;

(4) the authorised recipients or categories of recipients to whom the data may be disclosed;

25

(5) any exemptions from the obligation to inform provided for in Section V of Article 32 (*state security, defence or public security, execution of criminal sentences*).

**Section 3: Common provisions**

<u>**Article 30**</u>

I. – The notifications, applications to obtain authorisation, and requests for opinion sent to the "Commission nationale de l'informatique et des libertés" by virtue of the provisions of Section 1 *(notification)* and Section 2 *(authorisation)* shall specify:

(1) the identity and the address of the data controller or, if he is established neither on the national territory nor in any other Member State of the European Community, that of his representative and, if necessary, that of the person submitting the application;

(2) the purpose or the purposes of the processing, as well as, for processing provided for in Articles 25 (*political, philosophical, medical and sexual life data; data on genetics; offences; waiver of a right; combination; NIR, i.e. social security number; social difficulties; biometrics*), 26 (*State security and criminal offences processing*) and 27 (*public processing NIR, i.e. social security number – census – e-government online services*), the general description of its functions;

(3) if necessary, the combinations, the alignments or any other form of relation with other processing;

(4) the personal data processed, their origin and the categories of data subjects to whom the processing relates;

(5) the period of storage of the processed information;

(6) the department or the departments responsible for the carrying out of the processing as well as, for the processing provided for in Articles 25 (*political, philosophical, medical and sexual life data; data on genetics; offences; waiver of a right; combination; NIR, i.e. social security number; social difficulties; biometrics*), 26 (*State security and criminal offences processing*) and 27 (*public processing NIR, i.e. social security number – census – e-government online services*), the categories of persons who, due to their functions or for the needs of their department, have a direct access to the registered data,

(7) the authorised recipients or categories of recipients to whom the data may be disclosed;

(8) the function of the person or the department where the right of access provided for in Article 39 *(right of direct access)* is exercised, as well as the measures relating to the exercise of this right;

(9) the steps taken to ensure the security of the processing and data, the safeguarding of secrets protected by the law and, if necessary, information on recourse to a sub-contractor;

(10) if applicable, any transfer of personal data which is envisaged to a State that is not a Member State of the European Community, in any form of whatsoever, with the exception of processing that is used only for the purposes of transit on the French territory or on that of another member State of the European Community within the meaning of the provisions of Sub-section (2) of Section I of Article 5 *(data controller not established in a European Community Member State but using means of processing located in that territory).*

The requests for opinions relating to data processing that involve State security, defence or public safety may include not all of the elements of information listed above. A decree subject to a prior opinion of the "Conseil d'Etat", taken after an opinion of the "Commission Nationale de l'Informatique et des Libertés", defines the list of these processings and the elements of information that the requests for opinions relating to these processings have to include at the minimum.

II. – The controller of data processing that was earlier notified and authorised shall immediately inform the commission:

-    of any change affecting the particulars mentioned in Section I;

-    of any cessation of processing.

## Article 31

I. – The commission shall make available to the public the list of automatic processing that have satisfied the formalities provided for in Articles 23 to 27 *(notification, simplified notification, authorisation by the CNIL, authorisation by a decree in Conseil d'Etat or order or decision of the decision-making body)*, with the

exception of those mentioned in Section III of Article 26 (*processing exempted from the publication of the regulatory act*).

This list shall specify for each processing:

(1) the document containing the decision to create a data processing procedure or the date of the notification of this processing;

(2) the denomination and the purpose of the processing;

(3) the identity and address of the data controller or, if he is established neither on the national territory nor in any other Member State of the European Community, that of his representative;

(4) the function of the person or the department where the right of access provided for in Article 39 (*right of direct access*) is exercised;

(5) the categories of the personal data processed, as well as the authorised recipients and categories of recipients to whom the data may be disclosed;

(6) if necessary, the planned transfers of personal data to a State that is not a Member State of the European Community.


II. – The commission shall make available to the public its opinions, decisions and recommendations.


III. – The "Commission nationale de l'informatique et des libertés" shall publish the list of the countries that the Commission of the European Community considers provide an adequate level of protection in relation to the transfer or a category of transfers of personal data.

28

**CHAPTER V**

**OBLIGATIONS INCUMBENT UPON DATA CONTROLLERS AND RIGHTS OF INDIVIDUALS**

**Section 1: Obligations incumbent upon data controllers**

**Article 32**

I. - The data controller or his representative must provide a data subject from whom personal data is obtained with the following information, except where he already has it:

(1) the identity of the data controller and of his representative, if any;

(2) the purposes of the processing for which the data are intended;

(3) whether replies to the questions are compulsory or optional;

(4) the possible consequences for him of the absence of a reply;

(5) the recipients or categories of recipients of the data;

(6) the rights granted him by Section 2 of this Chapter *(rights of individuals in relation to the processing of data)*;

(7) when applicable, the intended transfer of personal data to State that is not a Member State of the European Community.

If the data is obtained by way of a questionnaire, the information provided for in Sub-sections (1), (2), (3) and (6) shall be directly mentioned on this questionnaire.

II. - Any person who uses an electronic communication network shall be informed in a clear and complete manner by the data controller or his representative regarding:

- the purpose of any action intended to provide access, by means of an electronic transmission, to information stored in his connection terminal equipment, or to record information in his connection terminal equipment by the same means;

- the means he has to object to such action.

29

These provisions shall not apply if the access to information stored in the terminal equipment of the user or the recording of information in the terminal equipment of the user is-

- exclusively intended to allow or facilitate communication by electronic means; or

- strictly necessary for the provision of an online communication service at the user's express request.

III. - Whenever the data have not been obtained from the data subject, the data controller or his representative must at the time of recording the personal data or, if disclosure to a third party is planned, no later than the time when the data are first disclosed, provide the data subject with the information enumerated in Section I.

When the personal data have initially been obtained for another purpose, the provisions of the preceding paragraph shall not apply to processing necessary for the storage of these data for historical, statistical and scientific purposes, under the conditions provided for in Book II of the "Code du patrimoine" (Heritage Code) or for the re-use of these data for statistical purposes under the conditions provided for in Article 7a of Act No. 51-711 of 7 June 1951 on obligations, co-ordination and confidentiality as regards statistics. These provisions shall not apply whenever the data subject has already been informed or whenever informing the data subject proves impossible or would involve disproportionate efforts compared with the interest of the procedure.

IV. – If the personal data obtained are, within a short period of time, to form part of an anonymisation procedure that was recognized beforehand by the "Commission nationale de l'informatique et des libertés" as complying with the provisions of this Act, the information delivered by the data controller to the data subject may be limited to that mentioned in Sub-section (1) and (2) of Section I.

V. – The provisions of Section I shall not apply to data obtained under the conditions provided for in Section III when processing is carried out on behalf of the State and relating to State security, defense, or public safety, to the extent that such limitation is necessary for the observance of the purposes pursued by the processing.

VI. – The provisions of this Article shall not apply to the processing of data in relation to the prevention, investigation or proof of criminal offences and the prosecution of offenders.

30

### Article 33

Except when data subjects expressly so consent, personal data obtained by providers of electronic certification services for purposes of delivery and storage of certificates in relation to electronic signatures, must be collected directly from the data subject and may be processed only for the purposes for which they have been obtained.

### Article 34

The data controller shall take all useful precautions, with regard to the nature of the data and the risks of the processing, to preserve the security of the data and, in particular, prevent their alteration and damage, or access by non-authorised third parties.

Decrees taken upon an opinion of the "Commission nationale de l'informatique et des libertés" may determine the technical requirements that the processing mentioned in Sub-section (2) *(processing necessary for the protection of human life with the impossibility of obtaining consent)* and Sub-section (6) *(processing necessary to medicine and administration of care)* of Section II of Article 8 should meet.

### Article 35

A processor ("sous-traitant"), or a person who acts under the authority of the data controller or that of the processor, may process personal data only under the data controller's instructions.

Any person who processes personal data on behalf of the data controller is regarded as a processor within the meaning of this Act.

The processor shall offer adequate guarantees to ensure the implementation of the security and confidentiality measures mentioned in Article 34. This requirement shall not exempt the data controller from his obligation to supervise the observance of such measures.

The contract between the processor and the data controller shall specify the obligations incumbent upon the processor as regards the protection of the security and confidentiality of the data and provide that the processor may act only upon the instruction of the data controller.

## Article 36

Personal data may be stored beyond the period provided for in Sub-section (5) of Article 6 *(period necessary for the purpose)* only for processing for historical, statistical and scientific purposes. The conditions of Article L.212 of the "Code du patrimoine" ("Heritage Code") shall apply to the determination of these data.

Processing whose purpose is limited to ensuring the long-term conservation of archive documents in the context of Book II of that Code is exempt from the formalities prior to commencing processing provided for in Chapter IV *(formality prior to commencing data processing)* of this Act.

Processing that has other purposes than those mentioned in the first paragraph may be carried out with:

- the explicit agreement of the data subject; or
- the authorisation of the "Commission nationale de l'informatique et des libertés" ; or
- alternatively, in accordance with the conditions provided for in Sub-section (8) of Section II *(processing necessary for medical research authorised according to the conditions stipulated in Chapter X)* and in Section IV *(processing justified by the public interest authorised in according to the conditions stipulated in Article 25 and 26)* of Article 8 regarding the data mentioned in Para. I *(political, philosophical…medical or sexual life data)* of this Article.

## Article 37

The provisions of this Act shall not hamper the application, in favour of third parties, of the provisions of Title I of Act No. 78-758 of 17 July 1978 relating to various measures to improve the relationship between the administration and the public and miscellaneous provisions of administrative, social and fiscal nature and the provisions of Book II of the "Code du patrimoine" (Heritage Code).

In consequence, the holder of a right of access to administrative documents or public archives exercised in conformity with Act No. 78-753 of 17 July 1978 mentioned above and in Book II of the same code may not be regarded as non-authorised third party within the meaning of Article 34 *(data security)*.

**Section 2: Rights of individuals in respect of processing of personal data**

<u>**Article 38**</u>

Any natural person is entitled, on legitimate grounds, to object to the processing of any data relating to him.

He is entitled to object, at no cost to himself, to the use of the data relating to him for purposes of canvassing, in particular for commercial ends, by the controller of a current or a further data processing.

The provisions of the first paragraph shall not apply where the processing satisfies a legal obligation or where an explicit provision of the decision that authorises the processing excludes the application of these provisions.

<u>**Article 39**</u>

I. – Any natural person providing proof of identity is entitled to interrogate the data controller of personal data in order to obtain:

(1) confirmation as to whether the personal data relating to him form part of the processing;

(2) information relating to the purposes of the processing, the categories of processed personal data and the recipients or categories of recipients to whom the data are disclosed;

(3) if applicable, information relating to the transfers of personal data intended towards a State that is not a member State of the European Union;

(4) communication, in an accessible form, of the personal data relating to him as well as any available information on the origin of the data;

(5) information allowing him to know and to object to the logic involved in the automatic processing, in the case of a decision taken based on automatic processing and producing legal effects in relation to the

33

data subject. However, the information communicated to the data subject must not adversely affect copyright within the meaning of the provisions of Book I and Title IV of Book III of the Code of Intellectual Property.

Data subjects may receive a copy of the personal data at their request. Data controllers may require payment of a sum of money for the delivery of the copy and this may not exceed the cost of the copy.

In case of a risk of concealment or disappearance of personal data, the competent judge may order, even by summary proceedings, all measures necessary to avoid this concealment or disappearance.

II. - Data controllers may object to requests that are obviously excessive, in particular by their number, or their repetitive and systematic character. In case of objection, the burden of proof of the clearly excessive character of the requests weighs on the data controller who has received the requests.

The provisions of this Article shall not apply where the personal data are stored in a form that clearly excludes all risk of violating the privacy of the data subject and for a period that does not exceed that necessary for the sole purpose of creating statistics, or for scientific or historical research. Except in the cases mentioned in paragraph 2 of Article 36 *(processing for conservation of archives)*, the exemptions envisaged by the data controller must be mentioned in the application for authorisation or in the notification addressed to the "Commission nationale de l'informatique et des libertés" .

### Article 40

Any individual providing proof of identity may ask the data controller to, as the case may be, rectify, complete, update, block or delete personal data relating to him that are inaccurate, incomplete, equivocal, expired, or whose collection, usage, disclosure or storage is prohibited.

At the request of the data subject, the data controller must justify, at no cost for the data subject, that he has carried out the necessary operations required by the preceding paragraph.

34

In case of dispute, the burden of proof shall weigh on the data controller by whom the right of access is exercised, except where it is established that the data objected to was disclosed by the data subject or with his consent.

Where the data is modified at the data subject's request, he is entitled to obtain reimbursement of his expenses corresponding to the cost of the copy mentioned in Section I of Article 39 *(copy of personal data)*.

If an item of data has been transmitted to a third party, the data controller must accomplish the necessary formalities to inform that third party of the operations carried out in conformity with the first paragraph.

The heirs of a deceased person, providing proof of their identity, may, when the facts brought to their knowledge cause them to believe that the data controller has not updated the personal data relating to the deceased person, demand that he take the death into account and update the data accordingly .

At the request of the heirs, the data controller must demonstrate, at no cost for the applicant, that he has carried out the requested operations in accordance with the preceding paragraph.

### Article 41

As a derogation from Articles 39 *(right of access)* and 40 *(right of rectification)*, where processing involves State security, defence or public safety, the right of access shall be exercised in accordance with the conditions provided for by this Article in respect of all the information contained in that processing.

The commission receives the access request and appoints one of its members, who is or has been a member of the "Conseil d'Etat", the "Cour de Cassation" or the "Cour des Comptes", to carry out the necessary investigations and have the necessary modifications made. An officer of the commission may assist the appointed member of the commission. The applicant shall be informed that the verifications have been carried out.

Whenever the commission establishes, with the agreement of the data controller, that the disclosure of the data does not undermine its purposes, State security, the defence or public safety, these data may be disclosed to the applicant.

Where the processing is likely to include information whose disclosure would not affect their specified purposes, the regulatory decision by which the files are created may provide that the administrator of the files may be petitioned directly and disclose the information to the applicant.

## Article 42

The provisions of Article 41 *(right of indirect access)* shall apply to processing carried out by public authorities and departments and private legal entities entrusted with a public service mission for the prevention, investigation or proof of criminal offences, or the assessment or collection of taxes, where the authorisation mentioned in Articles 25 *(authorisation by the CNIL)*, 26 *(authorisation by a decree taken upon a prior opinion of the "Conseil d'Etat" or by order)* or 27 *(authorisation by a decree taken upon a prior opinion of the "Conseil d'Etat" , order or a decision of the decision-making body)* provides for this right.

## Article 43

Whenever the exercise of the right of access applies to medical personal data, the data may be disclosed to the data subject, as the person chooses, directly or through a doctor that he designates for this purpose, in conformity with the provisions of Article L1111-7 of the Code of Public Health.

## CHAPTER VI
## SUPERVISION OF THE IMPLEMENTATION OF DATA PROCESSING

## Article 44

I. – The members of the "Commission nationale de l'informatique et des libertés" as well as those officers of the Commission's operational services accredited in accordance with the conditions defined by the last paragraph of Article 19 *(accreditation by the commission)*, have access, from 6 a.m to 9 p.m, for the exercise of their functions, to the places, premises, surroundings, equipment or buildings used for the processing of personal data for professional purposes, with the exception of the parts of the places, premises, surroundings, equipment or buildings used for private purposes.

The public prosecutor in the jurisdiction of which the investigation is to take place shall be informed about this beforehand.

36

II. - If the person in charge of the premises objects, the visit must be authorised by the President of the High Court ("tribunal de grande instance"), or by a judge mandated by him, in the jurisdiction of which the premises are located.

The chairman of the commission submits his petition to this judge, who shall decide by a reasoned ruling in conformity with the provisions provided for in Articles 493 to 498 of the New Code of Civil Procedure. The proceedings may take place without compulsory representation.

The visit shall take place under the authority and supervision of the authorising judge. He may go to the premises during the visit. He may halt or suspend the visit at any time.

III. - The members of the commission and the officers mentioned in the first paragraph of Section I may ask for the communication of all the documents necessary for the performance of their mission, whatever their medium, and take a copy of them. They may collect, on the spot or upon summons, all useful information or proof, have access to electronic data processing programmes and data, and ask for their transcription, by any appropriate process, into directly utilisable documents for the purposes of the verification.

Experts appointed by their respective authorities may assist them at request of the chairman of the commission.

Only a doctor may ask for communication of personal medical data contained in processing that is necessary for the purposes of preventive medicine, medical research, medical diagnosis, the administration of care and treatment, or for the management of a healthcare service, carried out by a member of the medical professions.

A report on the verifications and visits carried out according to this Article shall be established in the presence of all parties.

IV. – For processing that affects State security and that is exempted from the publication of the regulatory ruling that authorises it by virtue of Section III of Article 26, the decree taken upon a prior opinion of the "Conseil d'Etat" which provides for such exemption may also stipulate that the processing shall not be subject to the provisions of this Article.

**CHAPTER VII**

**SANCTIONS THAT THE "COMMISSION NATIONALE DE L'INFORMATIQUE ET DES LIBERTÉS" MAY IMPOSE**

**Article 45**

I. – The "Commission nationale de l'informatique et des libertés" may issue a warning to a data controller who does not comply with the obligations resulting from this Act. It may also order the data controller to cease the breach within a time limit that it determines.

If the data controller does not comply with this order, the commission may impose the following penalties on him, after fair proceedings:

(1) a financial penalty, within the conditions provided for in Article 47 *(amount and collection)*, except in cases where the processing is carried out by the State;

(2) an injunction to stop the processing, where the provisions of Article 22 *(notification)* apply to it, or a withdrawal of the authorisation given by virtue of Article 25 *(authorisation by the CNIL)*.

II. – In case of urgency, where the processing or the use of processed data leads to a violation of the rights and liberties mentioned in the first Article, the commission may, after proceedings where both sides are heard:

(1) decide the interruption of the processing, for a maximum period of three months, provided that the processing is not one of those mentioned in Section I *(processing for State security and criminal offences without political, philosophical…medical and sexual life data)* and Section II *(processing for State security and criminal offences with political, philosophical…medical and sexual life data)* of Article 26, or mentioned in Article 27 *(processing, NIR = Number of Entry in Register, i.e. social security number , biometrics, census, online services)* carried out by the State;

(2) decide that some of the processed personal data shall be blocked, for a maximum period of three months, provided that the processing is not one of those mentioned in Section I *(processing for State security and criminal offences without political, philosophical…medical and sexual life data)* and Section

38

II *(processing for State security and criminal offences with political, philosophical...medical and sexual life data)* of Article 26;

(3) notify the Prime Minister so that he may, if necessary, take measures to stop the violation, if the processing is one of those mentioned in Section I *(processing for State security and criminal offences without political, philosophical...medical and sexual life data)* and Section II *(processing for State security and criminal offences with political, philosophical...medical and sexual life data)* of Article 26. The Prime Minister shall inform the commission of the steps he has taken within fifteen days of receiving the notification.

III. – In case of serious and immediate violation of the rights and liberties mentioned in the Article 1 *(human rights, privacy, public or individual liberties)* the chairman of the commission may ask, in summary proceedings, the competent jurisdiction to order, if necessary applying a daily penalty, any security measure necessary for the protection of these rights and liberties.

## Article 46

The penalties provided for in Section I *(warning, financial penalties, order to stop processing, withdrawal of authorisation)* and Sub-section (1) of Section II *(interruption of processing)* of Article 45 shall be pronounced on the basis of a report established by one of the members of the "Commission nationale de l'informatique et des libertés" appointed by the chairman of the commission from among the members not belonging to the restricted committee. The data controller shall be informed of the report; he may present his remarks, and he may be represented and assisted. The committee spokesman may present oral remarks to the commission but he shall not participate in the deliberations. The commission may hear any person who may usefully contribute to its inquiry.

The commission may make public the warnings that it issues. It may also, in case of bad faith on the part of the data controller, order the publication of any other penalties imposed, in such publications, newspapers or other media as it designates. Publication shall be at the expense of the persons sanctioned.

The decisions taken by the commission in application of Article 45 *(all measures and penalties)* shall be reasoned and notified to the data controller. An appeal against the penalty on grounds of both facts and law may be made before the "Conseil d'Etat".

## Article 47

The financial penalty provided for in Article 45 shall be of an amount that is proportional to the gravity of the breaches committed and the profits obtained from the breach.

In case of a first breach, the penalty may not exceed €150,000. In the event of a second breach within five years from the date on which the preceding financial penalty becomes definitive, it may not exceed €300,000 or, in case of a legal entity, 5% of gross turnover for the latest financial year, within a maximum of €300,000.

Whenever the "Commission nationale de l'informatique et des libertés" issues a financial penalty that is final before the criminal court has definitely judged the same or related facts, the criminal court may order the deduction of the financial penalty from the fine that it imposes.

The financial penalties shall be collected as State debts, other than taxes and income from State assets.

## Article 48

The commission may exercise the powers provided for in Article 44 *(on-site verification)* and in Section I *(warning and formal notice)*, Sub-section (1) of Section II *(interruption of processing)* and in Section III *(request of security measures before a summary proceedings tribunal)* of Article 45 in relation to the processing when the operations are carried out, in whole or in part, on the national territory, including where the data controller is established in another Member State of the European Community.

## Article 49

The commission may undertake, at the request of an authority that exercises similar powers in another Member State of the European Community, verifications under the same conditions, according to the same procedures and subject

to the same penalties as those provided for in Article 45, except in the case of processing mentioned in Section I *(processing for State security and criminal offences without political, philosophical...medical and sexual life data)* and Section II *(processing for State security and criminal offences with political, philosophical...medical and sexual life data)* of Article 26.

The commission is authorised to disclose the information that it obtains or that it holds to authorities exercising similar powers in other Member States of the European Community at their request.

## CHAPTER VIII
## CRIMINAL PROVISIONS

### Article 50

Offences against the provisions of this Act are qualified and sanctioned by Articles 226-16-226-24 of the Criminal Code.

### Article 51

A penalty of one year's imprisonment and a fine of €15,000   is applicable to impeding the action of the "Commission nationale de l'informatique et des libertés"  :

(1) by resisting the exercise of the duties entrusted to its members or officers authorised by virtue of the last paragraph of Article 19 *(accreditation by the commission);*

(2) by refusing to communicate to its members or officers authorised by virtue of the last paragraph of Article 19 the information and documents necessary for the performance of their duties, or by dissimulating these documents or information, or by destroying them; or

(3) by giving information that does not correspond to the content of the records existing at the time of the request or that does not present the content in a form that is directly accessible.

### Article 52

The public prosecutor shall inform the chairman of the "Commission nationale de l'informatique et des libertés" of any legal proceedings in connection with breaches of the provisions of Section 5 of Chapter VI of Title II of Book II of the Criminal Code and, when appropriate, the decisions taken in respect of them. He shall inform him of the date and purpose of the court hearings by a registered letter with advice of delivery sent at least ten days before that date.

The judges in charge of the investigation or of the judgement of a case may request the chairman of the "Commission nationale de l'informatique et des libertés" or his representative to submit his comments or to present them orally before the Court.

## CHAPTER IX
### PROCESSING OF PERSONAL DATA FOR THE PURPOSE OF MEDICAL RESEARCH

### Article 53

The processing of personal data for the purpose of medical research shall be subject to the provisions of this Act, with the exclusion of Articles 23 to 26 *(notification or authorisation)*, 32 *(preliminary information)* and 38 *(right to object)*.

The processing of personal data for the purpose of therapeutic or individual medical follow-up of patients shall not be subject to the provisions of this Chapter. The same shall apply to processing that allows the carrying out of studies based on the data obtained if these studies are carried out by the staff responsible for the follow-up of patients and are intended for the exclusive use of the staff.

### Article 54

For each application for the processing of personal data, a "Comité consultatif sur le traitement de l'information en matière de recherche dans le domaine de la santé" (an advisory committee on the processing of information for medical research), established by the Ministry in charge of research and composed of competent persons as regards medical research, epidemiology, genetics and biostatistics, shall express its opinion on the methodology of the

42

research with respect to the provisions of this Act, the necessity of recourse to personal data and their relevance to the purpose of the research, prior to submission to the "Commission nationale de l'informatique et des libertés".

The advisory committee shall send its opinion to the applicant within one month, failing which, the opinion shall be deemed positive. In case of emergency, this time limit may be reduced to fifteen days.

The chairman of the advisory committee may put a simplified procedure in place.

Next, authorisation for the data processing shall be sought from the "Commission nationale de l'informatique et des libertés", which shall give its decision according to the conditions provided for in Article 25 *(authorisation by the CNIL).*

For the most common categories of automatic processing in relation to medical research and relating to data that do not allow the direct identification of data subjects, the commission may approve and publish benchmark methodologies, established in consultation with the advisory committee and public and private representative bodies, intended to simplify the procedure provided for in the first four paragraphs of this Article.

These methodologies shall specify, according to the characteristics mentioned in Article 30, the standards to be met by the processing that may benefit from the procedures of request for simplified opinion or simplified authorisation.

For processing that meets these standards, only an engagement of conformity to one of the standards shall be sent to the commission. The chairman of the commission may authorise the processing at the end of a simplified examination procedure.

For the other categories of processing, the advisory committee shall determine, in association with the "Commission nationale de l'informatique et des libertés", the conditions under which its opinion is not required.

43

**Article 55**

Notwithstanding the rules relating to the duty of confidentiality, healthcare professionals may transmit personal data that they hold in the context of a processing of data authorised according to Article 53 *(processing of data for the purpose of medical research)*.

Data allowing the identification of individuals must be codified before their transmission. However, it is possible to depart from this obligation where the processing of data is associated with pharmacovigilance studies or research agreements concluded in the context of national and international co-operative studies; it is also possible to depart from the same obligation if the distinctive feature of the research requires it. The application for authorisation shall comprise the scientific and technical justification of the departure and the indication of the period necessary for the research. At the end of this period, the data shall be stored and processed according to the conditions defined in Article 36 *(retention period)*.

The presentation of the results of the processing of data may under no circumstances allow direct or indirect identification of data subjects.

The person in charge of the research, appointed by the individual or legal entity authorised to carry out the processing, shall receive the data and ensure that the requirement as to the security of the data, their processing and their purpose are properly complied with.

The persons who carry out the processing of data as well as those who have access to the data covered by the processing shall be bound by a duty of confidentiality failing which the sanctions provided for in Article 226-13 of the Criminal Code apply.

**Article 56**

Any person has the right to object to the lifting of the duty of confidentiality with respect to the personal data related to him, made necessary by the nature of the processing as referred to in Article 53 *(processing of data for the purpose of medical research)*.

44

Where the research requires the collection of identifying biological samples, the informed and express consent of data subjects must be obtained prior to the implementation of data processing.

Information in relation to deceased persons, including that mentioned on death certificates, may be subjected to data processing unless the person in question expressed his refusal in writing before his death.

## Article 57

The individuals from whom the personal data are obtained or whose data is transmitted shall, before the start of the processing of these data, be informed individually of:

(1) the nature of the transmitted information;

(2) the purpose of the data processing;

(3) the individuals or legal entities who are the recipients of the data;

(4) the right of access and the rectification provided for in Articles 39 *(right of access)* and 40 (*right of rectification)*;

(5) the right to object provided for in the first *(objection to the lifting of professional secrecy)* and third *(refusal of processing after death)* paragraphs of Article 56 or, in the case provided for in the second paragraph of this Article, about the obligation to obtain their consent.

However, it is permissible for this information not to be delivered if, for legitimate reasons that the attending physician assesses honestly, a grave diagnosis or prognosis has been deliberately kept from the patient.

Where the data have initially been obtained for a purpose other than processing, it is possible to depart from the obligation of individual information when the data subjects can no longer be located. Departures from the obligation to inform individuals about the use of data related to them for purposes of research shall be mentioned in the application for authorisation submitted to the "Commission nationale de l'informatique et des libertés", which decides on this point.

45

## Article 58

Holders of parental rights, for minors, or legal representatives, for individuals under guardianship, are recipients of the information and exercise the rights provided for in Articles 56 *(right to object)* and 57 *(particulars of individuals)*.

## Article 59

Information relating to the provisions of this Chapter must be provided in all institutions or centres where prevention, diagnosis and care activities give rise to the transmission of personal data for the processing provided for in Article 53 *(processing of data for the purpose of medical research)*.

## Article 60

Processing of data in breach of the conditions provided for in this Chapter shall entail the temporary or definitive withdrawal by the "Commission nationale de l'informatique et des libertés" of the authorisation delivered according to the provisions of Article 54 *(authorisation by the CNIL)*.

The same applies in case of refusal to allow the verifications provided for in paragraph (f) of Sub-section (2) of Article 11 *(on-site verification)*.

## Article 61

The transfer to a State that is not a Member State of the European Community of non-codified personal data in relation to processing for the purpose of medical research is authorised, according to the conditions provided for in Article 54 *(authorisation by the CNIL)*, only in accordance with the rules set out in Chapter XII.

### CHAPTER X
### PROCESSING OF PERSONAL MEDICAL DATA FOR THE PURPOSES OF EVALUATION OR ANALYSIS OF CARE AND PREVENTION PRACTICES OR ACTIVITIES

### Article 62

The processing of personal medical data for the purpose of evaluation of care and prevention practices is authorised in accordance with the conditions provided for in this Chapter.

The provisions of this Chapter shall apply neither to the processing of personal data for the purpose of either reimbursement or control by bodies in charge of the management of the main health insurance schemes, nor to the processing done in health institutions by physicians designated as responsible for medical information according to the conditions provided for in the second paragraph of Article L.6113-7 of the Public Health Code.

### Article 63

Data resulting from the information systems provided for in Article L.6113-7 of the Public Health Code, those resulting from medical files held in the context of the private practice of a medical profession, as well as those resulting from information systems of "caisses d'assurance maladie" (health insurance funds), may be disclosed for the purposes of statistics of evaluation or analysis of practices and activities of care and prevention only in the form of aggregated statistics or in an individual form  (i.e. by patient), but then in such a way that the data subjects cannot be identified.

Departure from the provisions of the preceding paragraph is only possible if authorised by the  "Commission nationale de l'informatique et des libertés" according to the conditions provided for in Articles 64 to 66. In this case, the data used may comprise neither the family name, nor the given name of persons, nor their registration number in the national register for the identification of individuals ("NIR", i.e. social security number).

### Article 64

For each application, the commission shall verify the guarantees presented by the applicant in respect of compliance with these provisions and, if necessary, the conformity of his application with his missions or his company's object. The commission shall verify the need to resort to personal data and the relevance of the processing to its declared purpose of evaluation or analysis of care and prevention practices and activities. It shall verify that the personal data that it is planned to process includes neither the family name, nor the given name of data subjects, nor their registration number in the national register for the identification of individuals ("NIR", i.e. social security number).

47

In addition, if the applicant does not present adequate information to demonstrate the need for the inclusion of certain personal data in the data whose processing is planned, the commission may prohibit the communication of these data by the body that holds them and may authorise the processing of a reduced data set only.

The commission shall determine the retention period of data necessary for the processing and shall assess the steps taken to ensure their security and that secrecy guaranteed by law is preserved.

## Article 65

The commission must make its decision within two months from the date of the application and this period may be renewed once only. The absence of a decision within this time limit is considered to be a refusal.

Processing with the same purpose, relating to identical categories of data and with identical recipients or identical categories of recipients, may be approved by a single decision of the commission.

## Article 66

Processing authorised in accordance with Articles 64 and 65 may not be used for the purposes of finding or identifying individuals. When the processing allows the data subjects to be identified indirectly, the persons who carry out the processing, as well as those who have access to the data processed or the output of the processing, shall be bound by a duty of confidentiality and the sanctions provided for in Article 226-13 of the Penal Code shall apply in case of breach.

The results of this processing may be disclosed, published or disseminated only if it impossible to identify the individuals to whose condition the data obtained relates.

## CHAPTER XI
### PROCESSING OF PERSONAL DATA FOR THE PURPOSE OF JOURNALISM AND LITERARY AND ARTISTIC EXPRESSION

### Article 67

Sub-section (5) of Article 6 *(limitation of the period of storage of data)*, Articles 8 *(prohibition of processing of political data...)* 9 *(prohibition of processing of offences)* and 22 *(obligation of notification)*, Sub-section (1) *(authorisation by the CNIL of statistical, political...processing)* and Sub-section (3) *(authorisation by the CNIL relating to offences)* of Section I of Article 25, Articles 32 *(prior information)*, 39 *(right of access)*, 40 *(right of rectification)* and 68 to 70 *(transfer of data)* shall not apply to processing of personal data carried out for the sole purpose of:

    (1) literary and artistic expression; and

    (2) professional journalism, according to the ethical rules of this profession.

However, for processing mentioned in Sub-section (2), the exemption from the obligation to make a declaration as provided for in Article 22 is conditional on the appointment, by the data controller, of an officer responsible for data protection who belongs to a media undertaking, who maintains a register of processing carried out by the data controller and who independently ensures the proper application of the provisions of this Act. This appointment shall be notified to the "Commission nationale de l'informatique et des libertés".

In the event of non-compliance with the provisions of the Act that apply to the processing provided for in this Article, the data controller shall be ordered by the "Commission nationale de l'informatique et des libertés" to bring matters into conformity with the Act. In the event of a failure to perform his duties, the officer is discharged from his functions at the request, or after consultation, of the "Commission nationale de l'informatique et des libertés".

The provisions of the preceding paragraphs shall not prevent the application of the provisions of the Civil Code, the laws relating to the media and the Criminal Code that provide for the conditions of the exercise of the right of reply ("droit de réponse") and that prevent, limit, compensate and, if necessary, sanction violations of privacy and attacks on the reputation of individuals.

## CHAPTER XII
### TRANSFER OF PERSONAL DATA TO STATES THAT ARE NOT MEMBERS OF THE EUROPEAN COMMUNITY

**Article 68**

The data controller may not transfer personal data to a State that is not a Member of the European Community if this State does not provide a sufficient level of the protection of individuals' privacy, liberties and fundamental rights with regard to the actual or possible processing of their personal data.

The sufficient nature of the protection provided by the State shall be assessed taking account in particular of the provisions in force in this State, the security measures that this State applies, the specific characteristics of the processing, such as its purposes and duration, as well as the nature, origin and destination of the processed data.

**Article 69**

However, the data controller may transfer the personal data to a State not satisfying the conditions provided for in Article 68 if the data subject has expressly consented to their transfer or if the transfer is necessary subject to one of the following conditions for:

(1) the protection of the data subject's life;

(2) the protection of the public interest;

(3) the meeting of obligations ensuring the establishment, exercise or defence of legal claims;

(4) the consultation, in accordance with legal conditions, of a public register that, according to legislative and regulatory provisions, is intended for public information and is open for public consultation or by any person demonstrating a legitimate interest;

(5) the performance of a contract between the data controller and the data subject, or of pre-contractual measures taken in response to the data subject's request;

(6) the conclusion or performance of a contract, either concluded or to be concluded in the interest of the data subject between the data controller and a third party;.

50

There may also be an exception to the prohibition provided for in Article 68, by a decision of the "Commission nationale de l'informatique et des libertés" or, in case of processing mentioned in Sections I or II of Article 26 *(State security and criminal offences processing)*, by a decree taken upon the prior opinion of the *Conseil d'Etat* ("décret en Conseil d'Etat"), itself taken after a reasoned and published opinion of the commission, where the processing guarantees a sufficient level of protection of individuals' privacy as well as their liberties and fundamental rights, particularly on account of contractual clauses or internal rules relating to the processing.

The "Commission nationale de l'informatique et des libertés" informs the Commission of the European Communities and the supervisory authorities of the other Member States of the European Community of authorisations to transfer personal data that it issues according to the preceding paragraph.

### Article 70

If the Commission of the European Communities has established that a State that is not a Member of the European Community does not provide an adequate level of protection with respect to a transfer or a category of transfers of personal data, the "Commission nationale de l'informatique et des libertés", upon the reception of a notification filed in application of Articles 23 or 24 and which mentions that personal data will be transferred to this State, shall issue a receipt prohibiting the transfer of the data.

Where it deems that a State that is not a Member of the European Community does not provide an adequate level of protection with respect to a transfer or a category of transfers of data, the "Commission nationale de l'informatique et des libertés" shall immediately inform the Commission of the European Communities. Where it has received a notification according to Articles 23 or 24 mentioning that personal data will be transferred to this State, the "Commission nationale de l'informatique et des libertés" shall acknowledge receipt of this notification and may order the data controller to suspend the transfer of data. If the Commission of the European Communities establishes that the State towards which the transfer is intended provides an adequate level of protection, the "Commission nationale de l'informatique et des libertés" shall notify the data controller of the end of the suspension of the transfer. If the Commission of the European Communities establishes that the State towards which the transfer is planned does not provide an adequate level of protection, the "Commission nationale de l'informatique et des libertés" shall notify the data controller of the prohibition of the transfer of personal data towards this State.

51

## CHAPTER XIII
### MISCELLANEOUS

### Article 71

How this Act shall be implemented shall be further determined by decrees taken upon prior opinion of the "Conseil d'Etat" ("décrets en Conseil d'Etat"), issued following opinions by the "Commission nationale de l'informatique et des libertés".

### Article 72

The present Act shall apply in French Polynesia, in the Wallis and Futuna Islands, in the French Southern and Antarctic lands, in New Caledonia and Mayotte.

As a derogation from the provisions of the second paragraph of Article 54 *(one-month period)*, the advisory committee shall send its opinion to the applicant within two months whenever the applicant lives in one of these communities. In case of an emergency, this time limit may be reduced to one month.