Louis S. Ederer
John Maltbie
Matthew T. Salzmann
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
(212) 715-1000

*Attorneys for Plaintiffs Yves Saint Laurent Parfums S.A.
and YSL Beauté Inc.*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

YVES SAINT LAURENT PARFUMS S.A. and
YSL BEAUTÉ INC.,

   Plaintiffs,

  - against -

COSTCO WHOLESALE CORPORATION,
QUALITY KING DISTRIBUTORS, INC. and
J & H COSMETICS LTD.,

   Defendants.

---------------------------------------------------------------- x
---------------------------------------------------------------- x

QUALITY KING FRAGRANCE, INC.,

   Third Party Plaintiff,

  - against -

J & H COSMETICS LTD.,

   Third Party Defendant.

---------------------------------------------------------------- x

Civil Action No.
07 Civ. 3214 (LBS) (HP)

**EXHIBIT C**



**Commission Nationale
de l'Informatique et des Libertés
Le Président**

M. Pascal CLEMENT
Garde des Sceaux – Ministre de la justice
13, Place Vendôme
75042 PARIS cedex 01

N/Réf. : AT/CPZ//CG/05-011

Paris, le    - 9 JUIN 2005

Monsieur le ministre,

L'attention de la Commission nationale de l'informatique et des libertés est appelée sur le fait que des sociétés françaises font fréquemment l'objet à l'heure actuelle de demandes de communication d'informations détenues par elles dans le cadre de procédures dites de « discovery ».

Les divers cas portés à l'attention de la Commission révèlent que ces injonctions, émises par des juridictions américaines, peuvent porter sur des informations de nature très diverse. Elles peuvent exiger d'une société par exemple qu'elle communique à ces juridictions des informations enregistrées sur le disque dur de l'ordinateur personnel d'un employé, ou qu'elle effectue une recherche d'ensemble sur les ordinateurs de ses employés pour en extraire l'ensemble des informations relatives à la conclusion de certains contrats, sur des périodes très étendues.

En l'état des connaissances de la Commission, il semble que de telles injonctions puissent être émises dans deux cas de figure.

Elles peuvent tout d'abord être prononcées dans le cadre de procédures civiles entre parties privées qui sont, comme vous le savez, régies en droit américain par le principe de l'accusatoire. Au cours de son instruction, le magistrat en charge du dossier peut exiger de toute personne, y compris de tiers au procès, la production de pièces et documents dont une partie allègue qu'ils comportent des éléments directement pertinents pour le litige en cours. Le non-respect d'une telle injonction, constitutive de l'infraction pénale de « contempt of court », expose la partie concernée à des sanctions très lourdes.

Ces injonctions peuvent également être émises dans le cadre d'une procédure initiée par certaines autorités publiques américaines, notamment la Stock Exchange Commission (SEC), en application des pouvoirs d'enquête qui leur sont propres. Les injonctions émises par la SEC peuvent concerner des sociétés françaises, selon qu'elles sont filiales de sociétés américaines cotées sur le marché américain ou qu'elles agissent directement sur le marché américain.

La Commission est interrogée à l'heure actuelle sur l'incidence de telles exigences en droit français, notamment au regard des règles de protection des données personnelles ou des dispositions du Code du travail relatives à la protection de la vie privée des employés.

Il est inéluctable que la mondialisation des échanges économiques ait pour effet de soumettre un nombre croissant de sociétés de droit français aux exigences de systèmes juridiques étrangers et à la compétence de juridictions ou d'autorités étrangères.

Pour autant, les sociétés établies en France qui envisagent de mettre en œuvre un traitement de données afin de satisfaire à une obligation découlant d'un système juridique étranger restent tenues d'appliquer les règles françaises de protection des données personnelles à ce traitement. En l'espèce, seront en particulier pertinentes les règles imposant l'obtention du consentement préalable des personnes à de tels traitements, le principe de proportionnalité du traitement au regard de ses finalités, ainsi que les règles relatives aux transfert de données personnelles hors de l'Union européenne.

La Commission estime également nécessaire de s'interroger sur l'éventuelle application de l'article L.432-2-1 du Code du travail à ces questions, qui impose la consultation des instances représentatives du personnel sur tout traitement dont la mise en œuvre, même ponctuelle, serait susceptible de permettre un contrôle de l'activité des salariés.

Afin d'avancer dans sa réflexion sur ce sujet, la Commission souhaiterait connaître votre avis sur les effets de droit que peut produire une injonction émise par une juridiction américaine dans le cadre d'une procédure de « discovery » sur des sociétés établies en France. Plus particulièrement, elle s'interroge sur le fait de savoir si le caractère exécutoire de ces injonctions est soumis à des conditions particulières, à l'instar des décisions de justice ayant force de chose jugée qui sont, dans des conditions similaires, soumises au prononcé de l'*exequatur* par les juridictions françaises.

A cette question préalable est subordonnée la question de savoir si une société française est effectivement liée par les obligations énoncées dans cette injonction. Celle-ci conditionne donc en partie la position que la CNIL pourra adopter sur ces questions. En effet, la mise en œuvre d'un traitement ne pourra être légitime si l'acte juridique qui le fonde est privé d'effet légal.

Je vous serais donc reconnaissant de bien vouloir me faire connaître la position du ministère sur ces questions.

Je vous prie de croire, Monsieur le Ministre, à l'assurance de mes sentiments distingués.

Alex TÜRK

National Commission of
Information Technology and Freedoms
**The President**

Mr. Pascal CLEMENT
Keeper of the Seals – Minister of Justice
13, Place Vendôme
75042 PARIS cedex 01

Our Reference: AT/CPZ/CG/05-011

Paris, June 9, 2005

Mr. Minister:

The National Commission of Information Technology and Freedoms has been apprised of the fact that some French firms are at the present time, in line with discovery procedures, frequently requested to communicate information that is in their possession.

The various cases that the Commission has been apprised of reveal that these injunctions, which are issued by US courts, may pertain to many various types of information. They may request, for instance, that a firm communicate to these courts information recorded on the hard drive of an employee's PC, or carry out an overall search of its employees' computers in order to extract all information relative to the conclusion of some contracts over very long periods.

As far as the Commission knows, it seems that such injunctions can be issued in two instances.

First, they can be delivered with respect to civil proceedings between private parties that are, as you know, governed in American law by the principle of adversary proceeding. In the course of his investigation, the judge who is in charge of the case may request from each person, including third parties in the lawsuit, to produce records and documents that one party alleges to contain elements that are directly relevant to the ongoing litigation. Non-compliance with such injunction, which constitutes the criminal violation of contempt of court, exposes the party concerned to severe penalties.

These injunctions can also be issued in the context of a proceeding initiated by some public US authorities, notably the Stock Exchange Commission (SEC), in accordance with their own investigative powers. The injunctions issued by the SEC may concern French firms, whether they are affiliates of US corporations listed in the US market or they do business directly in the US market.

The Commission is receiving currently inquiries about the occurrence of such requirements in French law, in particular with respect to the rules concerning the protection of personal information or the provision of Labor Law regarding the protection of the private life of employees.

It is unavoidable that the globalization of economic exchanges led an increasing number of companies that operate under French law to become subject to the requirements of foreign legal systems and to the competence of foreign courts or authorities.

Nevertheless, those companies established in France that intend to implement data processing in order to meet a requirement stemming from a foreign legal system must still apply French regulations for the protection of personal data concerning this processing. What is relevant in this instance are the regulations that require obtaining the prior consent of persons for such processing, the principle of proportionality of the processing with respect to its purposes, and the regulations concerning the transfer of personal data outside of the European Union.

The Commission believes that it is also necessary to inquire about the possible application of Article L.432-2-1 of Labor Law to these questions, which requires consulting with representative personnel authorities concerning any processing whose implementation, even if occasional, could lead to the control of personnel activities.

In order to enhance its analysis of this subject, the Commission wishes to know your opinion on the legal impacts that an injunction issued by a US court can generate in line with a discovery procedure on companies established in France. More specifically, it would like to know whether the enforceable feature of these injunctions is subject to particular terms, similarly to legal decisions that have the force of *res judicata* which are, under similar terms, subject to the pronouncement of *exequatur* [order allowing enforcement of a foreign order] by French courts.

Following this preliminary question there is the question of knowing whether a French company is actually bound by the obligations set forth in this injunction. The latter thus influences in part the position that CNIL [National Commission of Information Technology and Freedoms] could adopt on these questions. Indeed, the implementation of a processing may not be legitimate if the legal instrument that grounds it does not have legal merit.

I would very much appreciate it thus if you would provide me with the position of the ministry on these questions.

Sincerely,

Alex TURK