Louis S. Ederer
John Maltbie
Matthew T. Salzmann
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
(212) 715-1000

*Attorneys for Plaintiffs Yves Saint Laurent Parfums S.A. and YSL Beauté Inc.*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

YVES SAINT LAURENT PARFUMS S.A. and YSL BEAUTÉ INC.,

        Plaintiffs,

- against -

COSTCO WHOLESALE CORPORATION, QUALITY KING DISTRIBUTORS, INC. and J & H COSMETICS LTD.,

        Defendants.

Civil Action No.
07 Civ. 3214 (LBS) (HP)

------------------------------------------------------------- x
------------------------------------------------------------- x

QUALITY KING FRAGRANCE, INC.,

        Third Party Plaintiff,

- against -

J & H COSMETICS LTD.,

        Third Party Defendant.

------------------------------------------------------------- x

**EXHIBIT D**

*Le Garde des Sceaux*

*Ministre de la Justice*

BDP/CE/1858/EM/05-317

Paris, le **2 8 SEP. 2005**

Monsieur le Président,

Par un courrier daté du 9 juin 2005, vous avez attiré mon attention sur les pratiques de certains organismes juridictionnels ou administratifs étrangers qui exigent de sociétés françaises la transmission de données à caractère personnel protégées par les disposition de la loi du 6 janvier 1978. J'ai l'honneur de porter à votre connaissance les éléments suivants.

### 1° Sur les injonctions prononcées par les juridictions américaines

En matière civile ou commerciale, les demandes d'obtention de preuves émanant des juridictions des États-Unis d'Amérique sont régies par la Convention de La Haye du 18 mars 1970 relative à l'obtention de preuves à l'étranger en matière civile et commerciale.

La convention de La Haye précitée organise l'obtention de preuves à l'étranger en matière civile et commerciale selon deux régimes non exclusifs l'un de l'autre :
- celui des commissions rogatoires, dont l'exécution est confiée à l'autorité judiciaire, et qui permet l'usage de mesures de contraintes à l'encontre de la personne concernée par l'acte d'instruction ;
- celui des agents diplomatiques et des " commissaires " à qui est confiée l'exécution de l'acte, sur autorisation du bureau de l'entraide civile et commerciale, et sans mesure de contrainte possible.

Les demandes d'obtention de preuves formalisées dans ce cadre doivent toutes être adressées à la Direction des Affaires Civiles et du Sceau (bureau de l'entraide civile et commerciale internationale) de la chancellerie qui exerce les fonctions d'autorité centrale pour l'application de ladite convention.

A la réception d'une demande, il revient à l'autorité centrale française, conformément à l'article 5 de la convention, d'en vérifier la recevabilité au regard des dispositions de la convention, et, le cas échéant, de la rejeter ou, en application, de l'article 736 du nouveau code de procédure civile, de la transmettre à la juridiction dans le ressort de laquelle elle doit être exécutée.

Monsieur Alex TURK
Président de la Commission
Nationale de l'Informatique
et des Libertés
21, rue Saint-Guillaume
75340 PARIS Cedex 07



C. N. I. L.
012875
30 SEP. 05

Notamment, doit être vérifiée la conformité de la demande aux réserves faites par le Gouvernement français lors de la signature de la convention, dont celle qui, en application de l'article 23, n'autorise l'exécution en France des commissions rogatoires dans le cadre de procédures connues dans les Etats du common law sous le nom de «pre-trial discovery of documents» que lorsque les documents demandés sont limitativement énumérés dans la commission rogatoire et ont un lien direct et précis avec l'objet du litige.

Outre le contrôle opéré par l'autorité centrale, dans le cas où la commission rogatoire a été transmise à une juridiction, il revient à cette dernière de trancher sur l'admissibilité des demandes d'obtention des preuves, après que les parties ont été entendues.

Si l'autorité centrale française connaît d'environ une quinzaine de demandes d'obtention de preuves par an en provenance des États-Unis d'Amérique, au cours des dernières années, rarissimes sont celles pouvant porter sur des données informatiques.

Une seule demande qui notamment tendait explicitement à la communication de données informatiques a été reçue et transmise pour exécution : était sollicitée la production de courriers électroniques (en l'espèce, ceux échangés entre deux sociétés d'assurance).

Toutefois, les demandes visant à la production de documents peuvent concerner des documents dématérialisés sans que cette circonstance ne soit précisée dans la commission rogatoire. Il revient alors au juge judiciaire de statuer sur la production des pièces détenues par un tiers ou par une partie, conformément aux articles 138 et suiv. du nouveau code de procédure civile. Ainsi, en application de l'article 139 dudit code, « Le juge, s'il estime cette demande fondée, ordonne la délivrance ou la production de l'acte ou de la pièce, en original, en copie ou en extrait selon le cas, dans les conditions et sous les garanties qu'il fixe, au besoin à peine d'astreinte. ».

## 2° Sur les injonctions émanant d'autorités administratives telles que la SEC

Tout comme les décisions juridictionnelles, à défaut de convention internationale contraire, les décisions administratives prises par des autorités étrangères n'ont pas d'effet juridique en France.

Il convient même de souligner que l'article 1er bis de la loi du 26 juillet 1968, issu de la loi n° 80-538 du 16 juillet 1980 relative à la communication de documents ou renseignements d'ordre économique, commercial ou technique à des personnes physiques ou morales étrangères, fait obstacle aux enquêtes "sauvages", en punissant d'une peine d'emprisonnement de 6 mois et d'une peine d'amende de 18 000 €, la recherche et la communication par toute personne de document ou renseignement tendant à la constitution de preuves en vue de procédures judiciaires ou administratives étrangères.

Cette prohibition est particulièrement large. Elle s'applique d'une part, même si la communication du document ou du renseignement n'est pas de nature à porter atteinte à la souveraineté, à la sécurité, à l'ordre public ou aux intérêts essentiels économiques de la France, d'autre part, même si cette recherche n'est pas suivie d'effet et, enfin, même si la personne poursuivie n'est ni française ni résidente française. Cette prohibition n'est instituée que "sous réserve des traités et accords internationaux".

Un accord d'assistance mutuelle existe entre la SEC et l'AMF. Il a pris la suite de l'accord de même nature que la SEC avait conclu avec la COB le 14 décembre 1989. Cet accord prévoit notamment l'échange de documents figurant dans les dossiers respectifs de chaque autorité mais aussi la possibilité de demander la communication d'autres documents, dans la limite du respect dû à la souveraineté, à la sécurité, aux intérêts économiques essentiels ou à l'ordre public de chaque Etat concerné.

A supposer que de tels accords constituent des fondements juridiques suffisants pour écarter l'application de la loi pénale, seule une demande d'information relayée par l'AMF serait aujourd'hui de nature à mettre les entreprises françaises désireuse de répondre à une telle demande à l'abri d'un risque de condamnation pénale.

Je vous prie de croire, Monsieur le Président, à l'assurance de mes sentiments les meilleurs.

Pascal CLEMENT

*Keeper of the Seals*
*Minister of Justice*

BPD/CE/1858/EM/05-317

Paris, September 28, 2005

Mr. President:

In a letter dated June 9, 2005, you have informed me about the methods used by some foreign legal and administrative organizations that require French companies to transmit personal information protected by the provisions of the January 6, 1978, law. I have the honor to bring to your attention the following facts.

### 1. On injunctions issued by US courts

For civil or commercial matters, US courts' requests for obtaining evidence are governed by the Haye Convention of March 18, 1970, as regards obtaining evidence abroad in civil or commercial matters.

The aforesaid Haye Convention regulates the obtaining of evidence abroad concerning civil and commercial matters according to the two non-mutually exclusive procedures:

- That of the rogatory commissions, whose enforcement is assigned to judicial authorities, and which allows the use of constraining measures against the person concerned by the investigative proceedings;
- That of diplomatic agents and "commissioners" to whom the execution of the instrument is entrusted, following the authorization of the civil and commercial cooperation office, and without any possible constraining measure.

All requests for obtaining formalized evidence in this context must be addressed to the Chancellery's Department of Civil Affairs and of the Seal (international civil and commercial cooperation office) which exercises central authority duties for the application of the said Convention.

Upon receipt of a request, the French central authority shall, in conformity with Article 5 of the Convention, check the admissibility thereof pursuant to the Convention's provisions, and if necessary reject it, or, in accordance with Article 736 of the New Civil Procedure Code, transfer it to the court under whose jurisdiction it must be executed.

Mr. Alex TURK
President of the National Commission
of Information Technology and Freedoms
21, Saint-Guillaume Street
75340 PARIS Cedex 07

[Stamp: C. N. I. L. (National Commission
of Information Technology and Freedoms)
012875        SEP. 30, 2005]

Notably, the compliance of the request with the reservations made by the French government during the signing of the Convention must be checked; this includes, pursuant to Article 23, the one that does not permit the enforcement in France of rogatory commissions in line with procedures known in common law countries under the name of "pre-trial discovery documents" unless the documents requested are listed restrictively in the rogatory commission and are connected directly and specifically with the subject of the litigation.

Besides the control carried out by the central authority, in the event where the rogatory commission was transferred to a court, the latter shall rule on the admissibility of the requests for obtaining evidence, once the parties are heard.

While the French central authority has received some fifteen requests for obtaining evidence per year from the United States of America in the past few years, those pertaining to information technology data are extremely rare.

Only one request, which notably and expressly concerned the communication of IT data, was received and transferred for execution: the production of e-mails (in this instance, those exchanged between two insurance companies) was requested.

However, requests concerning the production of documents may involve dematerialized documents without having this fact specified in the rogatory commission. It is then up to the court judge to rule on the production of documents held by a third party or by one of the parties, in conformity with Articles 138 et seq. of the New Civil Procedure Code. Thus, in application of Article 139 of the said Code, "If the judge deems this request to be justified, he may order the delivery or production of the instrument or of the document, in original, copy or excerpt form, as the case may be, under the terms and guarantees that he sets, with non-compliance penalty if need be."

## 2. On injunctions stemming from administrative authorities such as SEC

Similarly to court decisions, and barring the existence of a contrary international convention, administrative decisions made by foreign authorities have no legal merit in France.

We even ought to mention that Article 1 bis of the July 26, 1968, law, stemming from Law No. 80-538 of July 16, 1980, concerning the communication of economic, commercial or technical documents or information to foreign natural or artificial persons, opposes "unrestrained" investigations, establishing a sentence consisting of a prison term of 6 months and a fine of €18,000 for the search for and communication by any person of a document or information whose aim is to constitute evidence in foreign legal or administrative proceedings.

This ban is particularly broad. It applies, on one hand, even if the communication of a document or information does not violate the sovereignty, security, public order or basic

economic interests of France, and on the other hand, even if this search does not have any consequence and, finally, even if the person that is prosecuted is neither French nor a French resident. This ban is established only "subject to international treaties and agreements."

A mutual assistance agreement exists between the SEC and AMF. It followed from the agreement of the same type that SEC had entered into with COB [French Stock Exchange Commission] on December 14, 1989. This agreement stipulates notably the exchange of documents existing in the respective files of each authority, along with the possibility of requesting the communication of other documents, subject to compliance with the sovereignty, security and basic economic interests or public order of each State concerned.

Assuming that such agreements constitute sufficient legal grounds for dismissing the application of criminal law, only a request for information transmitted by the AMF would presently be such as to grant criminal immunity to the French firms that are willing to respond to such requests.

Sincerely,

Pascal CLEMENT