Louis S. Ederer
John Maltbie
Matthew T. Salzmann
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
(212) 715-1000

*Attorneys for Plaintiffs Yves Saint Laurent Parfums S.A. and YSL Beauté Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x

YVES SAINT LAURENT PARFUMS S.A. and YSL BEAUTÉ INC.,

        Plaintiffs,

- against -

COSTCO WHOLESALE CORPORATION, QUALITY KING DISTRIBUTORS, INC. and J & H COSMETICS LTD.,

        Defendants.

----------------------------------------------------------------- x
----------------------------------------------------------------- x

QUALITY KING FRAGRANCE, INC.,

        Third Party Plaintiff,

- against -

J & H COSMETICS LTD.,

        Third Party Defendant.

----------------------------------------------------------------- x

Civil Action No.
07 Civ. 3214 (LBS) (HP)

**EXHIBIT G**




# Les entreprises inquiètes du développement des règles leur imposant la communication de données personnelles aux Etats-Unis

15/01/2008 - En bref

De nombreuses sociétés françaises et européennes sont confrontées, depuis plusieurs années, à des demandes de communication d'informations en leur possession dans le cadre de procédures américaines. Ces demandes consistent généralement en des requêtes exigeant copie des disques durs de certains salariés, voire de l'ensemble du personnel, ou des copies de leurs messageries électroniques afin de les transférer aux Etats-Unis.

## I - Quatre cas de figure se présentent :

### 1. « Litigation hold », « litigation freeze »
Les sociétés américaines font remonter et stocker, à titre conservatoire des documents et informations détenus aux Etats-Unis ou ailleurs, lorsqu'il semble inéluctable qu'un procès s'engage sur un sujet particulier. Cette pratique, de plus en plus fréquente, est appelée « litigation hold » ou « freeze ».

### 2. « Pre-trial discovery »
Contrairement aux règles de procédure civile applicables en France, les règles américaines, guidées par le principe de l'accusatoire, encouragent les parties à s'échanger le plus d'informations possible avant le procès (« pre-trial discovery »). Ainsi, une partie au procès peut exiger la production, puis l'inspection, la copie, l'examen, ou le prélèvement de tous les documents indiqués dans la demande. Un marché de prestataires et de logiciels spécialisés s'est développé aux Etats-Unis pour permettre aux sociétés de répondre à de telles demandes dans les délais impartis (généralement un mois). L'expression révélatrice de « fishing expedition » est fréquemment employée pour qualifier l'activité de recherche d'informations par ces prestataires dans la « data pool » ainsi constituée.

### 3. Injonctions d'autorités publiques américaines
L'obligation, pour des sociétés américaines, de conserver des documents s'applique également aux hypothèses où des enquêtes sont menées par les autorités administratives américaines. Ainsi, le ministère de la justice américain (DoJ), à l'appui de la Security and Exchange Commission (SEC), mène actuellement une série d'investigations auprès des entreprises américaines pour vérifier l'état du respect des règles américaines de lutte contre la corruption d'agents étrangers (US Foreign Corrupt Practices Act). La SEC conduit également une série d'enquêtes pour vérifier la conformité des entreprises au Sarbanes-Oxley Act. Ces enquêtes dépassent le cadre national américain et concernent de nombreuses sociétés étrangères.

### 4. Création d'un nouveau délit de « destruction d'information »
Le Congrès américain a récemment pénalisé le fait de détruire des documents avec l'intention de faire obstacle à des enquêtes en cours. Le fait de ne pas avoir conservé des informations pertinentes, y compris celles en possession des filiales européennes de sociétés américaines, peut désormais être sanctionné pénalement.

## II – Des incertitudes juridiques nombreuses pour des risques financiers et industriels réels

Inquiets des conséquences que ces obligations engendrent, et de la communication de telles quantités de données au regard des règles françaises et européennes applicables, un certain nombre d'entreprises françaises ou étrangères établies en France et des avocats spécialisés ont tenu à alerter la CNIL sur le développement de ce phénomène.

Ces demandes de communication de données soulèvent des problèmes d'application des règles françaises en matière d'entraide judiciaire internationale. Elle contreviennent également aux dispositions de la loi « Informatique et Libertés » relatives à l'information et au consentement des personnes, à la proportionnalité du traitement effectué, ainsi qu'aux transferts de données hors de l'Union Européenne.

De manière préoccupante, ces entreprises expriment également des doutes quant à la protection de leurs secrets

industriels et commerciaux, certaines d'entre elles évoquant de réelles craintes en matière d'intelligence économique.

Face à l'augmentation du nombre de sociétés concernées qui contactent aujourd'hui la CNIL, celle-ci a tenu à attirer l'attention du gouvernement sur ce point. Une réflexion inter-ministérielle devrait prochainement être engagée.

La CNIL et ses homologues européens prolongent ces réflexions nationales sur le plan européen, dans le cadre du Groupe dit « de l'article 29 », le groupe de coordination des CNIL européennes institué par la directive 95/46/CE. Les travaux du G29, qui seront renforcés par l'analyse des droits nationaux des pays de l'UE, seront réalisés en concertation avec les institutions européennes, et en particulier la Commission, afin d'engager, le cas échéant, des négociations Europe-Etats-Unis sur ce dossier sensible.

Dernière modification : 14/01/08

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

Copyright © 2004 CNIL République Française