# EXHIBIT 4

Fried, Frank, Harris, Shriver & Jacobson LLP

One New York Plaza
New York, New York 10004-1980
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com



Direct Line: 212.859.8106
Facsimile: 212.859.4000
E-mail: darcy_goddard@friedfrank.com

January 3, 2008

**BY E-MAIL**

Louis S. Ederer, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York 10002

Re:   *Yves Saint Laurent Parfums, S.A. v. Costco Wholesale Corp.*,
      07-cv-3214 (LBS)

Dear Louis:

  We write in response to your letter dated December 28, 2007, inquiring about Costco's document productions to date. The documents produced by Costco are Bates stamped COST000001-COST007848 (approximately 7,840 pages of hard copy documents[1]) and COST-ESI-000001-COST-ESI-004769 (4,769 electronic files produced in electronic format). By separate letter of today's date, we are producing additional documents Bates stamped COST007849-COST007856 and COST-ESI-004770-COST-ESI-004955.[2]

  As an initial matter, please be advised that no non-privileged documents have been withheld from any of Costco's productions on the basis of any General Objections. In regard to your lengthy list of questions relating to specific categories of documents requested in the plaintiffs' Third Request for the Production of Documents and Things ("Plaintiffs' Third Requests"):

  Request No. 1: Documents relating to Costco's policies and procedures "for the intake or purchase of goods on the parallel market" were first produced by Costco on July 27, 2007. Additional responsive documents have been produced on several occasions since that time. These documents include but are not limited to: purchase orders for the three products at issue (*see, e.g.*, COST000033-COST000433 (mascara and lip products) and COST006832-COST006868 (OPIUM-branded perfume product)), Buying Checklists (*see, e.g.*, COST000041, COST000062, COST000108, COST006835, and COST006846), Vendor Certificates (*see, e.g.*, COST000042, COST000063, COST000109, COST006836, and COST006847), and inspection

---

[1] Several pages within this range were ultimately determined to be non-responsive and were withheld on that basis.

[2] By no later than Monday, January 7, 2008, Costco will produce 87 electronic documents that must be redacted and produced in hard copy to protect the confidential trade secret identities of Costco's vendors of non-YSL goods.

Fried, Frank, Harris, Shriver & Jacobson LLP

Louis S. Ederer, Esq.   January 3, 2008
Page 2

records (*see, e.g.*, COST000093, COST000122, COST006837, COST006848, and COST007829-COST007831). Costco has also produced all responsive e-mail messages to and from the Costco and National employees who are involved in such purchases. We have located a few additional documents concerning Costco's policies and procedures "for the intake or purchase of goods on the parallel market," copies of which will be produced today. We are not aware of any other non-privileged documents responsive to this request.

Request No. 2: Documents relating to Costco's "development, creation, implementation or modification" of the Buying Checklist were first produced by Costco on July 27, 2007. Additional responsive documents have been produced on several occasions since that time. These documents include but are not limited to: purchase orders for the three products at issue (*see, e.g.*, COST000033-COST000433 (mascara and lip products) and COST006832-COST006868 (OPIUM-branded perfume product)), Buying Checklists (*see, e.g.*, COST000041, COST000062, COST000108, COST006835, and COST006846), Vendor Certificates (*see, e.g.*, COST000042, COST000063, COST000109, COST006836, and COST006847), and inspection records (*see, e.g.*, COST000093, COST000122, COST006837, COST006848, and COST007829-COST007831). Moreover, in response to the plaintiffs' Second Set of Interrogatories No. 2, Costco identified by name the individuals who were or are involved in the "development, creation, implementation or modification" of the Buying Checklist. The plaintiffs have noticed for next week the depositions of two of these individuals (Nathan Fox and Robert Pugmire). Other than the additional documents referenced in Costco's response to Request No. 1, we are not aware of any other non-privileged documents responsive to this request.

Request No. 7: This request called for the production of "documents and communications concerning why Costco considers transactions involving fragrances as 'potentially sensitive' as set forth in paragraph 4 of Appendix A of [Costco's] 'Buying Checklist.'" We are not aware of any non-privileged documents responsive to this request.

Request No. 8: This request called for the production of "documents and communications concerning whether any transactions with Quality King should be considered 'potentially sensitive' in accordance with Costco's 'Buying Checklist.'" We are not presently aware of any non-privileged documents responsive to this request. We are continuing to search for potentially responsive documents, and we will endeavor to produce all such documents, if any, on or before Monday, January 7, 2008.

Request No. 9: This request called for the production of "documents and communications concerning Costco's purchase of any unauthentic or counterfeit goods from Quality King since January 1, 2000." Whether goods are "counterfeit" is, of course, a legal conclusion, and Costco objected to this request on that basis. (*See* Costco's Resp. & Objections to Pls.' Third Requests at 8.) In regard to the allegedly counterfeit OPIUM-branded perfume product at issue in this case, Costco has produced its purchase orders (COST006832-COST006868) and related documents, and has produced all responsive e-mail messages to and

Fried, Frank, Harris, Shriver & Jacobson LLP

Louis S. Ederer, Esq.
January 3, 2008
Page 3

from the Costco and National employees who were involved in such purchases. We are continuing to search for any other potentially responsive documents, and we will endeavor to produce all such documents, if any, on or before Monday, January 7, 2008.

Request No. 10: See response to Request No. 9 above.

Request No. 11: This request called for the production of "documents and communications concerning [Costco's] requests for, receipt of, written approval of, or written waiver of the requirements for, samples of OPIUM products" purchased from Quality King. Costco did not waive any of the requirements for its purchase from Quality King of the OPIUM-branded perfume products at issue, and Costco objected to this request on that basis. (See Costco's Resp. & Objections to Pls.' Third Requests at 8.) Documents responsive to this request include purchase orders (COST006832-COST006868), Buying Checklists (COST006835 and COST006846), and Vendor Certificates (COST006836 and COST006847). See also response to Request No. 12 below. Other than the additional documents referenced in Costco's response to Request No. 1, Costco has produced all documents it has been able to locate that (i) are relevant to this request and (ii) fall within the time frame of any of the plaintiffs' document requests.

Request No. 12: This request called for the production of "samples of the OPIUM Products received by [Costco] pursuant to the procedures set forth in [Costco's] 'Buying Checklist.'" We understand that Costco sent to Quality King's warehouse in Long Island two Costco employees who inspected the OPIUM-branded perfume products on-site and did not take away any samples. Documents relating to that inspection have been produced (COST006837, COST006848, and COST007829-COST007831), and the plaintiffs have noticed for next week the depositions of the two individuals who conducted the on-site inspection (Martina Novotna and Tracy Dominique).

Request No. 13: This request called for the production of "documents concerning [Costco's] comparison of sample OPIUM Products received from vendors with genuine OPIUM Products purchased at retail." See response to Request No. 12 above. We have located a few additional documents concerning the purchase at retail of "genuine" OPIUM-branded perfume products for comparison to the OPIUM-branded perfume products purchased by Costco from Quality King, copies of which will be produced today. Other than those few additional documents, Costco has produced all documents it has been able to locate that (i) are relevant to this request and (ii) fall within the time frame of any of the plaintiffs' document requests.

Request No. 14: This request called for the production of "genuine OPIUM Products purchased by you at retail for comparison with the samples of OPIUM Products received by you from vendors." See responses to Request Nos. 12 and 13 above. These samples will be available for inspection on reasonable notice beginning at 10:00 a.m. tomorrow, Friday, January 4, 2008.

**Fried, Frank, Harris, Shriver & Jacobson LLP**

Louis S. Ederer, Esq.  January 3, 2008
Page 4

Request No. 15: See responses to Requests Nos. 12, 13, and 14 above.

Request No. 20: This request called for the production of "documents and communications concerning any legal action commenced or threatened against [Costco], including without limitation, cease and desist letters, complaints, settlements, consent judgments, and/or injunctions arising out of your offer for sale or sale of any counterfeit goods." (Emphasis added.) Although Plaintiffs' Third Requests demanded this information for the period January 1, 2006, to November 13, 2007 (see Pls.' Third Requests at 8), your December 28, 2007, letter seeks to expand Plaintiffs' Third Requests by demanding this information for the eleven-year period from January 1, 1997, to the present. (Ederer Dec. 28 Ltr. at 5.) Your December 28 letter also seeks to expand Plaintiffs' Third Requests to include not just the "offer for sale or sale of any counterfeit goods" but also every instance in which Costco has been "accused of offering for sale or selling" any allegedly counterfeit goods. (Id. at 4 (emphasis added).)

Whether goods are "counterfeit" is, of course, a legal conclusion, and Costco objected to this request on that basis. (See Costco's Resp. & Objections to Pls.' Third Requests at 8.) Request No. 20 demanded information regarding the offer for sale or sale of goods that were actually "counterfeit," not the offer for sale or sale of goods that some person, on any or no basis, has at some point asserted were "counterfeit" regardless of whether that assertion was later withdrawn, disproved, or otherwise defeated. Even leaving aside the unreasonableness of your newly demanded eleven-year time period, to expand the scope of the plaintiffs' Request No. 20 as reformulated in your December 28 letter would be unreasonable, overly broad and burdensome, and unlikely to lead to the discovery of admissible evidence.

In response to Request No. 20, on December 14, 2007, Costco offered to produce responsive documents for the period January 1, 2005, to November 13, 2007 (a period one year longer than that specified in Plaintiffs' Third Requests) to the extent that any court may have determined that any goods offered for sale by Costco were actually "counterfeit." No such documents exist. In an effort to resolve this dispute without involving the Court, Costco will also agree to search for and produce responsive documents, if any, for the period January 1, 2005, to November 13, 2007, to the extent that Costco has been able to determine, with or without court action, that any item sold or offered for sale by Costco was actually counterfeit. Costco will agree to search for and produce those documents, if any, on or before Monday, January 7, 2008. For the reasons set forth above, however, Costco will not agree to produce all documents that might be encompassed within the plaintiffs' Request No. 20 as reformulated and expanded by your December 28 letter.

**Fried, Frank, Harris, Shriver & Jacobson LLP**

Louis S. Ederer, Esq.  January 3, 2008
Page 5

We are available at your convenience to meet and confer on any of the above issues.

Very truly yours,

Darcy M. Goddard

cc:  Anthony Viola, Esq. (by e-mail)
     Jeffrey Heller, Esq. (by e-mail)

561563