# EXHIBIT 5

```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                         :
 4   YVES SAINT LAURENT PARFUMS, S.A.,   :   07-CV-3214 (LBS)
      et al.,                            :
 5                                       :
                     Plaintiffs,         :   January 7, 2008
 6                                       :
                v.                       :   500 Pearl Street
 7                                       :   New York, New York
     COSTCO WHOLESALE CORPORATION,       :
 8                                       :
                     Defendant.          :
 9   ------------------------------------X

10           TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY
              BEFORE THE HONORABLE HENRY B. PITMAN
11                UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For the Plaintiffs:       LOUIS SHERMAN EDERER, ESQ.
                               Arnold & Porter, LLP
14                             399 Park Avenue
                               New York, New York  10022
15
     For the Defendant:        JAMES WILSON DABNEY, ESQ.
16                             DARCY GODDARD, ESQ.
                               Fried, Frank, Harris, Shriver &
17                               Jacobson
                               One New York Plaza
18                             New York, New York  10011

19   For Quality King:         ANTHONY VIOLA, ESQ.
                               Edwards, Angell, Palmer & Dodge
20                             750 Lexington Avenue
                               New York, New York  10022
21
     For J&H Cosmetics:        MELISSA CORWIN, ESQ.
22                             Somer & Heller, LLP
                               2171 Jericho Turnpike, Ste. 350
23                             Commack, NY 11725

24   Court Transcriber:        MARY GRECO
                               TypeWrite Word Processing Service
25                             356 Eltingville Boulevard
                               Staten Island, New York 10312


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

```
                                                                    2

 1            THE CLERK:  Yves Saint Laurent v. Costco.  Counsel,
 2   please state your names for the record.
 3            MR. EDERER:  Louis Ederer and my colleague Matthew
 4   Salzmann, Arnold and Porter for the plaintiffs.
 5            MR. VIOLA:  Good afternoon, Your Honor.  Anthony
 6   Viola from Edwards, Angell, Palmer and Dodge for Quality King
 7   Fragrance.
 8            MR. DABNEY:  James W. Dabney and Darcy M. Goddard
 9   from Fried Frank for defendant Costco Wholesale Corporation.
10            MS. CORWIN:  Melissa Corwin of Somer and Heller on
11   behalf of defendant J&H Cosmetics.  Good afternoon, Your Honor.
12            THE COURT:  Good afternoon.  There was a number of
13   discovery disputes that had been raised in correspondence dated
14   between December 26th and actually there were some additional
15   letters that were here.  In addition, we will talk about the
16   scheduling of the trial in this matter.  I want to try to
17   address the issues in the order in which they were raised.
18            I think the first issue is -- the first issue that
19   was raised was Quality King's request for production of certain
20   samples.  Let me take the easy one, the easy aspect of that
21   first.  Is there still a dispute concerning production of the
22   bottles, the samples of genuine bottles and genuine pumps?
23            MR. VIOLA:  Yes, Your Honor.
24            THE COURT:  All right.  Let me ask Ms. -- I don't
25   know who's going to address this on plaintiff's side.  What's
```

```
                                                              83
 1              THE COURT:  All right.  I think those are all the
 2   issues that were raised in the Fried Frank December 27 letter.
 3   Mr. Dabney, have I overlooked anything in your opinion?
 4              MR. DABNEY:  No, you haven't overlooked a thing.
 5              THE COURT:  Are there any issues that Yves Saint
 6   Laurent has against Costco?
 7              MR. EDERER:  Yes, Your Honor.
 8              THE COURT:  Go ahead.
 9              MR. EDERER:  We believe this material is before you in
10   pieces in various letters, but as part of our document
11   production, the document requests to Costco, we called for
12   production of documents relating to prior claims of
13   counterfeiting against Costco which under the case law is
14   relevant to the issue of intent and we have the case law if
15   Your Honor wants to see it, but there hasn't been an objection
16   on that basis.  The objection was that we didn't put the word
17   alleged in front of the word counterfeit.  So that we sent a
18   letter to Ms. Goddard on December 28th which we attached to our
19   letter to Your Honor on January 2nd and it relates to Document
20   Request Number 20, and that document request calls for
21   documents and communications concerning any legal action
22   commenced or threatened against you, including, without
23   limitation, cease and desist letters, complaints, settlements,
24   consent judgments and/or injunctions arising out of your offer
25   for sale or sale of any counterfeit goods.
```

1    What Costco has chosen to do is to say that because
2    we didn't put the word alleged in front of the word counterfeit
3    at the end of that request therefore they're only going to
4    produce documents relating to claims that were made against
5    them, counterfeiting where it was demonstrated that the goods
6    were, in fact, counterfeit or where Costco conceded that the
7    goods were counterfeit.  Then, of course, their response was
8    there are no such documents because every time Costco is sued
9    for counterfeiting it settles and no liability is admitted and
10   no determination is made but that's not what we asked for.
11       We asked for documents relating to claims that were
12   made against Costco for counterfeiting arising out of claim --
13   we talk about cease and desist letters, complaints.  Clearly
14   what we were talking about were actions commenced or threatened
15   and not actions in which it was proven or demonstrated that the
16   goods were actually counterfeited.  So we have no documents
17   responsive to that request.  We've gone back several times and
18   asked for -- and clarified the request and asked for the
19   documents to be produced and they still have not been produced.
20       I believe Ms. Goddard put in a letter to Your Honor
21   on that issue today if I'm not mistaken reiterating that that
22   is Costco's interpretation of our request and reiterating that
23   they have no documents responsive to that request.
24       THE COURT: Mr. Ederer.
25       MR. DABNEY:  You mean Mr. Dabney.

```
                                                                      85
 1              THE COURT:  I'm sorry, Mr. Dabney.  I'm sorry.  My
 2   apologies.
 3              MR. DABNEY:  I'm not sure that this issue really is
 4   properly before the Court.  If Mr. Ederer has case law which
 5   he's alluded to I would very much like to read it because we
 6   have not been able to find any.
 7              What I understand this request is about is they have
 8   asked for documents that go back as far as 1997 asking for
 9   disclosure of any document concerning any allegation or
10   assertion that Costco has ever been supplied by anybody with
11   goods alleged to be counterfeit by anyone and regardless of
12   whether they were, in fact, counterfeit or not or whether there
13   was any wrongdoing admitted, established, whatever, and I do
14   not believe under the Federal Rules of Civil Procedure, the
15   Federal Rules of Evidence that kind of request is reasonably
16   calculated to lead to discovery of admissible evidence and I
17   would request, respectfully request an opportunity to brief if,
18   as Mr. Ederer says, he claims he has case law on this.
19              I don't see how in a case where the only claim this
20   apparently would be relevant to is this Opium claim whose facts
21   are completely known.  There's no secret about what happened.
22   There was a small quantity of product that were supplied to by
23   my co-defendant.  Within eight days of being notified that
24   there was a question about it we pulled it from the shelves and
25   so forth.
```

86

1       To say that in that case and these circumstances we
2  should have to look for documents in 1997, did somebody assert
3  that something we sold supplied by somebody else was
4  counterfeit and there was no determination whether it was or
5  wasn't, that has no connection necessarily to the personnel or
6  the events or anything that was happening in 2007 when we
7  bought these goods, I respectfully submit that that is just a
8  fishing expedition and --
9       THE COURT: The worst analogy attorneys use. If you
10 read Hickman v. Taylor the Supreme Court said it's okay to
11 fish. They did. Read the decision. It's okay to fish. I
12 used to keep the opinion on the bench but I stopped doing that
13 but seriously.
14      MR. DABNEY: It seems to me that it's a request that
15 doesn't purport to be related to any events in this case.
16      THE COURT: Let me ask you this question. Certainly I
17 think we -- I take it we agree that under Rule 404 one can show
18 prior similar acts to show knowledge or intent. Agreed?
19      MR. DABNEY: As to a corporation. I'm not sure that
20 as to a corporation Rule 404 has been so held, Your Honor.
21      THE COURT: Well, if you want to brief the issue I'll
22 give you a chance to brief the issue just like I'm giving Mr.
23 Ederer the chance to brief the French blocking statute issue.
24 It seems to me that it might have some relevance subject to a
25 temporal limit. If Mr. Ederer or Yves Saint Laurent wants to

                                                                88

1           MR. DABNEY: I do but --
2           THE COURT: That's fine. You can make your motion on
3    the same schedule that he's making his motion for -- under the
4    blocking statute by the 18th.
5           MR. DABNEY: I guess I would have thought since it's
6    the plaintiff moving to compel that they would file their
7    motion and we would respond to it.
8           THE COURT: It's just going to come back and bite you
9    on the blocking statute motion then because then they don't go
10   first on that and you go first on the blocking statute. Which
11   way do you want it? It should be consistent. Ordinarily the
12   burden is on the party trying to block discovery. That's why I
13   thought it was appropriate for Mr. Ederer to take the
14   initiative on the blocking statute issue and for you to take
15   the initiative on the application with respect to Request
16   Number 20.
17          MR. DABNEY: Okay. We'll do it that way.
18          MR. EDERER: Your Honor, we have depositions scheduled
19   of Costco in the next -- not tomorrow but starting on Wednesday
20   through the end of the weekend. Among other things we were
21   going to inquire as to this issue. So I want to know if we're
22   wasting our time flying to the State of Washington to take
23   depositions of the very people who have been involved in these
24   actions over the last so many years and we fully intended to
25   ask these questions. I have the case of <u>Bamboo Sales v. Ozack</u>

```
                                                                89
```

1  <u>Trading</u>, Second Circuit 1995.  In finding willful infringement
2  the Court noted that "Defendants had been sued in a similar
3  trademark infringement case in the past." I have the case of
4  <u>GTFM v. Solid Clothing</u> --
5      THE COURT: There's a default in <u>Bamboo v. Ozack</u>.  I
6  have some familiarity with it.
7      MR. EDERER: This is my case, <u>GTFM v. Solid Clothing</u>.
8  Judge Coate held that Solid had been involved in numerous
9  infringement actions in the past, confirms its bad faith.  It
10 is a 404 issue and it goes to the question of willful
11 ignorance. It goes to the question of whether you know that
12 there may be a problem in a particular area such as fragrance
13 or grain market and did you heed the warning signs and did you
14 do your homework and did you follow your buying checklist and
15 all of those things.  This is clearly --
16     THE COURT: Let me ask you this.  The depositions
17 you're scheduled to take out in Washington, are they going to
18 cover other subjects or is this the only subject to be covered?
19     MR. EDERER: No, they're going to cover other
20 subjects.
21     THE COURT: If that's the case I think what makes
22 sense is that you should -- you can inquire on these subjects
23 during the depositions subject to Mr. Dabney's motion.  The
24 relevance of it is still up in the air but rather than run the
25 risk of having to make a trip to Washington twice it seems to