Anthony J. Viola
Andre K. Cizmarik
Paul E. Dans
Edwards Angell Palmer & Dodge, LLP
750 Lexington Avenue
New York, NY 10022
(212) 308-4411
Attorneys for Quality King Fragrance, Inc.
and Quality King Distributors, Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YVES SAINT LAURENT PARFUMS, S.A. and YSL BEAUTÉ INC., <br><br> Plaintiffs, <br><br> - against - <br><br> COSTCO WHOLESALE CORPORATION, QUALITY KING DISTRIBUTORS, INC. and J & H COSMETICS LTD., <br><br> Defendants. | Civil Action No. 07 Civ. 3214 (LBS)(HP) <br><br><br> **DECLARATION OF ANDRE K. CIZMARIK IN SUPPORT OF QUALITY KING FRAGRANCE, INC.'S AND QUALITY KING DISTRIBUTOR, INC.'S MOTION TO AMEND TO ADD GERALD SCHMELTZER AS A DEFENDANT** |
| QUALITY KING FRAGRANCE, INC., <br><br> Third Party Plaintiff, <br><br> - against - <br><br> J&H COSMETICS, LTD., <br><br> Third Party Defendant. | |

I, Andre K. Cizmarik, declare the following under the penalty of perjury:

1.    I am an attorney duly admitted to practice in the States of New York and New

Jersey and the District of Columbia and before the bar of this Court, and am counsel to the firm

of Edwards Angell Palmer & Dodge LLP, which represents Quality King Fragrance, Inc. ("QK

Fragrance") and Quality King Distributors, Inc. ("QKD"). I submit this declaration upon personal knowledge and in support of QK Fragrance's and QKD's motion to amend to add Gerald Schmeltzer as a third-party defendant.

2.      Annexed as **Exhibit A** hereto is a true and correct copy of Quality King Fragrance, Inc.'s and Quality King Distributors, Inc.'s proposed Amended Third Party Complaint.

3.      Annexed as **Exhibit B** hereto is a true and correct copy of an April 17, 2008 letter from Jeffrey T. Heller (counsel for J&H Cosmetics, Ltd.) to Judge Henry Pitman.

4.      Annexed as **Exhibit C** hereto is a true and correct copy of Judge Pitman's Order dated April 23, 2008.

5.      Annexed as **Exhibit D** hereto is a true and correct copy of an April 28, 2008 letter from Melissa Corwin (counsel for and J&H Cosmetics, Ltd.) to Magistrate Judge Pitman.

6.      On or about June 17, 2008, I telephoned Ms. Corwin to inquire if she would be willing to accept service of process of a subpoena on behalf of J&S Merchandising ("J&S"), an eBay store believed to be associated with Mr. Schmeltzer, and which listed its place of business at 58 Eagle Chase, Woodbury, N.Y., the same address as J&H Cosmetics and Gerald Schmeltzer. During that call, Ms. Corwin advised that "JerryBoy57@aol.com," an e-mail address associated with J&S, is Gerald Schmeltzer.

7.      Annexed as **Exhibit E** hereto is a true and correct copy of a July 15, 2008 letter from Ms. Corwin to Judge Pitman.

Dated:  July 25, 2008

ANDRE K. CIZMARIK

# EXHIBIT A

Anthony J. Viola
Andre K. Cizmarik
Paul E. Dans
Edwards Angell Palmer & Dodge, LLP
750 Lexington Avenue
New York, NY 10022
(212) 308-4411
Attorneys for Quality King Distributors, Inc. and
Quality King Fragrance, Inc.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YVES SAINT LAURENT PARFUMS, S.A. and YSL BEAUTÉ INC., | Civil Action No. 07 Civ. 3214 (LBS)(HP) |
| Plaintiffs, | |
| - against - | **[PROPOSED]** |
| COSTCO WHOLESALE CORPORATION, QUALITY KING DISTRIBUTORS, INC. and J & H COSMETICS LTD., | **FIRST AMENDED** **THIRD PARTY COMPLAINT** |
| Defendants. | |
| QUALITY KING FRAGRANCE, INC., and QUALITY KING DISTRIBUTORS, INC. | |
| Third Party Plaintiffs, | |
| -against - | |
| J&H COSMETICS, LTD. and GERALD SCHMELTZER, | |
| Third Party Defendants. | |

Defendant/Third Party Plaintiff Quality King Distributors, Inc. ("QKD") and Third Party

Plaintiff Quality King Fragrance, Inc. ("QK Fragrance"), by and through their attorneys,

Edwards Angell Palmer & Dodge LLP, for their amended third party complaint, state as follows

upon personal knowledge as to themselves and their own acts and otherwise upon information and belief:

The Parties

1.    QKD is a corporation organized under the laws of the State of New York with an office in Bellport, New York.  QKD is engaged, <u>inter alia</u>, in the wholesale purchase and sale of health and beauty aids.

2.    QK Fragrance is a corporation organized under the laws of the State of Delaware with an office in Bellport, New York.  QK Fragrance is engaged, <u>inter alia</u>, in the wholesale purchase and sale of fragrances.

3.    J&H Cosmetics, Ltd. ("J&H") is a corporation organized under the laws of the State of New York with its office at 58 Eagle Chase, Woodbury, New York.

4.    J&H is engaged, <u>inter alia</u>, in the wholesale purchase and sale of fragrances.  J&H is a merchant as defined in applicable state law.

5.    Gerald Schmeltzer ("Schmeltzer") is a citizen of the State of New York and resides at 58 Eagle Chase, Woodbury, New York.

6.    Upon information and belief, Schmeltzer is the president and principal of J&H, as well as its sole shareholder and director.

7.    Upon information and belief, Schmeltzer was personally involved with and responsible for the purchase of and sale to QK Fragrance of allegedly counterfeit Opium® perfume which is the subject of these actions.

8.    Upon information and belief, Schmeltzer was the moving, active, and conscious force behind the purchase of and sale to QK Fragrance of allegedly counterfeit Opium® perfume which is the subject of these actions.

- 2 -

9.     Upon information and belief, Schmeltzer exercised and exercises complete domination of the affairs of J&H, including the purchase of and sale to QK Fragrance of allegedly counterfeit Opium® perfume which is the subject of these actions.

10.    Upon information and belief, Schmeltzer used that domination to commit the wrongs and torts described herein, which resulted in injury and damage to QK Fragrance and/or QKD.

## Jurisdiction

11.    Personal jurisdiction is proper over J&H and Schmeltzer pursuant to Fed.R.Civ.P. 4(k)(1) and N.Y. C.P.L.R. §§ 301.

12.    The Court has jurisdiction pursuant to 15 U.S.C. §1121(a) and 28 U.S.C. §§ 1331 and 1338, and principles of supplemental jurisdiction, 28 U.S.C. § 1367(a).

13.    The claims set forth herein arise out of and are part of the same transaction or occurrences as alleged in the Second Amended Complaint of plaintiffs Yves Saint Laurent Parfums, S.A. and YSL Beauté (collectively "YSL"), and the determination of all claims in one proceeding is necessary and appropriate in order to avoid the multiplicity of actions that will result if QK Fragrance were required to defend YSL's claims, and then bring a separate action against J&H and Schmeltzer for, inter alia, indemnification of any sum or sums which QK Fragrance may be compelled to pay as a result of any damages, judgment or other awards arising out of the transactions or occurrences which are the subject matter hereof.

## Facts

14.    YSL has filed the Complaint against QKD arising out of QKD's alleged sale to Costco Wholesale Corporation ("Costco") of allegedly counterfeit Opium® perfume, which is a trademark of YSL.

- 3 -

15.    The Complaint incorrectly names QKD as a defendant given that QKD never bought or sold any of the merchandise at issue in this lawsuit. However, to the extent QKD has any liability, it has claims over against J&H and Schmeltzer.

16.    QK Fragrance has been purchasing fragrance and perfume products from J&H for at least 10 years, and, from time to time, QK Fragrance has purchased from J&H the Opium® brand perfume at issue in this lawsuit.

17.    Typically, QK Fragrance's representatives dealt with Schmeltzer, J&H's president and principal.

18.    Approximately 6-12 times per year, Schmeltzer faxed a list of perfume and fragrance products (including prices) that J&H had available for sale.

19.    Thereafter, a QK Fragrance representative would speak to Schmeltzer by telephone to negotiate the prices for various items that QK Fragrance was seeking to purchase. After Schmeltzer and QK Fragrance agreed on a price, QK Fragrance generated its standard form purchase order, which it then transmitted to Schmeltzer via facsimile.

20.    By accepting these purchase orders and shipping the merchandise pursuant to these purchase orders, J&H (via its president and principal, Schmeltzer) agreed to be bound by their terms.

21.    The purchase orders' terms include the promises, warranties and representations by J&H that the merchandise to be shipped "WAS OBTAINED BY SUPPLIER WITHOUT FRAUD, MISREPRESENTATION OR VIOLATION OF ANY STATUTE, REGULATION OR ADM COURT ORDER," "CAN LAWFULLY BE DISTRIBUTED IN THE U.S.A. IN ITS PRESENT FORM AND PACKAGING," and "IS NOT THE SUBJECT OF ANY LEGAL OR

- 4 -

CONTRACTUAL RESTRICTION ON ITS RESALE BY SUPPLIER TO QUALITY KING FRAGRANCE INC."

22.    To the extent that QK Fragrance has any liability, it has claims over against J&H and Schmeltzer.

FIRST CLAIM FOR RELIEF
(Breach of Contract against J&H and Schmeltzer)

23.    QK Fragrance and QKD repeat and reallege the allegations of all of the preceding paragraphs as though fully set forth herein.

24.    J&H sold various quantities of Opium® perfume to QK Fragrance and/or QKD, which was thereafter sold to Costco. YSL has alleged that such merchandise was counterfeit. If true, J&H materially breached its express contractual warranties made in conjunction with those sales.

25.    The goods were purchased in order to be resold in the ordinary course of business.

26.    As a result of J&H's alleged or potential breach of contract, QK Fragrance and/or QKD has received, and/or anticipates receiving, returns of these products from certain of its customers, has voluntarily agreed to refrain from selling the products pending a determination as to their genuiness, is facing possible liability to YSL and/or Costco, including the cost of defense, judgment or settlement, indemnity obligations, and its own attorneys fees, and has been damaged in an amount to be proven at trial.

27.    As a result of his domination and control of J&H, and his use thereof against QK Fragrance and/or QKD, Schmeltzer is responsible for the liability of J&H herein.

NYC 308212.2

SECOND CLAIM FOR RELIEF
(Federal False Description and False Designation
of Origin In Commerce against J&H and Schmeltzer)

28.    QK Fragrance and QKD repeat and reallege the allegations of all of the preceding

paragraphs as though fully set forth herein.

29.    Assuming the allegations of the Complaint to be true, then J&H and Schmeltzer

(as J&H's moving, active and conscious force), in connection with the alleged counterfeit

products, used in commerce a word, term, name, symbol or device, or any combination thereof,

or a false designation of origin, false or misleading description of fact or false or misleading

representation of fact, which was likely to cause confusion or to cause mistake, or to deceive as

to the approval of the goods at issue by their original manufacturer.  Such conduct constitutes a

violation of 15 U.S.C. § 1125(a)(1)(A).

30.    QK Fragrance and QKD have been and continue to be damaged by J&H's and

Schmeltzer's above-stated alleged activities and conduct, in an amount to be proved at trial

THIRD CLAIM FOR RELIEF
(Federal False Advertising Against J&H and Schmeltzer)

31.    QK Fragrance and QKD repeat and reallege the allegations of all of the preceding

paragraphs as though fully set forth herein.

32.    Assuming the allegations of the Complaint to be true, then J&H and Schmeltzer

(as J&H's moving, active and conscious force), in connection with the sale of the alleged

counterfeit products, used a word, term, name, symbol, or device or any combination thereof, or

a false designation of origin, false or misleading description of fact or false or misleading

representation of fact, which in commercial advertising or promotion, misrepresented the nature,

characteristics, qualities or geographic origin of the alleged counterfeit products.  Such conduct

constitutes a violation of 15 U.S.C. § 1125(a)(1)(B).

- 6 -

33.    QK Fragrance and QKD have been and continue to be damaged by J&H's and Schmeltzer's above-stated alleged activities and conduct, in an amount to be proved at trial.

### FOURTH CLAIM FOR RELIEF
(Breach of Statutory Warranty against J&H and Schmeltzer)

34.    QK Fragrance and QKD repeat and reallege the allegations of all of the preceding paragraphs as though fully set forth herein.

35.    Based on the above-alleged conduct of J&H and assuming that the allegations of the Complaint are accurate, J&H has materially breached the statutory warranties provided for in applicable state law, including but not limited to N.Y. U.C.C. §§ 2-312 and 2-314, that title to goods be good, that the transfer of the goods be rightful, that the goods be free of the rightful claim of any third party by way of infringement or the like, and that the goods possess the ability to pass without objection in the trade.

36.    Accordingly, J&H is liable for all injuries to QK Fragrance and/or QKD that have proximately resulted from J&H's breach of warranty, including but not limited to, the purchase price, value of genuine goods, lost profits, costs, expenses and any potential liability and defense costs incurred by QK Fragrance or QKD arising from the purchase and sale of allegedly counterfeit Opium® perfume from J&H.

37.    As a result of his domination and control of J&H, and his use thereof against QK Fragrance and/or QKD, Schmeltzer is responsible for the liability of J&H herein.

### FIFTH CLAIM FOR RELIEF
(Equitable Indemnity against J&H and Schmeltzer)

38.    QK Fragrance and QKD repeat and reallege the allegations of all of the preceding paragraphs as though fully set forth herein.

- 7 -

39.    QK Fragrance and QKD are in no way responsible for the acts alleged in the Complaint or any claims asserted by any person or entity.

40.    Upon information and belief, the alleged liability of QKD as set forth in the Complaint, if established, would be a direct and proximate result of the conduct of J&H and/or Schmeltzer.

41.    Upon information and belief, any alleged liability of QK Fragrance, if established, would be a direct and proximate result of the conduct of J&H and/or Schmeltzer.

42.    QK Fragrance and QKD are entitled to indemnification from J&H and/or Schmeltzer for any sums paid as a result of any damages, settlements, judgments or other awards recovered against them, and for all other loss or damage that QK Fragrance and/or QKD may sustain because of any claims asserted against them, including costs and attorney's fees incurred to date and any additional costs and expenses, including costs of investigation and reasonable attorney's fees.

43.    The exact amount of QK Fragrance's and QKD's damages is not known at this time, and QK Fragrance and QKD seek leave to set forth the full amount of its damages pursuant to the pretrial procedures of this court and the Federal Rules of Civil Procedure.

SIXTH CLAIM FOR RELIEF
(Equitable Contribution against J&H and Schmeltzer)

44.    QK Fragrance and QKD repeat and reallege the allegations of all of the preceding paragraphs as though fully set forth herein.

45.    QK Fragrance and QKD have denied any responsibility whatsoever with respect to the liability for damages allegedly incurred by Costco.

- 8 -

46.     If it should be found that QK Fragrance and/or QKD are in some manner liable, then any damages awarded against them were proximately caused or contributed to by the conduct of J&H and/or Schmeltzer.

47.     It is necessary that a prorated degree of negligence and/or fault, or other culpable conduct of third party defendant be determined and prorated so that QK Fragrance and QKD will not be required to pay more than its prorated share of any judgment or other award, if any, and to pay only according to the degree of negligence and/or fault attributed to QK Fragrance and/or QKD, if any.

SEVENTH CLAIM FOR RELIEF
(Declaratory Judgment against J&H and Schmeltzer)

48.     QK Fragrance and QKD repeat and reallege the allegations of all of the preceding paragraphs as though fully set forth herein.

49.     An actual controversy exists between QK Fragrance and QKD on the one hand and J&H and Schmeltzer on the other hand in that QK Fragrance and QKD contend that if they are obligated to pay money to YSL, Costco, or any other party, either by judgment or settlement, or in damages, or under indemnity obligations, or for attorney's fees, J&H and Schmeltzer are liable to QK Fragrance and QKD for any such sums, and that in all events J&H and Schmeltzer are also liable for the payment of QK Fragrance's and QKD's reasonable attorney's fees and costs incurred in defense of this action.

50.     J&H denies any such liability and it is anticipated that Schmeltzer will deny any such liability.

51.     QK Fragrance and QKD request a declaratory judgment that J&H and Schmeltzer are required to pay the costs of defense as incurred by QK Fragrance and QKD in this action, and to further provide for indemnification and/or contribution in connection with any money that QK

- 9 -

Fragrance and/or QKD are obligated to pay, whether by judgment or settlement, or in damages, or under indemnity obligations, or for attorney's fees.

52.     Such a determination is appropriate and necessary in that QK Fragrance and QKD have no adequate or speedy remedy at law and the request of such a judicial determination will avoid a multiplicity of suits, resulting in judicial economy and furtherance of the interest of justice.

EIGHTH CLAIM FOR RELIEF
(Common Law Unfair Competition against J&H and Schmeltzer)

53.     QK Fragrance and QKD repeat and reallege the allegations of all of the preceding paragraphs as though fully set forth herein.

54.     Based on the allegations made against QKD and assuming them to be true as against QK Fragrance and QKD, the above-alleged conduct, including J&H's and Schmeltzer's (as J&H's moving, active and conscious force) alleged "palming off" of alleged counterfeit merchandise as genuine products, and alleged encouraging or permitting others to palm-off alleged counterfeit product for genuine, constitutes unfair competition under applicable common law.

55.     QK Fragrance and QKD have been and continue to be damaged by J&H's and Schmeltzer's above-stated alleged activities and conduct, in an amount to be proved at trial.

DEMAND FOR RELIEF

WHEREFORE, QK Fragrance and QKD demand judgment in their favor on their third party complaint against J&H and Schmeltzer as follows:

A)     Awarding damages in three times the amount of QK Fragrance's and QKD's actual damages incurred by reason of the facts and occurrences alleged herein;

- 10 -

B)    Awarding compensatory damages;

C)    Awarding punitive damages;

D)    Declaring that J&H and Schmeltzer have duties of defense, indemnification, contribution and to hold QK Fragrance and QKD free and harmless from any and all cost, expense or liability in connection with any claim against them arising out of the transactions or occurrences which are the subject matter hereof;

E)    Declaring that J&H and Schmeltzer pay the costs of defense of this action (and any related actions) as incurred by QK Fragrance and/or QKD; and

F)    Awarding QK Fragrance and QKD such other and further relief to which they may be entitled in law and equity, including recovery of its costs and attorney's fees, pursuant to, inter alia, 15 U.S.C. § 1117.

Dated:  New York, NY
        July 28, 2008

_____

Anthony J. Viola
Andre K. Cizmarik
Paul E. Dans
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Quality King Distributors, Inc. and
Quality King Fragrance, Inc.
750 Lexington Avenue
New York, NY  10022
(212) 308-4411

- 11 -

# EXHIBIT B

04/17/2008 03:48 FAX                                                                                    ☑002/010





S O M E R   H E L L E R LLP
ATTORNEYS AT LAW

2171 Jericho Turnpike, Suite 350, Commack, New York 11725 • (631) 462-2323

STANLEY J. SOMER
JEFFREY T. HELLER **

MELISSA CORWIN *

* ALSO ADMITTED IN FLORIDA
* ALSO ADMITTED IN NEW JERSEY

OF COUNSEL
MICHAEL C. MARCUS

April 17, 2008

Via Facsimile: (212)805-6111
Honorable Magistrate Judge Henry Pitman
USDC, Southern District
500 Pearl Street, Room 1650
New York, NY 10007

Re:    *Yves Saint Laurent Parfums, S.A., et al. v. Costco Wholesale Corp., et al.*
       07 cv 3214 (LBS)(HP)

Dear Judge Pitman:

        We write herewith on behalf of Defendant J & H Cosmetics, Ltd. to request an extension of time of all deadlines in this matter pursuant to F.R.C.P. 6(b).

        Gerald Schmeltzer, the principal of J & H Cosmetics, Ltd. and the only witness on behalf of J & H Cosmetics, Ltd. with any knowledge and authority in this matter has unexpectedly been hospitalized and is in serious condition. Mr. Schmeltzer was admitted to North Shore University Hospital on March 24, 2008 where he underwent an emergency triple bypass surgery and aortic valve replacement. He remained in the hospital for two weeks following the surgery and experienced complications including pooling of blood in his head. After being discharged on April 4, 2008, he developed an infection and has since been readmitted to the hospital, where he remains today. Annexed hereto is the operative report of Mr. Schmeltzer's surgery, a letter from his surgeon and a claim for insurance benefits executed by his surgeon which indicated at the time of his initial discharge that improvement in his capabilities was not expected for several months. His readmission obviously complicates his recovery even further.

        Based upon the foregoing, we respectfully request a minimum four (4) month extension of all deadlines in this matter to August 15, 2008, with the hope that Mr. Schmeltzer will recover enough by then to participate in the discovery and ultimate trial of this action. Naturally, we will keep the Court appraised of his prognosis.

        Thank you for your attention to the foregoing.

                                        Respectfully,
                                        SOMER & HELLER, LLP.

MC:hs                                   JEFFREY T. HELLER, ESQ.

@003/010

cc:    Louis S. Ederer, Esq. (Via facsimile and e-mail)
      James W. Dabney, Esq. (Via facsimile and e-mail)
      Anthony J. Viola, Esq. (Via facsimile and e-mail)
      Gerald Schmeltzer

F:\DOCS\CIVIL\SCHMELTZER\Yves Saint Laurent\Pitman.4.15.07.wpd

04/17/2008 03:49 FAX
☎004/010

NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM

# NORTH SHORE UNIVERSITY HOSPITAL

DEPARTMENT OF CARDIOVASCULAR AND THORACIC SURGERY

300 COMMUNITY DRIVE, MANHASSET, NEW YORK, 11030  •  (516) 562-0100

## SURGICAL OPERATIVE NOTE

**NAME**                          **DATE**           **MR**

SCHMELTZER, GERALD           03/24/2008        40251492

**OPERATING SURGEON:** ROBERT KALIMI, M.D.

**DEPARTMENT OF CARDIOVASCULAR THORACIC SURGERY**

**ANESTHESIOLOGIST:**   EDWIN ROSMAN, MD

**ASSISTANTS:**         ANDREA REZIN, PA
                       PAUL GELLERT, PA

**REFERRING PHYSICIAN:**    WILLIAM BREEN, MD
                           BRIAN STRIZIK, MD

**PREOPERATIVE DIAGNOSIS:** Congestive Heart failure, Aortic valve stenosis and regurgitation and coronary artery disease with 90% left anterior descending stenosis, 95% stenosis of the circumflex, and 90% stenosis of the right coronary artery.

**POSTOPERATIVE DIAGNOSIS:** same

**OPERATION:** AORTIC VALVE REPLACEMENT WITH # 27 CARPENTIER – EDWARDS BOVINE PERICARDIAL VALVE AND CORONARY ARTERY BYPASS X3: REVERSE SAPHENOUS VEIN GRAFT TO THE LEFT ANTERIOR DESCENDING ARTERY, REVERSE SAPHENOUS VEIN GRAFT TO THE OBTUSE MARGINAL ARTERY, AND REVERSE SAPHENOUS VEIN GRAFT TO THE POSTERIOR DESCENDING ARTERY.

**ANESTHESIA:** General

**SPECIMEN:** AORTIC VALVE

NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM

# NORTH SHORE UNIVERSITY HOSPITAL

DEPARTMENT OF CARDIOVASCULAR AND THORACIC SURGERY

300 COMMUNITY DRIVE, MANHASSET, NEW YORK, 11030  •  (516) 562-0100

## PAGE 2

SCHMELTZER, GERALD                03/24/2008            40251492

**OPERATIVE FINDINGS:** The patient is a 64 year-old male with history of HTN, who was transferred from Plainview Hospital with congestive heart failure and hypotension. The patient was unstable and required intubation. Cardiac index was found to be 1.2. The patient underwent an emergent catheterization which demonstrated severe coronary artery disease and an intra-aortic balloon pump was placed. AVA of 0.6cm2. TEE severe AS and AI, Ef of 30%. The LIMA was not used since the patient was in cardiogenic shock.

**OPERATIVE PROCEDURE:** GROSS FINDINGS: Sternum: firm. The aortic valve was tricuspid with fused cusps; the leaflets were calcified and immobile. Ascending aorta: no plaque.  CONDUITS: LIMA: adequate size, excellent flow. Veins: adequate size. Vessels bypassed: SVG to LAD, SVG to OM, SVG to the posterior descending artery.

The patient was identified in the CTICU and taken to the operating room where he was placed in supine position. After the induction of general anesthesia with endotracheal intubation, the patient was prepped and draped in the usual sterile manner with Hibiclens wash followed by CholoraPrep. Rectal temperature probe was placed and a transesophageal echocardiogram probe was inserted. The vein was harvested from the right and left thighs. Blake drains were placed in both thighs. The leg wounds were closed with subcutaneous suture and staples.

Simultaneously, a median sternotomy was performed. Amicar was administered. Preparation for cardiopulmonary bypass included ACT guided heparinization. The ascending aortic, right atrial cannulation was performed. Retrograde catheter was placed through a purse string in the right atrium.  Bypass was initiated, and the patient cooled to 28°C.

An antegrade cardioplegia catheter was placed. The LV was vented with a Sarns vent passed through the right superior pulmonary vein across the mitral valve. The cross-clamp was applied and 4:1 cold blood cardioplegia infused antegrade and retrograde, achieving a satisfactory arrest, repeating the dose at fifteen minute intervals. Topical cold solution was used. Myocardial temperature was monitored and kept below 10 degrees. $CO_2$ was used on the field.

04/17/2008 03:49 FAX

☑006/010

## NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM
# NORTH SHORE UNIVERSITY HOSPITAL
### DEPARTMENT OF CARDIOVASCULAR AND THORACIC SURGERY

300 COMMUNITY DRIVE, MANHASSET, NEW YORK, 11030 • (516) 562-0100

**PAGE 3**

SCHMELTZER, GERALD              03/24/2008        40251492

The distal anastomoses were performed (SVG- PDA: end to side, 7-0 prolene, SVG-LAD, 7-0 Prolene, SVG to OM). The easy passage of a 1.5mm probe and/or infusion of cold blood cardioplegia confirmed patency of the anastamoses. The aortic root was opened obliquely. The aortic valve leaflets were excised and the annulus decalcified using a rounger. Care was taken to remove all loose debris. The size of the aortic annulus was assessed with a valve sizer.

Alternating white and blue pledgeted 2-0 Surgidak mattress sutures (18) (pledgets on ventricular side) were placed around the circumference of the annulus and passed through the sewing ring of a #27 Carpentier–Edwards Pericardial valve, which was tied in place without difficulty. The aortic root was closed in two layers with running 4-0 prolene. The pressure was temporarily reduced, and the cross-clamp was removed and a stable sinus rhythm restored with defibrillation. A partial clamp was placed on the proximal aorta and the proximal vein grafts to the PDA, OM, and LAD were anastomosed to the ascending aorta while rewarming. Evacuation of air was done by filling the ventricle, ventilating the lungs. The patient was de-aired through the aortic vent and the LV vent. The patient was weaned and separated from bypass.

Cogulopathy was present and platelets, fresh frozen plasma, and cryoprecipitate were administered after which hemostasis was satisfactory, two sump drains were placed in the mediastinum (36 Fr.), and a 32F angled chest tube was placed in the left chest. A right ventricular pacing wires were placed. The sternum was closed with #6 surgical steel wires. The sternum was pulse irrigated with 3L of Polymyxin and Bacitracin, closing layers above as usual (0, 2-0 vicryl, and staples).

The patient tolerated the procedure well and was returned to the Cardiothoracic Intensive Care Unit in on levophed, dobutamine, vasopressin, and epinephrine drips.

PUMP TIME: 2' 57'" minutes
CROSS CLAMP TIME: 1' 42" minutes

_____
ROBERT KALIMI, MD



**North Shore University Hospital**

North Shore-Long Island Jewish Health System

March 26, 2008

## STATEMENT OF TREATMENT

TO WHOM IT MAY CONCERN:

THIS IS TO CERTIFY THAT THE PATIENT HEREIN IDENTIFIED WAS TREATED IN THIS HOSPITAL:

PATIENT: Schmeltzer, Gerald                    NSUH #: 40251492

ADDRESS: 58 Eagle Chase
         Woodbury, NY 11797

SEX: Male

DATE OF BIRTH: 10/07/1943

DATE(S) ADMITTED                    DATE(S) DISCHARGED
03/23/08                            In Patient

*Elizabeth Heller*

Elizabeth Heller, RHIA
Director, Health Information Management

04/17/2008 03:49 FAX

☑008/010

 **North Shore University Hospital**

North Shore-Long Island Jewish Health System

300 Community Drive
Manhasset, New York 11030
Tel (516) 562-4970
Fax (516) 562-3786

### The Sandra Atlas Bass Campus

DEPARTMENT OF CARDIOVASCULAR & THORACIC SURGERY

ROBERT KALIMI, MD

April 16, 2008

Mr. Gerald Schmeltzer
58 Eagle Chase
Woodbury, NY 11797

Dear Mr. Schmeltzer:

This letter is to certify that you, Gerald Schmeltzer, were admitted to North Shore University Hospital on March 23, 2008. On March 24, 2008, you underwent aortic valve replacement and coronary artery bypass grafting surgery. You were discharged from the hospital on April 4, 2008.

Following physical examination in my office on April 11, 2008, you were re-admitted to North Shore University Hospital. As of today, you are still an inpatient in the hospital.

If you require any additional information, please feel free to contact my office.

Thank you,

Robert Kalimi, M.D.
RK:kw

NORTH SHORE UNIVERSITY HOSPITAL • LONG ISLAND JEWISH MEDICAL CENTER • FOREST HILLS HOSPITAL • FRANKLIN HOSPITAL • GLEN COVE HOSPITAL • HUNTINGTON HOSPITAL PLAINVIEW HOSPITAL • SCHNEIDER CHILDREN'S HOSPITAL • SOUTHSIDE HOSPITAL • STATEN ISLAND UNIVERSITY HOSPITALS • SYOSSET HOSPITAL • THE ZUCKER HILLSIDE HOSPITAL CENTER FOR ADVANCED MEDICINE • CENTER FOR EMERGENCY MEDICAL SERVICES • CORE LABORATORY • THE FEINSTEIN INSTITUTE FOR MEDICAL RESEARCH • HOME CARE NETWORK HOSPICE CARE NETWORK • SPORTS THERAPY AND REHABILITATION SERVICES • THE STERN FAMILY CENTER FOR EXTENDED CARE AND REHABILITATION • TRANSITIONS OF LONG ISLAND
——————— Affiliated Institutions ———————
ADULTS & CHILDREN WITH LEARNING & DEVELOPMENTAL DISABILITIES • ASSOCIATION FOR THE HELP OF RETARDED CHILDREN (AHRC) – NASSAU A.H.R.S. • GLENHAVEN HEALTH CARE ORGANIZATION • NASSAU UNIVERSITY MEDICAL CENTER • PENINSULA HOSPITAL

04/17/2008 03:50 FAX                                                                     @009/010

 **unum**

**CLAIM FOR INCOME PROTECTION BENEFITS**
The Benefits Center, P.O. Box 15112
Worcester, MA 01615-0112
Phone: 888-226-7959   Fax: 774-437-7041

## A. ATTENDING PHYSICIAN'S STATEMENT (PLEASE PRINT)

Name of Patient _Gerald Schmeltie_   Home Telephone Number   Date of Birth _10/7/43_   Social Security Number

Employer Name/Address _J & H Cosmetics Ltd._   Employer Telephone Number

Instructions: The following sections must be completed and signed by the attending physician. The purpose of this report is to assist us in making a disability determination. If this claim is related to a normal pregnancy, complete the normal pregnancy section. Otherwise, please complete all applicable sections of this form and provide copies of supporting reports, such as office notes, medical records, consultations and/or testing. In all situations, you must complete the signature block at the bottom of this form.

### NORMAL PREGNANCY

a) Expected Delivery Date:        b) Actual Delivery Date:        c) Delivery Type: ☐ Vaginal   ☐ C-Section

Date First Unable to Work:        Date Hospitalized:

### ALL OTHER CONDITIONS

**Patient Information**

a) Height:        Weight: _212_   b) Date of first visit regarding current conditions? _3/23/08_

c) Date patient ceased work because of condition? _3/28/08_   d) Did you advise patient to cease work? ☑Yes ☐No   If yes, when?

e) Has the patient been treated for the same/similar condition in the past? ☐Yes ☐No   If yes, when?
If yes, please describe: _Aortic Valve Replacement_
_Cornary Bypass   Cardiogenic Shock_

f) Is the patient's condition due to injury or sickness involving the patient's employment? ☐Yes ☑No ☐Unknown

**Diagnosis and Treatment**
**Primary Diagnosis**

a) What is the primary diagnosis preventing your patient from working? _Aortic Valve Replacement_

Please include Primary ICD-9 and/or DSM IV Multi-Axial Diagnoses and Codes _Cornary Bypass_

b) Date of last examination: _4/8/08_

c) Describe Reported Symptoms: _Shortness of Breath   Massive Chest pain_

d) Describe Physical Findings (MRIs, X-rays, EMG/NCV studies, Lab tests, clinical findings, GAF etc.):
_S/P AVR   Abn EKG   CXR_

**Other Conditions (Please attach additional information as necessary)**

Are there other conditions that prevent your patient from working? If so, please list with information as follows:

a) Secondary ICD-9s:        Diagnosis:

Secondary ICD-9s:        Diagnosis:

b) Describe Reported Symptoms:

c) Describe Physical Findings (MRIs, X-rays, EMG/NCV studies, Lab tests, clinical findings, GAF etc.):

**Treatment**

a) Describe the patient's current treatment program (include facilities name/address if applicable):
_AVR CABG 3/24/0V_

b) Medications (Please list all medications including dosage and frequency): _1/6/08_

c) Has patient been hospitalized? ☑Yes ☐No   Date Hospitalized: _3/24/08_   through: _1/6/08_

d) Was surgery performed? CPT 4 Code(s): _AVR_   Date Surgery Performed: _3/24/0_
Name/Address of facility: _North Shore Univ Hospital_

e) Is the patient still under your care? ☑Yes ☐No   Final Date of Treatment: _Today 4/7/08 + ongoing_

1198-02-NY-WORC (01/08)

04/17/2008 03:50 FAX                                                                     ☑010/010

Claimant Name: *Gerald Schmeltze*    Social Security Number:

Other Providers: Please supply complete name, contact information and specialty of any other treating physicians or hospitals.

| Name | Specialty | Address | Phone # | Fax # | Treatment From | To |
|------|-----------|---------|---------|-------|------|-----|
| Dr. Kalemi | Heart Surgery | | 516 5624970 | | 4/24 | Presen. |
| | | | | | | |
| | | | | | | |

## Physical Capabilities

a) Patient's ability to: ( Please Check Number of Hours Per Workday and How Often)

| | Number of Hours | How Often |
|--|--|--|
| Sit | ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☐ 6 ☐ 7 ☐ 8 | ☐ Continuously ☐ Intermittently |
| Stand | ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☐ 6 ☐ 7 ☐ 8 | ☐ Continuously ☐ Intermittently |
| Walk | ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☐ 6 ☐ 7 ☐ 8 | ☐ Continuously ☐ Intermittently |

b) Patient's ability to: (Please Check)

| | Never 0% | Occasionally 1-33% | Frequently 34-66% | Continuously 67-100% |
|--|--|--|--|--|
| Climb | ☐ | ☐ | ☐ | ☐ |
| Twist/bend/stoop | ☐ | ☐ | ☐ | ☐ |
| Reach above shoulder level | ☐ | ☐ | ☐ | ☐ |
| Operate heavy machinery | ☐ | ☐ | ☐ | ☐ |

c) Patient's ability to lift/carry: (Please Check)

| | Never 0% | Occasionally 1-33% | Frequently 34-66% | Continuously 67-100% |
|--|--|--|--|--|
| Up to 10 lbs. | ☐ | ☐ | ☐ | ☐ |
| 11 to 20 lbs. | ☐ | ☐ | ☐ | ☐ |
| 21 to 50 lbs. | ☐ | ☐ | ☐ | ☐ |
| 51 to 100 lbs. | ☐ | ☐ | ☐ | ☐ |

d) Patient's ability to perform: (Please Check)

| | Never 0% R L | Occasionally 1-33% R L | Frequently 34-66% R L | Continuously 67-100% R L |
|--|--|--|--|--|
| Fine Finger movements | ☐ ☐ | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| Hand/eye coordinated movements | ☐ ☐ | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| Pushing/Pulling | ☐ ☐ | ☐ ☐ | ☐ ☐ | ☐ ☐ |

Dominant Hand  ☐ Right  ☐ Left

## Psychological Features

Are there any cognitive deficits or psychiatric conditions that interfere with the patient's ability to perform his/her occupation? If so, please describe specifically how any identified condition prevents the patient from performing his/her occupation.

## Return to Work

a) When do you expect improvement in the patient's capabilities? *Seven month*

b) Have you advised patient to return to work?  ☐ Yes  ☐ No   Expected Return to Work Date *6 month*   ☐ Full Time  ☐ Part Time
If yes, please indicate any ongoing restrictions and limitations in the space provided below.
If no, please indicate the restrictions and limitations that prevent the patient from returning to work in the space provided below.

b) RESTRICTIONS (activities patient should not do)   *Very Life Activities*

c) LIMITATIONS (activities patient cannot do)

**FRAUD NOTICE:** Any person who knowingly files a statement of claim containing false or misleading information is subject to criminal and civil penalties. This includes Employer and Attending Physician portions of the claim form.

| Print or Type Name *STEVEN M. GOLDBERG* | Degree *MD* | Medical Specialty *CARDIOLOGY* |
|--|--|--|
| Street Address *1010 NO. BLVD* | | Telephone Number (516) 390 2430 |
| City *GREAT NECK*  State *NY*  ZIP Code *11021* | | Fax 516 4827954 |
| Signature of Physician *[signature]* | | Date *4/7/08* |
| SSN or Employer's ID Number: | Are you, the physician, related to this patient?  ☐ Yes  ☒ No | |
| | If yes, what is the relationship? | |

1198-02-NY-WORC (01/08)

# EXHIBIT C

**ENDORSEMENT**
__Yves Saint Laurent Parfums, S.A. v. Costco Wholesale Corp.__
07 Civ. 3214 (LBS)(HBP)

        Except as noted below, the application of J&H Cosme-
tics, Ltd. ("J&H") to adjourn all deadlines is denied.  The
incapacity of a single witness in this case is not a sufficient
reason to adjourn all deadlines such as expert discovery and
expert depositions.

        The deadline for deposing Gerald Schmeltzer is ad-
journed <u>sine</u> <u>die</u>.  Counsel for J&H is to submit a status report
concerning Mr. Schmeltzer's health no later than May 30, 2008.  I
appreciate that Mr. Schmeltzer's deposition may give rise to a
need to conduct follow-up discovery.  However, whether discovery
should be re-opened to permit such follow-up discovery will be
best considered after Mr. Schmeltzer's deposition.

Dated:  New York, New York
        April 23, 2008

                                    SO ORDERED


                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge


Copies transmitted to:

Louis S. Ederer, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York  10022-4690

James W. Dabney, Esq.
Fried, Frank, Harris,
    Shriver & Jacobson LLP
One New York Plaza
New York, New York  10004-1980

Anthony J. Viola, Esq.
Edwards Angell Palmer & Dodge LLP
750 Lexington Avenue
New York, New York  10022

Melissa Corwin, Esq.
Somer & Heller, LLP
Suite 350
2171 Jericho Turnpike
Commack, New York  11725

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  4/23/08

# EXHIBIT D



S O M E R     H E L L E R LLP
ATTORNEYS AT LAW

2171 Jericho Turnpike, Suite 350, Commack, New York 11725 • (631) 462-2323

STANLEY J. SOMER
JEFFREY T. HELLER **

MELISSA CORWIN *

* ALSO ADMITTED IN FLORIDA
* ALSO ADMITTED IN NEW JERSEY

OF COUNSEL
MICHAEL C. MARCUS

April 28, 2008

Via Facsimile: (212)805-6111
Honorable Magistrate Judge Henry Pitman
USDC, Southern District
500 Pearl Street, Room 1650
New York, NY 10007

Re:    Yves Saint Laurent Parfums, S.A., et al. v. Costco Wholesale Corp., et al.
       07 cv 3214 (LBS)(HP)

Dear Judge Pitman:

        We write herewith in response to your Order dated April 23, 2008, which denied our request
for an extension of all deadlines in this case.

        We ask that you reconsider your decision. Mr. Schmeltzer is not just a single witness in this
case but is the sole officer, director and shareholder of J&H Cosmetics, Ltd. and the only individual
with knowledge and authority to advise us on this matter. While we greatly appreciate your
adjournment of Mr. Schmeltzer's deposition *sine die*, we are unable to engage in expert discovery
without meaningful communications with Mr. Schmeltzer. We need authority from Mr. Schmeltzer
to proceed with the retention of an expert in this matter and to discuss the expert disclosure made
by the other parties.

        We would, of course, be willing to provide the other parties in this matter the same amount
of extended time that J&H would receive as a result of Mr. Schmeltzer's incapacitation. While we
did receive Quality King's expert report on or about April 15 2008, we have not reviewed same. We
offered to return the report to Quality King with our representation that same has not been reviewed,
but that request was denied. While we understand Quality King's position, we feel the more prudent
course of action at this time would be to allow Quality King and the Yves Saint Laurent parties the
same extension of time received by J&H, if granted. Accordingly, we would consent to an equal
extended period of time for the other parties to review J&H's expert report and conduct a deposition
of J & H's expert witness upon their receipt of J&H's expert disclosure.

        Please reconsider our request. Should you have any questions or concerns, please contact the
undersigned.

                                Respectfully,
                                SOMER & HELLER, LLP.

                                MELISSA CORWIN, ESQ.

JTH:mc

cc:    Louis S. Ederer, Esq. (Via facsimile and e-mail)
        James W. Dabney, Esq. (Via facsimile and e-mail)
        Anthony J. Viola, Esq. (Via facsimile and e-mail)
        Gerald Schmeltzer

F:\DOCS\CIVIL\SCHMELTZER\Yves Saint Laurent\Pitman.4.25.07.wpd

2

# EXHIBIT E

07/15/2008 00:00 FAX                                                    @002/012



 LLP

ATTORNEYS AT LAW

2171 Jericho Turnpike, Suite 350, Commack, New York 11725 · (631) 462-2323

STANLEY J. SOMER **
JEFFREY T. HELLER **

MELISSA CORWIN *

* ALSO ADMITTED IN FLORIDA
* ALSO ADMITTED IN NEW JERSEY

OF COUNSEL
MICHAEL C. MARCUS

July 15, 2008

Via Facsimile: (212)805-6111
Honorable Magistrate Judge Henry Pitman
USDC, Southern District
500 Pearl Street, Room 1650
New York, NY 10007

       Re:    Yves Saint Laurent Parfums, S.A., et al. v. Costco Wholesale Corp., et al.
             07 cv 3214 (LBS)(HP)

Dear Judge Pitman:

    We write herewith in response to the July 11, 2008 letter of Anthony Viola, Esq. and in furtherance of our letter dated July 9, 2008 wherein we requested the Court's intervention with regard to the subpoena served by Quality King on Gerald Schmeltzer. Said subpoena seeks the financial records of Gerald Schmeltzer, who is the principal of party J&H Fragrances, Inc., and not an individual party to this action, and also the records of "J&S Merchandising" which is also not a party herein.

    We respectfully sumit that any financial records of Mr. Schmeltzer are way beyond the scope of discovery in this matter and further, are outside the scope of what J&H Fragrances, Inc. has agreed to produce in an effort to reach a settlement in this matter. J&H Fragrances, Inc. is under no obligation to provide its financial records but has offered to do so from a collectibility standpoint only, notwithstanding that Quality King has failed to proffer sufficient proof to date that J&H Fragrances, Inc., as opposed to one of Quality King's many other suppliers, supplied the goods in question. J&H has not, however, agreed in any way to produce the personal financial records of Mr. Schmeltzer.

    Further, the demanded documents of J&S Merchandising are also wholly irrelevant to this action. Quality King makes no claim that it purchased its products from J&S Merchandising. J&S Merchandising is also not a party to this action. Further, even if J&S Merchandising was selling Opium products by the truckload via e-bay, which there certainly has been no admission of, the potential claim for damages lies in the hands of YSL. Quality King would suffer no damage whatsoever based upon such a claim.

    Moreover, at no time did I advise counsel for Quality King that J&S Merchandising was "effectively a d/b/a for Mr. Schmeltzer". Nor did we "request" a subpoena seeking the personal information of Mr. Schmeltzer. This statement by counsel for Quality King is simply untrue. The undersigned did advise counsel that J&S Merchandising was not a corporate entity and further, that

Honorable Magistrate Judge Henry Pitman
Yves Saint Laurent Parfums, S.A., et al. v. Costco Wholesale Corp., et al.
07 cv 3214 (LBS)(HP)
Page 2

there was a distinct corporate entity which sold perfume products through the e-bay store name, J&S
Merchandising. I also advised counsel that J&S Merchandising was simply an e-bay store name, just
as one can create any website name. Just because the undersigned could sell products under
"Corwin's Collectibles" on e-bay certainly does not mean that said e-bay store name is an "entity"
or that said goods were connected in any way to any corporate entity of which I am a principal or
shareholder. Counsel for Quality King chose to redraft its subpoena in the name of Gerald
Schmeltzer and we agreed to accept service for same with a reservation of rights to move to quash
same based upon relevancy. Quality King granted a one week adjournment and refused to grant any
adjournments thereafter.

Quality King's counsel's statement that J&H did not serve objections or a motion to quash
is true. Our office was making an attempt to work out the dispute directly with counsel for Quality
King as opposed to burdening the Court with a motion at this time. Our correspondence to the Court
was in an effort to avoid this motion practice, and even to avoid a pre-motion conference. Quality
King was aware of our position that although the demanded documents of J&S Merchandising were
irrelevant to this matter, we were agreeing to produce some financials regarding same at our office
for the sole purpose of settlement negotiations. While we have been unable to provide Quality King
with an exhaustive list of those items which we are willing and able to disclose, because of a delay
with J&H's accountant, we expect to provide a complete list by the end of business today (as we
previously advised counsel for Quality King on July 11, 2008). Simultaneously with the faxing of
this letter, we have e-mailed to Anthony Viola, Esq. and Andre Cizmarik, Esq. a list of those items
we currently have possession of,which includes the 2004/2005 and 2005/2006 Tax Returns of J&H
Fragrances, Ltd., a current income statement for J&H Cosmetics Ltd., and the 2003, 2004, 2005,
2006 and 2007 Tax Returns for the corporate entity through which goods were sold through the e-bay
store name J&S Merchandising.

Mr. Viola's statement that J&H and our offices have "improperly ignored" this subpoena is
simply untrue. Further, his statement that he has been "more than reasonable" regarding the
subpoena is also untrue. Annexed hereto is the e-mail correspondence between the parties regarding
this subpoena, which evidences Quality King's unreasonableness and J&H's continued efforts to
keep Quality King apprised of the forthcoming documentation.

Mr. Viola's statement that the subpoena has no relevance to the settlement meeting offered
by our office is also untrue. The subpoena seeks documents regarding J&S Merchandising (amongst
other items) which documents we have agreed to offer at our offices. This is not two separate issues.
Simply stated, Quality King has made little effort to be reasonable in our pursuit of the financial
records. J&H has been more than reasonable in its agreement to produce certain financials, which
financials Quality King would not even be entitled to during the pendency of this action.

Honorable Magistrate Judge Henry Pitman
Yves Saint Laurent Parfums, S.A., et al. v. Costco Wholesale Corp., et al.
07 cv 3214 (LBS)(HP)
Page 3

J&H is making all efforts it can to come to a meeting of the minds between the parties and Quality King is simply trying to be difficult.

Respectfully submitted,

SOMER & HELLER LLP

Melissa Corwin

MC/hs
cc:    Louis S. Ederer, Esq.
       Anthony J. Viola, Esq.
       Gerald Schmeltzer

F:\DOCS\CIVIL\SCHMELTZER\Yves Saint Laurent\Pitman.7.15.08.wpd